**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA      :

              v.             : **Case No. 21-cr-175-3 (TJK)**

ZACHARY REHL               :

**GOVERNMENT'S MOTION FOR REVOCATION**
**OF RELEASE ORDER AND FOR PRETRIAL DETENTION**

The government respectfully moves this Court, pursuant to 18 U.S.C. § 3145(a), to revoke the magistrate judge's decision in the Eastern District of Pennsylvania to release the defendant, Zachary Rehl, pending trial. The magistrate judge stayed the release order pending this Court's determination regarding pretrial release, and the defendant remains detained. Motions under section 3145(a) "shall be determined promptly."

The defendant was one of the leaders and organizers of a group that attacked the U.S. Capitol on January 6, 2021, seeking to obstruct Congress's certification of the 2020 U.S. presidential election. The group succeeded, if only temporarily, by overwhelming law enforcement and breaking into the building along with a mob of rioters. The defendant has shown no remorse for the violence that he helped to unleash on the Capitol on January 6. To the contrary, he has celebrated it. In a private message to co-conspirators on the day after the attack, the defendant declared, "I'm proud as fuck what we accomplished yesterday . . . ." In public messages, he celebrated the attack, stating, "THIS is what patriotism looks like," and he condemned the law enforcement officers who sought to defend the Capitol and those inside, stating, "They deserve to be tarred and feathered. These cops turning on us are also what they call 'turncoats.' Just saying."

The charges against the defendant in this case give rise to a rebuttable presumption in favor of detention. Moreover, the defendant's comments and conduct before, during, and after the

attack—all of which must be viewed in light of his leadership position—demonstrate the threat he poses to the community going forward. Pre-trial release would allow the defendant to remain in the same circumstances in which he and others planned and launched the attack on January 6. For someone who commands influence over a group with a demonstrated desire for violence, even home detention does little to protect the community. Accordingly, because no condition or combination of conditions will reasonably assure the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for pretrial detention of the defendant.

## Procedural Background

On March 10, 2021, a grand jury in the District of Columbia returned a six-count superseding indictment charging the defendant and three others, Ethan Nordean, Joseph Biggs, and Charles Donohoe (collectively, "the defendants"), in connection with the January 6 attack on the U.S. Capitol. Each defendant is charged with conspiracy, in violation of 18 U.S.C. § 371, obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c), 2; obstruction of law enforcement during a civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3), 2; destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361, 2; and unlawful entry and disorderly conduct, in violation of 18 U.S.C. § 1752(a)(1) and (a)(2).

On March 17, 2021, the defendant was arrested in the Eastern District of Pennsylvania pursuant to a warrant issued in connection with the indictment. The government sought pre-trial detention, and, following a detention hearing on March 26, 2021, a magistrate judge ordered the defendant released on certain conditions, including home confinement. The government orally

moved for a stay of the release order pending review in the District of Columbia, and the magistrate judge granted that motion and stayed the order.[1]

**Factual Background**

As alleged in the indictment, which is incorporated here by reference, the defendant is the president of his local Proud Boys chapter, and he was among the leaders of the members of the Proud Boys organization who had come from across the country to Washington, D.C., motivated by their views regarding the 2020 presidential election, for the events of January 6.[2] As a leader, the defendant helped set the tone for the group—and that tone was one of violence. Posting on social media on November 27, 2020, the defendant stated: "Hopefully the firing squads are for the traitors that are trying to steal the election from the American people."

Along with other leaders, the defendant called on Proud Boys members to dress "incognito" and avoid wearing the traditional Proud Boys colors on January 6. In anticipation of the event, he posted a link to an online fundraiser that raised over $5,500 to fund his and others' travel and equipment for the event. On December 29, 2020, he posted, "I just want to again thank

---

[1]     Co-defendants Nordean and Biggs had been previously charged and arrested. Although they were released on conditions, the government has moved for their pre-trial detention following the unsealing of the indictment. This Court has scheduled a hearing on the government's motions to revoke pretrial release for April 1, 2021.   Like the defendant in this case, co-defendant Donohoe was arrested on March 17, 2021, and the government is seeking his pre-trial detention as well. Co-defendant Donohoe waived any detention hearing in the district where he was arrested, and a detention hearing in front of a magistrate judge in this district is scheduled for Tuesday, March 30, 2021.

[2]     As alleged in the indictment, the Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

you all for your help in donating and your support, we love you all, appreciate your support and will be there in force on Jan 6th and many more!"

To assist in the coordination on January 6, the defendant brought a number of programmable radio devices with him, and he assisted in the plans to program and distribute them to ensure the group could communicate through the day. On the morning of January 6, the defendant led the Proud Boys members from their pre-arranged meeting spot at the Washington Monument to the U.S. Capitol, as depicted below:



*Defendant (circled) marching alongside co-defendants Nordean (with bullhorn) and Biggs (checkered shirt) toward the U.S. Capitol on January 6, 2021*

They marched to the east side of the building before returning to the west side, where they gathered near a pedestrian entrance to the restricted Capitol grounds shortly before 1:00 p.m. Within minutes of arriving, the defendant and others in his group joined the crowd in charging police barricades and overwhelming law enforcement.

