**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                         Complainant,<br>        v.<br><br>ZACHARY REHL<br><br>*(Styled as <u>USA v. NORDEAN</u> incorporating cases against four Defendants collectively)*<br><br><br>                         Accused | Criminal Case No.<br><br>1:21-cr-00175-TJK-3 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF ZACHARY REHL'S**</u>
<u>**OPPOSITION TO PROSECUTION'S MOTION FOR TRANSFER ORDER**</u>

Comes now the Accused ZACHARY REHL, by counsel, and hereby files this

Memorandum of Law in support of his Opposition to the Motion for a Transfer Order, which

asked for ZACHARY REHL to be held in custody and moved to the District of Columbia, and

for his reasons states as follows, by counsel:

**I.      GOVERNING LEGAL STANDARD**

1.      The trial judge clearly has authority to decide this question and order or deny a

transfer of detention location.  *See, Order* regarding Charles Donohoe at ECF Docket # 80, April

30, 2021, attached as Exhibit 1.

2.      Federal Rules of Criminal Procedure Rule 20 concerns a person accused of a

federal crime being held in the district where they were arrested while the main case is being

prosecuted in a different district.  However, Rule 20 only addresses the question of transferring

the prosecution to that district where the accused is being held in pre-trial detention where he or

she was arrested, for the purpose of resolving the case by plea.  Therefore, Rule 20 endorses

impliedly the idea of an accused defendant being held in pre-trial detention in a different district,

where they were arrested, then in the district where the main prosecution is being held.  But it is

not really helpful in giving us any standards to follow here in this matter.

  3. Counsel has not found a legal precedent precisely on the question of the transfer

of an accused person awaiting trial from one jail to another, but one case concerning post-

conviction transfer among districts.  *See, generally, Starnes v. McGuire,* 512 F.2d 918, 925, 168

U.S.App.D.C. 4 (D.C. Cir. 1974) (seeking mandamus over a post conviction transfer of the entire

case for further proceedings regarding parole) stating

> "Petitioner correctly notes that our decision in *Young* does
> not eliminate the need for an examination of the facts of each
> case prior to any decision on whether transfer should be
> ordered under 28 U.S.C. § 1404(a). *See Van Dusen v.
> Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945
> (1964); *Continental Grain Co. v. Barge*, FBL-585, 364 U.S.
> 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); *Fine v. McGuire*,
> 139 U.S.App.D.C. 341, 433 F.2d 499 (1970); *Nestor v.
> Hershey*, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969)."

  4. It appears the government's motion would be governed by the judge's discretion.

  5. "As a general rule we review comparable trial management decisions for abuse of

discretion. See *United States v. Leal*, 30 F.3d 577, 586 (5th Cir. 1994) (time allowed for closing

arguments)."  *United States v. LaVallee, Schultz, & Verbickas* 436 F.3d 560 (10th Cir. 2006).

  6. Sound discretion should include not disregarding or ignoring factors that may

bear on a sound decision.

  7. The boundaries of discretion may be exceeded – not relevant here -- by a

misinterpretation or error of law that affects the decision.  See, e.g., *United States of America v.

Hector J. Lebron*, Case No. 20-4110, U.S. Court of Appeals, Opinion, May 23, 2021.

8.     But the boundaries of discretion may also be exceeded by a failure to consider all of the relevant facts:  "[A] district court might abuse its discretion if it engaged in a substantively unreasonable balancing of the § 3553(a) factors." *Ruffin*, 978 F.3d at 1005."  *Id.*

9.     And:  "District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114."  *Id.*

10.    Counsel found little as precedent within this context in criminal matters but there are of course a vast quantity of precedents in other contexts explaining discretion.  For example:

> The Supreme Court stated in *Foman* that while the decision to grant or deny leave to amend is within the trial court's discretion, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." 371 U.S. at 182, 83 S.Ct. at 230. We too have emphasized that a proper exercise of discretion requires that the district court provide reasons. See *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1018, 1020 (D.C.Cir.1981) (reversing district court's denial of leave to amend, and remanding to the district court either to grant plaintiff leave to amend or provide sufficient reasons for its denial).

