**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Complainant,<br>      v.<br><br>ZACHARY REHL<br><br><br>*(Styled as <u>USA v. NORDEAN</u> incorporating cases against four Defendants collectively)*<br><br><br>                    Accused | Criminal Case No.<br><br>1:21-cr-00175-TJK-3 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF ZACHARY REHL'S**</u>
<u>**MOTION FOR BILL OF PARTICULARS**</u>

   Comes now the Accused ZACHARY REHL, by counsel, and hereby files this

Memorandum of Law in support of his Motion for a Bill of Particulars pursuant to Federal

Rule of Criminal Procedure 7(f), and for his reasons states as follows, by counsel:

**I.**  **CONTEXT FOR THIS MOTION**

   1.  In a bail hearing for release of the Accused ZACHARY REHL, a Proud Boys

member, from pre-trial detention hearing in the U.S. District Court for the Eastern District of

Pennsylvania, the prosecution conceded in proper candor:

> **To be sure, the indictment does not allege that Mr. Rehl**
> **engaged directly in violence against officers or**
> **destruction of property but there is, nonetheless, a**
> **presumption in favor of detention based on his liability**
> **for his co-conspirators destruction of property.**

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5
Hearing Before Honorable Richard A. Lloret, United States Magistrate Judge, U.S. District
Court for the Eastern District of Pennsylvania, March 26, 2021, Case No.  2:21-mj-526-1,
filed publicly as ECF Docket # 9.

2.       The Accused ZACHARY REHL is being prosecuted almost exclusively for the actions of others, and not his own actions, based on a theory of vicarious liability through unidentified aiding and abetting and one count of conspiracy, except that he is alleged to have stepped into the U.S. Capitol building when the January 6, 2021, Joint Session of Congress was no longer a proceeding in progress, but had recessed at 2:18 PM.  See, "Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1,"  Congressional Record Vol. 167, No. 4, (House of Representatives - January 06, 2021).  Therefore, there was no proceeding to be obstructed.

3.       Because REHL is accused of aiding and abetting others, the indictment fails even the unforgiving standard applied by the Honorable Amit P. Mehta in a parallel case, to deny most requests for a bill of particulars.

4.       That is, because REHL is primarily charged with organizing or encouraging others to do what he himself did not personally do, the number of incidents is potentially from the 10,000 people that the U.S. Capitol Police estimated to be around the U.S. Capitol on the afternoon of January 6, 2021, to as many as 1 million attending all of the different events.

5.       Following Judge Mehta's reasoning, a bill of particulars is required where the number of different acts is not identified in the indictment, and potentially unlimited.

6.       Mehta focused on the number of potential victims, but the same reasoning applies to the number of people aided and abetted or conspired with.

7.       The Accused ZACHARY REHL has been indicted as part of a group of four co-Defendants in a common indictment lumping all four Defendants together.

8.       The indictment is an "ink blot test."

9.       The indictment does not actually allege most of the required elements of the

crimes that the Accused Zachary Rehl is charged with.

       **10.**     ***The gaps speak louder than the words in the indictment.***

      11.     In Paragraphs 16 of the First Superseding Indictment, the allegations say that

*(emphases added):*

> **16.  At 12:53 p.m., *<u>a group of people</u>* forcibly breached the barriers at the pedestrian entrance. *<u>A crowd followed</u>*, including NORDEAN, BIGGS, REHL, and DONOHOE . Members of the crowd charged past the trampled police barriers.**

      12.     Note how incredibly vague "*a group of people*" is.

      13.     But the indictment alleges that ZACHARY REHL entered the U.S. Capitol at

2:53 PM on January 6, 2021.

> **67.  REHL entered the Capitol at approximately 2:53 p.m. through the same door first entered by BIGGS on the west side of the building.**

      14.     Taking the indictment at face value without outside facts, the unidentified

"crowd" at 12:53 PM was "followed" by REHL two (2) hours later.

