#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                  Complainant,<br>    v.<br><br>ZACHARY REHL<br><br><br>*(Styled as* <u>USA v. NORDEAN</u> *incorporating cases against four Defendants collectively)*<br><br><br>                  Accused | Criminal Case No.<br><br>1:21-cr-00175-TJK-3 |

### MOTION FOR ISSUANCE OF A SUBPOENA
### TO THE U.S. CAPITOL POLICE
### AND INCLUDED MEMORANDUM OF LAW

      Comes now the Accused ZACHARY REHL, by counsel, and hereby requests that the Court, by the Clerk, issue a subpoena to the Custodian of Records of the U.S. Capitol Police, and for his reasons states as follows, by counsel:

      1.      On September 11, 2021, counsel requested this information from the U.S. Attorney's office including a clarification as to whether prosecutors would provide this information or whether a direct subpoena would be required to the U.S. Capitol Police. Counsel has not heard a reply.

      2.      The indications strongly suggest that the U.S. Capitol Police issued a permit for a demonstration on the U.S. Capitol Grounds on January 6, 2021.

      3.      Note that REHL, by counsel, separately files under seal a *description* of one tangential point in a document designated "Highly Sensitive." Counsel contends that the description is not subject to the Protective Order because it is a tangential mention almost

entirely unrelated to the contents or subject of that document and counsel's summary description does not included any Highly Sensitive information.  Nevertheless, out of an abundance of caution, counsel files it as a separate exhibit under seal, and requests that the Court determine that it is *not* Highly Sensitive (counsel's description) and the Exhibit should be unsealed.

4. This Exhibit, temporarily filed under seal until review, provides further evidence that a permit had been issued for a demonstration on the East side of the U.S. Capitol (even though the speaker apparently was confused about what that meant and where the permitted demonstration site actually was to be).

5. Obviously, any such permit did not encompass what ultimately happened at various places around the U.S. Capitol grounds.

6. Counsel is not suggesting that any such permit would allow what happened that day.   No permit would be capable of making legal actions that were criminal.   No permit did or could authorize the actions that some committed on January 6.

7. However, the issuance of a permit would nevertheless be probative of many elements of the crimes charged, including as to severity and intent, and most especially the *mens rea* elements of several crimes of which ZACHARY REHL is charged.

8. The issuance of a permit would be probative of exactly who was actually included in any conspiracy to pursue a *criminal* act as opposed to those who "conspired" to attend a peaceful First Amendment protected demonstrations.

9. Most of the crimes alleged against REHL and others depend critically and foundationally on a false myth that everyone who travelled to Washington, D.C. for demonstrations on January 6, 2021, all shared the same monolithic, undifferentiated goals, being only the worst of goals by the worst attendees.  Everyone came with the sole and exclusive

purpose only of beating up police and breaking windows in the U.S. Capitol.  No one had any other goal in mind but that.  This foundation for these cases is logically untenable.

10. The central assumption crucial to the prosecution's case is that ZACHARY REHL conspired to leave the Presidency vacant for the next four (4) years.

11. The allegation is that REHL knowingly and intentionally or purposefully agreed upon a criminal goal of having no President at all for the years 2021 through 2025, by stopping or obstructing the Joint Session of Congress for the certification of the Electoral College votes for President.

12. Obviously, the goal of and natural consequence of such a conspiratorial plan would be to prevent *anyone* from becoming President.

13. Donald Trump could not have been re-elected if the count and certification of the Electoral College were obstructed.

14. Donald Trump could only potentially be re-elected if the Congress heard and resolved disputed votes in the Electoral College before certifying the totals that protestors claimed to be the correct totals.

15. Indeed, the First Superseding Indictment alleges that:

> 36. On December 23, 2020, REHL posted on social media describing January 6, 2021, Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and as "the day where yes, there will be a big rally on that day."

16. Thus, the grand jury by indictment and the prosecution assisting in the drafting of the indictment admits and confesses that REHL's goal was to get Congress "to argue the legitimacy of the [E]lectoral [C]ollege votes, and – for ***THAT*** purpose " yes, there will be a big rally on that day."

17. The government admits and confesses within the four corners of the indictment

that the goal of the alleged "conspiracy" (which would require a criminal goal) was to get Congress "to argue the legitimacy of the [E]lectoral [C]ollege votes," *and not to* stop, obstruct, delay or hinder the Electoral College certification.

18. The government admits and confesses within the four corners of the indictment that the goal of the alleged "conspiracy" was to demand that Congress do not just half of its job but *all of its job* in certifying the Electoral College vote.

19. Congress plainly could not "argue" the "legitimacy" of the Electoral College votes **IF CONGRESS WERE NOT IN SESSION.**

20. Arguing the legitimacy of votes submitted by various disputed States would require the Joint Session of Congress to actually be meeting and in session.

21. Thus, without resorting to outside or contrary evidence, the indictment itself proves that REHL had no criminal purpose to which he agreed knowingly and intentionally or purposefully or aided and abetted anyone else in.

22. REHL wanted Congress to meet and "argue" which votes from the Electoral College were *legitimate* and which were not.

