```
                 UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA    .  Case No. 2:21-mj-526-1
                            .
                            .
          v.                .  James A. Byrne U.S. Courthouse
                            .  601 Market Street
ZACHARY REHL,               .  Philadelphia, PA 19106
                            .
          Defendant.        .  March 26, 2021
. . . . . . . . . . . . . . .  12:38 p.m.


              TRANSCRIPT OF DETENTION/RULE 5 HEARING
                BEFORE HONORABLE RICHARD A. LLORET
                 UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For the Government:         Office of the U.S. Attorney
                            By:  LUKE M. JONES, AUSA
                            555 4th Street, N.W.
                            Washington, D.C. 2053


For the Defendant:          Law Offices of Shaka M. Johnson, LLC
                            By:  SHAKA M. JOHNSON, ESQ.
                            1429 Walnut Street, #1001
                            Philadelphia, PA  19102



Audio Operator:             Kenneth Duvak


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

```
 1            THE COURT:  Now, the next matter on my list is
 2  Zachary Rehl, R-e-h-l.
 3            MR. JOHNSON:  Good afternoon, Your Honor, Shaka
 4  Johnson on behalf of Zachary Rehl.
 5            THE COURT:  How you doing, Mr. Johnson?
 6            MR. JOHNSON:  I'm very well, sir, all things
 7  considered.  Thank you for asking, Judge.
 8            MR. JONES:  And, good afternoon, Your Honor, this is
 9  Luke Jones from the District of Columbia on behalf of the
10  United States.
11            THE COURT:  Very well.  Good to have you, Mr. Jones.
12            MR. JONES:  Thank you, Your Honor.
13            THE COURT:  Now, we see, all of this is, of course,
14  subject entirely to the FDC and who they put in front of us.
15  Mr. Rehl, is that who is before me, is Mr. Zachary Rehl?
16            MR. REHL:  Yes, sir.
17            THE COURT:  Very well.  I understand we're here,
18  counsel, today on a detention hearing under Rule 5, is that
19  correct?
20            MR. JOHNSON:  That's correct, Your Honor.
21            MR. JONES:  That's correct, Your Honor.
22            THE COURT:  And how do we wish to proceed, by proffer
23  for the Government?
24            MR. JONES:  Yes, Your Honor, by proffer.
25            THE COURT:  You may proceed.
```

1  MR. JONES: Thank you, Your Honor. I'll cut to the
2  chase. On January 6th, in the attack on the U.S. Capitol,
3  there were leaders and there were followers. Zachary Rehl was
4  a leader and that is what makes him dangerous going forward.
5  There were many people responsible for the attack,
6  some no doubt were caught up in the moment but Zach Rehl was
7  not. He had planned for the moment and as the grand jury's
8  indictment lays out, he and his co-conspirators made the moment
9  happen. When it was over, he took nothing but pride in what he
10 and his fellow Proud Boys had accomplished and he expressed
11 nothing but disdain for the law enforcement officers who had
12 resisted the attack.
13 For those officers and others who were terrorized on
14 January 6th, the impact of those events will be long lasting
15 and the damage to our democracy is likewise indelible.
16 Most importantly, however, for present purposes, the
17 Government submits that the threat posed by Zach Rehl and his
18 co-conspirators, to engage in similar behavior remains. And,
19 of course, that is the issue before the Court.
20 To be sure, the indictment does not allege that Mr.
21 Rehl engaged directly in violence against officers or
22 destruction of property but there is, nonetheless, a
23 presumption in favor of detention based on his liability for
24 his co-conspirators destruction of property.
25 In any event, the Government submits that based on

1 consideration of the relevant factors, in particular, the
2 nature and circumstances of the offense and Rehl's leadership
3 role in the January 6th attack, there is clear and convincing
4 evidence that conditions of release will not reasonably assure
5 the safety of the community and, therefore, and based on the
6 allegations in the indictment and in our written submission, we
7 request pretrial detention pending further proceedings in the
8 District of Columbia.
9      THE COURT: Thank you, Mr. Jones. Mr. Johnson.
10      MR. JOHNSON: (Inaudible).
11      THE COURT: Mr. Johnson, I'm having trouble hearing
12 you. Maybe you can take off the --
13      MR. JOHNSON: That would actually help. How is that,
14 Your Honor?
15      THE COURT: Great now.
16      MR. JOHNSON: Oh, perfect. I thought that would
17 help. All right.
