UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | No. 1:21-cr-175-3 (TJK) |
| v. : | |
| : | |
| : | |
| ZACHARY REHL, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM PRETRIAL DETENTION AND MOTION TO RE-OPEN <u>DETENTION HEARING</u>

Zachary Rehl was one of the leaders and organizers of a group that attacked the U.S. Capitol on January 6, 2021, seeking to obstruct Congress's certification of the 2020 U.S. presidential election. The group succeeded, if only temporarily, by overwhelming law enforcement and breaking into the building along with a mob of rioters. The defendant has shown no remorse for the violence that he helped to unleash on the Capitol on January 6. To the contrary, he has celebrated it. In a private message to co-conspirators on the day after the attack, the defendant declared, "I'm proud as fuck what we accomplished yesterday . . . ." In public messages, he celebrated the attack, stating, "THIS is what patriotism looks like," and he condemned the law enforcement officers who sought to defend the Capitol and those inside, stating, "They deserve to be tarred and feathered. These cops turning on us are also what they call 'turncoats.' Just saying."

On June 30, 2021, after conducting a thorough detention hearing and considering the parties' written submissions and oral arguments, which included substantially all arguments retread by the defendant in his current motion, this Court ordered defendant Rehl detained pending trial pursuant to 18 U.S.C. § 3142, finding that there is clear and convincing evidence that no

conditions or combination of conditions of release can assure the safety of the community. *See* ECF No. 104; June 30, 2021 Hr'g Tr, at 59:25-60:7.

On September 30, 2021, the defendant filed a motion for his release from pretrial detention, ECF No. 190 and memorandum of law in support thereof, ECF No. 191, arguing in part that the charges against the defendant are "no better than the Salem Witch Trials." Mem. at 19. He has filed three supplements since his submission, arguing that videos produced to the defense undercut the government's case ("First Supplement," ECF No. 198); that he should be released because someone other than Rehl claims to have organized the January 6 "Stop the Steal" rally ("Second Supplement," ECF No. 200); and that he should be released because the government executed a search warrant at the residence of another member of the Philadelphia Proud Boys ("Third Supplement," ECF No. 203). In his motion and the three supplements, the defendant raises no information that was both unknown to him at the time of the original detention litigation before this Court and that would have a material bearing on the detention decision. The Court should accordingly decline to reopen the detention hearing and should deny the defendant's motion.

## LEGAL AUTHORITY

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure community safety or the defendant's appearance at trial and pre-trial proceedings: (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see Bikundi*, 47 F. Supp. 3d at 133; *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

## **ARGUMENT**

The defendant has not proffered, let alone established, that the vast majority of factual allegations in his motion and accompanying supplements were unknown to him at the time he initially contested the government's request for his detention. But even if the Court assumes *arguendo* that all the allegations in the defendant's current motion were unknown to him on March 1, 2021, he has not established that the information he proffered "has a material bearing on the

issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community," as required to reopen the detention hearing. *See* 18 U.S.C. § 3142(f)(1). Finally, even if the Court does decide to reopen the detention hearing, it should deny the defendant's motion on the merits.

The defendant makes, broadly speaking, five main arguments in support of his claim that he should be released from pretrial detention: (1) he claims that the strength of the government's evidence is weak, *e.g.*, Mem. at 1-6, 15-17; First & Third Supplements; (2) that there are conditions that can assure the safety of the community, Mem. at 15-16; (3) that the Court was misled at the first hearing, Mem. at 16-17; (4) that the government has failed to allege conspiracy or aiding and abetting; and (5) that the Court made an error in applying a rebuttable presumption in favor of detention, mem. at 17-18. These are the same arguments that the court has heard previously. Moreover, the defendant offers virtually nothing by way of new evidence—nearly all the information the defendant proffers to support these propositions was known to him at the time of the first detention hearing before this Court on June 30, 2021, and none of the information is material to the question of whether the defendant's release poses a danger to any person or to the community. *See* 18 U.S.C. § 3142(f)(2); *Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021) (information is material only if it is "essential to, or capable of significantly affecting, the detention decision").

