**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>       Complainant,<br> v.<br><br>ZACHARY REHL<br><br>*(Styled as <u>USA v. NORDEAN</u> incorporating cases against four Defendants collectively)*<br><br>       Accused | Criminal Case No.<br><br>1:21-cr-00175-TJK-3 |

**<u>ACCUSED ZACHARY REHL'S REPLY TO THE GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT REHL'S MOTIONS FOR A BILL OF PARTICULARS, FOR A SUBPOENA, AND TO COMPEL</u>**

  Comes now the Accused ZACHARY REHL, by counsel, and replies to the Government's Consolidated Opposition and for his grounds states as follows:

**I. GOVERNMENT HAS SUPPLIED A BILL OF PARTICULARS IF NOT SEEKING TO SIDE STEP COMMITTING TO ITS RESPONSE**

  The Government's Opposition concedes the necessity of issuing its Bill of Particulars while minimizing the need to do so. The Opposition argues that a Bill of Particulars is not necessary because the Government is providing (or has provided) that very information that a Bill of Particulars would provide. The Opposition identifies the complete universe of those whom Rehl is alleged to have aided and abetted and/or conspired with consists of

    (1) Ethan Nordean,
    (2) Joseph Biggs,
    (3) Charles Donohoe,
    (4) Dominic Pezzola and
    (5) Unindicted Co-Conspirator 1.
    (6) Rehl himself

This is the information that Rehl requested to be ordered by Particulars on this topic. This establishes a class of six (6) people potentially involved in an alleged conspiracy and/or aided and abetted.

Counsel has no doubt that the prosecution is correct that these names have been discussed before. But what Rehl, by counsel, is seeking is a _commitment_ that this is the "final answer." Rehl could not prepare for trial to rebut accusations about "Proud Boys *and others*" who are "**_known and unknown_**." Rehl could not find and arrange exhibits, videos, witnesses, or other evidence to debunk his involvement with or agreement with unknown people.[1]

Counsel realizes that the caption of the indictment indicates that the Grand Jury was convened only 2 days after the events on January 8, 2021. The Court should consider that presumably the investigation and the case have progressed considerably up through now in October 2021. Thus concerns with those "known and unknown" may look very different today.

At some point it must be "times up, papers down, place your pencils on the desk." If the Government's investigation does not reveal anyone else whom Rehl aided and abetted and/or conspired with "known and unknown," still at some point the class must close.

Rehl had never heard of Dominic Pezzola before, doubts he is a member of the Proud Boys, and has never communicated with him. Since membership in many chapters requires an application, counsel will seek information that could exist on Pezzola. However, to prepare for trial, Rehl will at least know **_whom_** to look into, **_whom_** to compile evidentiary exhibits about, and **_whom_** to seek witnesses about. For example, Rehl can probably assemble conservations in which Rehl was glad that no one got in any trouble, then someone corrected him that -- no -- one guy (Pezzola apparently) broke a window, and Rehl replies with surprise and obvious concern,

---

[1]   Again, known but unidentified is different from entirely unknown, possibly nonexistent.

2

clearly have been unaware that any Proud Boy broke a window until later that evening.

## II.  GOVERNMENT IS REQUIRED TO PROVIDE A BILL OF PARTICULARS.

The Government calls "meritless" the analysis of the Honorable Amit P. Mehta in a parallel case, *USA v. Thomas Caldwell,* specifically for Defendant James.  Judge Mehta set forth his analysis in an Omnibus Order on September 14, 2021, filed at ECF Docket # 415, in Case No. 1:21-cr-00028-APM.  On Pages 7-9, Judge Mehta explains the distinction between whether the Government has provided a sufficient amount of detail, though not all detail available, in contrast to the situation here where the Government has failed to pin down the affected persons.

In an analysis that Rehl adopted in his motion, Judge Mehta explains that failing to identify the number of victims is not adequate.  Judge Mehta denied many requests to order Particulars, including for Defendant James, to pin down more detail to the indictment.

However, Judge Mehta did order a bill of particulars to identify the undefined *quantity* of victims allegedly injured by James, as being unclear and fundamentally different.

