UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| v. | Case No. 1:21-cr-392-RCL-2 |
| **RUSSELL TAYLOR**, | |
| *Defendant*. | |

## MEMORANDUM OPINION

After defendant Russell Taylor was arrested on charges stemming from his participation in the January 6, 2021, breach of the United States Capitol, a magistrate judge in the Central District of California ordered him released pending trial. *United States v. Taylor*, No. 8:21-mj-00415 (C.D. Cal. June 11, 2021), ECF No. 4 (hereinafter, "Magistrate Release Order"). The magistrate judge stayed that order so the government could appeal to this Court. *Id.* The government then moved this Court for an extended stay so it could brief its motion to revoke the magistrate judge's release order. ECF No. 8. After holding a hearing on the stay motion, this Court denied the government's request for a stay. ECF No. 17.

The government now asks this Court to revoke the magistrate judge's order releasing Taylor as he awaits trial. ECF No. 11. After Taylor filed his opposition, ECF No. 39, the government did not file a reply. On August 3, 2021, the Court held a hearing on the government's motion. 8/3/2021 Min. Entry. The motion is now ripe for the Court's consideration.

Upon consideration of the parties' filings, ECF Nos. 11 & 39, the arguments set forth at the hearing, and the underlying record, the Court will **DENY** the government's motion to revoke the magistrate judge's release order. The government's burden to justify pretrial detention by clear and convincing evidence is a heavy one, which the government has not met here.

1

## BACKGROUND

### A. Factual Allegations

The government proffers the following factual allegations in support of its motion for revocation of Taylor's release. On January 1, 2021, Taylor, using the moniker "Porter RockQwell," started a Telegram chat group called the "DC Brigade" to organize a group of "fighters" to travel with weapons to Washington, D.C., on January 6, 2021. ECF No. 11 at 2. On Telegram, Taylor described the group's members as "ready and willing to fight." *Id.* at 3. While the group's "intent [wa]s not to go after and seek violence," he explained that once "events begin to unfold[,] that may change." *Id*. In another message to the group, he stated that he "assum[ed]" other members had "some type of weaponry that [they were] bringing . . . and plates as well." *Id.* He then asked group members to identify if they had prior law enforcement experience or "special skills relevant to [the group's] endeavors," as well as the date and time of the members' arrival in D.C. *Id*. He identified a hotel in Downtown D.C. as the "main location for meeting." *Id.*

From that point forward, members of the DC Brigade, including Taylor's co-defendants, began sharing information about their skills, travel plans, and the weapons they planned to bring to Washington D.C. *Id*. Taylor even provided advice about the weapons permitted in D.C. For example, he wrote in one post, "I believe that you can carry most fixed blades just not into the government buildings. Something tells me though if we are inside government buildings it won't be on the top of our list." *Id.* at 4. He coordinated with his co-defendants to establish a radio channel for the group to use while on the ground in D.C., and co-defendant Alan Hostetter drove across the country with Taylor's backpack, which was full of weapons. *Id.*

The government argues that several of Taylor's statements and affiliations are indicative of his intent for January 6. In Telegram messages, Taylor expressed that it was his "honor" to "to be engaged in this war at this time." *Id.* at 5. He stated that he "personally want[ed] to be on the

2

front steps and be one of the first ones to breach the doors." *Id*. Taylor also gave a speech on January 5, 2021 near the Capitol as part of the Virginia Women for Trump rally. *Id.* In his speech, Taylor described himself as a "free American" who would "fight" and "bleed before [ ] allow[ing] our freedom to be taken from us." *Id.* He declared that "anti-Americans . . . have brought out the Patriot's fury onto these streets and they did so without knowing that we will not return to our peaceful way of life until this election is made right, our freedoms are restored, and America is preserved." *Id.* at 5.[1]

