**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

                              Complainant,

        v.

ZACHARY REHL

*(Styled as <u>USA v. NORDEAN</u> incorporating cases
against four Defendants collectively)*

                              Accused

Criminal Case No.

1:21-cr-00175-TJK-3

<u>**SUPPLEMENTAL BRIEF  IN SUPPORT OF ETHAN NORDEAN'S
MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT**</u>

Comes now the Accused ZACHARY REHL, by counsel, and hereby files this

Supplemental Brief in support of Ethan Nordean's Motion To Dismiss First Superseding

Indictment ECF Dkt #94 ("Nordean MTD"), which is joined by Zachary Rehl and the other co-

Defendants in this group and case, and for his reasons states as follows, by counsel:

**I.     COURT'S MINUTE ORDER FOR SUPPLEMENTAL BRIEFING**

On November 3, 2021, the Court ordered by MINUTE ORDER:

> It is hereby ORDERED that the parties shall submit
> supplemental briefing on two issues related to the pending
> [94] First Motion to Dismiss. The parties' briefs shall address
> the following issues:
>
> First, as Defendant Nordean notes, several courts have
> construed "corruptly" to mean acting "with the intent to
> secure an unlawful advantage or benefit either for one's self
> or for another." See ECF No. 113 at 19 (citing cases); see
> also *United States v. Aguilar*, 515 U.S. 593, 616 (1995)
> (Scalia, J., concurring in part).

Is this an appropriate definition of "corruptly" as the word is used in Section 1512(c)?

And if the Court adopted that definition, would Section 1512(c)(2) cover the conduct alleged in the First Superseding Indictment?

Second, the Government has argued that "corruptly" means acting "wrongfully" and "with an intent to obstruct." ECF No. 133-1 at 8. What does it mean to act "wrongfully"?

Does someone act "wrongfully" merely acting "unlawfully," as the Government appears to suggest in its sur-reply, ECF No. 133-1 at 8, or is something more required? The Government shall submit its brief by November 17, 2021;

Defendants shall file any response to the Government's brief by November 24, 2021; and the Government shall file any reply by December 3, 2021.

Signed by Judge Timothy J. Kelly on 11/3/2021. (lctjk1)

## II.    APPROPRIATE = MOST COMMON DEFINITION

Of course the Court cannot craft in a legislative fashion the wisest definition of the word "corruptly," not being a legislature.  The Court probably must conform the definition of "corruptly" to avoid constitutional collisions between 18 U.S.C. 1512(c)(2) and *(i)* the First Amendment and *(ii)* Due Process.  But "appropriate" must mean *(i)* the most common or *(ii)* the most relevant definition of "corruptly."

The definition, such as it is, provided under *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part) *(emphases added)* for 18 U.S.C. 1503.

Finally, respondent posits that the phrase "'corruptly ... endeavors to influence, obstruct, or impede' may be unconstitutionally vague," in that it fails to provide sufficient notice that lying to potential grand jury witnesses in an effort to thwart a grand jury investigation is proscribed. Brief for Respondent 22, n. 13. Statutory language need not be colloquial, however, and the term "corruptly" in criminal laws has a longstanding and well-accepted meaning. It denotes *"[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others* .... It includes bribery but is more

comprehensive; because an act may be corruptly done though the advantage to be derived from it be not offered by another." *United States* v. *Ogle,* 613 F.2d 233, 238 (CAlO) (internal quotation marks omitted), cert. denied, 449 U. S. 825 (1980). See also Ballentine's Law Dictionary 276 (3d ed. 1969); Black's Law Dictionary 345 (6th ed. 1990). **As the District Court here instructed the jury:**

> **"An act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." App. 117.**

Scalia first defines "corruptly" as "***'[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others'***" and then affirms the jury instruction definition that

> "An act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, ***with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person.***"

Thus, Scalia recites two different definitions, but endorses the jury instructions that corruptly means "with a hope or expectation of either <u>*financial gain or other benefit*</u> to oneself or a benefit of another person."

A synthesis of Scalia's analysis would be that "corruptly" is defined as seeking by unlawful means some advantage from an official (or an official giving some advantage) "inconsistent with official duty ***<u>and</u>*** the rights of others" which is done "***with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person.***"

The most common meaning of "corruptly" implies a financial gain to the actor or someone in privity with the actor. There is no precedent of a defendant acting corruptly to benefit some unrelated person. The actual usage suggests that the other person is tied to the actor in such a manner that the actor derives some personal benefit or satisfaction from benefiting the

other person, such as a family member.

