**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Complainant,**<br><br>                    v.<br><br>**ZACHARY REHL**<br>**(Styled as <u>USA v. NORDEAN</u> incorporating cases against four Defendants collectively)** | **Criminal Case No.**<br>**1:21-cr-00175-TJK-3** |

## ACCUSED'S MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY OF GRAND JURY MINUTES

### I. INTRODUCTION

The Accused, Zachary Rehl, has moved this Honorable Court to order the Government to disclose specific information and documents relating to the Grand Jury investigation in this case, pursuant to **Fed.R.Crim.P**. 6(e)(3)(C)(ii), to ensure that no abuse or defects of the grand jury proceeding exist which would warrant dismissal of the indictment against Zachary Rehl. Counsel for Zachary Rehl have a good faith basis for believing such abuse or defects may have occurred.

The Government has failed and refused to respond. The prosecution has – politely as always – acknowledged the request but then totally ignored it (as appears to form a pattern). The Government has neither produced the requested material nor provided an answer as to whether it will or will not do so.

## II. ARGUMENT

While the grand jury in England was able to maintain considerable independence from government prosecutors, the grand jury today is much more dependent on the prosecutor for its successful operation. Indeed, the grand jury normally hears only those cases presented by the prosecutor and only the prosecution's side of those cases." He is responsible for securing the attendance of witnesses whom he selects, and also for the presentation of other evidence. He conducts the examination of witnesses, instructs the grand jurors as to what laws are alleged to have been violated, and draws the indictment. the prosecutor may also command considerable respect from the lay persons constituting the grand jury.

With this added responsibility and power comes the danger that the prosecutor may also be able to prejudice or even manipulate the grand jurors and obtain an indictment when there may not be sufficient evidence to hold an accused for trial. This conduct may take several forms and may occur at different stages in the indictment process. It may occur, for example, when the prosecutor is permitted to use abusive language when discussing the character of the accused before the grand jury. The prosecutor may also attempt to create preindictment publicity, which might include unsubstantiated factual assertions, in the hope of in- flaming public sentiment and reaching prospective grand jurors. The conduct may even be unintentional. But if the prosecutor is successful in obtaining an indictment under

these conditions, the grand jury becomes the "tool" of the prosecutor and no longer protects the interests of the accused.

While the various Judges among whom the various Defendants of what is in reality one single case have been divided may not have taken the time to compare the various indictments, they are in fact like form letters.  Reading the various indictments from those accused from events relating to January 6, 2021, it becomes clear that the Government has merely copied-and-pasted the charges from one Defendant to the next, without thought as to the particular actions of each Defendant.  The threadbare indictments are beyond vague, filled with the passive voice, statements that something happened but not suggesting by whom, strained logic such as A happened and then B happened, therefore A must be connected to B merely because one thing happened earlier in time than the other, innocent conduct, and misinterpretation of statements by Defendants, but worse statements by unknown persons which may or may not have ever been known to the Defendants.

In the "ink blot test" style First Superseding Indictment, in which the reader is invited to imagine what is not there, the Grand Jury admitted that

> **36. On December 23, 2020, REHL posted on social media describing January 6, 2021, Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and as "the day where yes, there will be a big rally on that day."**

Thus, the Grand Jury must have been presented with evidence that Zachary Rehl's purpose and intent was that Congress would <u>argue</u> the <u>legitimacy</u> of Electoral College votes.

But in direct and complete contradiction to Paragraph 36, the Grand Jury irrationally alleges the exact opposite: "**27.  The objects of the conspiracy were (1) to stop, delay, or hinder Congress's enforcement certification of the Electoral College vote, and …**"

These are irreconcilable polar opposites.  Either Rehl acted to urge Congress to meet and argue the legitimacy of Electoral College votes in disputed states.  Or Rehl wanted to prevent the Joint Session of Congress from meeting or at least completing its meeting.  There is no possibility of Rehl having the intent of these completely opposite goals.

No unbiased, rational, sober Grand Jury fully informed could allege two completely opposite positions about Rehl's goals and intentions.

Something on its face is deeply wrong with the Grand Jury proceedings.  An Indictment which alleges **<u>A</u>** and **<u>NOT A</u>** at the same time is deeply flawed.  The easiest reason to believe for this to happens is that the Grand Jury was never presented with sufficient evidence of either, but merely adopted statements spoon fed.

No rational, unbiased, sober jury could believe that the Defendants could have the intent to obstruct a Joint Session of Congress armed only with a radio and goggles.   Something is not right.

Many demonstrators showed up on January 6, 2021.   But these Defendants did not know that would happen and could not know it would happen.

