**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Complainant, | |
| v. | Criminal Case No. |
| ZACHARY REHL | 1:21-cr-00175-TJK-3 |
| Accused | |
| *(Styled as <u>USA v. NORDEAN</u> incorporating cases against four Defendants collectively)* | Assigned to the Honorable Timothy J. Kelly |

<u>**ACCUSED ZACHARY REHL'S MOTION FOR INSTRUCTIONS
FOR EVALUATION FOR QUALIFYING FOR PUBLIC DEFENDER AND
ALTERNATIVE MOTION  TO WITHDRAW
WITH INCLUDED MEMORANDUM OF LAW**</u>

Comes now the Accused ZACHARY REHL, by counsel, and hereby moves the Court to provide direction to the pre-trial services office and/or public defender's office to evaluate Zachary Rehl's circumstances to see if he will qualify for a public defender, and for his grounds states as follows:

Counsel has been informed indirectly that Zachary Rehl wishes to apply for provision of a public defender.

However, Zachary Rehl has been advised that he cannot apply for a public defender without current counsel first withdrawing.

Counsel believes that to be incorrect but in any event asks the Court to direct pre-trial services to interview Zachary Rehl and provide his financial details to evaluate if he will qualify for a public defender, regardless of what may be the normal approach they prefer or consider

routine.

Having current counsel withdraw *before* knowing if Zachary Rehl will qualify or not for a public defender is a bad idea for many reasons:

1) This would create significant delay, worse than just a change of counsel, because it would leave one of the Defendants in limbo for a time.

2) Normally a substitution of counsel is not effective until the judge signs the order changing the attorney.  The current attorney remains responsible for the case and continues to carry out any duties or meet any deadlines or address any business of the case until the judge signs the order of substitution.

3) Here, however, if the attorney must withdraw before the client is evaluated for a public defender then during that period of time the Defendant would have no attorney to answer to the Court or carry on business.

4) Similarly, if Zachary Rehl is not granted a public defender, then current counsel would need to re-enter the case.  That would be wasted motion and time and effort.

5) Please note that these considerations are not dependent upon Zachary Rehl being constrained to continue with his current attorney.  It would be beneficial for him to know if he qualifies for a government-appointed attorney even if he were to choose a different private retained attorney or not.

6) Current counsel has not had the chance to travel to Philadelphia, 6.5 hours round-trip not counting stops, to discuss these concerns with Zachary Rehl.

7) Until he can get up there maybe next week, mid-week, he is not able to understand his concerns and consult with the client as to his options and methods to address his goals and concerns.

8) However, the only issues raised indirectly to current counsel are financial.

9) Nevertheless, the present time is a particularly bad time to make a chance.  A private legal defense fund of a foundation has verbally agreed to donate $20,000 towards Zachary Rehl's legal defense, but their mission is to make sure that January 6 defendants are not forced to rely upon public defenders.

10) It is clear to the undersigned counsel that there are some very good public defenders in this case, at least one clearly better (more diligent, active, involved, knowledgeable about every aspect of the cases, driven to win) than most privately retained attorneys.  However, it is simply the foundation's pitch and appeal to donors and their work in choosing to donate that January 6 Defendants should not be forced to take the luck of the draw.  Among other concerns that the foundation is seeking to address from their perspective is that a client normally chooses a private retained attorney who is of the same mindset and is a believer in the client's positions.  A public defender highly competent might be random in terms of their predispositions and enthusiasm for a particular controversial client's case.  In any event, that is the foundation's reason for donating, whether their goal is seen as right or wrong.)

11) The foundation has made one $10,000 donation but it is unclear if they will make the second donation.  The second $10,000 donation might not be available to Rehl if he changes from a retained attorney to a public defender.

12) Current counsel is owed about $23,000 for attorneys' fees, paralegal fees, and expenses after applying the $10,000 donation.

13) Current counsel is charging an extremely discounted low-rat of $100 to $150 per hour, but the workload is very high.  (This bill has been increased by the fact that

current counsel has not received any case file or client file from the previous attorney and has not received any discovery from either the prior attorney or the government.)

14) The foundation might be persuaded to donate further to clear the past legal fees and expenses, but again their goals include funding private retained attorneys for January 6 Defendants.

15) The foundation is of course <u>not</u> requiring Zachary Rehl to choose any particular attorney, but Rehl would have to first deal with the outstanding legal balance.

16) However, changing attorneys of course should not be an excuse not to pay a client's legal bills.  Churning attorneys leaving unpaid bills would not be appropriate.

17) Meanwhile, current counsel has also been negotiating with another legal defense fund which is open to paying Zachary Rehl's legal fees going forward, again at an extremely-discounted low rate, but still carrying all of the burden of legal defense for Zachary Rehl and his family.  (To be clear, the donation would involve the entire cost to Zachary Rehl, if it is approved.  This is not a donation toward legal bills in which Zachary Rehl would be stuck with the balance.   The arrangement would limit Rehl's responsibility to only the donated amount from the foundation, and no more.)

18) Coverage by this second legal defense fund would continue going forward, not only dealing with past bills, but also future bills.

19) However, counsel is still waiting for approval from the foundation.

20) Again, for coverage going forward Zachary Rehl would not be limited to any particular private retained attorney.

21) However, clients, attorneys, legal defense funds, and interested observers are seeing an acute shortage of private attorneys able and willing to help Defendants from the

events of January 6, 2021.  Even those who normally would handle such cases are unwilling to do so with these controversial events or clients.

22) Current counsel's application for the second foundation's funding also requests that the second foundation cover Rehl's legal bills for November (probably the most we can ask for) which would further reduce Zachary Rehl's outstanding legal bill to nearly zero as a balance due, down to about $3,000.

23) Meanwhile, Zachary Rehl's family has received donations at a fund-raising page which would be enough to cover all of his outstanding legal bills, although the case is of course far from over.  However, the fund-raising platform (most are black-balling January 6 Defendants) deducts fees of around 21% and is refusing to release any of the funds until the campaign goal of $75,000 is reached.  I am informed that Rehl family has tried to straighten this out with the platform to receive a disbursement. The donations are requested for the purpose of legal defense and expenses.

24) Therefore, it would be a particularly unfortunate time for current counsel to withdraw merely to find out if Zachary Rehl could convert to a public defender or not.

WHEREFORE, Zachary Rehl by counsel requests an instruction from the Court to authorize and allow pre-trial services and/or the public defender's office to interview and consider Zachary Rehl to see if he qualifies for a public defender.

In the alternative, if this cannot be done without Jonathon Moseley first withdrawing as Zachary Rehl's attorney, then Zachary Rehl has personally asked for the Court to order the withdrawal of Jonathon Moseley as counsel so that he can proceed with an interview and evaluation for a public defender.

Dated:  December 5, 2021            RESPECTFULLY SUBMITTED,
                                    ZACHARY REHL, by counsel

Jonathon Alden Moseley, Esq.
DCDC Bar No. VA005
Virginia State Bar No. 41058
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

## CERTIFICATE OF CONSULTATION

Counsel for Zachary Rehl inquired of the prosecution's position on this motion on

December 3, 2021, and the prosecution takes no opinion or position on this motion.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s).  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Mr. Luke Matthew Jones, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-7066
(202) 616-8470 (fax)
ahmed.baset@usdoj.gov

**Mr. Jason Bradley Adam McCullough, Esq.**

U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
(202) 252-7233
jason.mccullough2@usdoj.gov

**Mr. James B. Nelson, Esq.**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street NW, Room 4112
Washington, DC 20530
(202) 252-6986
james.nelson@usdoj.gov

Jonathon Moseley, Esq.