```
                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            CR No. 1:21-cr-00175-TJK-3

v.                                  Washington, D.C.
                                    Tuesday, December 14, 2021
ZACHARY REHL,                       10:00 a.m.

              Defendant.
- - - - - - - - - - - - - - - - - x
_____
               TRANSCRIPT OF STATUS CONFERENCE
          HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                  UNITED STATES DISTRICT JUDGE
_____
APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Erik M. Kenerson, Esq.
                          Jason B.A. McCullough, Esq.
                          James Pearce, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendant:        Jonathon A. Moseley, Esq.
                          JONATHAN MOSELEY ATTORNEY AT LAW
                          5765-F Burke Centre Parkway
                          #337
                          Burke, VA 22015
                          (703) 656-1230

Also Present:             Michelle M. Peterson, Esq.
                          FEDERAL PUBLIC DEFENDER FOR THE
                          DISTRICT OF COLUMBIA
                          625 Indiana Avenue, NW
                          Suite 550
                          Washington, DC 20004
                          (202) 208-7500 ext 125

                          Carmen D. Hernandez, Esq.
                          7166 Mink Hollow Road
                          Highland, MD 20777
                          (240) 472-3391

Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
```

```
 1                    P R O C E E D I N G S
 2              THE DEPUTY CLERK:  We are on the record in
 3    criminal matter 21-175, United States of America v.
 4    Defendant 3, Zachary Rehl.
 5              Present for the Government are Jason McCullough,
 6    Luke Jones, Erik Kenerson, and James Pearce; present for
 7    Mr. Rehl is Jonathon Moseley; and also present are Michelle
 8    Peterson and Carmen Hernandez.
 9              THE COURT:  All right.  Well --
10              MR. JONES:  And, Your Honor, I just want to note,
11    since we're under seal, my supervisor -- our supervisor,
12    Jocelyn Ballantine, is in the office with me.
13              THE COURT:  All right.  Very well.  Thank you for
14    noting that.
15              And we are proceeding under seal here at least at
16    the moment because I'm not sure whether -- we may or may not
17    be discussing matters that I have placed under seal in this
18    matter, but in the first instance, I thought it made sense
19    to proceed under seal.  Maybe we'll get to those things;
20    maybe we won't.  But the subject of our -- of what we need
21    to address here today is Mr. Rehl's representation.
22              So I have a series of pleadings, including,
23    Mr. Moseley, your conditional motion to withdraw.  And so I
24    guess I want to start really with Mr. Rehl because --
25    especially because time -- we have -- I understand we have
```

1   the limited time here.

2           Mr. Rehl, is it your intention to hire
3   Ms. Hernandez -- Ms. Carmen Hernandez to be your lawyer
4   going forward and not to have Mr. Moseley represent you?

5           THE DEFENDANT:  That's what I would like, Your
6   Honor.  Yes.

7           THE COURT:  All right.  Now, Mr. Moseley has filed
8   a bunch of things -- a bunch of notices on the docket that
9   express concern that this -- that such a decision might not
10  be your own -- of your own free will or that you're being --
11  you might be, sort of, being manipulated in some way or that
12  there's some consideration here that doesn't make this your
13  own full -- free and fully informed choice.  So just -- I
14  just want to make sure that none of that is true.  He -- I
15  don't think, in fairness to Mr. Moseley, he was saying that
16  was true either, but he was certainly raising the
17  possibility that it could be the case.

18          So Mr. Rehl, I just -- I don't want you to give
19  away any attorney-client -- I don't want you to violate the
20  attorney-client privilege or anything you might have -- any
21  communications you might have had with Mr. Moseley, but I
22  just want to make absolutely sure that that's how you would
23  like to proceed and that there's -- that's something you
24  thought about, you think you have all the information you
25  need to make that decision, and that's what you'd like to

1   do.

2              THE DEFENDANT:  Yes, Your Honor.  That's actually
3   100 percent my decision.  I was not manipulated or talked to
4   by any other person at all besides my wife and that's the
5   decision me and her came to and full -- wholeheartedly ready
6   to go forward with that decision.