On Telegram channels that the group had established for the event, the defendant and his co-conspirators were encouraged to "storm the Capitol." The defendant himself "stormed" the Capitol, equipped with a radio and goggles. His entry onto the restricted grounds and, ultimately, into the building, was facilitated by his own acts and those of his co-conspirators, including another member of the Proud Boys, Dominic Pezzola, who robbed a Capitol Police officer of his riot shield, and was later assisted in carrying away that shield by co-defendant Donohoe. Co-defendant Donohoe relayed the news to co-defendant Rehl and other leaders on Telegram, writing, "Got a riot shield!" Pezzola, acting as a member of the conspiracy charged in this case, then broke through a window of the building using the shield, allowing the mob of rioters, including the defendant, to stream inside.[3]



*Defendant inside the U.S. Capitol on January 6, 2021*

---

[3]       Pezzola was previously charged for his role in the January 6 attack. *United States v. Pezzola*, 1:21-cr-52 (D.D.C.).

In a Telegram message following the attack, the defendant stated, "That was NOT what I expected to happen today. All from us showing up and starting some chants and getting the normies all riled up." The defendant celebrated the attack in a public social media post: "THIS is what patriotism looks like. Today was indeed a historical day for sure. I will never forget this for as long as I live, keep the fight up America! When government fears its people, you have freedom, when people fear government, you have tyranny." The following day, he continued to express pride in what he and others had achieved while referencing unspecified plans for the future: "I find this hard to believe now. I'm proud as fuck what we accomplished yesterday, but we need to start planning and we are starting planning, for a Biden presidency."

### Relevant Legal Principles

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed:   whether any condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community. As

the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad.

News 3182,  3195-3196.[4]

Under the Bail Reform Act, courts consider the following factors in determining whether

some condition, or combination of conditions, will reasonably assure community safety or the

defendant's appearance at trial and pre-trial proceedings: the nature and circumstances of the

---

[4] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

charged offenses; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *Smith*, 79 F.3d at 1209.

The United States seeks detention pursuant to, *inter alia*, 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption of detention if there is probable cause to believe that the defendant committed "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." That rebuttable presumption applies to Defendant because destruction of government property in violation of 18 U.S.C. § 1361, is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), and it carries a maximum sentence of ten years in prison.[5]

In addition to establishing a rebuttable presumption, the destruction of government property charge independently provides a basis for a detention hearing under 18 U.S.C. § 3142(f)(1)(A), because the offense is a "crime of violence." For purposes of the bail statute, as relevant here, a crime of violence is defined as "an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another," if that crime is punishable by ten years or more in prison. *See* 18 U.S.C. § 3142(f)(1)(A) & 3156. *United States v.*

---

[5]     Judges in the District of Columbia have uniformly held in Capitol riot cases that 18 U.S.C. § 3142(e)(3)(C)'s rebuttable presumption applies to defendants charged under 18 U.S.C. § 1361. *See, e.g.*, *United States v. Nordean*, Case No. 21-mj-195 (C.J. Howell, March 3, 2021); *United States v. Powell*, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); *United States v. Watkins*, Case No. 21-cr-28 (J. Mehta, February 26, 2021); *United States v. Bisgnano*, Case No. 21-cr-36 (J. Nichols, February 26, 2021).

*Khatallah*, 316 F. Supp. 2d 207, 213 (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property under a substantially similar statute, 18 U.S.C. § 1363, satisfies a substantially similar elements-clause statute to qualify as a crime of violence). Moreover, when destruction of government property is "calculated to influence or affect the conduct of government by intimidation or coercion," it qualifies as a federal crime of terrorism. See 18 U.S.C. § 2332b(g)(5).

<u>Discussion</u>

### 1. Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged in this case strongly support detention. The defendant is charged by indictment with serious crimes that occurred during an unprecedented attack on the U.S. Capitol that obstructed Congress's certification of the 2020 U.S. presidential election results.

Among the things the Court is statutorily required to consider is whether the defendant is charged with any crimes of violence or terrorism. 18 U.S.C. § 3142(g)(1). In this case, felony destruction of property is a crime of violence under 18 U.S.C. §§ 3142(f)(1)(A) & 3156, and it qualifies as a federal crime of terrorism, because, consistent with charged conspiracy, the offense was plainly "calculated to influence or affect the conduct of government by intimidation or coercion." *See* 18 U.S.C. §§ 2332b(g)(5)(A) & (B).