*Firestone v. Firestone*, 76 F.3d 1205, 316 U.S. App. D.C. 152 (D.C. Cir. 1996).

11.    Therefore, a trial judge has discretion over such matters, yet the Court will of course attempt to make a good decision.

## II.     PERTINENT FACTS

12.    The Accused is being held pre-trial in Federal detention, not in any Pennsylvania state or Philadelphia city facility.

13.    Of course, he has not been convicted of any crime and is presumed innocent.

14.    ZACHARY REHL has family relationships that matter and should not be unduly disrupted unless there is a strong reason.  The Accused's teenage daughter, newborn baby, his

wife, mother, and brother all of their own personal interests in maintaining their relationship with him, if disrupting those relationships is not required for a reason in this case.

15.     In the detention hearing in Pennsylvania, the prosecution conceded in proper candor:

> To be sure, the indictment does not allege that Mr. Rehl engaged directly in violence against officers or destruction of property but there is, nonetheless, a presumption in favor of detention based on his liability for his co-conspirators destruction of property.

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5 Hearing Before Honorable Richard A. Lloret, United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania, March 26, 2021, Case No. 2:21-mj-526-1, filed publicly as ECF Docket # 9.

16.     And his then defense counsel stated on the record:

> The Government did have to acquiesce and concede that he is not directly responsible for any destruction that took place in our nation's capitol on that day, he was not seen through all the video surveillance, all the photographs, picking up anything, stealing anything, damaging anything, taking anything, …

Defense Counsel for Zachary Rehl, Mr. Shaka Johnson, Esq., Page 6, *Id.*

> … this gentleman is a homeowner on the [redacted] block of [redacted], Judge. I think you saw that in the pretrial services report. He's been here for six years.[1]

Defense Counsel for Zachary Rehl, Mr. Shaka Johnson, Esq., Page 6, *Id. (redaction added).*

> … He's married, he's been with her for over ten years and they are now married. He is a father, expectant father. She is pregnant with their, the couples first child currently. He does have a 16 year old daughter that he maintains a very positive relationship with, who is also from the -- resides in the Eastern District.

Defense Counsel for Zachary Rehl, Mr. Shaka Johnson, Esq., Page 7, *Id.* [2]

---

[1]     That is, Zachary Rehl owns a home with his wife in the Philadelphia area.

> His mother, who he has an extraordinarily close relationship
> with, still lives in Bucks County, in the Eastern District. [3]
> His father has since passed away but he's grown an
> exceptionally fond relationship with his father-in-law,
> [redacted]'s father and they live in the northeast portion of
> Philadelphia and that is where the couple would reside,
> Amanda and both Zachary, if this Court were to allow him to
> be released…

Defense Counsel for Zachary Rehl, Mr. Shaka Johnson, Esq., Page 7, *Id. (redaction added).*

> The Court's indulgence, please, Your Honor. He is a
> Temple graduate, graduated in 2016 with his Bachelor's
> Degree in business administration. When he left to go to the
> service, he left from his mother's house in Bucks County,
> when he  returned he returned to Shippensburg when he was
> discharged, honorably discharged, he returned to
> Shippensburg. [4]

> What I'm illustrating for you, Judge, is, his entire life,
> his entire life has been in the Eastern District. [5]

17. ZACHARY REHL would be limited from visitation of family while awaiting trial if he were transferred.

18. For biographical details, which are in Section 3, a redacted copy of ECF Docket #86, DEFENDANT'S MEMORANDUM IN OPPOSITION TO DETENTION is attached as Exhibit 2.