      15.     The new Chief of the U.S. Capitol Police, Thomas Manger, as one of the

government entities bringing the complaint against these Defendants in this case, admitted and

confessed among other things, at time stamp 00:18:10:

> **In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations.**

"U.S. Capitol Police News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at: https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally

      16.     And again at time stamp 00:20:09

> **We have multiple demonstrations every day.**

17. This sounds like hyperbole, but the point is not whether it is literally true "every day" but the awareness of the complaining agency that more than one thing happens at the same building on most days, *including that "multiple" things happened on January 6, 2021*.

18. Thus, the First Superseding Indictment is fatally flawed and impermissibly vague.

19. We are invited to mistakenly believe that everyone who travelled to Washington, D.C. for the January 6, 2021, events all with stunning uniformity came with only one single, unitary, solitary purpose: To beat on police and break windows. No one had any other, different plan in mind or purpose. "We know that 'those people' are all the same." Such an argument borne of prejudice (pre-judging) cannot sustain a conviction.

20. REHL is accused of involvement in the over-whelmingly peaceful demonstrations protected by the First Amendment to the United States as to the right of free speech, the right to peacefully assemble, and the right to petition the government for redress of grievances, which for a few deteriorated into violent confrontations with U.S. Capitol Police officers and others.

21. REHL is accused almost exclusively of saying on social media that he was going to travel to "the Stop the Steal protest" and wondering if anyone else also wanted to go too.

22. But without the indictment identifying what a "STOP THE STEAL" is the indictment fails on most counts.

23. There was no entity named "Stop The Steal" nor any event formally named "the Stop The Steal protest."

24. The indictment must identify what exactly Rehl told people he was going to attend and asking if they wanted to go to. If the grand jury does not know, the indictment fails.

25. Rehl never "encourage[ed]" anyone to go to or "attack" the U.S. Capitol, because that's not what "the Stop the Steal protest" ever meant.

26.     It may seem incomprehensible or even offensive to say that vastly different events unfolded at different locations around this massive building.  The building is 751 feet long. [1] The U.S. Capitol grounds are 126 acres. [2] It is the length of a small ocean-going cruise ship. [3]

27.     **_What happened in some places is not what happened at other places._**

28.     As a result, it matters that the allegations are clear.

29.     As even the Anti-Defamation League grudgingly admits, the Proud Boys are a fraternity primarily organized to watch sports on TV or live and consume adult beverages. [4]

30.     In recent years upon seeing violence committed by Left-wing thugs, the Proud Boys have come to see themselves (when not watching sports on TV with beer) as defending otherwise vulnerable conservative demonstrators from long-running political violence by left-wing thugs like ANTIFA.  The Proud Boys do not typically demonstrate themselves but instead protect demonstrators.  The Proud Boys are not themselves political demonstrators or activists. [5]

31.     What these Defendants are accused of in this case is dramatically inconsistent with and out of step with what the Proud Boys do.  They stand against political violence by the

---

[1]     Architect of the Capitol, https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building

[2]     "Our History," U.S. Capitol Police, https://www.uscp.gov/the-department/our-history

[3]     The "Viking Star" ocean-going cruise ship is 745 feet long – shorter than the length of the massive U.S. Capitol.  https://www.vikingcruises.com/oceans/ships/viking-star.html

[4]     Although couched within an extremely slanted and false hit piece by the Anti-Defamation League ("ADL") even the ADL had to admit that *(clarification added in brackets)*:

          In [co-founder] McInnes' own words, the Proud Boys are a "pro-western
          fraternity," essentially a drinking club dedicated to male bonding,
          socializing and the celebration all things related to western culture.

"Bigotry: Proud Boys,"   https://www.adl.org/resources/backgrounders/proud-boys-0

[5]     McInnes previously filed a defamation lawsuit against the Southern Poverty Law Center for falsely smearing the group as a hate group.  *See*, Bijan Stephen, "Gavin McInnes is suing the SPLC for defamation," The Verge, February 4, 2019, https://www.theverge.com/2019/2/4/18211275/gavin-mcinnes-southern-poverty-law-center-defamation-lawsuit

likes of ANTIFA to defend the rights of free speech by patriots and conservatives.  They rarely if ever demonstrate themselves to publicize their own message(s).  That's not what they do.