23. Therefore, REHL "conspiring" to attend one of several First Amendment protected demonstrations petition Congress for redress of grievances that Congress certify the Electoral College vote using the accurate, correct vote totals from disputed states – all of which demonstrations apparently had *permits* – is extremely relevant to his *mens rea* in committing any crime.

24. Therefore, the fact, if confirmed, that demonstrators applied for and received a permit from the U.S. Capitol Police for a demonstration on the Capitol grounds would dramatically change the intention for people traveling to Washington, D.C.

25. ZACHARY REHL, by counsel, requests the issuance of a subpoena to the U.S. Capitol Police, c/o Thomas Manger, [new] Chief of Police and/or Custodian of Records, for

(1) Any and all documents relating in any way to any application for --

(2) Any and all documents relating in any way to --

(3) Any and all documents relating in any way to the denial of --

(4) Any and all documents relating in any way to any revocation of --

any permit to demonstrate or assemble on the grounds of the U.S. Capitol, especially in the Northeast corner of the grounds across 2nd Street, NE from the U.S. Supreme Court, on January 6, 2021, or for any time period including January 6, 2021.

Or:

(5) Any and all documents relating in any way to the placement of temporary toilets (commonly described as porta-potties) on the grounds of the U.S. Capitol, in the Northeast corner of the grounds across 2nd Street, NE from the U.S. Supreme Court, on January 6, 2021, or for any time period including January 6, 2021. (Please do not confuse the facilities set up on the other side of the Capitol very far away for assembly of stands for the inauguration on January 20, 2021, which could not explain the porta-potties across Second Street from the U.S. Supreme Court.)

(6) Any and all documents relating in any way to general policies and procedures at any time concerning restrictions on the placement of equipment such as porta-potties on the grass of the U.S. Capitol grounds (i) without a permit or (ii) without the employment of contractors approved by the U.S. Capitol Police to do the work.

26. It should be noted that such federal permits for demonstrations typically cover a longer period of time before and after an actual event to allow for time for professional vendors to set up and "tear down" equipment and platforms before and after the event. Therefore, the actual time period of any such permit would probably be a number of days straddling the January 6, 2021, date.

27. Promotion of demonstrations on January 6, 2021, posted on or earlier than

December 23, 2020, specifically directed attendees to the very spot where temporary toilets were placed on the grass of the Capitol Grounds:[1]

*NOTE: This is a cropped portion of the image that follows:*



---

[1] Now found only on the internet "wayback machine" as the internet archive service is called.



28. Video taken for the news website "National File" shows that portable toilets were set up at exactly that location:



See, video, on YouTube, at https://www.youtube.com/watch?v=I8TS8Yjrtzk

29. The portable toilets are set up on the grass exactly where the promotional post says that demonstrators are to gather on January 6, 2021.

30. (Of course, demonstrators, did not in fact gather at that location, as shown in the video at https://www.youtube.com/watch?v=I8TS8Yjrtzk, showing that that location was practically empty on January 6, 2021, and everyone was all crowded around the U.S. Capitol building itself. Nevertheless, the existence of a permit would bear on the *mens rea* of

preparations to travel to Washington, D.C. for the permitted demonstration.)

31. Counsel is not aware of any grounds for the U.S. Capitol Police to withhold an application for a permit or the issuance of a permit.

32. Counsel working in January through April with an online news and news analysis website "National File" requested permits for events January 5-6, 2021, from the U.S. Park Police and was provided almost immediately with the permits issued for the demonstration at the Ellipse on January 6, 2021, and another demonstration on January 5, 2021.

33. Counsel then working "National File" requested permits for events January 5-6, 2021, to be held on the U.S. Capitol grounds from the U.S. Capitol Police on February 4, 2021.

34. The U.S. Capitol Police has ignored repeated inquiries, in sharp contrast to the U.S. Park Police.

## I.  CONCLUSION

The Court should authorize a subpoena to be issued to the U.S. Capitol Police as described and detailed above in this Motion's Paragraph 25-26.

Dated:  September 26, 2021               RESPECTFULLY SUBMITTED

/s/ Jonathon Alden Moseley
Jonathon Alden Moseley, Esq.
DC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic

filing to the following CM/ECF participant(s), and also mailed a copy to the following by first class U.S. mail, postage prepaid, one single copy to the prosecution for distribution internally to all counsel involved for the proseuction. From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

> **Mr. Luke Matthew Jones, Esq.**
> U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
> 555 Fourth Street, N.W.
> Washington, DC 20530
> (202) 252-7066
> (202) 616-8470 (fax)
> ahmed.baset@usdoj.gov
>
> **Mr. Jason Bradley Adam McCullough, Esq.**
> U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
> 555 4th Street, NW
> Washington, DC 20001
> (202) 252-7233
> jason.mccullough2@usdoj.gov
>
> **Mr. James B. Nelson, Esq.**
> U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
> 555 Fourth Street NW, Room 4112
> Washington, DC 20530
> (202) 252-6986
> james.nelson@usdoj.gov

_/s/ Jonathon Moseley_____
Jonathon Moseley, Esq.