18      Thank you for the opportunity -- Mr. Rehl, can you
19 hear me? Just nod if you can. All right, thank you.
20      Judge, I understand what the Assistant U.S.
21 Attorney's position is and I think I understand why but I think
22 it's misplaced as it relates to Mr. Rehl. You have a 35 year
23 old gentleman in front of you, Judge, who at one point in his
24 life served this country honorably in our United States Marine
25 Corps. I've submitted in our motion a copy of his DD-214,

5

1 which illustrates that he was honorably discharged after being
2 diagnosed with a medical condition three and a half years of
3 service.  He was honorably discharged and he's still, that
4 injury that he suffered upon his 2012 discharge still persists
5 to this day.  He still walks around even to this day with
6 what's called Essential Tremors, the very violent shaking of
7 the extremities.  Mainly you can see it in his arms and his
8 hands and occasionally there's a tick in his head, you'll see
9 him nodding a little bit, that is all the reasons for his
10 discharge in 2012.

11 My colleague makes mention of democracy and how that
12 democracy somehow was infringed upon by Mr. Rehl and his
13 cohorts actions, but I will suggest, Judge, all that has been
14 illustrated thus far, I know this is, obviously, were not
15 trying the case from this physical platform, but all that's
16 been illustrated so far as it relates to Mr. Rehl that he had a
17 series of opinions, which he's absolutely entitled to have,
18 they were not in my opinion, Judge, and I hope the Court finds
19 the same, particularly distasteful but they were, he had some
20 opinions, he let those opinions be known and some other folks
21 had some opinions, he agreed with them, but nothing that he
22 said was meant to incite or infuriate or fuel what happened on
23 January the 6th, Judge.

24 He was in attendance and, of course, Judge, we got a
25 chance to see vis-a-vis the Government's submissions in terms

1  of the photographs, the fact that at some point there are
2  allegations that Mr. Rehl made entry as did hundreds if not
3  maybe close to thousands of others, into the Capitol.  The
4  Government did have to acquiesce and concede that he is not
5  directly responsible for any destruction that took place in our
6  nation's capitol on that day, he was not seen through all the
7  video surveillance, all the photographs, picking up anything,
8  stealing anything, damaging anything, taking anything, he did
9  not take delight, Your Honor, and posting himself inside of
10 chambers or doing anything of that nature which would tend to
11 sort of thumb his nose at the Court and the process and the
12 country, flaunting what had been done.  He did none of those
13 things.  He, like thousands of others, were there and then he
14 had something to say about it on his online presence.
15         With respect to being able to be certain that he will
16 make his appearance in court, if allowed to be released, this
17 gentleman is a homeowner on the 3000 block of Almond Street,
18 Judge.  I think you saw that in the pretrial services report.
19 He's been here for six years.  He is married to a woman now
20 whose last name is Rehl.  Her name is Amanda Rehl.  He's
21 married, he's been with her for over ten years and they are now
22 married.  He is a father, expectant father.  She is pregnant
23 with their, the couples first child currently.  He does have a
24 16 year old daughter that he maintains a very positive
25 relationship with, who is also from the -- resides in the

1 Eastern District.  His mother, who he has an extraordinarily
2 close relationship with, still lives in Bucks County, in the
3 Eastern District.  His father has since passed away but he's
4 grown an exceptionally fond relationship with his
5 father-in-law, Amanda's father and they live in the northeast
6 portion of Philadelphia and that is where the couple would
7 reside, Amanda and both Zachary, if this Court were to allow
8 him to be released, pending the sale of their home.

9 Currently, Your Honor, with the new expected baby on
10 the way, the family has listed their home for sale and that was
11 obviously, before any of this took place, before the January
12 incident took place.  And he's assured pretrial services, they
13 did some vetting, obviously, that if the house was sold, he
14 would be residing with his in-laws, still inside the Eastern
15 District.  He does not own a passport, Your Honor, and the last
16 time that he was out of the country was over two decades ago.