    I.    <u>The defendant's claims about the strength of government's evidence are neither new nor material.</u>

        A.  *The Indictment Is Neither New nor does it Favor Rehl's Release*

The defendant cites to alleged deficiencies in the indictment in this case to attempt to argue that the government's evidence is weak or that the Court should not apply the presumption in favor of detention. *See* Mem. at 18 ("Shockingly, the indictment fails to define or identify what a "Stop

4

the Steal" rally is"); 19 ("the grand jury found no facts and made no allegations that REHL was a 'leader,' 'planner,' or an 'organizer.'); and 30 ("the grand jury's conclusory statement merely reciting the statute, or a combination of statutes is invalid for the purpose of invoking a presumption against pretrial release on detention." The First Superseding indictment in this case was filed on March 10, 2021, over three months prior to the detention hearing before this Court. The defendant had ample opportunity to present any arguments he wished to about how any alleged deficiencies in that indictment affect this Court's determination of the bail factors at the June 30 hearing, but he did not.

The defendant's choice not to advance arguments about the weight of the evidence or other factors based on the text of the indictment was a wise one, as the indictment provides the Court with probable cause to believe that Rehl committed the charged offenses, including a conspiracy to obstruct Congress' certification of the Electoral College vote and to interfere with law enforcement who were engaged in their official duties. It additionally provides probable cause that Rehl is criminally liable for destruction of government property in an amount greater than $1,000.[1] *See* Indictment, ¶¶ 27, 74; *United States v. King*, 842 F.2d 768, 776 (D.C. Cir. 1973) (return of an indictment "makes conclusive the existence of probable cause to hold the accused for further prosecution"). Even if the indictment allegations were unknown to the defendant at the

---

[1] As explained in further detail below, the grand jury's finding that Rehl is criminally liable for a violation of 18 U.S.C. § 1361, with the damage in excess of $1,000, forecloses his argument that a rebuttable presumption in favor of detention is inapplicable in this case. We note that the defendant argues that the Grand Jury's allegations are "subject to judicial estoppel" and are "the law of the case" when he believes those facts favor him, *see* Mem. at 3, but not when they do not, such as the Grand Jury's finding that the defendant conspired to obstruct the certification of the Electoral College Vote and interfere with law enforcement during a civil disorder.

time of the first hearing—which they were not—they are not material to this Court's detention decision.

### B.  *The Facts Proffered by Defendant do not Justify Reopening Detention.*

As the defendant's memorandum concedes, the vast majority of facts he uses to support his various arguments were known to him on June 30.  *See*, *e.g.,* Mem. at 1 (citing to government's arguments at the detention hearing in the Eastern District of Pennsylvania on March 26, 2021) and at 15 &19 (citing to the government's motion to revoke release order, filed March 27, 2021).  Even many of the facts that the defendant expressly claims are "new" were known to him prior to June 30, 2021.  For example, he cites to a video of himself on the Upper West Terrace, along with Jeffrey Finley, a Proud Boy who has been charged separately.  Mem. at 13.  That video was provided to Rehl through prior counsel on April 13, 2021, with a specific reference that it was a video that showed the Rehl on the Upper West Terrace.  The publicly available portion of the "Hendrick Block" video referenced by the defendant, *e.g.*, Mem. at 13, was also provided to prior counsel on April 13, 2021, with a note that it was one of four videos that showed the Proud Boys marching and then breaching the pedestrian gate at First Street.

The defendant cites two video productions allegedly made after the last detention hearing in support of his argument that the strength of the government's case does not favor detention.[2] *See generally* First Supplement (arguing that the videos show a lack of prior planning and/or *mens rea* to commit a crime on January 6).  There is nothing in these videos—or any of the other videos cited by the defendant—that the Court did not already consider and reject in ruling on the

---

[2]    As noted above, the publicly available portion of the "Hendrick Block" video—the "1:40 segment" referenced in, *e.g.*, First Supplement, ¶ 20, was specifically provided to this defendant on April 13, 2021 and thus was available to him at the June 30 hearing.