The prosecution misses the distinction and ignores what Rehl argued and asked for.

Double jeopardy is one of the reasons why a Bill of Particulars is required under Judge Mehta's analysis and the precedents that he applied.  Imagine that the case does go to trial on May 18, 2022.  Then in August 2022, the FBI decides to arrest Rehl anew for aiding and abetting or conspiring with someone else.  Could Rehl face a whole new trial over new conspirators? That is a significant part of Judge Mehta's analysis quoted at length in the main motion.

## III.  BILL OF PARTICULARS IS REQUIRED FOR WHEN AND HOW ANY CONSPIRACY WAS CREATED

Of Course, the Government may add more details to their presentation or present additional evidence.  But the Government is stuck with the allegations of the indictment.  The

Grand Jury indicted and alleged that:

> 40. On January 2021, at 7:15 p.m., DONOHOE posted a message on various encrypted messaging channels including New MOSD, which read, "**Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges.**" DONOHOE then wrote "**Stop everything immediately** and then "**This comes from the top.**"

This is not Defendants evidence, proof or argument. This is an admission and confession by the Grand Jury. Therefore, it is the law of the case[2] and judicial estoppel that [3]

(1) There was no plan prior to January 2021, at 7:15 PM, and no conspiracy.

(2) Or if there was any plan or conspiracy prior to January 4, 2021, at 7:15 PM, it was officially terminated at that time. It was relayed "from the top" to "**STOP EVERYTHING IMMEDIATELY.**"

(3) Understood by trained and logical attorneys and jurists, the language in that paragraph "Everything is compromised and we can be looking at Gang charges." is the classic construction of *withdrawal* from a conspiracy. Upon realizing how things could look legally, all of the leadership orders "from the top" and "listen to me real good!" that everything is stopped, there is *no* plan (any longer?). They are

---

[2] The precedents debate extensively whether an indictment or jury instruction may add an element to the crime forming the law of the case. Here, however, the question is about the allegation of fact only.

[3] *See generally*, *within complex analysis of procedural history,* "It is not unlikely that the trial court would regard the statements of the District Court about this indictment as 'the law of the case.'..." *United States v. Swift Co*, 318 U.S. 442, 447, 63 S.Ct. 684, 87 L.Ed. 889 (1943) (dissent by Jackson).

terminating any plan and withdrawing from any alleged conspiracy. [4]

(4)  Therefore, the Proud Boys "from the top" withdrew from any plan, agreement, or conspiracy that may have existed prior to January 4, 2021, at 7:15 PM.[5]

(5)  What will happen after 7:15 PM is "**whatever new thing is created.**"

(6)  Every Proud Boys member interviewed on this so far has hotly contested, *"But there never was any such plan!"* That is, the only plan was to patrol the perimeter to keep Antifa thugs from attacking the defenseless crowds of mostly-elderly pro-Trump demonstrators.

(7)  Nevertheless, there is a Wall blocking any claim of any conspiracy prior to January 4, 2021, at 7:15 PM, if one ever existed.

Therefore, a Bill of Particulars identifying exactly when and how any conspiracy – that is a knowing and intentional (not accidental or equivocal) plan to concert together to carry out a criminal result – was formed after January 4, 2021, at 7:15 PM and considering only actions after 7:15 PM on January 4, 2021, what overt acts not equally explained by innocent purposes establish liability for the conspiracy. [6]

Rehl is entitled to the Particulars of when and how he allegedly entered into any

---

[4] It could be possible for leaders of a group to order a conspiracy terminated and be ignored. But here insinuations of a conspiracy flow from Defendants being guilty merely for being in the Proud Boys, not for actually entering into any actual conspiracy themselves.

[5] "Thus, the Supreme Court has cautioned against placing "confining blinders" on the jury's consideration of evidence of withdrawal and has held that "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment." *United States v. United States Gypsum Co.*, 438 U.S. 422, 464-65, 98 S.Ct. 2864 2887, 57 L.Ed.2d 854 (1978)." *U.S. v. Antar*, 53 F.3d 568 (3rd Cir. 1995)

[6] For example, having breakfast on the morning of January 6, 2021, is not an overt act in pursuant of a knowing and intentional conspiracy, because the participants would have had breakfast in any event, even if there were no conspiracy.