On the evening of January 5, Taylor sent a message over Telegram stating that he was "getting ready for tomorrow" with a picture of tactical gear. *Id.* at 6. This photo shows the tactical vest, knife, gloves, scarf, and backpack that Taylor wore at the Capitol on January 6, 2021. The photo also shows additional weapons, including two hatchets and a stun baton. *Id.* After Taylor's co-defendants arrived in D.C. with additional weapons, the group continued to use the DC Brigade chat to communicate and identified a radio channel for communication on the ground in D.C. *Id.*

On January 6, 2021, Taylor wore his tactical plate-carrier armored vest, a knife, and a backpack, which carried his stun baton. *Id.* at 6–7. He went to listen to former-President Trump's speech at the Ellipse from outside the secured perimeter because of the weapons he was carrying. *Id.* at 7. Taylor then marched to the Capitol, where the government alleges that he was among an initial group of rioters who clashed with law enforcement at the Lower West terrace of the Capitol building. *Id.* There, Taylor filmed a video in which he encouraged other rioters who were fighting with the officers, shouting, "Move forward, Americans!" before telling the officers located a few

---

[1] The government also cites Taylor's association with the American Phoenix Project, a group founded by co-defendant Hostetter that the government alleges "advocate[s] for violence against individuals and groups who supported the 2020 Presidential election results." ECF No. 11 at 4. The government cites no particular statement made by Taylor in association with the group, but instead relies on the statements of co-defendant Hostetter calling for "execution" and "punishment" of those who refused to overturn the election results. *Id.* at 4.

3

feet from his position, "Last Chance Boys. Move Back!" *Id.* The government has a photo of Taylor joining the crowd of rioters pushing against the police line. *Id.*

Despite being hit with pepper spray, Taylor and the group of rioters pushed past the officers' barrier. *Id.* at 7–8. Taylor and Hostetter then continued past the officers and up the staircase on the Upper West Terrace, where they took photos of themselves. *Id.* at 8. Once there, they also met up with co-defendants Derek Kinnison and Felipe Martinez, who were also dressed in tactical gear. *Id.* at 9.

The government proffers several of Taylor's post-riot statements as evidence of his intent. At 6:18 P.M. following the riot, Taylor posted to a Telegram chat, "I was pushing through traitors all day today. WE STORMED THE CAPITOL! Freedom was fully demonstrated today!" *Id.* Later that evening when a friend asked Taylor what would happen next, Taylor responded, "Insurrection!" *Id.* On January 7, 2021, Taylor urged others in the DC Brigade chat to "hold the f***ing line." *Id.* at 14. At a hearing on the present motion, the government also proffered statements between Taylor and co-defendant Kinnison on January 10 about the need to "lay low" even though it was a critical time to "organize."

**B. The Government's Investigation and Taylor's Arrest**

Shortly after January 6, the FBI began receiving public tips which identified Taylor as having participated in the Capitol riot. *Id.* at 9–10. The tips included images and videos of Taylor wearing a knife in his tactical plate-carrier vest and Taylor with a group of other rioters pushing through a line of law enforcement officers. *Id.* at 10.

On January 27, 2021, the FBI executed a search warrant at Taylor's and Hostetter's homes. There, the FBI reviewed Taylor's phone and ultimately identified the DC Brigade Telegram chat as well as additional evidence. *Id.*

4

It was not until June 9, 2021, that a grand jury charged Taylor and five co-defendants in an eight-count indictment for their participation in the Capitol riot. Taylor was charged with six felonies, including Conspiracy to Obstruct Official Proceedings (18 U.S.C. § 1512(k)); Obstruction of an Official Proceeding and Aiding and Abetting (18 U.S.C. § 1512(c)(2) and § 2); Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting (18 U.S.C. § 231 and § 2); Entering and Remaining in a Restricted Building and Grounds and Carrying a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(1) and (b)(1)(A)); Entering and Remaining in a Restricted Building and Grounds and Carrying a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(2) and (b)(1)(A)); and Unlawful Possession of a Dangerous Weapon on Capitol Grounds and in Buildings (40 U.S.C. § 5104(e)(1)(A)). ECF No. 1. The most serious of these offenses includes a maximum penalty of 20 years' incarceration. *See* 18 U.S.C. § 1512(c)(2). An arrest warrant was issued on the same date.