The Nordean MTD presents the legislative history of the statute, of course. Also:

"[7]   Black's Law Dictionary defines 'corruptly' as used in criminal-law statutes as 'indicates a wrongful desire for pecuniary gain or other advantage.' Black's Law Dictionary 371 (8th ed. 2004)."  *United States of America vs. Samuel Saldana*, U.S. Court of Appeals for the Fifth Circuit, Case No. 04-50527, Opinion, August 18, 2005 , footnote 7.

*Marinello v. United States*, 138 Ct. 1101, 1114 (2018) is highly instructive:

> The difference between these *mens rea* requirements is significant. While "willfully" requires proof only "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty," *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), "corruptly" requires proof that the defendant "act[ed] with an intent to procure an unlawful benefit either for [himself] or for some other person," *United States v. Floyd,* 740 F.3d 22, 31 (C.A.1 2014) (collecting cases); see also Black's Law Dictionary 414 (rev. 4th ed. 1951) ("corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage"). In other words, "corruptly" requires proof that the defendant not only knew he was obtaining an "unlawful benefit" but that his "objective" or "purpose" was to obtain that unlawful benefit. See 21 Am.Jur.2d, Criminal Law § 114 (2016) (explaining that specific intent requires both knowledge and purpose).

Therefore, Zachary Rehl contends that the best definition of "corruptly" is seeking some advantage from an official (or an official giving some advantage) "inconsistent with official duty ***and*** the rights of others" which is done "***with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person***" to which the actor would not be entitled by proper proceedings.

## III.     THE CONDUCT AT ISSUE FOR 18 U.SC. 1512(C)(2) UNDER COUNTS I and  II

The Court is also considering "And if the Court adopted that definition, would Section 1512(c)(2) cover the conduct alleged in the First Superseding Indictment?" *Id.*

The conduct at issue is that Zachary Rehl entered the U.S. Capitol Building **_35 minutes_** **_after_** the Joint Session of Congress recessed (at 2:18 PM based on the Congressional Record.)[1]

Count II alleging a violation of 18 U.S.C. 1512(c)(2) consists of about 77 words, including repeating the names of the Defendants twice and restating the language of the statute.

The only conduct that Rehl is alleged to have undertaken in violation of 18 U.S.C. 1512(c)(2) is that   **Rehl**  *(alleged jointly the same as for all the Defendants)*  **"unlawfully entered the Capitol grounds or the Capitol building to, and did, stop, delay, and hinder Congress's certification of the Electoral College vote."**  Par. 70.

Even after reviewing the allegations elsewhere incorporated by reference, there is no conduct by Rehl that could, would, or did obstruct any official proceeding under Count II.

In a bail hearing for ZACHARY REHL in the U.S. District Court for the Eastern District of Pennsylvania, the prosecution conceded in proper candor:

> **To be sure, the indictment does not allege that Mr. Rehl engaged directly in violence against officers or destruction of property but there is, nonetheless, a presumption in favor of detention based on his liability for his co-conspirators destruction of property.**

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5 Hearing Before Honorable Richard A. Lloret, United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania, March 26, 2021, Case No.  2:21-mj-526-1, filed publicly as ECF Docket # 9.

Here, among other things, obstructing, stopping, delaying or hindering Congress's certification of the Electoral College vote would not provide any benefit to any of those Defendants or Donald Trump.   Nor would that make the slightest bit of sense.

Because there is no provision for a "hold over" President beyond noon on January 20

---

[1]     Giving intellectual credit to consultant Norm Bradford for this insight and attorney Julia Haller for finding the Congressional Record reerence.

every four years, stopping the certification of the Electoral College votes would not only be irrational but ineffective at producing any benefit.  It would leave the office of the President vacant. [2]

Because there would be neither a President nor a Vice President elected if the Joint Session were obstructed, at 12:01 noontime on January 20, Nancy Pelsoi would have had to succeed to the Presidency under the presidential succession laws.  These Defendants and/or Trump could only achieve a desirable outcome if the Joint Session of Congress were to meet and to do its job and constitutional duty by hearing and resolving disputes within the election in each disputed State.[3]

However, the First Superseding Indictment ("Indictment") alleges that:

a) Rehl entered the Capitol at 2:53 PM (as suggested by a tiny smudge on a photograph of around a hundred people allegedly showing only Rehl's head). Par. 67.

b) But the official proceeding adjourned at 2:20 PM.  Par 21.

c) Indeed, the Indictment explicitly links the official proceeding adjourning to the Capitol being "breached" just before 2:20 PM.  Par 21.