The Grand Jury alleges that Zachary Rehl entered the U.S. Capitol at 2:53 PM (Paragraph 67), yet alleges that the Joint Session of Congress recessed at 2:20 PM (Paragraph 21).   Then the Grand Jury alleges that Zachary Rehl (at 2:53 PM) obstructed the Joint Session of Congress which recessed 33 minutes earlier at 2:20 PM.   What kind of refreshments were being served?   How much sleep did the Grand Jury have?   Could this be the first evidence of time travel?

There is one thing that every thinking human being on Earth knows and agrees upon:   **<u>Nothing that happened at 2:53 PM caused something to occur at 2:20 PM.</u>**

The Grand Jury alleges that the Joint Session of Congress reconvened at 8:00 PM.   (Paragraph 22.)   Nothing that Zachary Rehl did starting at 2:53 PM delayed or contributed to the Joint Session waiting until 8:00 PM to reconvene.

The Chief of the U.S. Capitol Police testified on February 23, 2021, that it was the discovery of pipe bombs that actually caused the recess of the Joint Session of Congress at 2:18 PM (not 2:20 PM) – not the Defendants.

> **"So the assault on the Capitol is not what caused the evacuations of those buildings? The discovery of those pipe bombs is what caused the evacuations of those?" asked Republican Oklahoma Sen. James Lankford.**
>
> **"That is correct, Sir," said Sund** *[then Chief of the U.S. Capitol Police]*.

https://www.youtube.com/watch?v=vtzwYAh1o30&t=2510s   starting at time 41:45

It was the Discovery of Pipe Bombs "[t]hat resulted in the evacuation of two congressional buildings, the Cannon House Office Building, as well as one of the Library of Congress buildings. So it took extensive resources," then-Capitol Police Chief Steven Sund said in a joint hearing before the Senate Rules Committee and Senate Homeland Security and Governmental Affairs Committee, February 23, 2021. [1]

*This is not just a matter of conflicting evidence.   This is the Chief of the complaining agency upon whose behalf the criminal case is brought admitting that these Defendants are innocent*.   The agencies that the U.S. Attorney's Office are representing are (a) the Congress and (b) the U.S. Capitol Police.   The U.S.

Capitol Police's executive head has testified *under oath* before Congress that these Defendants are not responsible for the recess of Congress.



That was at 1:17 PM.



---

[1]   Kevin Johnson, "Pipe bombs placed at RNC, DNC night before Capitol riot; feds up reward to $100,000," USA TODAY, January 29, 2021, accessible at: **https://www.usatoday.com/story/news/politics/2021/01/29/fbi-increases-reward-info-capitol-pipe-bombs-100-000/4309766001/**
[2]   **https://twitter.com/ChrisMarquette_/status/1346883510045466626?ref_src=twsrc%5Etfw**

That was at 1:19 PM.

This is judicial estoppel. This case must be dismissed. It surely creates reasonable doubt.

But it also demands: What information was provided to the Grand Jury to directly contradict the Chief of the U.S. Capitol Police? When Chief Sund testified under oath to the U.S. Senate only 6 weeks later that it was pipe bombs that caused Congress to recess, who testified to the Grand Jury a different story that these Defendants caused the Congress to recess? Who told the Grand Jury a story that directly contradicted the Chief of the complaining agency? If the Chief of the complaining witness agency swears under oath that the Defendants are not responsible, who told the Grand Jury a completely different story?

Later, on September 17, 2021, a new Chief of the U.S. Capitol Police, Thomas Manger, as one of the government entities bringing the complaint against these Defendants in this case, admitted and confessed among other things, at time stamp 00:18:10:

> **In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demon-strations.**

"U.S. Capitol Police News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at:
https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally

And again at time stamp 00:20:09

**We have multiple demonstrations every day.**

Therefore, the mere existence of demonstrations did not obstruct any official proceeding, according to the new head of the complaining witness agency.

The Grand Jury has alleged that the Defendants chose to wear normal street clothes like everyone else.  Yet, not wearing anything unusual the Grand Jury recites as evidence of a crime, of the means of a crime in Paragraph 28 (d). Along with the crime of not wearing distinctive clothing, of unauthorized fashion choices, like the occupation of Europe in the 1930s and 1940s, owning a radio is now illegal in the United States of America.  The possibility – the high probability – that people use walkie-talkie radios at sporting events, concerts, hiking, fishing, kayaking, etc. because cell phone service is unreliable in certain settings, is an alternative but innocent explanation, creating reasonable doubt.

The Government claims that *everyone* on January 6, 2021, was "THE" leader.  There were hundreds of thousands of leaders – but no followers.  It would be exculpatory to know what information the Grand Jury was provided about Zachary Rehl being "THE" leader, the same as hundreds of thousands who were all "THE" leader that day.