7              THE COURT:  All right.  Mr. Moseley, is there
8   anything else -- let me do two things.  First is, I just
9   want to inquire whether you think there's anything else I
10  should inquire of about Mr. Rehl specifically to make sure
11  that this is a fully informed decision.  But before you do
12  that, I wanted to make the point to you just in reading your
13  -- in reading the things you filed perhaps -- I don't think
14  they were filed under seal, but I wanted to make this point.
15  My understanding of, kind of, the way this played out was
16  once there had been an issue with whether Mr. Rehl qualified
17  for a CJA attorney or not, I -- Ms. Peterson -- and,
18  Ms. Peterson, you can correct me if I'm wrong about any of
19  this -- Ms. Peterson contacted my courtroom deputy to inform
20  her that, in fact, Mr. Rehl had been screened for this in
21  the past and that if we wanted to have someone lined up, she
22  would do so.  That is, just to inform you, Mr. Moseley, a
23  standard, sort of, function that the Federal Public Defender
24  plays in this jurisdiction that if I need to find a CJA
25  attorney, that the Federal Public Defender's Office will

1    find someone from our approved CJA list, step in, and
2    represent someone.  So there was nothing untoward about
3    Ms. Peterson having seen that on the docket, reaching out to
4    Ms. Harris to say, Oh, by the way, he's already been
5    screened for someone, he qualifies, and we can line someone
6    up if that's appropriate.  Then I can't recall exactly how I
7    heard -- I think we, at that point, reached out and said,
8    Yes, that makes sense, just in case -- not knowing how
9    today's proceeding will play out, but reached out and said,
10   Yes, if there's someone that you all know that's ready,
11   willing, and able to defend Mr. Rehl, let's bring her to
12   today's hearing and we could hash out -- hash that out now.
13              So in any event, Mr. Moseley, I just wanted to put
14   that on the record that I don't think there was anything
15   untoward about how that all played out.
16              MR. MOSELEY:  Well, I --
17              THE COURT:  Go ahead.
18              MR. MOSELEY:  May I -- because normally, it would
19   not take much to document a client's, you know, desire to
20   change counsel or something like that.  Normally, they get a
21   new counsel and they could call me up and say, Here's my
22   substitution order.  Will you please sign it?  The
23   difference here is we're getting very contradictory
24   information and information forwarded through, you know, a
25   person who's not a legally trained -- or a person who's done

1     a lot of these things.  So I think that what you're
2     describing about an inquiry is fine.  And normally when one
3     is applying for a CJA or a Court-appointed -- or a Court --
4     a public defender, there isn't another attorney to contact.
5     So I can understand why habits may not involve that.  But
6     all of this has to do with a letter in -- September 7th
7     saying that he is not qualified, in effect, by saying, Here
8     is the form he needs to file out.  So -- fill out.  So
9     everybody's saying -- including other counsel in this
10    case -- interfering, saying that, in August, he qualified,
11    and here I have this September 7th letter saying, in effect,
12    that he hasn't; here's what he has to do to qualify, and
13    telling me to, you know -- to -- with unofficial
14    information, to dump him in the hope that someone will catch
15    him.  And I've got this letter saying he hasn't qualified
16    and that he doesn't -- I don't have to withdraw because
17    Mr. Shaka Johnson was alongside Shelli Peterson.
18            So what I need, you know -- what would normally be
19    a fairly simple thing, you know -- I need, you know,
20    assurance for my responsibilities that all these
21    contradictory information -- like, what is the actual fact?
22    And I don't appreciate nobody just picking up the phone and
23    saying with authority that this is the situation.  And I'm
24    not sure that the procedure you've described, without
25    sharing that with a private retained attorney when I'm in

1    the position of saying am I, you know -- suppose I withdrew
2    and then it founds [sic] out, Oh, all this noise going
3    around was not true.  That would not be acceptable for me.
4    I mean, from other people looking at me doing that.  So I
5    think that I need, you know, just to be able to have for my
6    file, the certainty about this contradictory information --
7             THE COURT:  Okay.  Can --
8             MR. MOSELEY:  -- and -- mm-hmm.
9             THE COURT:  Can you just --
10            MR. MOSELEY:  Yes?
11            THE COURT:  Can you just clarify for me for the
12   moment, who -- and I'm sure this was in what you filed --
13   but where did the information come that Mr. Rehl did not
14   qualify?
15            MR. MOSELEY:  From Shelli Peterson's letter.
16            THE COURT:  All right.  So --
17            MR. MOSELEY:  She sent -- she's telling me, Here's
18   how -- what he has to do to qualify.
19            THE COURT:  All right.  Very well.
20            Ms. Peterson, I'd like to hear from you.  Could
21   you, sort of, clear up this ambiguity.  It sounds like, at
22   the end of the day, we're all agreed that he does qualify.
23   He has qualified now.  So whatever happened -- whatever
24   representations may have been made in the past are, kind
25   of -- been mooted.  But, Ms. Peterson, would you -- I'll