The government does not allege that the defendant acted as a principal in the destruction of government property. Rightly so, however, the defendant and his co-conspirators are criminally responsible for the actions taken by others that were foreseeable and in furtherance of the conspiracy and those that they aided and abetted. *See Pinkerton v. United States*, 328 U.S. 640,

- 9 -

647 (1946). Here, Pezzola, another Proud Boys member, stole a riot shield along with the defendant's charged co-conspirator, Donohoe. Co-defendant Donohoe, in turn, boasted that they "Got a riot shield!" on a Telegram channel that included the defendant. Because the defendant and Pezzola conspired together (and with others), the defendant is substantively liable for the destruction Pezzola wrought with his stolen riot shield—even if the two are not charged in the same conspiracy. *See United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) ("a conspiracy need not be charged in order for *Pinkerton*'s doctrine to apply"). For many of the same reasons, moreover, the defendant aided and abetted Pezzola's property destruction. *See United States v. Whitted*, 734 F. App'x 90, 95 n.4 (3d Cir. 2018) (unpublished) (explaining that "*Pinkerton* and aiding and abetting are two alternative theories under which the government may prove a substantive criminal offense"). Here, that includes the destruction of property committed by Pezzola and referenced above.

### 2. The Weight of the Evidence

The weight of the evidence against the defendant is strong, and it weighs in favor of pretrial detention. This evidence comes in multiple forms, including the photographs and videos of the defendant and co-conspirators at the Capitol on January 6, 2021, posts and direct messages on social media, and the messages sent and received through Telegram. Together, this evidence paints a clear picture: the defendant was instrumental in planning and leading the attack on the U.S. Capitol by Proud Boys members.

### 3. The History and Characteristics of the Defendant

To the government's knowledge, the defendant has prior convictions, in 2007 and 2017, for driving under the influence and related offenses. It appears to the government that the defendant

has strong ties to the area in which he resides. Nonetheless, any family or community ties have already proved insufficient to deter him from embracing a leadership role in the January 6 attack. And the government is unaware of any expression of remorse or contrition by the defendant or any attempt to distance himself from violent conduct of those in his command.

As the Chief Judge in the District of Columbia noted with regard to another Proud Boys member, who in fact marched behind the defendant on January 6, and whom the Chief Judge ordered detained:

> [H]is more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 or disclaimed the beliefs and gang membership animating his actions on that day, and thus there is no evidentiary basis to assume that defendant will refrain from similar activities, if instructed, in the future.

*United States v. Chrestman*, 21-mj-218 (D.D.C.) (ECF 23, at 27-28). Likewise, the defendant has shown no remorse and has not disclaimed "the beliefs and gang membership animating his actions that day." *Id.* On the contrary, as noted above, he has expressed pride in what he and his co-conspirators achieved on January 6. Accordingly, there is every reason to believe that the defendant's misplaced pride would animate similar conduct in the future.

### 4.  The Nature and Seriousness of the Danger Posed by Release

Allowing the defendant to be released pending trial, even in home confinement, would leave a man who has the wherewithal to help plan and lead a large group of men in a violent attack to take similar actions in the future. Indeed, he poses the same level of risk to the safety of others and the community that he posed leading up to and on January 6.   That risk, to be sure, is based

on the defendant's role as a leader, planner, and organizer.   But that is precisely why he is dangerous.   As the court of appeals noted in remanding a detention decision in a Capitol riot case, "those who actually assaulted police officers and broke through windows, doors, and barricades, and *those who aided, conspired with, planned, or coordinated such actions*, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 21-3010, at 18-19 (D.C. Cir. March 26, 2021) (emphasis added).

As the defendant himself wrote on January 7: "I'm proud as fuck what we accomplished yesterday, but we need to start planning and we are starting planning, for a Biden presidency." The logical interpretation of this statement is that the defendant and his co-conspirators' "planning" involves more of the violence and lawlessness unleashed on January 6 that filled the defendant with pride. For the safety of others and the community, he should be detained pending trial.

- 12 -

## **CONCLUSION**

The defendant cannot rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(C). Even if he could, there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the defendant is released, even to home confinement.

WHEREFORE, the government respectfully requests that the Court revoke the order of release and order that the defendant be detained pending trial in the District of Columbia.

Respectfully submitted,
CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

*/s/ Luke M. Jones*
LUKE M. JONES, VA Bar No. 75053
JASON B.A. MCCULLOUGH, DC Bar No. 998006
JAMES B. NELSON, DC Bar No. 1613700
U.S. Attorney's Office for the District of Columbia
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7066

CERTIFICATE OF SERVICE

I certify that a copy of the government's motion and proposed order were filed on

ECF and served by email to the following defense counsel:

Shaka M. Johnson, Esq.
shaka@shakajohnsonlaw.com

*/s/ Luke M. Jones*
LUKE M. JONES, VA Bar No. 75053
Assistant United States Attorney

Date:   March 27, 2021