19. Furthermore, the public summary published on a blog is attached as Exhibit 3 is also provided.

20. ZACHARY REHL's father and grandfather were police officers (incorrectly stated in the blog post in Exhibit 3).

---

[2]     Counsel requests consideration that the Accused's wife, while very devoted to and loving of her husband, has never shared his interests in activism and is not seeking any public attention.  Not all couples share the same activities.
[3]     Of Pennsylvania
[4]     All of these are in Pennsylvania.
[5]     Of Pennsylvania

21.     In July 2020, ZACHARY REHL attended the Back the Blue rally outside the Fraternal Order of Police lodge in Philadelphia where the Proud Boys Club members mingled with police officers.

22.     From October 2008 to May 2012, he was a U.S. Marine Corps non-commissioned officer in Yuma, Arizona, USA.

23.     From 2012 to 2013, he went to Shippensburg University of Pennsylvania in Shippensburg, Pennsylvania. He earned his bachelor's degree in marketing from Temple University in Philadelphia in 2016 and his master's degree in innovation management and entrepreneurship from the same university in 2017.

24.     His wife and now newborn baby attend every visitation opportunity with their three month old daughter.

25.     His wife is processing the form for ZACHARY REHL's 16 year old daughter to start attending visitation at the Philadelphia Detention Center.

26.     His brother is mailing in the form so that he may visit ZACHARY REHL also.

27.     In Philadelphia, he speaks with his wife almost every day on the phone so that he knows how his children are doing.

28.     Again, ZACHARY REHL has not been convicted, and the interruption of his relationship with his children and wife are a pre-trial harm if unnecessary.

29.     According to many news reports, lawyers of other January 6 defendants have complained of conditions of their defendants held in detention in D.C., charged in connection with the January 6, 2021, demonstrations and related events.

30.     According to many news reports, lawyers of other January 6 defendants have complained that they could not meet with and consult with their clients held in detention in D.C.

except rarely and with great difficulty.

### III.    ARGUMENT

31.     The Motion for a Transfer Order does not actually state any reasons why Zachary Rehl should be transferred from the Philadelphia Detention Center to the Detention Center in Washington, D.C. or D.C. City jails for the U.S. District Court for the District of Columbia, except to vaguely hint at "for further proceedings."

32.     However, the Motion does not identify what "further proceedings" are at issue.

33.     Furthermore, the motion vaguely refers to a conversation with someone at the Philadelphia Detention Center ("PDC"), but does not allege whether that conversation was in response to the prosecution's inquiry, was raised by the PDC itself,  or whether it reflects any reason for a transfer.

34.     We don't know at present if the Philadelphia Detention Center was saying they desire a transfer.

35.     Counsel interprets the mention of a conversation at the PDC as being about ***how*** to transfer the Accused (by court order), not about *whether or not* he should be transferred.

36.     No indication has been offered in support of the prosecution's Motion for Transfer Order as to why D.C.'s jails are less busy than Philadelphia's.

37.     Such information would be difficult for an outside party to obtain.

38.     Moreover, the current resurgence of a delta variant of COVID-19 officially accepted as a real threat by this Court, see Exhibit 4, has been taken very seriously by this Court.

39.     In the August 25, 2021, Order of this Court (the District as a whole by the Chief Judge) attached as Exhibit 4, this District has officially acknowledged in Finding (g) that

> **"Currently, the rate of transmission in the District of Columbia is considered 'high.'"**

40.     In the August 25, 2021, Order Finding (i), this District notes that the record of containing COVID-19 in the D.C. Department of Corrections' D.C. Jail has been good, but that

> **"The risks of virus transmission and further exposure from residents entering or re-entering the facility remain real, however.  In recent days, several new detainees have tested positive for COVID-19 upon intake."**

41.     The August 25, 2021, Order (Exhibit 4) gives extensive details of the success of this District in handling these challenges, but also shows the importance of continued carefulness.

42.     It should be inferred that even if one city is no worse than the other for COVID-19 exposure or the crowding of its jails, merely moving people around if there is no reason for doing so creates a risk of infection from COVID-19.