## II.    GOVERNING LEGAL STANDARD

32.    The Honorable Amit P.  Mehta, District Court Judge recently on September 14, 2021, decided a combination motion to dismiss and in the alternative motion for bill of particulars in *United States of America vs. Thomas Caldwell*, Case No. 21-cr-28 (APM), also arising from the events on January 6, 2021. [6]

33.    Judge Mehta issued an Omnibus Order on September 14, 2021, filed at ECF Docket # 415, in Case No. 1:21-cr-00028-APM.

34.    Judge Mehta explained on pages 8-9 of the Omnibus Order.

> The United States argues that "[a]n indictment need not provide the name of the victim." Gov't's Omnibus Opp'n to Defs.' Mots. to Dismiss & for Bill of Particulars, ECF No. 313 [hereinafter Gov't's Opp'n], at 39.

> But the cases it relies on for this proposition do not consider a situation in which there were numerous unidentified potential victims. *See United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018) (noting "the government provided [the defendant] with the names of the victims in pretrial disclosures"); *United States v. Mendez-Colon*, 417 Fed. App'x 320, 322 (4th Cir. 2011) (finding no risk of double jeopardy on plain error review because "the record makes it clear the charged conduct related to the assaults of the two inmates and specifies the count relating to each inmate").

> And the United States' citation to *United States v. Figueroa* is no more helpful because the defendant in that case did not argue that the indictment failed to identify his victim but rather that the indictment failed to explicitly cross-reference a statute. *See* No. 14-cr-672 (SRC), 2021 WL 1661202, at *8–9 (D.N.J. Apr. 28, 2021).

---

[6]    Counsel here, Jonathon Moseley, sponsored *pro hac vice* Philadelphia lawyer Bradford Geyer, Esq. in that group case for Harrelson.

Given that the Fifth Superseding Indictment here refers to multiple officers and multiple potentially assaultive behaviors, the allegations against James are distinct from these cases and require additional information for him to mount a defense and avoid double jeopardy at retrial.

35.    Judge Mehta also explained on page 8 that:

It is unclear whether Count IX charges James with assaulting a single officer or multiple officers. Although Count IX alleges that James "did forcibly assault, resist, oppose, intimidate, or interfere with *an officer* with the District of Columbia Metropolitan Police Department," and references "the victim," Fifth Superseding Indictment ¶ 193 (emphasis added), it also crossreferences paragraphs 165 and 167. Those passages describe a chaotic scene involving a "line of law enforcement officers" and state that James "yanked and pushed several of the riot officers out of the way." *Id.* ¶ 165.

Thereafter, James "was expelled" from the Rotunda "by at least one officer who aimed chemical spray directly at JAMES, and multiple officers who pushed him out from behind." *Id.* ¶ 167. It is not clear which one or more of these officers James is accused of assaulting. Because these allegations refer to a number of officers and detail a number of actions that could constitute assault, James must be apprised of which actions he allegedly took against which officer or officers constitute the assault the government has charged.

36.    Judge Mehta also recited that:

The court has discretion to order a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

37.    The U.S. Supreme Court explained in *Will v. United States*, 389 U.S. 90, 97-99,

88 S. Ct. 269, 19 L. Ed. 2d 305, 1967 U.S. LEXIS 2931 (1967):

Suffice it to note that Rule 7 (f) of the Federal Rules of Criminal Procedure specifically empowers the trial court to "direct the filing of a bill of particulars,"[7] and that federal trial courts have always had very broad discretion in ruling upon requests for such bills, compare Wong Tai v. United States, 273 U.S. 77, 82 (1927). Furthermore, it is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial. See, e. g., *United States v. White*, 370 F.2d 559 (C. A. 7th Cir. 1966). See also *United States v. Debrow*, 346 U.S. 374, 378 (1953).