17 So there's no passport for him to surrender.

18 I'm asking the Court to consider, obviously, we're
19 not taking into any account guilt or innocence and there's so
20 many of the Government's allegations that I am trying to be
21 conscious of what we're doing here today.  I want to respond to
22 but I don't think they're all particularly germane for me to
23 respond to as it relates to detention.  Perhaps, innocence or
24 guilt but not detention.  So I'm making sure that my remarks
25 are really confined to the purpose of why we're here today.

1     The Court's indulgence, please, Your Honor.  He is a
2 Temple graduate, graduated in 2016 with his Bachelor's Degree
3 in business administration.  When he left to go to the service,
4 he left from his mother's house in Bucks County, when he
5 returned he returned to Shippensburg when he was discharged,
6 honorably discharged, he returned to Shippensburg.
7     What I'm illustrating for you, Judge, is, his entire
8 life, his entire life has been in the Eastern District.  And
9 so, I don't think there's, prayerfully, I hope you find the
10 same, there's no flight risk here that he will be going
11 anywhere.  He is currently on disability, he receives $3,000 a
12 month, I believe the exact number is $3200, that he receives
13 monthly because his disability had been upgraded to 100 percent
14 disability that he received during his time in service.  That
15 initially started at 10 percent and over the course of time
16 that I've known Mr. Rehl, which has been now maybe four or five
17 years, this has been steadily increasing and it's now at 100
18 percent disability.  That contributes almost solely to the
19 family's income.  So he doesn't have the means by which to take
20 flight, even if were inclined to do so, which he absolutely
21 does not, the means aren't there either.  No passport, no
22 significant financial state, the family shares one six year old
23 vehicle, that's a 2015 Acura.  You know, this is his current,
24 you know, state of affairs.
25     And so, I'm asking the Court to allow, especially

1 with so many, so many co-defendants that will ultimately be
2 brought into this particular matter, I don't know when this
3 matter will be vetted out in court, Judge, this could persist
4 for quite some time, I think the Court will agree. I'm asking
5 for you to consider releasing him to his family.
6          I noticed that pretrial services did indicate that
7 there were, in fact, a series of conditions that the Court may
8 take into consideration  for is release.  They indicated that
9 they would be comfortable with, and I'm sure the Court saw it
10 but I'd like to say it just out loud so he can hear it, they
11 would be comfortable with electronic monitoring and, obviously,
12 some sort of computer monitoring to make sure that his computer
13 and his electronic devices in the home are monitored, with a
14 $50,000 cash bail.  That's what they're asking for.
15          I'm asking for the Court to consider, Judge, a
16 release, straight away, a little bit south of what pretrial
17 services are asking for because I think he poses absolutely no
18 risk.  He has no considerable criminal history, Judge.  Two
19 DUIs, some misdemeanors but nothing considerable.  No crimes of
20 violence or anything of that nature.  If that were so, I'm sure
21 the Government would have highlighted that in his remarks to
22 you, that he was a danger to society based on his previous
23 history.  At over three decades on this earth, three and a
24 half, he's not indicated any such thing.  He's proven himself
25 to be a worthy father, a worthy son, a patriot in terms of

1  going and fighting for his country and receiving injury while
2  doing so.  And it took him almost ten years to even receive the
3  full benefits he deserved from that.  He's a homeowner, he's
4  invested in his community, in terms of he's a taxpaying person,
5  so I'm asking the Court to consider those things, Judge, when
6  deciding whether he will ultimately address the actual charges
7  either from custody or from home.
8           THE COURT:  All right, I'll hear from the Government
9  if there's any short rebuttal.
10          MR. JONES:  Yes, very briefly, Your Honor.  Mr.
11 Rehl's service to the country is admirable.  He is not before
12 the Court because of his opinions, he is before the Court
13 because of his actions and the actions of those that he led.
14 He indicated himself that his conduct was motivated by
15 patriotism.  That patriotism is, obviously, misguided to the
16 extent that it animated his criminal conduct.