government's motion to revoke the magistrate's release order. *See* June 30, 2021, Hr'g Tr. at 51:12-52:24 (noting that the government's evidence about the details of the conspiracy is circumstantial, but still finding that the weight of the evidence favors detention; "the best evidence of the conspiracy is what the conspirators acted in concert to do, what happened from their coordinated actions, and here that includes the interference with the certification of the Electoral College vote.") Assuming *arguendo* that some portions of these videos were unavailable to the defendant at the first hearing, they are not material to the Court's detention analysis. The defendant focuses on what the videos show of the Proud Boys' activity *prior to* the breach of the Capitol grounds, and it focuses on two videos that were explicitly made for public consumption. The defendant's reliance on the videos mentioned in the First Supplement moreover ignores the evidence of the conspirators' coordinated actions immediately prior to, and again after the breach of the First Street barriers. The defendants arrived near the site of the Ellipse—where speeches were to occur—and then immediately marched to the Capitol away from the demonstration. The defendants were not there for a peaceful demonstration; they went to the Capitol to participate in a violent protest. As Rehl later celebrated, "THIS is what patriotism looks like. Today was indeed a historical day for sure. I will never forget this for as long as I live, keep the fight up America! When government fears its people, you have freedom, when people fear government, you have tyranny." The defendant's suggestion that his entry into the Capitol was peaceful trespass ignores all the coordinated efforts that led to that moment. Simply put, by the time defendant was standing on the Upper West Terrace, the damage had been done and the objective achieved.[3]

---

[3] News articles containing anonymously sourced alleged leaks of FBI reports post-dating the hearing do not materially affect the Court's analysis of the weight of the evidence or any other Bail Reform Act Factor. Indeed, although the Reuters article cited by the defendant (Mem. at 15

The defendant also ignores his own words, which belie his assertions that he was only planning to protect conservative rally-goers from Antifa. In addition to the post-election rhetoric the Court cited in granting the government's motion to revoke the magistrate's release order, many of the defendant's statements from January 6 and 7 underscore the government's assertion that he possessed a criminal *mens rea* on January 6. For example, in contrast to defendant's claim that "gathering at the U.S. Capitol was specifically authorized" by permit (Mem. at ¶ 55), shortly after defendant and his coconspirators had surged onto Capitol grounds, Rehl texted four other contacts, "Everyone raided the Capitol." At the time that text was sent, 1:15 p.m., the defendant and his coconspirators had pushed into the West Plaza, but they were still approximately 30 minutes from beginning to push up the stairs to the Upper West Terrace. At 1:34 p.m., Rehl texted the same group, "We're at a standstill, cops are dropping concussion bombs and pepper spraying, people are pepper spraying back and fighting riot cops." At 2:29 p.m., after hordes of rioters had entered the building, defendant texted the same group, "Civil war started."[4] He followed at 2:48 p.m. with "They just broke all the doors and windows open, people are pouring in."

---

& Ex. 5) purports to conclude that the FBI had found scant evidence that the January 6 riot overall was the result of an organized plot, that same article goes on to claim that "FBI investigators did find that cells of protesters, including followers of the far-right Oath Keepers and Proud Boys groups, *had aimed to break into the Capitol*. But they found no evidence that the groups had serious plans about what to do if they made it inside, the sources said" (emphasis added). The latter portion was cut off from the version of the article filed as an exhibit, but it is available on the Reuters website hyperlinked to by the defendant at the following url: https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/ (last visited October 14, 2021).

[4] These text messages stand in contrast to the defendant's assertion that he only texted his wife to let her know he was safe and that he only knew of the full scale of the attack at the time of the impeachment trial. *See* First Supplement at 8.

The defendant's statements after January 6 further underscore that the defendant's focus on that day was not Antifa.  On January 7, 2021, he texted the same group mentioned in the previous paragraph, "Trump basically conceded.  We lost our country, we shoulda held the capital" and "Once Pence turned his back he was fucked, but was hoping we all sent a message yesterday, I guess that was the message to ben [sic] the knee, its depressing."  In a different Telegram chat on January 7, Rehl stated, "Looking back, it sucked, we shoulda held the capital.  After [T]rump conceding today, it all seemed like a waste."  He continued, "The reason why it feels like a waste is because instead of all these politicians getting scared and realizing they need to answer for this fraud, they are all turning on Trump and cucking, they are doubling down on their actions.  Everyone shoulda showed up armed and took the country back the right way," and "I imagine the next time people aren't showing up unarmed.  I'm not trying to fed post, I'm just stating facts, normies turned on the cops man, we didn't start any of the violence, all we did was a couple of chants."  The defendant's actions on January 6—being one of the first people past the breached First Street barricades and rushing into an area where no one had gathered prior to that breach— do not support his claim that his focus was on protecting supporters of then-President Trump from Antifa.  His words, as laid out above and in the government's prior filings and arguments show that one of the defendant's primary objectives on January 6 was to disrupt the certification of the Electoral College vote.[5]