5

conspiracy, rather than merely planning to visit Washington, D.C., including to identify what events or evidence are or are not connected with this this supposed conspiracy.

**IV.    MOTION TO COMPEL DOCUMENTS AND FOR PARTICULARS NECESSARY NOT ONLY FOR TRIAL BUT FOR PRE-TRIAL RELEASE ON BAIL**

Rehl explicitly denies making the statements which are offered as the key reasons he is still locked up in pre-trial detention and relevant to preparation for trial. Rehl contends that if the entire document from which these partial quotes have been lifted were presented in full, it would become clear that his statements do not mean what the Government suggests and/or did not occur in the timeline suggested, again changing their meaning.

For one, thing the Government does not in many cases identify the timing of various statements in the indictment or motions. There were rallies and demonstrations in November and December 2020, not merely on January 6, 2021. Most communications relate to the December 12 demonstrations.

Counsel is informed that if the entire conversations were referenced they would show that: (1) Most Proud Boys including leaders were indifferent and uninterested in attending the January 6, 2021, demonstrations – as explicitly stated in the conversations – because it would be the third (3rd) demonstration, with projected chilly and windy weather, on a Wednesday, and the Proud Boys did not expect very many people to show up. Unlike the December 12, 2020, demonstrations, when an estimated 1500 Proud Boys members showed up, they expected maybe 50 to 100 to attend on January 6, and therefore were not very interested in going. (2) Enrique Tarrio told those who might attend not to wear the Proud Boys trademark insignia and clothing or "colors" out of concern that it would reveal how very few Proud Boys were actually there on January 6, and Antifa thugs would be encouraged to start attacking people again. (3) Counsel

understands that this is all evident on the face of the conversations that the Grand Jury relied upon in issuing a True Bill, as self-contradiction to the allegations.

The Grand Jury assisted by the U.S. Attorney's Office alleged that all of the Defendants

### Manner and Means

> 28. NORDEAN, BIGGS, REHL, and DONOHOE with others known and unknown, others, carried out the conspiracy through the following manner and means, among others by:
> * * *
> b. Using websites, social media, and other electronic communications to raise fundsto support travel and equipment purchases for the visit to Washington, D.C.;
>
> c. Obtaining paramilitary gear and supplies-including concealed tactical vests, attack; protective equipment, and radio equipment- for the January attack.

However, the actual fund-raising post asks for money for "**SAFETY EQUIPMENT – NOT "paramilitary gear" or "concealed tactical vests."**



Thus, lacking in candor to this Court, the indictment transforms raising funds for "safety equipment" into "paramilitary gear." The actual videos show that none of the Proud Boys or

7

those marching with them are wearing any paramilitary gear. Furthermore, the casual backyard BBQ style "grungy" clothes are informal, but clearly tight-fighting enough in the videos to debunk any claim of anything being worn under these casual clothes.

Thus, Zachary Rehl is being held in pre-trial detention and facing trial based upon a lie: He raised funds for "safety equipment" – not paramilitary gear or tactical vests.[7]

It is exculpatory what these documents containing the supposed statements actually say, not what they have been cherry-picked out of context to appear to say.

Notice that the photograph shown with the appeal for funds was obviously taken at an event *before* January 6, 2021. A handful in that photograph are wearing work vests on some earlieryday. But no one on January 6, 2021, among the Proud Boys group or those joining with them is wearing any tactical vest or gear.

Therefore, the Government misled this Court into holding Rehl in pre-trial detention by making this Court believe that Rehl raised funds for paramilitary gear or tactical vests when in fact Rehl raised funds for "safety equipment," travel and hotels.

The Court and the Defense needs to see the actual documents from which the Grand Jury cherry-picked the alleged quotes in the First Superseding Indictment.