On June 10, 2021, pursuant to Taylor's request, the government notified Taylor's defense counsel of the arrest warrant and directed Taylor to self-surrender. *See* ECF No. 19; ECF No. 11 at 10. Taylor was taken into the FBI's custody later that day. ECF No. 11 at 11.

**C. Procedural History**

On June 10, 2021, the day of his arrest, Taylor had his initial appearance before a magistrate judge in the Central District of California. Over the government's objection, the magistrate judge issued an order releasing the defendant[2] but staying the order until 5:00 P.M. on June 15, 2021, to allow the government time to appeal. *Id*.

---

[2] In addition to the standard conditions of release, Taylor willingly submitted to additional conditions of release, including location monitoring and a condition that he "[r]efrain form using social media as well as encrypted communication devices or software." Magistrate Release Order at 4–5.

5

The government then moved in this Court for a stay pending disposition of its forthcoming motion to revoke the release order. ECF No. 8. The Court held a hearing on the stay motion and denied it, finding that the government was unlikely to succeed on the merits of its motion to revoke the release order. ECF Nos. 16, 17. After the government filed the present motion to revoke, ECF No. 11, Taylor filed an opposition to which the government did not reply, ECF No. 39. The Court held a hearing on the motion to revoke on August 3, 2021. 8/3/2021 Min. Entry. The motion to revoke Taylor's release order is now ripe for the Court's consideration.

## LEGAL STANDARDS

### A. Pretrial Detention Under the Bail Reform Act

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the detention of a defendant in one of two scenarios. First, the government may seek a defendant's pretrial detention if the charged offenses fall into any of five enumerated categories, including a "crime of violence" or a felony that involves the possession or use of a dangerous weapon. 18 U.S.C. § 3142(f)(l).[3] Second, the government may also seek detention—or the court *sua sponte* may hold a detention hearing to determine whether pretrial detention is appropriate—when the case involves "a serious risk" that the defendant will flee or "will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." § 3142(f)(2).

If the Bail Reform Act authorizes pretrial detention, the judicial officer must hold a hearing to determine whether there are any conditions of release that would reasonably assure the appearance of the defendant as required and the safety of any person in the community. § 3142(f).

---

[3] The Bail Reform Act defines "crime of violence" as (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156(a)(4).

6

At the hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam). If the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer "shall order" the person detained pending trial. § 3142(e)(l). A finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. § 3142(f). And a finding that no conditions would reasonably assure the defendant's appearance as required must be supported by a preponderance of the evidence. *United States v. Xulam,* 84 F.3d 441, 442 (D.C. Cir. 1996).

Under some circumstances that are not present here, the Bail Reform Act may establish a rebuttable presumption of detention. *See* § 3142(e). But where, as here, the presumption is not implicated, the court instead must consider the following factors to determine whether there are conditions that would reasonably assure the defendant's appearance and the public's safety:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device
>
> (2) the weight of the evidence against the person
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings
>>
>> (B) whether, at the time of the current offense of arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

7

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g).

The D.C. Circuit has also held that, for pretrial detention based on dangerousness, the government must "prove[ ] by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)); *see id.* at 1283 ("Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community."). This inquiry is "forward-looking." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021). Notably, "[a] person [may] be deemed a danger to the community sufficient to justify detention even without posing a threat of committing violence in the future." *Id.*

The Court's review of the magistrate judge's detention order is de novo. The standard of review by a district court judge when assessing a magistrate judge's detention order under 18 U.S.C. § 3142 is de novo. *See, e.g.*, *United States v. Fairlamb*, No. 1:21-CR-120-RCL, 2021 WL 1614821, at *3 n.2 (D.D.C. Apr. 26, 2021); *United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017).