Oh, and Rehl allegedly said things, which are protected Free Speech under the incitement standards set forth by the U .S. Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444 (1969) and *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

The Indictment admits that Zachary Rehl's intent was to encourage Congress "to argue the legitimacy of the Electoral College votes.  The Indictment alleges:

---

[2]      U.S. Constitution, Twentieth Amendment:  Section 1  "The terms of the President and Vice President shall end at noon on the 20th day of January, and the terms of Senators and Representatives at noon on the 3d day of January, of the years in which such terms would have ended if this article had not been ratified; and the terms of their successors shall then begin."

[3]      There is no evidence of the charges but speculation.  Therefore, the lack of any rational reason to obstruct the certification vote directly undercuts that speculation.

**36. On December 23, 2020, REHL posted on social media describing January 6, 2021, as "the day where Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and yes, there will be a big rally on that day."**

Thus, it is an established fact as the law of the case from the Indictment that Zachary Rehl's purpose was for there to "a big rally on that day" because "January 6, 2021 is "the day where Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes."

Thus, it is admitted by the Indictment and established as the law of the case that Zachary Rehl came to D.C. to help hold "a big rally on that day" because he wanted Congress to argue the disputes about the elections in and slates of Electors from various States.[4]

His vision and plan for what should happen on January 6, 2021, would ___**require**___ the Joint Session of Congress to meet and continue meeting through its conclusion.

There is no allegation in the Indictment that obstructing, delaying, etc. the Joint Session of Congress for the counting and certification of Electoral College votes would benefit Zachary Rehl, nor that it would benefit anyone else, including Donald Trump.

---

[4]     Actually, the Proud Boys primarily came to Washington, D.C. on January 6, 2021, to patrol the perimeter of the crowds and the places where crowds were gathered to defend vulnerable demonstrators against violent attacks from ANTIFA, not unlike what Kyle Rittenhouse did in Kenosah, Wisconsin.  The Government argues that the best evidence of what these Proud Boys planned to do *is what they actually did*.  What did they do?  What they actually did, as shown in one 1:40 hour segment of the Eddie Block raw video for his documentary was stand around, smoke a cigarette, take pictures facing away with the Capitol over their shoulder, and patrol around a large rectangle around Capitol Hill taunting Antifa, and chanting once at D.C. police *"DO YOUR JOB!"*  See:  https://capitol-hill-riots.s3.us-east-1.wasabisys.com/User%20Submissions%20-%20UNSORTED/Content/Bad%20WiFi%20in%20dc_oSOsG5kN5wc_Channel_UCMoPOI9EfzVREnO5YMUR0Gw_Eddie%20Block%20Films_.mp4   What they actually planned to do and did was to make sure that the defenseless Trump supporters in the gun free zone of D.C. did not get jumped and stabbed by the rioters who had run amok all during 2020, as ANTIFA had stabbed people on December 12, 2020.  However, within the terms of what the Indictment alleges, the Indictment admits that Zachary Rehl's intentions with regard to the Joint Session of Congress was for Congress to debate and resolve disputes about the Electoral College votes from disputed votes.

If the Joint Session could not meet, then no one could be certified as the winner of the Electoral Collee vote.  No one would be President.  Nancy Pelosi would likely become President under the law of presidential succession.

*(Note that there is no provision in the U.S. Constitution or law for a President to continue in office after noon on January 20 of the year after an election held very four years.)*

CNN has published (somehow) the plan of attorney John Eastman which allegedly Donald Trump and his advisors were following to deal with disputed votes.  The Trump team's plan for what should happen on January 6, 2021, would ***require*** the Joint Session of Congress to meet and continue meeting through its conclusion.  See **EXHIBIT A**, attached. Therefore, there would be no benefit or rationality to Rehl or the other Defendants wanting to obstruct the Joint Session of Congress.  That mantra makes no sense.  It would directly contradict the John Eastman plan for Mike Pence to set aside the disputed slates of Electors from seven (7) states who has sent two slates of Electors.

Rehl is not alleged to have remained in the U.S. Capitol building for more than a few minutes, and was not in or near the House or Senate chambers.  Thus, Rehl also did not delay the reconvening of the Joint Session, unlike some other Defendants in related cases.

None of this is based on disputed allegations of fact, but on the Indictment itself.