It appears undeniable, and the Grand Jury material is necessary to clarify it, that the "conspiracy" alleged consists exclusively of belonging to an organization, in this case The Proud Boys Club.

For example, there are no facts alleged or available that Zachary Rehl ever knew that a Dominic Pezzola ever existed in the universe until they were both indicted. Counsel has learned that Domic Pezzola apparently met some Proud Boys at the December 12, 2020, demonstration and may have joined, perhaps informally (not filling out an application).  But there is no evidence to support the Grand Jury's allegation that Zachary Rehl knew there was even a Dominic Pezzola alive, much less conspired with or aided and abetted this unknown person.

It is clear that the Government and the Grand Jury are convinced that every person who is in some sense a "Proud Boy" is automatically guilty based on group membership alone.   If this invalid reason was the basis for the Grand Jury proceedings, it would be exculpatory under *Brady v. Marlyand.*

Punishing or criminalizing merely belonging to an organization has long ago joined the ranks of contemptible practices no longer tolerated in a modern, decent society.  *Dombrowski v. H Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) tackled these issues from the standpoint of vagueness, but illustrates the concerns.

The landmark case of *NAACP v. Alabama*, 357 U.S. 449 (1958) of course came to this question from the angle of a demand for the National Association for the Advancement of Colored People (NAACP) to disclose its membership lists.  However, the interest being invaded by these demands was that mere membership in a group was being used to punish members and/or presume them to be guilty purely from membership alone.  People who belonged to the NAACP but had committed no other "wrong" would be prejudiced.

Where the Grand Jury indicted Zachary Rehl for *not* wearing distinctive group-membership clothing, not unlike failing to wear a yellow star, one is entitled to examine what on Earth was happening in this Grand Jury.  The likelihood of exculpatory information being revealed is high.

Recall that potentially exculpatory information includes not only evidence of actual innocence, but evidence that may support defenses either as to the proof of guilt or the existence of carve-outs to criminal charges, may argue for a lesser offense or may be mitigating factors in sentencing.  Evidence that shows two or more alternative interpretations of the evidence, one innocent and one of guilt, may be exculpatory.

The Grand Jury alleges a conspiracy, but gives no details including as to when it started, but then blithely alleges that the conspiracy was terminated:

> **40. On January 4, 2021, at 7:15 p.m., DONOHOE posted a message on various encrypted messaging channels, in-**

> **cluding New MOSD, which read, "Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges." DONOHOE then wrote "Stop everything immediately" and then "This comes from the top."**

Thus, the Grand Jury alleges and admits that "There is no planning of any sorts" and "Stop everything immediately."

Yet the Grand Jury nevertheless alleged a conspiracy in Count I.

At best, the Grand Jury alleges that the Defendants terminated and withdrew from any conspiracy as of January 4, 2021, at 1:15 PM. Yet even knowing that any prior planning was terminated and "This comes from the top," the Grand Jury alleged a conspiracy anyway.

We are entitled to know how these mutually-exclusive, self-contradictory allegations resulted.

To have such mutually-exclusive allegations means that there must be exculpatory information supporting one side of these two-sided dilemmas.

With two contradictory positions, it is likely that one of them contains exculpatory information.

Nearly everything about the indictment in this case and in other cases consists of statements by people known and unknown, possibly heard or not heard by any of the Defendants, possibly disagreed with by the hearers. But without

being placed in context and the allegations being so sensitive to interpretation, the Grand Jury transcript, minutes, notes, and evidentiary exhibits are essential.

Under these conditions, the Grand Jury transcript, minutes, notes, and evidentiary exhibits clearly have a significant potential to be exculpatory information under *Brady v. Maryland* and the case is probably subject to dismissal of the charges.   See, *USA v Theodore F. Stevens*, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emett Sullivan,   (Docket No. 257, December 22, 2008);   Anna Stolley Persky, "A Cautionary Tale: The Ted Stevens Prosecution,"   Washington Lawyer *[publication of the D.C. Bar.]*, October 2009.[3]

From its inception in the United States, the grand jury has been regarded as security to the accused against oppressive prosecution and as protector of the community against public malfeasance and corruption. *See, e.g.,* **WOOD V. GEORGIA**, 370 U.S. 375, 390 (1962), where the Supreme Court stated that the grand jury: "has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function ... of standing between the accuser and the accused.... to determine whether a charge is

---

[3] https://www.dcbar.org/bar-resources/publications/washington-lawyer/articles/october-2009-ted-stevens.cfm

founded upon reason or was dictated by an intimidating power or by malice and personal ill will."