1   hear from you on this.

2   MS. PETERSON: Your Honor, Mr. Rehl was never
3   found to not qualify. What Mr. Moseley is referring to is
4   an email he sent me when Shaka Johnson was coming off the
5   case saying that he was going to be entering his appearance
6   and was inquiring as to whether I -- he wasn't going to
7   enter his appearance if I was still representing Mr. Rehl.
8   I explained I was not representing Mr. Rehl. I had only
9   stood in at the Court's request because Mr. Johnson was not
10  a member of the bar. So I was at the proceedings for that
11  limited purpose. And I said -- so if he was entering his
12  appearance as retained counsel, he could; if Mr. Rehl wanted
13  Court-appointed counsel, here's the financial affidavit that
14  you complete. He had -- his wife had already obtained a
15  financial affidavit. That financial affidavit was submitted
16  to our office. In the standard course, it was submitted to
17  the magistrate judge who approved it. In the meantime,
18  Mr. Moseley was retained and entered his appearance. So no
19  one was appointed for Mr. Rehl. But he has never been found
20  not eligible.

21  THE COURT: All right. And as far as today goes,
22  he is eligible?

23  MS. PETERSON: Absolutely. There is no reason --
24  THE COURT: All right.
25  MS. PETERSON: -- to believe he is not.

1           THE COURT:  All right.
2           MR. MOSELEY:  And, Your Honor --
3           THE COURT:  Yes.  Go ahead, Mr. Moseley.
4           MR. MOSELEY:  And that means someone who can drive
5   six hours round trip within perfect traffic --
6           THE COURT:  Well, that's not part of the
7   eligibility analysis.  That's part of what Mr. Rehl may want
8   to decide one way or the other about whether he wants to
9   have a new counsel appointed.  So I don't -- that's not part
10  of the financial analysis, of course.  And Mr. Rehl has said
11  he would like Ms. Hernandez to be his attorney.  So I don't
12  -- it's clear that he's eligible.  It's clear that he would
13  like Ms. Hernandez to be his attorney.
14          Ms. Hernandez, you are on the phone -- you -- I
15  know you're not with us by video.  But you're with us by
16  audio; is that correct?
17          MS. HERNANDEZ:  Yes, Your Honor.  I'm here by
18  audio.
19          THE COURT:  Okay.  And you are ready, willing, and
20  able to defend Mr. Rehl; is that correct?
21          MS. HERNANDEZ:  Right.  I was asked to be
22  available to be appointed under the CJA.  I'm familiar with
23  these cases, I'm experienced, and I am available.
24          THE COURT:  All right. Well, I don't see a reason
25  why, then, I shouldn't just go ahead and order you to

1    represent Mr. Rehl and leave it at that.

2            And, Mr. Rehl, obviously, I don't --

3            And, Mr. Moseley, is there any reason I shouldn't

4    grant your motion to withdraw, then?

5            MR. MOSELEY:  No, that was my condition.  I'm also

6    concerned whether he understands the consequences

7    financially of the private donations, but, as I said, I --

8    my concern is the contradictory information I had and

9    whether I would be guilty of, you know, throwing somebody

10   overboard and just hoping somebody would catch him.

11           THE COURT:  Sure.  Understood.  And we don't want

12   -- we certainly don't want that to happen.  So Mr. Moseley,

13   I will grant your motion to withdraw, particularly since

14   there doesn't seem any reason not to do that now, and

15   appoint Ms. Hernandez under the CJA Act to represent

16   Mr. Rehl.

17           I think, at the end of the day -- well, is there

18   anything -- let me put it this way.  Anything further any

19   party thinks -- anything further on this particular matter

20   that any party thinks they need to say their piece about?