43.     That is the guidance from the CDC and others against unnecessary travel among the civilian population.  See: **When NOT to Travel: Avoid Spreading COVID-19**, Centers for Disease Control and Prevention, updated Aug. 20, 2021.  That CDC guidance is mostly about warning signs of when to avoid or delay travel, but does state the general principle that *(emphasis added)*:

> **CDC recommends delaying travel until you are fully vaccinated, _because travel increases your chance of getting and spreading COVID-19_.**

44.     Also, in part 3 of the actual section of this Court's August 25, 2021, Order attached as Exhibit 4 emphasizes that the use of video conferencing is ordered to be expanded during the threat of viral pandemic.  In the paragraph **"Extension of Videoconferencing Authorization for Certain Criminal Proceedings,"** too lengthy to quote in excerpt, the Chief

Judge of this District authorized videoconferencing for another 90 days while giving considerable detail and identifying exceptions that may require in-person hearings. *Id.*

45.     Perhaps the coincidence of the Motion for a Transfer Order and the Motion to Withdraw of Zachary Rehl's previous attorney could have reflected the prosecution's benign concern that if Rehl were appearing *pro se* he would have to physically appear in Court.

46.     However, the Accused now has a new attorney who has lived in the D.C. area on and off since 1985 (though in the process of moving), who can physically appear in Court.

47.     ZACHARY REHL has already participated in motions hearings in this Court by video remote ("virtual" appearance) as the Court's record shows.  *See, e.g.,* ECF Docket item (unnumbered) "Status Conference" (notes) for June 30, 2021, in this case.

48.     The world has changed.  Counsel is not sure he likes it that way, but change the world has without asking.

49.     Even a few years ago the idea of appearing remotely would seem implausible and unlikely (to work), including the ability for secure channels of communication of video appearances.

50.     The COVID-19 pandemic has forced society to both upgrade and improve our technology for such systems and also to adapt and accept what was not previously our routine.

51.     Here, in this case, new counsel for ZACHARY REHL can and will physically appear (given adequate notice of course) in every hearing.

52.     Therefore, ZACHARY REHL's participation by virtual appearance would be ancillary to his counsel's physical, in-person appearance in the courtroom and primarily for the purpose of the Accused's awareness and following of his case, not for speaking in the hearing.

53.     Unless perhaps if there is an evidentiary hearing or the actual trial, ZACHARY

REHL does not need to be physically present in the District of Columbia.

54.    Here, this counsel, would have a better opportunity to meet with ZACHARY

REHL and prepare for his defense in Philadelphia, even with the added drive, than in the

conditions reported about the D.C. jails by the attorneys of defendants detained in D.C.

## IV.    CONCLUSION

There is no pressing need for ZACHARY REHL to be transferred from the Philadelphia

Detention Center to the District of Columbia, at least not at this time.  No need has been

identified in the motion.  A transfer would cause negative consequences for a pre-trial detainee

presumed innocent, both personal and in preparation of his legal defense.  There seem to be only

disadvantages to a transfer at this time.  The Motion should be either denied or postponed by the

Court.  A transfer order would at the least be premature.

Dated:  September 18, 2021

RESPECTFULLY SUBMITTED,
ZACHARY REHL, by counsel

Jonathon Alden Moseley, Esq.
Jonathon Moseley, Attorney at Law
DC Bar No. VA005
Virginia State Bar No. 41058
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s), and also mailed a copy to the following by first class U.S. mail, postage prepaid, one single copy to the prosecution for distribution internally to all counsel involved for the proseuction.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Mr. Luke Matthew Jones, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-7066
(202) 616-8470 (fax)
ahmed.baset@usdoj.gov

**Mr. Jason Bradley Adam McCullough, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
(202) 252-7233
jason.mccullough2@usdoj.gov

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
(202) 252-6986
james.nelson@usdoj.gov

Jonathon Moseley, Esq.