38.    In *United States v. Thevis*, 474 F. Supp. 117 Crim. No. C78-180A, Order (N.D.

Ga. June 18, 1979), it is explained:

The purpose of a Bill of Particulars is to more specifically define the charge set forth in the indictment, so that the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial. The Bill has an additional purpose in that further clarity may allow the defendant to raise a double jeopardy defense, if applicable. *United States v. Mackey,* 551 F.2d 967 (5 C.A.1977).

In essence, the question presented by a motion for a Bill of Particulars requires a two part analysis. If the particular requested is such that on its face its nondisclosure until trial would result in prejudicial surprise to the defendant or the preclusion of an opportunity for meaningful defense preparation, then the request must be granted. See, *United States v. Bearden*, *supra* at 809. *United States v. Sullivan*, 421 F.2d 676 (5 C.A.1970); *Hickman v. United States*, 406 F.2d 414 (5 C.A.1969); 1 Wright, Federal Practice & Procedure § 129 (1969).

39.    As the Western District of New York, stated in *United States of America v. Colin*

*Greenaway also known as Wayne Smart*, United States District Court, W.D. New York, Case

No. 07CR29S, Order, October 22, 2008:

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of

Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. *U.S. v. Torres*, 901 F.2d 205 (2d Cir. 1990). The government is not obligated to "preview its case or expose its legal theory" *U.S. v. LaMorte*, 744 F.Supp 573 (S.D.N.Y. 1990); *U.S. v. Leonelli*, 428 F.Supp 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed" *U.S. v. Andrews*, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. *U.S. v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).

40.    Counsel for REHL is aware of the similar motions raised and decided by other Defendants arising from the same events, and is aware of decisions denying motions to dismiss and motions for bills of particular.

41.    While respecting the authority and role of a court to make those decisions, it is counsel's responsibility to make the best argument for his client including to make a record.

## III.    ARGUMENT – COUNT BY COUNT

42.    The Accused ZACHARY REHL is charged with six counts by the grand jury's First Superseding Indictment,  four (4) of which counsel contends require clarification by a bill of particulars or in the alternative dismissal (to be addressed in a separate motion):

43.    The first count being the longest, counsel attempts to dispense with the shorter arguments first:

### A.    AIDING AND ABETTING "IN THE AIR" = INCITEMENT

44.    One would fear that the grand jury is indicting REHL for aiding and abetting "in the air" so to speak, without identifying anyone one in particular that was aided or abetted.

45.    Aiding and abetting no one in particular is governed by the precedents on *incitement*  – encouraging a crowd or the public in general to do an act – under U.S. Supreme

Court precedents. *Brandenburg v. Ohio,* 395 U.S. 444 (1969) (speech advocating illegal conduct is protected under the First Amendment unless the speech is likely to incite "imminent lawless action.)*;  NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) (comments about future possible violence – "anyone who breaks the boycott, I will break your neck" (advocating for everyone listening in the crowd to do the same) -- are free speech protected under the First Amendment to the U.S. Constitution).

46.    However, it is not possible to accidentally or inadvertently aid and abet.

47.    To convict as a principal of aiding and abetting the commission of a crime, a jury must find beyond a reasonable doubt that the defendant knowingly and intentionally aided and abetted the principal(s) in each essential element of the crime.  *United States v. Bancalari*, 110 F.3d 1425, 1429 (9th Cir. 1997). The government must prove that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture successful. *United States v. Landerman*, 109 F.3d 1053, 1068 n.22 (5th Cir. 1997); *United States v. Griffin*, 84 F.3d 912, 928 (7th Cir.), cert. denied, __ U.S. __, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996);"  See, "2474. Elements Of Aiding And Abetting," Criminal Resource Manual » CRM 2000 - 2500 » Criminal Resource Manual 2401-2499, U.S. Department of Justice, accessible at:  https://www.justice.gov/archives/jm/criminal-resource-manual-2474-elements-aiding-and-abetting

48.    Therefore, one cannot aid and abet truly unknown persons (a crowd or someone out there in the ether) consistently with the knowingly and intentionally *mens rea* requirement.