17          Mr. Johnson noted that the defendant was a
18 participant on January 6th.  He was not merely a participant,
19 he was a leader and he led a large number of men to the
20 Capitol.  The Government is not arguing that he is a flight
21 risk but we are arguing that he poses a danger to society.  The
22 fact that he did not take up arms on January 6th is not
23 dispositive of the question of his dangerousness.
24          His ability to put on a mask and put on goggles and
25 walk into the Capitol, was a direct result of the conduct of

11

1 men, including those that he led on that day.  And that, we
2 submit creates a danger that requires detention.  Thank you,
3 Your Honor.
4          THE COURT:  Thank you, counsel.  Well, I'm certainly
5 cognizant of the nature, that the nature of this crime is a
6 serious one.  It, obviously, affects all of us, the rioting at
7 the Capitol.  I'm also cognizant that the defendant has a
8 history of service to the country and of the other matters that
9 were raised by counsel for the defense.
10         I think under the entirety of the circumstances, I
11 find that there are circumstances, there are conditions of bail
12 that can address the concerns of the Government as suggested by
13 pretrial services and I'm going to impose the full panoply of
14 conditions suggested by pretrial services.  And, Mr. Rehl, I
15 ask that you pay attention because I'm going to go through
16 those terms right now and you're responsible to abide by these
17 conditions of bail.
18         There's a $50,000 OR bond.  That means that you have
19 to sign a bond that will not require cash but actually, I'm
20 going to impose a $50,000 secured bond.  You're going to have
21 to report to pretrial services as directed.  You're going to
22 have to surrender your passport and not obtain any other travel
23 documents or passports.  Travel has to be restricted to the
24 Eastern District of Pennsylvania unless prior permission is
25 granted by pretrial services.  You're not to possess any

1 firearms, destructive devices or other dangerous weapons.  Do
2 you presently have any firearms, sir?
3 　　　　　MR. REHL:  No, sir.
4 　　　　　THE COURT:  You may not have any, you may not acquire
5 any, you may not have any in your dwelling.  There's to be no
6 contact with co-defendants, witnesses or other individuals
7 engaged in criminal activity.  You're to submit to location
8 monitoring program via GPS.  You're placed on home
9 incarceration.  Where do you dwell, what is your dwelling?
10 Your address.
11 　　　　　MR. REHL:  3058 Almond Street.
12 　　　　　THE COURT:  You have to reside there or at such other
13 location as approved by pretrial services and vetted by
14 pretrial services.  You're restricted to a 24-hour day lock
15 down at your residence at all times except for medical
16 necessities and court appearances and other specifically
17 approved activities that are approved in advance by court.  You
18 have to maintain your residence as approved by pretrial
19 services at the location you indicated.  You have to refrain
20 from alcohol use, submit to random drug testing and treatment
21 as directed by pretrial services.  Refrain from using any
22 illegal drugs or drugs without prescription.  You have to
23 undergo mental health treatment as directed by pretrial
24 services.  You're not to possess any narcotics unless
25 prescribed by a licensed medical practitioner.  You're subject

1 to computer and internet restrictions. You're going to be
2 monitored by U.S. pretrial services and that may include manual
3 inspection, use of minimally invasive detection devices and the
4 installation of computer monitoring software to ensure
5 compliance with the imposed restrictions.
6 You're permitted the use of computers or connecting
7 devices and you're permitted to use the internet for legitimate
8 purposes and you're going to be responsible for any fees
9 connected with the installation, use and monitoring software.
10 I want to emphasize the condition that is critical in
11 your case, which is that you're not to violate any state, local
12 or federal laws while you're on the terms and conditions of
13 release. Do you understand that?
14 MR. REHL: Yes, sir.
15 THE COURT: That means that if you violate any terms
16 and conditions, any laws, state, federal or local, you're not
17 only facing the penalties that attach to that violation but
18 you're also facing penalty for violating the terms of your
19 release. Do you understand that?
20 MR. REHL: Yes, sir.
21 THE COURT: Very well. Are there any further
22 conditions that either side wishes to propose?
23 MR. JOHNSON: Your Honor, the only thing I would ask
24 is that, would you put as a condition now just to prevent us
25 from having to come back to the court, that he's able to attend

1 the prenatal classes with his wife regarding the baby and, of
2 course, anything related to the birth of that child?