---

[5]     The defendant's argument that he could not have been trying to obstruct the certification of the Electoral College vote because that would have left the position of President unfilled for four years is unavailing.  *See* Mem. at 20.  As the defendant's words as recounted above make clear, once then-Vice President Pence announced he would allow the certification to proceed as required by law (or, in the defendant's words, once the Vice President "turned his back"), Rehl hoped what the rioters did would "send a message" and expressed disappointment that politicians were not getting "scared."  Regardless of what the defendant subjectively thought the outcome of

### C. *Permits Issued by the U.S. Capitol Police are not Material to Detention*

The Court should not accept Rehl's invitation to conclude that the fact that the Capitol Police issued some permits negates his *mens rea*. *See* Mem. at 10-12. The defendant has not proffered that he knew of any permits issued or that he believed he was participating in a permitted demonstration when he rushed past trampled police barriers. If that is the defendant's subjective memory, he certainly knew that on June 30. But setting that aside, any claim he makes now—for the first time nine months after the riot—that be believed he was participating in a permitted protest should carry no weight in the Court's analysis, as those claims are belied by the fact that the defendant entered the grounds not at the site of any permitted protest, but through trampled police barriers. The credibility of the defendant's current contention that he believed he was participating in a permitted protest is further eroded by his statement on January 6 and 7 as laid out above, including his text that "Civil war started" at 2:29 p.m. on January 6. The existence of permits of which Rehl had now knowledge is not material to the Court's determination.

### D. *The Defendant's Representations about a Search Warrant at the Home of a Non-Defendant are immaterial.*

The defendant asks this Court to find that the strength of the evidence favors release because he claims that the government executed a search warrant at another member of the Philadelphia Proud Boys on October 8, 2021. *See generally* Third Supplement.[6] The defendant's assertion that the FBI's alleged search of the residence of "Zachary Rehl's second in command of

---

obstructing the Electoral College vote would be, the government's evidence of his intent to obstruct is strong.

[6] The defendant makes several claims about the time the agents began the alleged search and their conduct during the alleged search. As those claims cannot possibly be relevant to the Court's consideration of Rehl's detention status, we will not address them here.

the Philadelphia Proud Boys" could have only been to search for evidence of Rehl because it knows its case against Rehl is weak (Third Supplement at 3) strains credulity. Assuming *arguendo* that the FBI executed a search warrant as described in Rehl's Third Supplement, the fact that the FBI knew "the correct judicial district" in which to seek the warrant, along with photographs of the correct residence to search and the "precise type and serial number" of the phone used by the subject (Third Supplement at 3-4) would support a conclusion that the FBI had an open investigation on the subject of the warrant. The evidence cited by the defendant would certainly *not* support the conclusion that he wants this Court to draw, namely that a warrant was thrown together hastily on the same day that the defendant moved to reopen the detention hearing. *See* Third Supplement at 4-5. There is nothing material to this Court's detention decision presented in the defendant's Third Supplement.[7]

    II.    <u>The Defendant has Proffered No New Conditions or Combinations of Conditions of Release that would Materially Affect the Court's detention analysis.</u>

Following the June 30 hearing, as the defendant acknowledges, the Court found that the defendant "poses an identified and articulable threat to public safety that is both concrete and prospective, and that cannot be adequately mitigated by any conditions of release short of detention." Mem. at 20; ECF No. 104. The Court considered several conditions proffered by prior counsel on June 30, including prohibitions on Internet access, and it concluded that those conditions would not protect community safety. June 30, 2021, Hr'g Tr. at 58:10-59:4. The Court

---

[7] There is similarly nothing material in the defendant's second supplement, which focuses on the fact that an individual other than Rehl has claimed to be the organizer of the "Stop the Steal" rally. *See generally* Second Supplement. The defendant is not charged with organizing the Stop the Steal rally, but rather with conspiring along with other Proud Boys to obstruct Congress' certification of the Electoral College vote and interfere with law enforcement during a civil disorder, along with other related offenses. The fact that someone else claimed to have organized a "Stop the Steal" rally on January 6 is immaterial to the Court's detention decision as to Rehl.

moreover specifically found, based on actions the defendant took, including his involvement in discussions about destruction of evidence, that he would be unlikely to abide by conditions of release. *Id.* at 59:5-59:24. He has proffered no facts that are both new and material to the Court's analysis on whether there are any conditions or combinations of conditions of release that are reasonably likely to ensure community safety.[8]