V.   **MOTION TO COMPEL DOCUMENTS:  Documents Identified but Still not Available to Rehl**

The Government appears to provide the requested Particulars while also denying the need for doing so. Actually, though, the Government has still not identified or provided the documents from which the Grand Jury has cherry-picked partial quotes yanked out of context.

The full context of these statements is exculpatory information that the Government must

---

[7] Could "safety equipment" mean something other than "safety equipment?" Well we'd have to see the entire context of the communications to determine that.

provide under *Brady v. Maryland* because the partial, inaccurate quotes are being used as allegations in the indictment against Rehl and also to deprive Rehl of his liberty pre-trial. Seen in full context, the Court would see that Rehl did not say what the Government claims or infers or interprets Rehl as saying, and that the timeline of the statements would dramatically alter the understanding of the Court and the Jury as to what those statements mean. *See, generally:*

> The Court finds that the TCPA's text does not require a court to put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement. The ultimate statutory question is whether the fax at issue falls within the statutory definition. In answering that question, nothing in the statute puts an artificial limit on information a court may consider.

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 492 (W.D. Mich. 2014)

While counsel does not assert that every fact in an indictment must bear a formal citation supporting it, in this case, these quotes do require a source citation for the stated reason:

Whether the statements actually mean something completely different than asserted is crucial and exculpatory. If a mother exclaims in frustration **"I'm going to kill that boy!"** we know from the context that the mother is not actually intending to kill him. (And indeed blowing off steam is more likely to get past the conflict.) Language requires context and occurs as part of an ongoing conversation.

The Government responds on page 10 of its Opposition by providing a chart cross-walking the sub-paragraphs of what Rehl requested in his Motion to Compel documents.

However**, Rehl does not have these documents in his possession**. *(Remember that the Government has seized all of the phones and computers of all of the Defendants and uncharged persons as well. Thus the Defendants are dependent upon the Government's disclosures.)*

Rehl has no information to interpret the references of "Serial 21" or "Serial 17" or "Serial

40" or "Serial 24."

On USAfx, there is a folder for "Parler Return" <u>**which is blank on USAfx and contains no documents.**</u>

Therefore, Rehl, by counsel, still does not have the related documents or sufficient information to identify as a source citation what the document is, not must "Serial 40."

<u>**The Grand Jury could not allege each quote without having the document in front of them**</u>. Therefore, the burden should be slight. If the Grand Jury did not have the document, why did they vote for a True Bill?

Here, the failure to put quotes onto a timeline and to show the complete context of the quotes is likely to transform apparent evidence of guilt into innocent comments (even if intemperate and ill-advised).

Therefore, Rehl, by counsel, has requested that the Government produce not merely a flood of mostly-irrelevant *Brady* disclosures. Rehl requests that the Government produce <u>the specific documents</u> from which they accuse Rehl in the indictment and argue against pre-trial release on bail, even by pointing to where those documents can be found.

### VI. MOTION TO COMPEL DOCUMENTS: *BRADY* PRODUCTION IS NOT A CURE FOR THESE PROBLEMS.

The Opposition relies extensively on the Government's efforts to provide extensive *Brady* disclosures. However, this really does not fill the gap.

Rehl's counsel freely acknowledges that if the Government has provided disclosures to prior counsel, and the previous counsel does not forward all of it to new counsel, it would hardly be fair to blame the Government for that. Yet nevertheless, Rehl's counsel does not actually have the vast majority of the *Brady v. Maryland* disclosures that the Government claims.

Counsel still cannot prepare for trial, no matter who dropped that ball. (Counsel has delayed making an issue out of it before exhausting attempts to get the documents from prior counsel.)

Unfortunately, despite a gigantic effort by the Government and its contractors, and on the receiving end the low-funded Defense,

- Rehl's counsel is missing some of the media provided to Rehl's prior counsel, as shown in cover letters. That is, counsel has transmittal letters from the prosecution to prior counsel, but not the corresponding digital media described.

- Almost every transmission of *Brady* disclosures has been released in a different format each time, such that counsel had to go out and buy a new Blu Ray disc player to make sure the problem was not in the player.