## ANALYSIS

Because the indictment alleges that Taylor carried a dangerous weapon (a knife) while committing several of the alleged felony offenses, the government may seek Taylor's detention. 18 U.S.C. § 3142(f)(1); *see* ECF No. 1; 18 U.S.C. § 1752(a)(2), (b)(1)(A); 40 U.S.C. § 5104(e)(1)(A).[4]

---

[4] At the hearings on the stay motion and the motion to revoke, the government stated that Taylor committed a "crime of violence." But the government has not identified which crime Taylor is charged with that "has

8

The government does not assert, and the Court sees no evidence of, flight risk. Accordingly, at issue in this case is whether the government has shown, by clear and convincing evidence, that pretrial detention is warranted because no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2). Under the aforementioned four-factor test in the Bail Reform Act, *see* § 3142(g), the government has not met this burden.[5]

### A. The Nature and Circumstances of Taylor's Crimes

The nature and circumstances of Taylor's charged crimes are serious. Taylor's actions were aimed at obstructing the certification of the electoral college vote and interfering with our democratic process. His statements before and immediately following the riot make this much clear. *See, e.g.*, ECF No. 11 at 9, 14–15. In furtherance of this goal, Taylor organized a group of "fighters" to bring weapons to the Capitol, carried a knife onto Capitol grounds, and physically struggled (and encouraged others to struggle) against police officers working to prevent rioters from entering the Capitol. ECF No. 1 at 10, 14–15. One of the charges that Taylor faces includes a statutory maximum of 20 years' imprisonment. *See* 18 U.S.C. § 1512(c)(2). The government argues that it is "[p]re-planned violence of the type fomented, organized, and carried out by Taylor" that resulted in the tragic events on January 6, 2021. ECF No. 11 at 13.

---

as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," or falls within the Bail Reform Act's enumerated provisions. 18 U.S.C. § 3156(a)(4). But that makes no difference here. Taylor is subject to detention under 18 U.S.C. § 3142(f)(1)(E) for his possession of a dangerous weapon.

[5] The government did not seek detention of any other defendant in this case, despite those defendants engaging in substantially similar conduct to Taylor. At the hearing, the government justified this difference in treatment as a result of the defendants' different statutory charges. But to the extent that Taylor's possession of a knife may subject him to detention (unlike his co-defendants), it is notable that Taylor ultimately chose not to enter the Capitol *because* he was carrying a weapon.

9

But as Taylor points out, not all the circumstances of his alleged crimes weigh in favor of detention or establish a danger to the community. *See* ECF No. 39 at 4. Notably, Taylor chose not to enter the Capitol *because* he "had weapons." ECF No. 1 at 16. On balance, the Court agrees with the government that the nature and circumstances of Taylor's offense weigh in favor of his detention.

### B. The Weight of the Evidence

The weight of the evidence against Taylor is substantial. The government has proffered screenshots of Taylor's texts and online messages before the Capitol riot. *See, e.g.*, ECF No. 11 at 2–3. Images submitted by the government show Taylor at the Capitol with a knife in his plate vest and Taylor pushing with rioters against a line of law enforcement on the lower level of the West Terrace. *Id.* at 7–8. And there are Telegram and text messages in which Taylor admits to "storming the capitol." *Id.* at 14.

However, this Court has also recognized that courts in other Circuits have "cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness." *United States v. Brown*, No. 1:20-CR-27-4, 2021 WL 1736870, at *8 n.4 (D.D.C. May 3, 2021) (citations omitted). The evidence discussed above is surely probative of dangerousness. But so is the evidence that Taylor chose not to enter the Capitol because he was carrying a knife. At bottom, the Court finds that this factor weighs in favor of detention, but largely for the reasons that the nature and circumstances of the offense weigh in favor of detention.