Therefore, what is the conduct that the Court should be considering, in asking: "And if the Court adopted that definition, would Section 1512(c)(2) cover the conduct alleged in the First Superseding Indictment?"

That conduct at issue by Rehl was to attend a "big rally that day" to express his beliefs as protected by the First Amendment, express his opinions, and to allegedly step inside the Capitol 35 minutes ***after*** the Joint Session of Congress ***had already recessed*** and

to then leave before his presence would make any difference in the Joint Session reconvening as an official proceeding.  Rehl could not act "corruptly" because he neither sought nor obtained any benefit, financial or otherwise.

IV.  **THE COURT'S QUESTION SHOULD BE CONSIDERED AS REFLECTING THE FUNDAMENTAL AMBIGUITY AND VOID FOR VAGUENESS INHERENT IN THE STATUTE**

Ultimately, there is a reason why the Court was led by the analysis to seek additional briefing on *the best* definition of the element "corruptly" in the crime charged under 18 U.S.C. 1512(c)(2).  The exercise – which the Court must go through – reaches the conclusion that the exercise is a failure in the end, because there is no consistent definition of "corruptly."

Will a person of ordinary intelligence and education be able to know what is prohibited under the statute?  *See Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) (existence of limiting construction by Illinois Supreme Court saved statute from unconstitutionality); *Sessions v. Dimaya*,138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).  Contrast this, however, with the complicated declaratory judgment case of *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010); *Skilling v. United States*, 561 U.S. 358 (2010) (statute saved by limiting construction).

The Government argues in footnote 5 at the bottom of Page 10 that:

> 5  If the jury in Defendants' case nonetheless were instructed on the improper-advantage interpretation of "corruptly," that instruction should not describe that interpretation as the sole definition of the term.  An instruction along the following lines may be appropriate: "A person acts 'corruptly' if he or she acts knowingly, with intent to obstruct or impede an official proceeding, and with consciousness of wrongdoing.  Acting 'corruptly' includes acting with the intent to secure an improper advantage for oneself or another."  ….

The Government argues for <u>*including*</u> the Scalia dissent definition from *Aguilar* and most common definition of "corruptly" as but one, but not the only, meaning of "corruptly."   This discussion may be helpful to the Court in analyzing this issue and suggesting solutions for the

Court to follow.  However, at the same time, this does underscore that the definition of

"corruptly" is unconstitutionally vague and/or ambiguous.

Stuck with a hodge-podge of past precedents, the Government labors to answer the

Court's inquiry by its United States Supplemental Brief on 18 U.S.C. 1512(c)(2).  But forced to

defend the inconsistent treatment of the word and concept, the Government can only convince us

that the term "corruptly" is unconstitutionally ambiguous.

> *\* \* \* We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"—even though spitting in someone's face would surely be annoying. Coates v. Cincinnati,*402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). These decisions refute any suggestion that the existence of some obviously risky crimes establishes the residual clause's constitutionality.

> Resisting the force of these decisions, ***the dissent insists that "a statute is void for vagueness only if it is vague in all its applications."*** *Post*, at 2574. It claims that the prohibition of unjust or unreasonable rates in *L. Cohen Grocery* was "vague in all applications," even though one can easily envision rates so high that they are unreasonable by any measure. *Post*, at 2582. It seems to us that the dissent's supposed requirement of vagueness in all applications is not a requirement at all, but a tautology:

*Johnson v. United States*, 135 S. Ct. 2551, 2561, 192 L. Ed. 2d 569 (2015) *(emphases added).*

The U.S. Supreme Court has taught us not only how a vague criminal statute is

unconstitutional but also how to analyze when parts of a statute can be saved:

> In *Johnson*, a majority of this Court concluded that those decisions ***did not bring sufficient clarity*** to the scope of the residual clause, noting that the federal courts remained mired in "pervasive disagreement" over how the clause should be interpreted. *Johnson*, 576 U.S., at ——, 135 S.Ct., at 2560.

> *The Johnson Court held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States). The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to*

> *give ordinary people fair notice of the conduct it punishes, or so*
> *standardless that it invites arbitrary enforcement."* Id., at ——, 135
> S.Ct., at 2556. *Johnson* determined that the residual clause could not be
> reconciled with that prohibition.
>
> * * *
>
> * * *  In the Johnson Court's view, the "indeterminacy of the wide-
> ranging inquiry" made the residual clause more unpredictable and
> arbitrary in its application than the Constitution allows. Id., at ——, 135
> S.Ct., at 2557. *"Invoking so shapeless a provision to condemn someone*
> *to prison for 15 years to life," the Court held, "does not comport with*
> *the Constitution's guarantee of due process." Id., at ——, 135 S.Ct., at*
> *2560.*

*Welch v. United States*, 136 S. Ct. 1257, 1261-1262, 194 L.Ed.2d 387 (2016) *(emphases added)*.