Where the indictment mechanism is employed, it must be through a grand jury which is not only "legally constituted", but also unbiased. A tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury or tend to induce actions other than that which the jurors in their uninfluenced judgment deems warranted on the evidence fairly presented before them.   *See e.g.* **UNITED STATES V. WELLS**, 163 F. 313 (D. Idaho 1908), where the motion to dismiss the indictment was supported by affidavits of grand jurors alleging that the prosecutor made statements to the grand jury about the strength of his case against the defendant, the court dismissed the indictment, holding that when the prosecutor not only expresses his opinion but urges the finding of an indictment and it is clearly shown that the grand jurors must necessarily have been influenced, then prejudice will be presumed. The court in supporting that decision stated: "[T]o sustain such an indictment would be to establish a precedent to which political partisanship, religious intolerance for the latter is quite apt to exist as the former could point as a justification for upholding the return of an indictment through popular demand, public excitement, persecution, or personal ill will. *Id.* at 327.

In **UNITED STATES V. SWEIG**, **316** F. Supp. 1148 (S.D.N.Y. 1970). the defendants alleged that the Department of Justice and other governmental agencies had generated publicity prior to their indictments. It's an undisputed fact that the very same governmental conduct has happened in this case.

The **SWEIG** court gave the defendants the opportunity to establish the necessary connection, suggesting that it might be appropriate to permit the defendants to study the grand jury minutes to establish a claim of prejudice. The court should do the same here!

In the instant case, the disclosure of the requested grand jury material clearly outweighs the need for secrecy. Zachary Rehl is charged with crimes which, if he is convicted, carries a sentence of at least twenty years' incarceration. More importantly, the United States Supreme Court's holding in **UNITED STATES V. MECHANIK**, 475 U.S. 66 (1986), and its progeny, have firmly established that any claim for abuse or defect of the grand jury must be remedied prior to trial because in **MECHANIK**, the Supreme Court held that a verdict of guilty insulates such a claim from appellate review by finding such error harmless. Therefore, it is essential that Zachary Rehl be provided disclosure of the specific grand jury material requested in order that he be given a realistic opportunity to file a motion to dismiss the indictment based upon any abuse or defect of the grand jury proceeding he may uncover.

Rule 6(e) of the Federal Rules of Criminal Procedure allows virtually anyone associated with the grand jury to give testimony about what happened at the proceedings upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

Closely associated with the federal rule are several United States Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses appearing before a federal grand jury when he can show a particular need for this testimony. *See,* **UNITED STATES V. DENNIS**, 384 U.S. 855 (1966); **UNITED STATES V. PROCTOR & GAMBLE**, 356 U.S. 677 (1958).

The particularized need in this case is obvious. Overwhelming pretrial publicity up to and including the time of the grand jury proceedings has been established. Under these circumstances, a transcript of the grand jury proceedings would establish the actual prejudice of pretrial publicity. Therefore, release of the grand jury transcript is essential to meaningful review of this motion.

"Secrecy for secrecy's sake should no longer be the rule.... Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded on sound reason." **PARPLIANO V. DISTRICT COURT**, 176 Colo. 521, 527, 491 P.2d 965, 968 (1971). *See* also, **UNITED STATES V. MARION**, 404 U.S. 307 (1972); ***IN RE* PROCEEDINGS BEFORE THE GRAND JURY SUMMONED** October 12, 1970, 321 F.Supp. 238 (N.D. Ohio 1970).

In the instant case, the massive amount of pre-indictment publicity irreparably prejudiced the grand jury, and this rendered the indictments totally defective.

At minimum, if this Honorable Court denies disclosure of the requested grand jury materials to the defense, it is respectfully submitted that this Court should conduct an in camera proceeding to review the grand jury record to determine whether there was any abuse or defect in the Accused's grand jury proceeding. See **UNITED STATES V. EDELSON**, 581 F.2d 1290, 1291-1292 (**7th Cir.** 1978), cert. denied, 440 U.S. 908 (1979).

### III. CONCLUSION

Based upon the foregoing, the Accused respectfully requests this Honorable Court to enter an order granting the relief requested and for such other and further relief as this Court deems necessary and proper.

Dated: November 23, 2021    RESPECTFULLY SUBMITTED
ZACHARY REHL, *By Counsel*

/s/ Jonathon Alden Moseley
Jonathon Alden Moseley, Esq.
DC Bar No. VA005
Virginia State Bar No. 41058
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:   (703) 656-1230
Facsimile: (703) 997-0397
Contact@JonMoseley.com
Moseley391@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s). From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Mr. Luke Matthew Jones, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, DC 20530
Telephone:   (202) 252-7066   Facsimile:   (202) 616-8470
**ahmed.baset@usdoj.gov**

**Mr. Jason Bradley Adam McCullough, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
Telephone:   (202) 252-7233
**jason.mccullough2@usdoj.gov**

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
Telephone: (202) 252-6986
**james.nelson@usdoj.gov**

_____
Jonathon Moseley, Esq.