21           (Brief pause.)

22           All right.  Seeing no hands raised --

23           MR. MOSELEY:  (Indicating.)

24           THE COURT:  Mr. Moseley?

25           MR. MOSELEY:  Just on a technical issue after that

```
 1    topic is -- it probably will never matter, but I would hope
 2    -- it's easier to ask now that what we've covered so far
 3    doesn't need, you know -- if I need a transcript of what
 4    happened, that it doesn't need -- it could be available.
 5              THE COURT:  You mean a transcript of this hearing
 6    right now?
 7              MR. MOSELEY:  Yes --
 8              THE COURT:  Yes.
 9              MR. MOSELEY:  -- just to --
10              THE COURT:  Well --
11              MR. MOSELEY:  -- just so -- for my records.
12              THE COURT:  Sure.  I understand.  And that's the
13    last thing I was going to address before --
14              MR. MOSELEY:  Oh, I'm sorry.
15              THE COURT:  That's all right.  Not exactly that,
16    but does anyone think, then, that our -- there were some
17    matters that are under seal in this case that I thought our
18    hearing today might -- had it gone a different direction, we
19    might have had to touch on.  It has not.  And so I don't
20    think, at the end of the day, the transcript of this hearing
21    need be placed under seal, but let me just ask any party
22    whether they disagree with that.
23              MR. JONES:  The Government doesn't disagree; does
24    not believe this needs to be under seal.
25              THE COURT:  All right.
```

```
 1                   MR. MOSELEY:  Although, Your Honor --
 2                   THE COURT:  Okay.
 3                   MR. MOSELEY:  -- perhaps Your Honor might want to,
 4       you know -- in order to defend my position, I've put in some
 5       detail -- some people have wondered about -- I think I have
 6       a motion and I have a memorandum.  Perhaps if there's any
 7       details, you know, that are financial in there addressing --
 8       the Court might want to redact those or seal my memorandum.
 9                   THE COURT:  Well, have you -- has your -- was your
10       memorandum filed under seal?
11                   MR. MOSELEY:  No.
12                   THE COURT:  Well, I mean --
13                   MR. MOSELEY:  Maybe it should have been, but --
14                   THE COURT:  I don't know what to tell you.
15       Whatever --
16                   MR. MOSELEY:  Okay.
17                   THE COURT:  -- the parties have put on -- have
18       willingly put on the record in the public domain, if you all
19       -- if you want to come back and argue for me that some parts
20       of it should be redacted and brief it and set out the legal
21       standard and explain why, I'm all -- I'll certainly consider
22       your motion, but -- I mean, everything that I'm -- every --
23       the matters that I'm talking about were largely things that
24       were filed by the Government under seal.  We haven't had to
25       discuss them here today.  So I don't think that's a reason
```

```
 1     to place this under seal.
 2                And, again, Mr. Moseley, if there's something
 3     that's out there that you filed on the public docket that
 4     you now think should be sealed, you can go ahead and make
 5     your pitch for that, but I don't think we need to handle
 6     that here today.  Does that make sense?
 7                MR. MOSELEY:  (Indicates affirmatively.)
 8                THE COURT:  All right.
 9                MR. MOSELEY:  Yes.
10                THE COURT:  All right.  Very well.
11                So for everyone else --
12                Mr. Rehl, I understand -- so Mr. Rehl, you're
13     going to have Ms. Hernandez now.  My understanding is that
14     we're going to lose you at 11:00 o'clock.  So it is very
15     likely that you will not be present for that -- for our
16     11:00 o'clock status which really will involve me ruling on
17     some things, announcing how I'm ruling on something else,
18     and us setting a next date.  So what I think the best --
19     most productive use of the remaining amount of time we have
20     with you -- this is a little unusual, but --
21                Ms. Harris, can we facilitate allowing Mr. Rehl
22     and Ms. Hernandez to have the next 10 minutes until we lose
23     Mr. Rehl to communicate?
24                And, Ms. Hernandez, obviously, you'll be present
25     when we -- whenever we can -- we're trying to figure out
```