B. **COUNT II:  Obstruction of an Official Proceeding and Aiding and Abetting**

49.    Notably, there is no allegation that REHL committed any act whatsoever in which he

**attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, and did aid and abet others known and unknown to do the same; that is, NORDEAN, BIGGS, REHL, and DONOHOE entered the Capitol grounds or the Capitol building to, and did, stop, unlawfully delay, and hinder Congress's certification of the Electoral College vote.**

50.    As noted, the indictment alleges that Congress recessed at 2:20 PM (actually it was 2:18 PM per the Congressional Record) but that REHL entered the building at 2:53 PM.

51.    Thus, by the indictment's own self-contradiction, REHL did not in fact stop, delay, or hinder Congress' certification of the Electoral College vote.

52.    This raises same problem that Judge Mehta addressed in *USA v. Caldwell.*

53.    REHL is accused of aiding and abeting an unknown, open-ended cloud of people "known and unknown."

54.    Also, how exactly did anyone obstruct, delay, or hinder Congress?

55.    News reports at the time were that Congress recessed because of reports of pipe bombs in the area (later reported as being at the RNC headquarters about 4 blocks away and DNC headquarters about  6 or 7 blocks away.

56.    The Congressional Record reports that the U.S. Capitol Police recommended that the Congress recess.  But, why, exactly?

57.    The allegation is that "someone" did "**_unlawfully_ delay, and hinder Congress's certification of the Electoral College vote."**

58.    Do numbers alone transform a "lawful" First Amendment demonstration into an "unlawful" one that would spark a recommendation to Congress to recess?

59.    Is the grand jury referring to the few people who unconscionably beat on police officers and broke windows, that the violence persuaded Congress to recess?

60.     But  *what does that have to do with ZACHARY REHL?*

61.     How exactly did ZACHARY REHL obstruct, or "***unlawfully* delay, and hinder Congress's certification of the Electoral College vote"** when he is alleged to have entered the building at 2:53 PM after the Joint Session of Congress recessed at 2:20 PM?

62.     Did REHL have any connection whatsoever to those who attacked police or broke windows, including aiding and abetting, conspiracy, or otherwise?

63.     No facts are alleged beyond conclusory statements inadequate for an indictment.

64.     There is no allegation that REHL ever spoke in a loud voice that day.

65.     Again the indictment alleges that people ***unlawfully*** delayed or hindered Congress.  Calling on Congress to do the certification in a certain way, such that it gave Members of Congress pause, would be a petition for redress of grievances protected by the First Amendment.

66.     Therefore, as Judge Mehta ordered, the prosecution should be ordered to provide a bill of particulars specifying

> A.  Who exactly REHL is alleged to have aided and abetted, if not only the other three Defendants in this case?
>
> B.  How REHL is alleged to have aided and abetted each of them?
>
> C.  How any action by REHL or the other Defendants in this case or anyone whom REHL aided and abetted obstructed, delayed or hindered Congress' certification of the disputed Electoral College vote?  (Note:  Not how others unrelated to REHL who attacked police or broke windows did so.  How did REHL or those REHL conspired with obstruct, stop, hinder, or delay the Congressional session?)
>
> D.  Why did Congress recess?  Because of reports of pipe bombs?  Because of rioters

having no connection whatsoever to ZACHARY REHL beating on police and breaking windows?  Exactly how did anything related in any way whatsoever to ZACHARY REHL obstruct, delay, or hinder the Joint Session of Congress?

67.     If the prosecution's position is that the indictment contains the full universe of available facts, and there will be no other facts forthcoming, *so be it*.