3     THE COURT: He may, he may attend prenatal classes.
4 And, obviously, he will have to -- his travel is restricted to
5 the Eastern District of Pennsylvania. He may travel,
6 obviously, to court in the District of Columbia.
7     MR. JOHNSON: Thank you, Your Honor.
8     MR. JONES: Your Honor?
9     THE COURT: Yes.
10     MR. JONES: I have one, from the Government. We
11 would request a temporary stay of the release order pending
12 review in the District of Columbia.
13     THE COURT: I'll grant the stay.
14     MR. JONES: Thank you, Your Honor. We'll file papers
15 straight away and ask the Court for an order on an emergency
16 basis.
17     THE COURT: Very well, thank you. Anything further
18 that we need to take up?
19     MR. JOHNSON: No, sir.
20     UNIDENTIFIED SPEAKER: Your Honor, this is pretrial
21 services, I'm sorry. I may have missed this but your bond, the
22 $50,000 bond was it secured by property?
23     THE COURT: Yes, it is to be secured by property.
24     UNIDENTIFIED SPEAKER: Okay. I would just ask that
25 the defendant please contact pretrial services upon his release

1  once he gets home and if I can provide a phone number?
2           THE COURT:  Certainly.
3           UNIDENTIFIED SPEAKER:  Okay.  His attorney could
4  write this down.
5           MR. JOHNSON:  I'm ready.
6           UNIDENTIFIED SPEAKER:  He's to contact Tara Sawicki
7  (phonetic).
8           MR. JOHNSON:  Yes.
9           UNIDENTIFIED SPEAKER:  And her number is 267 --
10          MR. JOHNSON:  Yes.
11          UNIDENTIFIED SPEAKER:  398 --
12          MR. JOHNSON:  Yes.
13          UNIDENTIFIED SPEAKER:  2832.
14          MR. JOHNSON:  Thank you.
15          UNIDENTIFIED SPEAKER:  Thank you.
16          MR. JONES:  Your Honor, the Government has one more
17 request which is tolling of the speedy trial clock.  The
18 Government's motion for detention and the one it will, that
19 which it will momentarily file, should toll the clock but we're
20 ask the Court in the interest of justice to exclude time
21 between this hearing and the next hearing in the District of
22 Columbia.
23          THE COURT:  I'll grant that motion. Counsel, if
24 you'd submit an order so that it can be done in writing and
25 filed.

| | |
|---|---|
| 1 | MR. JONES: Yes, Your Honor. |
| 2 | THE COURT: Very well. Anything further from either |
| 3 | counsel? |
| 4 | MR. JOHNSON: No, Your Honor. |
| 5 | THE COURT: Mr. Rehl, this is a matter of grave |
| 6 | importance. I've granted you bond because I'm convinced that |
| 7 | there are terms and conditions that can satisfy the |
| 8 | Government's serious interest in seeing that you don't pose a |
| 9 | danger to the community. But understand that if you violate |
| 10 | any of the terms and conditions, or participate in any acts of |
| 11 | violence or any other criminal activity, your bond will surely |
| 12 | be revoked. Do you understand that? |
| 13 | MR. REHL: Yes, sir. |
| 14 | THE COURT: Very well. There being nothing further, |
| 15 | Mr. Rehl, you are excused. |
| 16 | MR. REHL: Yes, sir. Have a nice day. |
| 17 | MR. JOHNSON: Thank you, Your Honor. |
| 18 | THE COURT: Thank you. |
| 19 | MR. JOHNSON: May I be excused, sir? |
| 20 | THE COURT: Yes, you may. |
| 21 | MR. JOHNSON: Have a good weekend. Counsel, you as |
| 22 | well. |
| 23 | MR. JONES: Thank you, Mr. Johnson. Thank you, Your |
| 24 | Honor. That's it for me. May I be excused? |
| 25 | THE COURT: Yes, you may. Take care. |

17

1         MR. JONES: You, as well.

2                 \* \* \* \* \*

**C E R T I F I C A T I O N**

        I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.

/s/ Elaine Howell

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.   DATE: April 28, 2021