The defendant also proffers that he is the son and grandson of police officers and is a long-time supporter of the "back the blue" movement. *E.g.*, Second Supplement at 3. This information, even if true, was known to him at the time of the June 30 hearing, and thus does not provide a reason to reopen the hearing. The fundraiser that the defendant allegedly set up "to raise money for any injured police officers," *see id.*, is not material to the Court's detention analysis. According to an ICANN[9] lookup, the domain name healcapitolpolice.com was registered on October 6, 2021—*the same day* that defendant filed the First Supplement referencing that website and the alleged fundraiser. As of October 15, 2021, that website redirects anyone who clicks on it to a GiveSendGo crowdfunding page that states that the campaign has raised $0 and "is currently disabled and can not receive new donations." A copy of the ICANN information and a screenshot of the GiveSendGo page are attached hereto as Exhibits 1 and 2, respectively.

---

[8] The defendant cites to four cases involving restrictions on the use of computers or other communication devices. Mem. at 21. In addition to being decided prior to the detention hearing in this case, all the cases Rehl cites involve conditions of supervised release following convictions and terms of imprisonment, rather than conditions of pretrial release. They are thus not useful points of comparison for the Court. In any event, this defendant's danger to the community requires an *individualized* assessment of his dangerousness in light of the factors set forth in the Bail Reform Act. Even if computer restrictions can assure community safety in some cases, it does not follow that they can do so in this case. Indeed, for the reasons the Court found following the June 30 hearing, in this case, based on factors specific to this defendant, no conditions or combination of conditions can reasonably assure the safety of the community.

[9] ICANN stands for the Internet Corporation for Assigned Named and Numbers.

III.     Defendant's Claims of "False Induction" by the Government are Baseless

The defendant spends six pages of his motion claiming that the government misled or "falsely induced" the Court into making certain findings at the June 30 hearing. *See generally* Mem. at 22-28. Yet, even while making this claim, the defendant repeatedly acknowledges that the government put the evidence before the Court, including various representations he terms "concessions" as to Rehl's actions. *See, e.g.*, Mem. at ¶¶ 2, 3, 6, 10-11, 19-20, and 45-46. The defendant disagrees with what the evidence (or "ink blot") shows. The defendants' words and actions paint a clear picture. The best proof of what defendants planned is what they did—and did not do—on January 6. They did not attend the demonstration at the Ellipse; they marched to the Capitol. And the defendant celebrated the group's accomplishments and characterized it for what it was—violence and threatened violence to corruptly influence the vote of the American people.

The Court made its findings based on the indictment and proffered evidence, with full knowledge of which allegations were specifically found by the grand jury, and which were proffered by the government. The defendant had a full opportunity to contest the government's proffer through counsel, which he took advantage of. Indeed, Rehl had the opportunity to hear the government present its arguments during detention hearings of Nordean, Biggs, and Donohoe— the government's arguments were well-established and fully known to defendant Rehl. The Court analyzed the proffered evidence in light of the Bail Reform Act factors and determined that the factors supported pretrial detention on balance. The defendant should not get another bite to relitigate the same proffered evidence now.[10]

---

[10]    Similarly, the defendant's reliance on his Telegram chat that he was "surprised" is neither new nor material. The government cited it in its motion to revoke the magistrate's release order, and as the Court noted in its ruling detaining the defendant, that message is best understood as one

IV.  The Defendant's Contentions that the Indictment Fails to Allege a Conspiracy and Does not Give Rise to a Rebuttable Presumption in Favor of Detention are Neither New nor Material.

The defendant claims that the indictment is defective for failing to allege a conspiracy as to Count Four (the felony violation of 18 U.S.C. § 1361) and that the statutory presumption in favor of detention should not apply because the grand jury has not properly alleged a felony violation of that statute and because, in his estimation, aiding and abetting a violation of § 1361 does not trigger the presumption. *See Mem.* at 31-32. The allegations in the current indictment were known to the defendant at the time of the June 30 hearing and were fully explored through multiple detention hearings. Thus, they are simply not a proper basis on which to reopen the detention hearing now.