- However, on several Blu Ray discs, there were no actual files. There are case-specific folder names and structure on the Blu Ray disc clearly about this case. Yet the folders are empty or give an error of a corrupted file.

- Counsel has seen references to instructions that counsel was expected to copy files off of the media shipped and then return the media. It is possible that the folders were emptied when prior counsel copied the files off the media.

- On one external hard drive, Rehl's counsel was able to access videos under the iPhone and Sony A6500 folders, a few of which are very important and useful and Rehl is asking the Government to remove Protective Order restrictions on those public videos showing these Defendants on the Washington Mall.

- However, the other three folders contained many files in an unknown file format. (And counsel while often behind the times is familiar with standard software.) That is, these are clearly genuine data files containing real data, but they are not

11

recognized by off-the-shelf software.  It appears that there is a unique software program needed to access or run these data files, such as a unique viewer.  But counsel could not find the software to view the files on the disk.  Perhaps it is software provided by Sony associated with a type of Sony video camera.

- Two other external hard drives are not accessible.  One has the cellebrite viewer software but it insists that the massive consolidated file designated as a "report" (clearly a compilation of documents) requires a password.  Counsel has asked for the password but not received a response.  The other runs through cellebrite but despite the existence of folder structure relevant to this case, there are no files accessible within the folders of the various categories or folders.

- Much of the *Brady* disclosures are a flood of irrelevant information, such as videos of other people who are not any of these Defendants.  Counsel appreciates the thoroughness, but the result is that the specifically requested disclosures have not been provided, despite counsel's requests sent to the Government back to early September.

- Even on USAfx, the system provides case-specific folder names, but at times there are no files within those folders, such as the all-important "Parler [subpoena] return" folder.  Not always.  But sometimes.

- There is content that counsel can access from USAfx, but this is mostly videos of other people who are not any of these Defendants.

- It took Rehl's counsel a long time to get access to USAfx with the assistance of technical expert Hickling, Leif (USADC)<leif.hickling@usdoj.gov>.

- Rehl's counsel sees nothing that corresponds to the designations for the

12

documents such as "Serial 21," etc.

## VII. CONCLUSION

*In the alternative*, after seeing the exchange of briefing, Rehl by counsel recommends that the Court order the Government *to provide the actual exhibits*, originally labelled as such, that must have been presented *to the Grand Jury* to document each quote that the Grand Jury voted to allege against Defendant Zachary Rehl.

It should be a very little burden to merely provide the Grand Jury Exhibits, as opposed to the Government now trying to backtrack and research where the alleged quotes came from.

However, if the Grand Jury never saw the complete conversations in full context from which snippets have been lifted, then the indictment should be quashed in a later motion.

Therefore, it should be easy for the Government to supply the documents that the Grand Jury was referring to in stating alleged quotes from the Defendant Zachary Rehl when voting on the indictment as a True Bill.

On the Bill of Particulars, the Government should stipulate or the Court order that the class of six (6) people stated is the entire class of the alleged conspiracy and circle of those allegedly aided and abetted by Rehl.

Dated:  October 25, 2021              RESPECTFULLY SUBMITTED,
                                       ZACHARY REHL, by counsel

                                       *[signature]*

                                       Jonathon Alden Moseley, Esq.
                                       DCDC Bar No. VA005
                                       Virginia State Bar No. 41058
                                       5765-F Burke Centre Parkway, PMB #337
                                       Burke, Virginia 22015

Telephone: (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 25, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s), and also mailed a copy to the following by first class U.S. mail, postage prepaid, one single copy to the prosecution for distribution internally to all counsel involved for the proseuction. From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Mr. Luke Matthew Jones, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-7066
(202) 616-8470 (fax)
ahmed.baset@usdoj.gov

**Mr. Jason Bradley Adam McCullough, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
(202) 252-7233
jason.mccullough2@usdoj.gov

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
(202) 252-6986
james.nelson@usdoj.gov

_/s/ Jonathon Moseley_
Jonathon Moseley, Esq.