### C. The History and Characteristics of the Defendant

The third factor—the history and characteristics of the defendant—weighs in favor of Taylor's release. In considering Taylor's history and characteristics, the Court must "take into

10

account the available information concerning" Taylor's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

As the government acknowledges, Taylor has no known previous criminal or violent history. At the stay hearing, defense counsel represented that Taylor is in his early 40s, has been married for "many" years, has three children, serves in his church, and was previously engaged in his community as a business owner. Taylor represents that he has attended family therapy since February 2021 and has been attending individual therapy sessions beginning in June 2021. ECF No. 39 at 5. Taylor has also represented that he has been careful to preserve digital evidence that is relevant to his case. *Id.* at 5 n.2. These factors, combined with his expressed "deep and sincere desire to comply with the rules and instructions of this Court" weigh in favor of release. *Id.* at 5. While Taylor recognizes that his actions on January 6, 2021 support his detention, Taylor characterizes them as an aberration in his life.

The government nevertheless contends that this factor weighs in favor of detention. First, it argues that Taylor "exhibited and continues to maintain an extremist anti-government ideology." ECF No. 11 at 4. Next, it argues that Taylor possesses weapons and is "willing to incite and lead others." *Id.* Finally, the government argues that Taylor lacks remorse, believing that his actions on January 6 were "wholly justified." *Id.* In support of its arguments, the government cites the statements that Taylor made in the days immediately following the Capitol riot. *See, e.g.*, *id.* at 14. The Court addresses each of these arguments below.

First, the Court considers Taylor's "anti-government ideology" only to the extent it is probative of his motive or intent to engage in dangerous conduct. At the hearing, Taylor disputed

11

the extent to which this Court may properly factor his political beliefs into the detention analysis and whether several aspects of his beliefs are properly characterized as "extremist." Taylor is correct that he cannot be held because of his political beliefs. The government acknowledges as much. But the Court may consider Taylor's statements to the extent they are probative of his motive or intent for engaging in unlawful activity. *See United States v. Chansley*, No. 21-cr-3, 2021 WL 861079, at *9 (D.D.C. Mar. 8, 2021). To be sure, Taylor acted on some of his statements leading up to January 6 when he showed up in D.C. with weapons and marched toward the Capitol. But the probative value of Taylor's statements is diminished because Taylor chose not to enter the Capitol because he had weapons. And notably, the government proffers no additional information from which the Court can conclude that Taylor is likely to act upon "an extremist anti-government ideology" in the future. ECF No. 11 at 14; *cf. Hale-Cusanelli*, 3 F.4th at 457 (explaining that the district court properly relied upon defendant's "*extensive* history of statements condoning violence against those of other races and religions" and instances of violent conduct implicating those beliefs) (emphasis added).

The Court is not persuaded by the government's remaining arguments. At issue is whether Taylor's history and characteristics support a determination that no conditions of release could protect the public safety. *See* § 3142(e)(1). But here, several conditions of release *do* mitigate concerns identified by the government. Taylor has already surrendered his firearms, uninstalled and refrained from using social media or encrypted communication platforms, and wears a GPS monitor. Taylor has complied with the restrictions imposed on him while expressing his appreciation for the severity of the charges that he faces and the need to comply with this Court's orders.

12

Nor will the Court place significant weight on any purported lack of remorse under the circumstances here. The government suggests that Taylor's lack of remorse increases the likelihood that Taylor will engage in unlawful activity again. But Taylor has had reason to suspect that he was being investigated for his participation in the Capitol riot from as early as January 27, 2021, when the FBI executed a search warrant at his house. *See* ECF No. 11 at 10. As defense counsel correctly pointed out at the hearing, a statement of remorse could be used against Taylor in his criminal trial as evidence of guilt. Even more telling than Taylor's lack of remorse here is that the government has not proffered *any* additional statements or actions beyond those made in the days immediately following the Capitol riot. And after these private statements to friends, Taylor has not "made any public statements celebrating his misconduct or suggesting that he would participate in similar actions again." *Klein*, 2021 WL 1377128, at *11.