A statute purporting to criminalize conduct can be unconstitutional *either* if from the standpoint of the person attempting to be law-abiding citizens he cannot reasonably discern before the fact what they are legally allowed to do and what they are not *or* from the standpoint of a public official having unbridled, standardless discretion to effectively make up their own law within the vagueness of the statute.

Most compelling, the Government is forced to identify that the meaning of "corruptly" depends upon what statute it is used in.  But a person of ordinary intelligence cannot know what "corruptly" means if it is different in every or almost every statute in which the term is found.

(a) The Government argues at the top of Page 5 that "corruptly" in 18 U.S.C. 1512(c)(2) is interpreting as requiring "intent to obstruct and wrongfulness."

(b) The Government argues at the bottom of page 7 that "corruptly under 18 U.S.C. 1512(c)(2) acting "with the purpose of wrongfully impeding" the proceeding.

(c) The Government argues on pages 6 that in the context of tax administration under 18 U.S.C. 7212 as seeking a financial "advantage … contrary to law."

(d) The Government argues at the bottom of Page 6 that "corruptly" under 18 U.S.C. 1505 as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering or destroying a document or other information."

(e) In the top half of Page 8, the Government notes that in *United States v. Poindexter*, 951 F.2d 3rd 369 (D.C. Cir. 1991) the D.C. Circuit ultimately declined to adopt a definition because "corruptly" as used in Section 1505 was "to be understood according to [its] common meaning[], necessitating no specific definitional instructions." *Id. at 884.*

(f) On Page 9, the Government argues that Congress provided a definition of "corruptly" when applied to 18 U.S.C. 1515(b).

Thus, a person of ordinary intelligence will not know that to conform his behavior to the law that the term "corruptly" is different depending on what statute is involved.

## V.   ZACHARY REHL'S ALLEGED CONDUCT IS SLIGHTLY DIFFERENT FROM OTHER DEFENDANTS

While the Defendants agree on the interpretation of the law and of the case, there are some slight differences in the factual conduct that the Grand Jury has alleged against the different Defendants here.  This requires the Defendants to have different counsel.

This is uncomfortable because the Court may need to engage in a different analysis for each of the four Defendants here.

The Accused ZACHARY REHL is being prosecuted almost exclusively for the actions of others, and not his own actions, based on a theory of vicarious liability through unidentified aiding and abetting and one count of conspiracy, except that he is alleged to have stepped into the U.S. Capitol building when the January 6, 2021, Joint Session of Congress was no longer a

proceeding in progress, but had recessed at 2:18 PM.  See, "Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1,"  Congressional Record Vol. 167, No. 4, (House of Representatives - January 06, 2021).  Therefore, there was no proceeding to be obstructed.

Excluding statements by Zachary Rehl, subject to the First Amendment and the U.S. Supreme Court's analysis of incitement, requiring high standards that cannot be met here, Zachary Rehl is alleged by the Indictment to have committed the following conduct:

a)  Rehl travelled to D.C. to participate in expressive demonstrations protected by the First Amendment to the U.S. Supreme Court.

b)  Rehl encouraged others to travel to  D.C. to participate in expressive demonstrations protected by the First Amendment to the U.S. Supreme Court.

c)  Note that the Grand Jury neglected to offer a definition of what the "Stop the Steal protest" was that Rehl supposedly promoted.

d)  Rehl *followed* some other identified group of people who "breached" (whatever that means) the "barriers" (bike racks) at the pedestrian entrance, separated in time by some  unidentified period of time.  Paragraph 16 clearly describes two different groups, one group that opened up the bike rack barriers and a second group that allegedly contained Rehl that walked up the long steps from the street.

e)  Rehl was in a crowd, estimated by the U.S. Capitol Police in press statements to be in excess of 10,000 people.

f)  Crowd members – not Rehl -- eventually forced their way through, and over additional Capitol Police barricades and advanced to the building's exterior facade. Par. 19.

g) Other people – not Rehl – broke windows and rammed open doors.  Par. 20.