1    whether we're going to be able to have all of the defendants
2    present at the same hearing today -- I'm hopeful that we
3    will -- except for Mr. Rehl.  It sounds like we won't have
4    him.  But you -- Ms. Hernandez, if you want to talk to him
5    about waiving his --
6               MS. HERNANDEZ:  Presence.
7               THE COURT:  -- or waiving his presence for that
8    hearing, I'm not going to hear any substantive argument
9    about anything.  It's really going to be me ruling on a
10   motion -- the motion -- the various motions -- detention
11   motions that are before me, I'll be talking about another
12   ruling, and then we'll be setting a next date.  We also have
13   -- we have motions pending that, actually, Mr. Moseley has
14   filed on behalf of Mr. Rehl that you're going to want to get
15   up to speed on if you haven't already.  They toll the speedy
16   trial clock at the moment, I believe.  So it's not even a
17   question of the speedy trial necessarily.  But at least as
18   far as waiving his appearance, let me give you the
19   opportunity to meet with him just to waive his appearance.
20   I really don't even -- I'm not sure even -- that's even
21   necessary given that, again, I'm not really hearing
22   argument; I'm just going to rule on something.  And -- but
23   anyway, let me give you that opportunity to confer with him
24   in private, and then we'll see you back when we gather
25   everyone else as soon as we can to try to get everyone but

```
 1    Mr. Rehl at least on the line at the same time.
 2              Does that make sense, Ms. Hernandez?
 3              MS. HERNANDEZ:  Your -- yes, sir.  Your Honor, one
 4    question with respect to motions that have been filed.  Will
 5    the Court give me an opportunity to file new motions if I --
 6    if, in consultation with Mr. Rehl, I believe those are
 7    appropriate?
 8              THE COURT:  Yes.  The -- we don't -- we have not
 9    had a motions deadline in this case, I guess --
10              MS. HERNANDEZ:  Okay.
11              THE COURT:  -- except insofar as the parties have
12    filed a motion to dismiss, but certainly we haven't had --
13    no.  So you're going to have the ability -- first of all, I
14    think what's incumbent upon you -- the motions are -- relate
15    to potential outstanding discovery issues at least in part.
16    And it may be that you will want to consult with the
17    Government to see whether those motions are still operative,
18    whether you stand by them, but you'll have the opportunity
19    to file motions.  Yeah, I'm not going to do that to you.
20              MS. HERNANDEZ:  Thank you, Your Honor.
21              THE COURT:  All right.  So why don't we adjourn,
22    then, until 11:00 o'clock or as soon as Ms. Harris can tell
23    me we have everyone else who's scheduled to be before me
24    today and we'll go from there.
25              MR. JONES:  Your Honor --
```

```
 1                THE DEPUTY CLERK:  Judge Kelly --
 2                THE COURT:  Yes?
 3                THE DEPUTY CLERK:  -- I heard from the marshal and
 4     they are -- they have Mr. Biggs.  He should be on by 11:00.
 5     He actually -- I see someone has entered.  This actually may
 6     be him on the line.  But we can give Ms. Hernandez and
 7     Mr. Rehl until 11:00 o'clock until he's off, and then if you
 8     want to reconvene at 11:00, I'll get everyone back into the
 9     hearing.
10                THE COURT:  Let's do that.  There was someone else
11     who wanted to speak and I don't know who it was.
12                MR. JONES:  Your Honor, Luke Jones for the
13     Government.
14                With Mr. Moseley departing, the -- we had -- Your
15     Honor had pushed out deadlines to respond to discovery
16     motions by him until the 16th, I believe, on Thursday.  We'd
17     ask that those -- that deadline be vacated so that we'll
18     have an opportunity to speak with Ms. Hernandez; provide her
19     discovery; and then, as appropriate, re-engage with the
20     Court.
21                THE COURT:  I think that makes sense at least in
22     the first instance.  It makes sense for Ms. Hernandez to be
23     able to talk with you all and see where things are and it
24     will -- that will at least alleviate any unnecessary work
25     that you might have to do.  Why don't I just ask
```

```
1    Ms. Hernandez and the Government to file on the docket a
2    joint status report, you know -- I hate to do this; we're
3    running into -- but let's just say by -- in a week, let's
4    say, by the 21st that lets me know what the status of those
5    motions is or are and proposes -- if necessary, proposes a,
6    sort of -- a briefing schedule that would play the rest of
7    that out.  Does that make sense, Mr. Jones?
8              MR. JONES:  Yes, that makes sense, Your Honor.
9              THE COURT:  All right.  Ms. Hernandez --
10             MR. JONES:  I mean, I know --
11             THE COURT:  -- does that make sense to you?
12             MS. HERNANDEZ:  Yes, sir.
13             THE COURT:  Okay.
14             MR. MOSELEY:  And, Your Honor --
15             MR. JONES:  Your Honor --
16             MR. MOSELEY:  I'm sorry?
17             And, Your Honor, may I depart?
18             THE COURT:  Yes.  Yes, Mr. Moseley.
19             MR. MOSELEY:  All right.  Thank you.
20             MR. JONES:  While Mr. -- while we have
21   Mr. Moseley, I know he's raised some issues about obtaining
22   discovery that was provided to Mr. Johnson in the past
23   that -- to the extent Mr. Moseley has been provided
24   materials from Mr. Johnson, we'd ask that those get either
25   provided back to the Government or directly to
```