     E.     **COUNT III:  Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting.**

68.     Notably, once again, there is no allegation that REHL committed any overt act whatsoever in which he

> **committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in official duties incident to and during the commission a civil disorder**

69.     Recall that the indictment alleges in Paragraph 16 that "a group of people" approached the entrance when there were law enforcement at the barricades.  But that was 2 hours before REHL entered, taking the allegations of the indictment alone on their own terms.

70.     And once again, this creates an unknown and unbounded number of possibilities – exactly as Judge Mehta found required a bill of particulars in *USA v. Caldwell*.

71.     The prosecution should be ordered to identify by a bill of particulars (a) exactly who REHL supposedly aided and abetted to obstruct, impede, or interfere with law enforcement and (b) exactly how.

72.     Otherwise, as Judge Mehta ruled, REHL would face double jeopardy problems and could not adequately prepare for trial.

73.     If the prosecution's position is that the indictment contains the full universe of available facts, and there will be no other facts forthcoming, *so be it*.

F. **COUNT IV:  Destruction of Government Property and Aiding and Abetting under 18 U.S.C. 1361, 2**

74.     Notably, once again, there is no allegation that REHL committed any overt act whatsoever in which he personally

> **attempted to, and did, willfully injure and commit depredation against property of the United States, and did aid and abet others known and unknown to do so;**

75.     Because REHL did not personally do anything of that nature and is not alleged to have done so he could only be accused of aiding and abetting others.

76.     And once again, this creates an unknown and unbounded number of possibilities – exactly as Judge Mehta found required a bill of particulars in *USA v. Caldwell*.

77.     The prosecution should be ordered to identify by a bill of particulars (a) exactly who REHL supposedly aided and abetted to damage any property and (b) exactly what property those who were aided and abetted are alleged to have damaged, (c) how this was a knowing and intentional act by REHL, and (d) because the allegation appears to be some mystical metaphysical concept of injury exactly how. [7]

78.     Otherwise, as Judge Mehta ruled, REHL would face double jeopardy problems and could not adequately prepare for trial.

79.     If the prosecution's position is that the indictment contains the full universe of available facts, and there will be no other facts forthcoming, *so be it*.

---

[7]     In another case, the prosecution resists a bill of particulars by arguing that the "property" is the U.S. Capitol **building**.  That is, if a parent broke a glass counter at one of two gift shops requiring $300 in repair costs, the government's position is that the person has damaged ***the entire building*** worth more than $1,000 ($133 million in non-inflation adjusted dollars according to the Architect of the Capitol), not a $300 piece of counter glass _inside_ the building.  The government claims this as damaging a building worth over $1,000.

G. **COUNT I:  Conspiracy under 18 U.S.C. § 371**

80.     It is not possible to accidentally or inadvertently conspire with someone.

81.     The group indictment alleges in Paragraph 27:

### Objects of the Conspiracy

**27. The objects of the conspiracy were (1) to stop, delay, or hinder Congress's enforcement certification of the Electoral College vote, and (2) to obstruct and interfere with law officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds.**

82.     REHL is alleged to have entered into a conspiracy "(1) to stop, delay, or hinder Congress's certification of the Electoral College vote…"

83.     Unlike if a group of people said "Let's go rob a bank" and I answered "Great, I'll bring the donuts," there is no allegation that REHL ever agreed upon a plan "to stop, delay, or hinder Congress's certification of the Electoral College vote…"

84.     Petitioning Congress for redress of grievances that the Congress should investigate, review, and resolve disputes about the accuracy of the Electoral College votes clearly is something else entirely different, and protected by the First Amendment.

85.     "Stop[ping], delay[ing], or hinder[ing] Congress' certification of the Electoral College vote" could not possibly make Donald Trump the President (again starting in 2021).

86.     Demanding that Congress _do its job_ – its entire job -- and not half of the job, could theoretically make Donald Trump the President, but that is not a criminal goal.