The defendant's contention that Count Four fails to make factual allegations is false, as that count incorporates Paragraph 1 through 24 and 31 through 68. *See* First Superseding Indictment, ¶ 73. Setting *that* aside, the defendant's complaints about this count generally boil down to a lack of specificity.[11] He has already filed a motion for a bill of particulars, which the

---

in a series of messages celebrating the attack on the Capitol on January 6. June 30, 2021, Hr'g Tr. at 46:9-47:19. Nor is the fact that the defendant stated he was planning for a Biden presidency reason to doubt his dangerousness going forward. The defendant stated that he was planning for a Biden presidency in the context of his statement about being "proud as fuck" about what happened on January 6. *See* Mem. at 19.

[11]   The cases cited by the defendant in this section are inapposite. *United States v. Johnson*, 992 F.2d 1218, 1993 WL 133801 (Unpublished, 6th Cir. 1993), which the defendant claims supports his proposition about the level of specificity required by an indictment, was in fact about an affidavit in support of a search warrant. *Id.* at *2. *Russell v. United States*, 369 U.S. 749 (1962) reiterates that all that the sufficiency of an indictment is measured by whether it contains the elements of the offense and whether it sufficiently apprises the defendant of that he must be prepared to meet, and whether it would allow him to plead a double-jeopardy defense in the event of a future prosecution. *See id.* at 763-64. That is precisely what Count Four does.

government will be opposing contemporaneously with this filing. The Court can of course rule independently on whether the defendant is entitled to a bill of particulars, but the specificity of the allegations in Count Four is not material to any of the factors enumerated in the Bail Reform Act, and the defendant has cited no authority supporting his argument that it is.

The Court correctly determined at the June 30 hearing that a rebuttable presumption in favor of detention applies in this case pursuant to 18 U.S.C. § 3142(e)(3)(C). The government agrees that this presumption only arises for felony violations of § 1361, which requires damage in an amount greater than $1,000. That is precisely what the Grand Jury found. Superseding Indictment at ¶ 74 ("Zach Rehl . . . together with others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol building and thereby caused damage in an amount more than $1,000").

Rehl contends that proceeding on an aiding and abetting theory of liability does not trigger the rebuttable presumption, because he claims "18 U.S.C. § 2 – the actual crime charged – is not on the list of crimes that provide for a presumption against bail." Mem. at 32. It is well settled, however, that 18 U.S.C. § 2 is not a criminal offense, but rather a theory of liability that effectively abolished the distinction between an aider-and-abettor and a principal. *See, e.g., United States v. Richardson*, 948 F.3d 733, 741-42 (6th Cir. 2020) ("There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. Aiding and abetting is simply an alternative theory of liability indistinct from the substantive crime"). "Under [18 U.S.C. § 2], the acts of the perpetrator *become the acts* of the aider and abettor and the latter can be charged with having done the acts himself." *United States v. Kegler*, 724 F.2d 190, 200-01 (D.C. Cir. 1983) (emphasis added).

15

The government has represented in hearings regarding the other defendants in this case that it is proceeding on Count Four on a vicarious liability theory, that is that Rehl and his co-defendants are criminally liable for the damage Dominic Pezzola (charged before this Court in Case No. 21-cr-52) did to the window of the Capitol building with a riot shield, not only on an aiding-and-abetting theory, but also on a theory of co-conspirator liability.  Although the government has announced its intention to proceed on a vicarious liability theory, it was not required to make that announcement, much less to plead it in the indictment.  *See*, *e.g.*, *United States v. Washington*, 106 F.3d 983, 1012 (D.C. Cir. 1997) ("a theory of defendant liability need not be pleaded in the indictment").  Under either theory, the defendant is criminally liable for a felony violation of 18 U.S.C. § 1361 as charged by the grand jury, and the rebuttable presumption in favor of detention applies to his case.  Accordingly, there is nothing material to the Court's detention decision in the defendant's alleged indictment deficiencies.

## **Conclusion**

The defendant has not proffered any new facts that would materially alter this Court's decision to detain the defendant, following a thorough hearing on June 30, 2021.  For the foregoing

reasons, and any as may be cited at a hearing on this motion, the defendant's motion should be denied.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY
        DC Bar No. 415793


By: __/s/ *Erik M. Kenerson*__
        ERIK M. KENERSON, OH Bar No. 82960
        LUKE M. JONES, VA Bar No. 75053
        JASON B.A. McCULLOUGH, DC Bar No. 998006
        U.S. Attorney's Office for the District of Columbia
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7201
        Erik.Kenerson@usdoj.gov