At the hearing on the present motion, the government argues that all of this is part of Taylor's plan. According to the government, Taylor is purporting to "lay low" while ultimately "organizing" further activity, as he stated in his messages to Kinnison on January 10, 2021. *See* ECF No. 11 at 14 (describing Taylor as "willing to incite and lead others"). But again, the government has proffered no evidence that Taylor engaged in *any* additional activity consistent with "organizing" or "incit[ing] and lead[ing] others" after these messages. *Id.* at 14

Even if there is no evidence of Taylor's "remorse" per se, unlike other cases before this Court, the record suggests that Taylor "understands the severity of the charges against him" and will act accordingly. *Chansley*, 2021 WL 861079, at *11. Taylor willingly submitted to additional, more restrictive conditions of release—including a prohibition on social media and encrypted platform use and has expressed in his filings his "deep and sincere desire to comply with all rules and instructions of this Court." ECF No. 39 at 5. Taylor has not only complied with the conditions

of the current operative release order but has also been engaged in additional community service with the permission of his supervising pretrial officer.

The Court agrees that Taylor's actions on and preceding January 6 reflect poorly on his character. However, the Court finds that the other aspects of Taylor's history and characteristics "reflect an ability to abide by the law." *United States v. Gieswein*, No. 21-cr-24, 2021 WL 3168148, at *16 (D.D.C. July 27, 2021). Given Taylor's lack of criminal history, his family and community ties, and the evidence showing that Taylor understands the severity of the charges against him, Taylor's history and characteristics weigh in favor of pretrial release.

### D. Nature and Seriousness of the Danger Posed By Taylor's Release

Next the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4). While the same considerations that inform analysis of the nature and circumstances of the charged offenses are probative of dangerousness, the Court must also find, by clear and convincing evidence, that the defendant "presents an identified and articulable threat to an individual or the community." *Munchel*, 991 F.3d at 1282 (quoting *Salerno*, 481 U.S. at 751). The government has failed to make the requisite showing here.

The government relies in large part on Taylor's conduct on and leading up to January 6, 2021, in support of its dangerousness argument. But the Circuit has indicated that merely identifying the danger that a person posed to others (or even our democratic institutions) on January 6 is not enough to justify pretrial detention. Instead, now that "the specific circumstances of January 6 have passed," *id.* at 1284, the Court should consider whether the defendant "pose[s] a threat of committing violence in the future," *id.*, and make a "forward-looking determination" in its dangerousness assessment, *Hale-Cusanelli*, 3 F.4th at 456.

As this Court noted in its memorandum opinion denying the government's motion for a stay of Taylor's release order, the Circuit in *Munchel* reversed and remanded a detention order despite the fact that

> (1) the defendants [there] engaged in planning for and were prepared for the riot on January 6, 2021, as reflected by their wearing tactical vests and carrying a backpack with "weapons," which they "stowed" outside the Capitol building when they entered the building; (2) one defendant wore a taser that he brought with him to this district, "holstered on his hip" inside the Capitol building; (3) defendants accompanied the crowd inside the Capitol building to help "shut down" Congress, despite knowing tear gas had been used to keep them out; (4) defendants cheered and encouraged members of the crowd to push forward into the Capitol building; (5) defendants picked up "plastic handcuffs known as 'zip ties'" inside the Capitol building to carry with them along with the taser, as they chanted "Treason! Treason!"; (6) defendants breached so deeply inside the Capitol building that defendants entered the gallery inside the U.S. Senate chamber and one defendant discussed stealing the gavel on the Senate dais; and (7) defendants expressed to media outlets after the Capitol assault their willingness to "rise up, band together and fight if necessary" for their political views.

ECF No. 16 at 2 (quoting *United States v. Owens*, No. 21-CR-286, 2021 WL 2188144, at *6 n.4 (D.D.C. May 28, 2021)) (internal citations omitted).