h) "Other crowd members encouraged and otherwise assisted the forced entry, affording NORDEAN, BIGGS, and REHL the ability to enter the Capitol building.  Par. 20.  However, there is nothing alleged that Rehl was aywhere near these events or knew that anyone or anything was "affording" them the "ability" to enter the Capitol. [5]

i) The vagueness, passive voice, and non-specific language is stunning.

j) Congress recessed at 2:20 PM.  Par. 21.  (The Congressional Record says 2:18 PM).

k) After the Congress had recessed, at 2:53 PM, Rehl is alleged to have peacefully entered the U.S. Capitol Building.  Again, see bail hearing Transcript above. Par. 67.

l) Engaging in meetings and encrypted communications in Washington, D.C..  Par. 28.  The Grand Jury makes no findings and provides no content of any such meetings or communications.

m) Rehl wore normal street clothes.

**n)** Rehl is also alleged to have said things, which are Free Speech under the First Amendment, and which do not qualify as incitement under *Brandenberg v. Ohio.*

## VI.    WHAT IS THE "CONDUCT COVERED ALLEGED IN THE FIRST SUPERSEDING INDICTMENT?"

The Court ordered supplemental briefing including:  "And if the Court adopted that definition, would Section 1512(c)(2) cover the conduct alleged in the First Superseding Indictment?"  This of course begs the question of what conduct is alleged in the Indictment?

But the Government argues that it does not need to be specific about the conduct said to violate the statutes named in the Counts of the Indictment.  The Government has resisted not

---

[5]    One thing that is very disturbing is that at most the Indictment could possibly support others aiding and abetting Zachary Rehl, not Rehl aiding and abetting anyone.  Yet the Government seems tone deaf to the total lack of any support for its charges.

only the identification of all of its evidence reserved for trial, but also clarifying what the conduct was that it alleges violated the statutes in the Counts.

Therefore, we can only apply the statutes (in all of the various Counts) for the purpose of a motion to dismiss using the allegations of fact that the Government has made. The Indictment is threadbare, filled with actions by "someones" unidentified, the passive voice, etc.

How are we to construe the statute if demonstrators brought no weapons, are seen on videos not knowing their way around a public building, the Capitol, when they could have gotten the floor plans on-line, and had no means of disrupting the official proceeding of the January 6 Joint Session of Congress other than sheer numbers.  Yet, there is no way the Defendants could have known that there would be large numbers present that day.  The only method by which the Defendants could have obstructed the Joint Session was by showing up in large numbers.  But they had no power to either control that or know it.

So what conduct does the Government's interpretation of 18 U.S.C. 1512(c)(2) reach?  It cannot be that the mere presence of people in the Capitol Building could disrupt the Joint Session.  The Capitol building – as large as a small cruise ship at 751 feet long [6] -- has hundreds if not over a thousand visitors in the building at any given time.  Yet the presence of people in the building does not prevent Congress from meeting every single business day.   The House Cafeteria alone feeds hundreds of visitors, some for the fun of it, some citizens or professional lobbyists come to speak to their Members of Congress (their staffs), every single day.[7]  There are

---

[6]     Architect of the Capitol, https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building

[7]     "Eat with the staffers who run Congress (Review of Longworth Building Cafeteria)," TRIP ADVISOR, August 23, 2016, ("Unlike the Senate cafeterias and dining rooms where your rank and title gain admittance, anyone is welcome at the Longworth. Democracy in action!"), https://www.tripadvisor.com/ShowUserReviews-g28970-d4168517-r409328710-Longworth_Building_Cafeteria-Washington_DC_District_of_Columbia.html

two (2) gift shops in the building, multiple stationery stores open to the public to buy souvenirs.

The new Chief of the U.S. Capitol Police, Thomas Manger, as one of the government entities bringing the complaint against these Defendants in this case, admitted and confessed among other things, at time stamp 00:18:10:

> **In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations.**

"U.S. Capitol Police News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at: https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally

And again at time stamp 00:20:09

> **We have multiple demonstrations every day.**

So what exactly is the conduct at issue covered by 18 U.S.C. 1512(c)(2).

## VII.   INCITEMENT CANNOT BE CONSIDERED AS THE CONDUCT ALLEGED

Unlike people who are seen on video battling with police -- most of the conduct alleged by these particular Defendants consists of statements that they allegedly made, whether in or out of context.   Those statements may or may not help establish a conspiracy or constitute or refer to overt acts toward a conspiracy.