1   Ms. Hernandez.  We'll be, obviously, engaging with
2   Ms. Hernandez to ensure she has all the discovery, even if
3   that requires the reproduction of discovery.  We'll do that,
4   but just --
5              MR. MOSELEY:  Well, let me make clear to save
6   time, I've gotten nothing but blank discs where, apparently,
7   he copied it off.  And I sent the letter, which I attached
8   to my motion, long ago explaining the deficiencies and still
9   have not gotten any response from the Government that --
10  apparently, pursuant to the request of the Government, he
11  copied things off of this -- the media to return the media
12  for recycling.
13             THE COURT:  All right.
14             MR. MOSELEY:  So what I got --
15             THE COURT:  Mr. --
16             MR. MOSELEY:  -- was empty.
17             THE COURT:  Mr. Moseley, I don't want to cut you
18  off, but we're going to lose Mr. Rehl and I want him --
19             MR. MOSELEY:  All right.
20             THE COURT:  -- to have the opportunity to talk to
21  Ms. Hernandez.  So --
22             MR. MOSELEY:  All right.  Sorry.
23             THE COURT:  Let me just --
24             MR. MOSELEY:  I'll --
25             THE COURT:  I will -- that's all right.  I'm just

```
 1   going to say for the record, Mr. Moseley, quite obviously,
 2   given the change in counsel here, we need you -- quite
 3   necessarily, it's my expectation that all the materials you
 4   receive either from Mr. Johnson or from the Government, that
 5   there be a professional and orderly handoff of those
 6   materials to Ms. Hernandez so she can begin representing
 7   Mr. Rehl.
 8           Let's just go ahead, then, and adjourn.
 9           And, Ms. Harris, given -- we've chewed up a few of
10   these minutes.  Let's just say at -- we won't reconvene any
11   earlier than, let's say, 11:05.  Maybe Mr. Rehl can have a
12   few -- maybe, he'll get a few extra moments there at his
13   facility that he'll be able to talk to Mr. -- Ms. Hernandez
14   during that few extra minutes.
15           THE DEPUTY CLERK:  Okay.  I'm going to place them
16   in a breakout room now.
17           THE COURT:  All right.  Until then --
18           MS. HERNANDEZ:  Thank you, Your Honor.
19           THE COURT:  -- the parties -- our hearing is
20   adjourned, then, until at least 11:05.
21           MR. JONES:  Thank you, Your Honor.
22           (Proceedings concluded at 10:58 a.m.)
23                   * * * * * * * * * * *
24             **CERTIFICATE OF OFFICIAL COURT REPORTER**
25      **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby**
```

 1    certify that the above and foregoing constitutes a true and
 2    accurate transcript of my stenographic notes and is a full,
 3    true and complete transcript of the proceedings to the best
 4    of my ability, dated this 11th day of January 2022.
 5        Please note:  This hearing occurred during the COVID-19
 6    pandemic and is, therefore, subject to the technological
 7    limitations of court reporting remotely.

                              /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                              Official Court Reporter
                              United States Courthouse
                              Room 6722
                              333 Constitution Avenue, NW
                              Washington, DC 20001