87.     A bill of particulars should order details of when or how REHL knowingly and intentionally or purposefully entered into an agreement of a criminal goal to "(1) to stop, delay, or hinder Congress's certification of the Electoral College vote…"

88.     Next, REHL is alleged that he entered into a conspiracy  **"(2) to obstruct and**

**interfere with law enforcement officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds."**

89.     Following Judge Mehta's analysis, the Court should order that the prosecution (identify by bill of particulars (a) which conspirators REHL supposedly entered into a conspiracy with to obstruct or interfere law enforcement officers, and (b) how the conspiracy that REHL is allegedly involved in (not other people) obstructed or interfered with law enforcement officers.

90.     There is no allegation of fact in the indictment that REHL – the son and grandson of police officers in his family – ever knowingly and intentionally and/or purposefully entered into any agreement to do any such thing.

91.     If there ever was such a conspiracy, it never included REHL.

92.     In Paragraph 28, the indictment accuses REHL of:

> **a. Encouraging members of the Proud Boys and others to attend the Stop the Steal protest in Washington, D.C., on January 6, 2021;**

93.     But…. which Proud Boys?

94.     How many Proud Boys did he encourage?

95.     Worse, which "and others?"

96.     Did REHL encourage any "Proud Boys" or "others" to attend peaceful protests nowhere near the U.S. Capitol?

97.     But because the number of potential encouragees is unbounded, Judge Mehta's analysis would require a bill of particulars on this point.

98.     Under Judge Mehta's analysis, the prosecution must specify which Proud Boys or

others REHL is accused of encouraging.[8]

99.     However, the indictment has failed to define or identify what a "Stop the Steal protest" is -- a stunning omission.

100.    As with Judge Mehta's analysis in *USA v. Caldwell*, the existence of multiple "Stop the Steal protests" means that REHL is faced with unknown numbers of charges and the possibility of double-jeopardy.

101.    The case against these Defendants collapses once we open our eyes to the fact that "Stop the Steal" never meant breaking into the U.S. Capitol or beating up police.

102.    Furthermore, in Paragraph 28, the indictment accuses REHL of:

> **d. Scheming to evade detection by law enforcement on January 6· by dressing "incognito" rather than wearing Proud Boys colors that had been prominently displayed at previous events;**

103.    This is a stunning paragraph, because law enforcement tracks criminal acts, not people.  It is not a crime to merely *be* a Proud Boy member.

104.    How could anyone scheme to evade detection when they had no obligation to announce themselves?  What does "detection" mean?  Law enforcement responds to crime.  It does not criminalize people.

105.    The indictment has not alleged any duty of anyone to publicly broadcast what groups they belong to, making it mystifying as to how *not* dressing provocatively (as some would see it) is an overt act in furtherance of a conspiracy that sounds in intimidation.

106.    In fact, an open-minded reading of Enrique Tarrio's instructions referred to in the indictment's Paragraph 12 and Paragraph 45 is plainly the Chair of the Proud Boys dissociating

---

[8]     Again, if the allegation is that REHL made a public announcement to no one in particular, the U.S. Supreme Court' Brandenburg Test would govern incitement.

the Proud Boys as an organization from the (multiple) demonstrations on January 6, 2021.

107.    Tarrio acknowledged that many of his members would be attending protests but in an upbeat way made clear that they would be attending as individuals *NOT as Proud Boys*.

108.    Therefore, the Court should order a bill of particulars as to how REHL is accused of committing any crime or furthering a conspiracy by *NOT* dressing in a paramilitary style popular in some regions of the country but accused by critics of being intimidating.

109.    Similarly, REHL is accused of

> **"e. Traveling to Washington, D.C. prior to the January 6 attack;"**

110.    REHL is *NOT* alleged in the "ink blot test" grand jury indictment of "Traveling to Washington, D.C. to *participate in* a January 6 attack;"

111.    Probably a great many things happened "prior to the attack."

112.    The prosecution should be ordered to provide a bill of particulars as to how merely traveling to D.C. along with 500,000 to 1 million other peaceful demonstrators is an overt act in furtherance of a conspiracy.