If these facts in *Munchel* were insufficient to support a finding that the defendants "posed an articulable threat to the community in view of their conduct on January 6," *Munchel*, 991 F.3d at 1283, then many of the government's arguments are also insufficient to establish future dangerousness by clear and convincing evidence. As in *Munchel*, the government must proffer something more than Taylor's carrying a weapon and "contribut[ing] to the chaos" on January 6. ECF No. 11 at 15. Indeed, if Munchel's statements to a media outlet that he was willing to "rise up, band together and fight if necessary," *Munchel*, 991 F.3d at 1277, were insufficient evidence of a "an identified and articulable threat," then this Court is unsure how Taylor's private statement

15

to a friend that "Insurrection!" was to follow is enough, ECF No. 11 at 9. And unlike in *Munchel*, Taylor chose *not* to enter the Capitol building *because* he was carrying a knife. ECF No. 1 at 16.

The government argues that the primary difference between Taylor and the defendants in *Munchel* is Taylor's role as a leader and organizer. And at the hearing on the present motion, the government relied on Taylor's January 10, 2021, statement to co-defendant Kinnison that "now is the time to organize" but they would need to "lay low." However, the government has proffered no facts suggesting that during the past seven months, Taylor has engaged in "organization" or other activity indicative of his dangerousness. Even if Taylor were aware that he was being surveilled by the FBI after the raid on his house, the government has proffered no evidence that Taylor acted on his statement to Kinnison in the intervening weeks.

To the extent that the government relies on *Hale-Cusanelli*, where the Circuit affirmed a Capitol riot defendant's pretrial detention order, such reliance is unavailing. It is true that the defendant there and Taylor here both made statements celebrating their participation in the Capitol riot, *see* ECF No. 1 at 16; *Hale-Cusanelli*, 3 F.4th at 452, or calling for violent further action, *compare, e.g.,* ECF No. 1 at 16 ("Insurrection."), *with Hale-Cusanelli*, 3 F.4th at 452 ("civil war"). But in *Hale-Cusanelli*, the Circuit affirmed the district's court's detention decision because the district court made a "forward-looking determination about the serious risk of obstruction of justice and threats to witnesses." *Hale-Cusanelli*, 3 F.4th at 456. The district court based its determination on the defendant's knowledge of a confidential source's identity, his statements about "committing violence against those he feels are pitted against him," his "extensive history" of statements condoning violence, and his "willing[ness] to put [violent] thoughts into action in the past." *Id.* at 454, 457.

16

None of these circumstances is present here. Unlike Hale-Cusanelli, Taylor lacks such an "extensive history" suggesting a willingness to engage in violence. *See supra* pp. 11–14. Nor does the government point to the existence of a particularized threat like the district court recognized Hale-Cusanelli posed to the confidential source. *Hale-Cusanelli*, 3 F.4th at 453. More broadly, the government has not proffered any evidence of "organization" or coordination in the seven months between January 6 and today that is indicative of a threat to the community. And while Hale-Cusanelli had previously "engaged in hateful conduct, if not necessarily violent conduct toward a number of people," *Hale-Cusanelli*, 3 F.4th at 453, and demonstrated his "willing[ness] to put [violent] thoughts into action in the past," *id.* at 454, Taylor chose to *not* enter the Capitol *because* he had a knife. ECF No. 1 at 16.

To be sure, Taylor's alleged conduct is cause for concern and warrants stringent conditions of pretrial release. *See* § 3142(g) (instructing that the court shall determine "whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community"). Taylor may pose *some* continuing danger, given his demonstrated willingness to use unlawful conduct to advance his goals on January 6. But guided by the Circuit's analysis in *Munchel* and *Hale-Cusanelli*, the Court finds that the government has failed to show, by clear and convincing evidence, that Taylor presents "an identified and articulable threat to an individual or the community." *Munchel*, 991 F.3d at 1282 (quoting *Salerno*, 481 U.S. at 751).

In sum, and in light of the government's inability to identify a future threat by clear and convincing evidence, the Court will deny the government's motion to revoke the magistrate judge's release order.

## CONCLUSION

Based on the foregoing, the Court will **DENY** the government's motion to revoke Taylor's release motion by separate order.

Date: 8/11/21

Royce C. Lamberth
United States District Judge