However those statements, being most of the conduct alleged, cannot be considered under 18 U.S.C. 1512(c)(2) if they are governed by the precedents on incitement or those protecting over-the-top speech as political puffery. [8]

---

[8] The Supreme Court has repeatedly extended First Amendment protection to statements that, in context, do not reasonably state or imply defamatory falsehoods in the requisite sense. In *Greenbelt Co-Op. Publ. Assn., Inc. v. Bresler*, 398 U.S. 6, 13-15 (1970), the Court concluded that use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably be understood to mean the plaintiff had committed a criminal offense.  In context, "even the most careless reader must have perceived that the word was no more than rhetorical

Even the worst of the alleged statements complained of are protected speech under the incitement standards established under U.S. Supreme Court precedents. *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (speech advocating illegal conduct is protected under the First Amendment unless the speech is likely to incite "imminent lawless action.)*; NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) (comments about future possible violence – "anyone who breaks the boycott, I will break your neck" (advocating for everyone listening in the crowd to do the same) - - are free speech protected under the First Amendment to the U.S. Constitution).

## VIII.   SECOND QUESTION:  WRONGFULLY

The Court also asked:

> Second, the Government has argued that "corruptly" means acting "wrongfully" and "with an intent to obstruct." ECF No. 133-1 at 8. What does it mean to act "wrongfully"?

Frankly, Rehl's counsel finds this to be a large philosophical issue but really cannot think of anything to offer the Court beyond the obvious implications and the following points:

First, there are clearly actions that are wrongful but not illegal.  Suppose a member of the public arose in the middle of a Congressional committee hearing, interrupted the hearing, and proposed marriage to one of the staff members of a Senator, sitting behind the Senator.  This might not be the right time or place to do it.  The average person on the receiving end might find it embarrassing.   But it would surely lack any intent to obstruct the hearing corruptly or wrongfully.

---

hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." Id. at 14.  Consequently, "the imposition of liability . . . was constitutionally impermissible" because "as a matter of constitutional law, the word 'blackmail' . . . was not slander when spoken, and not libel when reported in the Greenbelt News Review." Id. at 13.  *Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013).

Or if someone fainted during the hearing (perhaps in response to the proposal) that involuntary act would neither be wrongful nor would it have the intent to be illegal.

Second, conduct can be illegal, unless a carve-out applies. It would be illegal to drive recklessly through stoplights at a high rate of speed. But if the driver were transporting a gun shot victim to the hospital and trying to save the shooting victim's life, the conduct may be illegal but not wrongful.

In regard to an official proceeding, if a father whose daughter was raped in school interrupted a school board meeting to try to explain this to the school board, it could violate the terms of the meeting, agenda, proper timing, and procedures of the meeting, yet not in any sense be wrongful. Such an interruption would surely delay the other agenda items previously planned for the meeting for a short time. But informing the school board and public of details they need to be aware of might be no less important than the business previously planned for the meeting at that moment. If the parent wanted to be heard on important issues of public concern, that would not be wrongful. On the other hand, if the parent after having been fully heard would not allow the meeting to continue on to other business, then it might become wrongful and/or illegal at that point.

But counsel does not find anything helpful to offer the Court.

## IX.     FIRST AMENDMENT REQUIRES NARROWING CONSTRUCTION

Of course, it is a rule of statutory interpretation to construe any statute consistently with the U.S. Constitution rather than to provoke a confrontation with the terms of the U.S. Constitution. *See Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ('Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality' (internal quotations omitted).)

Unfortunately, 18 U.S.C. 1512(c)(2) sits on a fault line between two geologic tectonic plates, so to speak, between the right of free speech and the right to petition the government for redress and to lobby the Congress on the one hand and corrupting government proceedings by threats, intimidation, violence, or as in the normal use of the statute bribery or the like.  There is, unfortunately, an uncomfortably thin veil between First Amendment rights on the one side and illegal interference in a government proceeding on the other.  The thin veil between these makes the analysis here very different from interpreting the usual criminal statute.

The Government tries to transform planning and intending to merely visit the District of Columbia, listen to speakers and protect the crowds, and to demonstrate in favor of the U.S. Congress fulfilling its responsibilities into a completely different plan.  Refusing to confront the distinction between activities protected by the First Amendment and the different, serious allegations which apply only to a few, the Government chills free speech in violation of the First Amendment by sweeping up the peaceful, expressive conduct into an alleged criminal plan.