113.    REHL is accused of

> **c. Obtaining paramilitary gear and supplies-including concealed tactical vests, protective equipment, and radio equipment-for the January 6 attack.**

114.    The government should be ordered to identify by a bill of particulars which of these overt acts the government alleges were for these Defendants to defend themselves and hundreds of thousands of defenseless Trump supporters against persistent and recurring attacks from violent, savage gangs of ANTIFA thugs, like ANTIFA wolves attacking a huge flock of vulnerable sheep on January 6, 2021, as opposed to preparing to attack the U.S. Capitol.

115.    If the government has no facts that these purely defensive preparations were

intended by REHL for attacking the U.S. Capitol, professional ethics require the prosecutors to terminate the case against REHL.

116.    REHL is accused of

> **j. Obtaining entry into the Capitol building as a result of damage to windows and doors that otherwise would have precluded entry.**

117.    The indictment does not allege that any of the Defendants, much less REHL, had any reason to know why the doors were already wide open when REHL followed hundreds of others who had already entered the building of a normally-public building which is routinely used for school tours, and has not one (1) but two (2) gift shops in the main building and public viewing galleries for the public to watch Congress **_IN SESSION_** (not to look at an empty room) were.  (That is shown in the photographic stills of videos used by the government as attachments in issuing search warrants to various social media companies.)

118.    The government should be ordered to explain by a bill of particulars how walking into an open door that _someone else_ opened is an overt act in furtherance of a conspiracy, and to what extent these Defendants knew how the doors got opened.

119.    REHL is accused of

> **38. On December 30, 2020, REHL posted a link to an online fundraiser with the campaign name of  "Travel Expenses for upcoming Patriot Events." The campaign generated  over $5,500 in donations between December 30, 2020, and January 4, 2021.**

120.    Once again, following the reasoning of Judge Mehta, REHL is entitled to clarification of _WHICH_ "upcoming Patriot Events" he is accused of raising funds for.

121.    The grand jury did not allege REHL of raising the funds, but only posting  a link.

122.    So did someone else's fund-raising campaign for these Patriot Events say "We are going to attack the Capitol and beat on police.  Help us with expenses?"

123.    A bill of particulars is required as to (a) whose fundraiser campaign this was, and

(b) which "upcoming Patriot Events" the grand jury thinks the funds were being raised for.

124.    Finally REHL is accused of owning and using radios.

125.    A bill of particulars is required as to how behavior common to large sporting

events for people to communicate with each other in large crowds is an act in furtherance of a

conspiracy, when that same act is routinely engaged in by U.S. citizens.

## IV.    CONCLUSION

The prosecution should be ordered to provide a bill of particulars as specified above.

Dated:  September 25, 2021              RESPECTFULLY SUBMITTED


                                        /s/ Jonathon Alden Moseley
                                        Jonathon Alden Moseley, Esq.
                                        DC Bar No. VA005
                                        Virginia State Bar No. 41058
                                        5765-F Burke Centre Parkway, PMB #337
                                        Burke, Virginia 22015
                                        Telephone:  (703) 656-1230
                                        Contact@JonMoseley.com
                                        Moseley391@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2021, I electronically filed the foregoing document
with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic
filing to the following CM/ECF participant(s), and also mailed a copy to the following by first
class U.S. mail, postage prepaid, one single copy to the prosecution for distribution internally to
all counsel involved for the proseuction.  From my review of the PACER / ECF docket records
for this case that the following attorneys will receive notice through the ECF system of the U.S.
District Court for the District of Columbia.

                **Mr. Luke Matthew Jones, Esq.**
                U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
                555 Fourth Street, N.W.
                Washington, DC 20530
                (202) 252-7066
                (202) 616-8470 (fax)
                ahmed.baset@usdoj.gov

**Mr. Jason Bradley Adam McCullough, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
(202) 252-7233
jason.mccullough2@usdoj.gov

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
(202) 252-6986
james.nelson@usdoj.gov

Jonathon Moseley, Esq.