The Government's behavior is actually a violation of the U.S. Constitution to the extent that the exercise of First Amendment protected speech and conduct is chilled. The refusal of the Government to distinguish between those who peacefully protested and the roughly 150 hooligans who brawled with police means that the FBI and the U.S. Department of Justice is unconstitutionally intimidating the exercise of the rights of free speech, the right to peaceably assemble, and the right to petition the government for redress of grievances.

In _Dombrowski v. Pfister,_ 380 U.S. 479 (1965), the Supreme Court decided that a court may enjoin enforcement of a statute that is so overbroad in its prohibition of unprotected speech that it substantially prohibits protected speech — especially if the statute is being enforced in bad faith.

Here, the FBI and DoJ as government agencies (as well as the U.S. House of Representatives January 6 Committee) have already violated the Constitution by threatening, intimidating, and chilling parents at school boards and patriots at rallies from peacefully assembling, expressing their political beliefs, engaging in free speech, organizing politically, and petitioning the government for redress of grievances – to the extent that the Government intentionally (after having been repeatedly advised against it) confuses and conflates those who came to D.C. to demonstrate and express their opinions on January 6, 2021, with the less than 165 numbskulls (perhaps beered-up) whom the Government charged with brawling with police.

Even if the Court is not persuaded by arguments about other approaches to interpretation, the duty to avoid a conflict with a constitutional right should be independently considered in addition to all other arguments.  This duty is followed whether or not any other rule of construction applies.

As the Government argued in the motion for bail in the Eastern District of Pennsylvania:

> MR. JONES: Yes, very briefly, Your Honor. Mr.
> 11 Rehl's service to the country is admirable. He is not before
> 12 the Court because of his opinions, he is before the Court
> 13 because of his actions and the actions of those that he led.

Transcript of Detention/Rule 5 Hearing, *Supra.*

## X.    LEGAL CONTEXT OF SUPPLEMENTAL QUESTIONS

The Nordean MTD makes many objections to the Indictment.  The most attention has been drawn to whether 18 U.S.C. 1512(c)(2) means what the Government wants to construe it to mean as a matter of law.

The statute may be constitutional *because* it has been in the past narrowly construed.

The Nordean MTD also asserts the Rule of Lenity and the Novel Construction Doctrine – which is well-pled but has received too little attention in the limited time available for argument.

The Nordean MTD argues that even if nothing restrains the Government from construing the various statutes, including 18 U.S.C. 1512(c)(2), as they argue, nevertheless it would be improper if not even a violation of due process to make these Defendants the first to face an expanded construction of the statutes.  Rehl's counsel interprets this to mean that the Court might potentially agree with the Government's construction (or else every future Defendant would always be "the first") but under the doctrines in the nature of an *ex post facto* law decline to assert the novel construction against these Defendants under due process.

The Nordean MTD also implicates:

(1) 18 U.S.C. 1512(c)(2) is also one of two (2) bases for the conspiracy charge of 18 U.S.C. 371 under Count I, not only Count II.

(2) Zachary Rehl is charged with aiding and abetting a violation of 18 U.S.C. 1512(c)(2) but presumably if 18 U.S.C. 1512(c)(2) were found not to apply or being stretched beyond its proper interpretation and application, that the charge against Zachary Rehl in Count II of aiding and abetting would similarly be dismissed.

(3) Counts V and VI under 18 U.S.C. 1752(a)(2) and 18 U.S.C. 1752(c) are challenged

(4) Count III under 18 U.S.C. 231 is challenged.

(5) The Counts supported by allegations of civil disorder are challenged as inadequately pled.

(6) Count IV under 18 U.S.C. 1361 is challenged as inadequately pled.

## XI.   CONCLUSION

The Court should dismiss Count II of the Indictment and part A of Count I (conspiracy). If the Government can allege conduct that is reached by 18 U.S.C. 1512(c)(2) they must so in a factually supported indictment, which they should have done originally.

Dated:  November 19, 2021            RESPECTFULLY SUBMITTED

/s/ Jonathon Alden Moseley
Jonathon Alden Moseley, Esq.
DC Bar No. VA005
Virginia State Bar No. 41058
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s).  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Mr. Luke Matthew Jones, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-7066
(202) 616-8470 (fax)
ahmed.baset@usdoj.gov

**Mr. Jason Bradley Adam McCullough, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
(202) 252-7233
jason.mccullough2@usdoj.gov

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
(202) 252-6986
james.nelson@usdoj.gov

Jonathon Moseley, Esq.