UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT NORDEAN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO IDENTIFY *BRADY* MATERIAL IN PRODUCED DISCOVERY**

Nordean filed a five-page motion seeking an order directing the government to identify *Brady* material of which it is aware within the historically large discovery production it has made in this case. ECF No. 365. In response, the government submitted a 17-page opposition. ECF No. 374. However uncontroversial such an order is in this district, the Court may not enter one, the government advises. Having to direct defense counsel to *Brady* material of which the government is already aware—and for which it does not need to perform any additional search—would impose "extraordinary burdens" on the government. *Id.*

Exactly how the government's identification of *Brady* material already known to it would impose a burden greater than that entailed by drafting a 17-page opposition to Nordean's request the government does not explain. In reality, directing the defense to *Brady* material is no more burdensome than answering defense counsel's emails merely seeking confirmation that they have received all the government's discovery productions. That the government also chooses to fight even those basic requests shows that burdensomeness is not the issue. Using the resources of the federal government to degrade the ability of indigent people to defend themselves against

1

serious criminal charges is the point.[1]  The government's objections to Nordean's request lack merit.  If the *Brady* identification principles in Nordean's cases do not apply to the historically large discovery productions here, they would never apply anywhere.

**Argument**

    **A.    The government's description of the "settled law" is mistaken**

The government begins by mischaracterizing Nordean's request.  Nordean, it says, seeks an order "requiring the government to specify, for all materials it has produced or will later produce, whether each item could serve a purpose favorable to the defense." ECF No. 374, p. 6.  That is not accurate.  Nordean seeks an order requiring the government to identify the *Brady* material of which it is aware or should be aware, not one requiring the government to create and then provide to the defense a *Brady* or not-*Brady* designation for every piece of discovery, which is something else entirely.

The government next contends that "[e]very Court of Appeals that has considered the issue has reached the same conclusion: the government meets its *Brady* obligations when it discloses the favorable material, and it has no additional duty to specifically identify each piece of *Brady* material as such." ECF No. 374, p. 7.  It cites decisions from eight circuits.  *Id*.  The government's string cite is misleading, as only the Fifth Circuit has squarely addressed the issue

---

[1] Recently, Nordean's counsel inquired whether the government could re-upload to the e-discovery site USAfx all discovery that had been previously placed there but subsequently removed.  Intending to send an internal email to other government lawyers, one of the Assistant U.S. Attorneys assigned to this case inadvertently emailed defense counsel instead.  Before determining whether Nordean's request was even feasible, the government lawyer proposed rejecting it, stressing the "need[] to be prepared to be good litigating [] if we go that route."

Nordean's counsel subsequently learned that all USAfx material had been re-uploaded when Defendant Tarrio joined the case and will remain there through trial.  Instead of simply advising the defense of this fact, the government appeared prepared to consume the Court's and the parties' time litigating a matter that should have been resolved with a short response.

raised by Nordean's motion and sided with the government's position. Contrary to its suggestion, the court of appeals in *United States v. Tang Yuk*, 885 F.3d 57 (2d Cir. 2018) did not hold that the government "has no additional duty to specifically identify each piece of *Brady* material as such." ECF No. 374, p. 7. To the contrary, the Second Circuit found that courts "have *reasonably* suggested that burying exculpatory material within a production of voluminous, undifferentiated open case file might violate the government's [*Brady*] obligations." 885 F.3d at 86 (emphasis added). The reason the court of appeals did not reach the issue in *Tang Yuk* was the defendant had failed to identify prejudice resulting from "that violation." *Id.* at 87.

The government summarizes the Sixth Circuit's decision in *United States v. Warshak,* 631 F.3d 266, 297 (6th Cir. 2010) as follows: "stating a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" ECF No. 374, p. 7. The government omits the court of appeals' very next statement: that under *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) *vacated in part on other grounds*, 561 U.S. 358 (2010), even the Fifth Circuit "do[es] not hold that the use of a voluminous open file can never violate *Brady*." *Warshak*, 631 F.3d at 297.

A glance at the government's cases from the Seventh, Ninth and Eleventh Circuits reveals that they do not even concern the relief sought in Nordean's motion. *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (defendant sought an order requiring the government to *search* for *Brady* material, in contrast to the rule from *United States v. Saffarina*, 424 F. Supp. 3d 46 (D.D.C. 2020) which merely requires the government to identify *Brady* material of which it is aware); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (issue was not voluminous open file discovery but whether government had obligation to point to exculpatory material within a single videotape); *United States v. Jordan,* 316 F.3d 1215, 1253-54 (11th Cir. 2003) (holding

3

that defense discovery request was overbroad, not that there is never a duty to identify *Brady* of which the government is aware within a large open file production).

Finally, the government suggests that courts do not require it to identify *Brady* material in a voluminous open file production unless the defendant makes a showing of prosecutors' "bad faith effort to prevent [its] discovery." ECF No. 374, p. 8.  As Nordean showed, multiple courts, including in this district, have rejected that argument.  *Saffarina*, 424 F. Supp. 3d at 90; *United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617 (E.D. Cal. Aug. 2, 2010) ("Thus, if there is a non-disclosure occasioned by the massiveness of the document production to which the defense is given access, it should make no difference whether such was accompanied by good or bad faith—a non-disclosure is a non-disclosure no matter what the motivation.").  These decisions are consistent with Supreme Court and D.C. Circuit precedent holding that the good or bad faith of prosecutors is irrelevant to the question whether there has been a *Brady* violation.  *E.g.*, *United States v. Agurs*, 427 U.S. 97, 110, 96 S. Ct. 2392, 2401 n.17, 49 L. Ed. 2d 342 (1976) (noting that the Supreme Court has "expressly rejected the good faith or the bad faith of the prosecutor as the controlling [*Brady*] consideration"); *United States v. Pasha*, 797 F.3d 1122, 1141, 418 U.S. App. D.C. 258 (D.C. Cir. 2015) ("There is . . . no way around the fact that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  The government fails to show how its bad-faith requirement squares with *Agurs* and *Pasha*.  It does not.

**B.     The government does not distinguish Nordean's cases**

The government argues that *Saffarina* and *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998) are distinguishable "in numerous respects." ECF No. 374, p. 10.  They are not.

4

First, the government says it is "already making extensive, good-faith efforts to assist defense counsel in identifying relevant information." ECF No. 374, p. 10.  The first six pages of the government's opposition are dedicated to outlining all of the "extraordinary efforts" it has undertaken "to identify relevant evidence and produce it to the defendants." *Id.* at 2.  But the rule from *Saffarina* and *Hsia* (among other cases) does not call for some balancing of (a) the challenge faced by the indigent defendant with a small defense team in locating *Brady* material within a massive open file production against (b) how "extensive," "extraordinary," or praiseworthy the government's overall discovery production is.  Nordean does not contend that the government's production is not "extraordinary"; he does not deny that its productions come under various headings such as "case-specific," "cross discovery" and "global production." ECF No. 374, pp. 2-6.  He does not have to contend those things.  The point, rather, is that "the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." *Hsia*, 24 F. Supp. 2d at 29.

Insofar as the government suggests that its discovery letters, discovery platforms and distinctions between "case-specific discovery" and "cross discovery" and "global discovery" are reasonably sufficient to allow defense counsel to "find the exculpatory information in the haystack," a single counterexample reveals the hollowness of its argument.  On May 12, the government emailed a "Global Discovery Production" discovery letter to defense counsel.  Exh. 1. Like many other such discovery letters served on the defense on virtually a daily basis for the past year, it apprised defense counsel that certain documents and media files were shared on the Relativity discovery database.  The letter did not indicate whether any of the Defendants in this

5

case were featured in these materials and if so, what the materials depicted or contained. The letter merely contained strings of Bates numbers. *Id.*

Shortly after receiving that discovery letter, Nordean learned from a source outside the government that the defendant in *United States v. Pamela Ann Hemphill*, 21-cr-555 (D.D.C. 2021) had produced to the government multiple video files depicting Nordean and other Defendants on January 6. Hemphill followed Nordean and other Proud Boys defendants around the Mall that day, filming them as they proceeded toward the Capitol. In one video clip, Hemphill filmed Nordean and Rehl near the Grant Memorial, only a short distance from the Capitol Building, not long before the moment when the crowd breached barriers outside the building. She asked whether Nordean had a plan to enter the building. He denied any such plan. These videos Hemphill provided to the government in October or November 2021.

Nordean's counsel inquired with the government why these videos had not been produced to the defense. The government replied that they had been produced—as indicated in the May 12 "Global Discovery Production" letter. Yet, as shown above, that discovery letter did not even reference Nordean or any Defendant in this case, much less video files depicting Nordean addressing whether he had a plan to enter the Capitol Building on January 6, the heart of the government's case. Exh. 1. Nordean's counsel asked the government why these videos were characterized as a "Global Discovery Production" and not at least identified to defense counsel as relevant to this case specifically. Counsel also inquired what procedures the government had in place to ensure that agents or prosecutors assigned to other January 6 matters alert their colleagues when they come across discovery relevant to their colleagues' January 6 matters. The government had no response to these questions, though knowledge of *Brady* material in the government's possession, custody or control is imputed to the prosecution team.

*E.g.*, *United States v. Safavian*, 233 F.R.D. 12, 19 (D.D.C. 2005) (*Brady* material is discoverable if it is in the possession, custody or control of "any agency of the Executive Branch of the government. . ."). In sum, that "the government's global discovery productions have all been accompanied by cover letters," ECF No. 374, p. 10, does not distinguish *Saffarina* and *Hsia*.

Second, the government contends that, although Nordean is an incarcerated and indigent defendant with a "small defense team," he "does in fact enjoy access to resources commensurate with the demands of this case, including access to government-funded Relativity and evidence.com databases. . ." ECF No. 374, p. 11. As it knows, the government is mistaken. As Nordean's counsel has explained to the Court, the Relativity database is the most burdensome discovery platform he has ever navigated. Many defense counsel—both retained and those with the federal defender offices—have complained about the difficulties involved in merely signing into the platform, which demands the use of multiple applications and constantly changing passwords and security codes.[2] Even after one manages to log in to Relativity, locating and retrieving documents is inordinately time-consuming. In the words of counsel to Defendant Donohoe, now cooperating with the government, it can take "10 minutes" just to download "one pdf." Granting a single defense counsel access to this system is not somehow different from "providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." *Hsia*, 24 F. Supp. 2d at 29. In some ways, requiring the defense to use Relativity is more burdensome than providing boxes to the defense containing 600,000 documents. That likely accounts for

---

[2] Employees of the firm managing the database, Deloitte, have acknowledged these difficulties to undersigned counsel. They explained that the unusual number of burdensome security controls built into the system were demanded by the Department of Justice, owing to the "sensitivity" of such materials as Capitol CCTV videos—videos which now circulate widely on the internet and in other news media.

why the court in *Saffarina* itself ordered the government to identify *Brady* material of which it was aware notwithstanding that defense counsel there were given access to a *Relativity database*. 424 F. Supp. 3d at 83. Nor does the government deny that the overwhelming volume of discovery produced to the defense here—on multiple discovery platforms, the USAfx discovery website, CDs and hard drives—dwarfs the size of the production in *Saffarina*. *See also United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, at *6 (S.D. W. Va. June 12, 2015) (ordering government to identify *Brady* material even though it provided defendant with "index[ing] [and] digital database[s]").

Next, the government contends that "because of the unique nature of global discovery in this case," the "materials in global discovery were not obtained by, and largely have not been reviewed by, the specific attorneys and case agents assigned to Nordean's case." Thus, it "would be unrealistic to impute to the prosecution team a degree of familiarity with the global discovery materials that might justify an order like the ones in *Hsia* and *Saffarina*." ECF No. 374, p. 12. This argument fails for many reasons. In the first place, the government's voluminous discovery productions are not limited to "global discovery"; even if a *Hsia-Saffarina* order were not applied to global productions, the government has not pointed to anything "unique" about all its other massive discovery productions that would argue against such an order. Secondly, the government's argument is flatly contradicted by the case law: as indicated above, *Brady* material must be produced if it is in the possession, custody or control of "any agency of the Executive Branch of the government," not merely that of "the prosecution team." *Safavian*, 233 F.R.D. at 19. But even if that were not the case, that would not relieve the government of the duty to establish protocols and procedures to ensure that agents and attorneys assigned to other January 6 matters alert the prosecutors on this case when the former come across evidence relevant and

8

material to this matter.  If the government had no such duty, it could avoid its *Brady* obligations altogether through the simple device of having January 6 discovery reviewed by attorneys and agents "not assigned to Nordean's case"; only the evidence useful to the government would then be forwarded to the prosecutors "assigned to Nordean's case."  Here, the government refuses to indicate whether it has in place such procedures.[3]

Finally, the government cites "many district courts across the country [that] have reached opposite conclusions from the cases on which Nordean relies." ECF No. 374, p. 13.  As with its characterization of how "[e]very Court of Appeals" has handled the issue, the government's citations are frequently inapposite.  *United States v. Gross*, 424 F. Supp. 3d 800, 803 (C.D. Cal. 2019) (court denied *Brady* identification request because government had already produced a "key documents" binder, unlike in Nordean's case); *United States v. Ellis*, 2020 U.S. Dist. LEXIS 122287, at *5 (D.N.J. July 13, 2020) (holding that government does not have duty to "ferret out" *Brady* material, not that it lacks an obligation to identify *Brady* of which it is aware); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) (distinguishing Nordean's cases on the ground that the defendants had ample "access to corporate assistance in their defense," unlike Nordean).

Taken together, then, the government has identified no principled basis on which to distinguish *Hsia* and *Saffarina*.  To the contrary, the vast discovery productions here make a stronger case for *Brady* identification than the comparatively smaller ones in *Hsia* and *Saffarina*.

---

[3] The government cites the Recommendations for ESI Discovery Production in Federal Criminal Cases for the uncontroversial proposition that "parties will be required to rely on technology to conduct discovery review." ECF No. 374, p. 12.  Like the defendants in *Saffarina* and *Hsia*, Nordean does not seek a dispensation from "technology to conduct discovery review," but rather requests an order directing the government to identify *Brady* material of which it is aware.

9

### C. The government's argument that Nordean's request would invite "excessive litigation" has it exactly backwards

The government allows that "[c]ompliance [with Nordean's requested order] might be reasonably achievable for evidence that is exculpatory on its face." ECF No. 374, p. 13. Accordingly, the Court should order the government to identify such *Brady* material.

However, the government contends that there is only one example of such evidence in this case: "If the government were to discover video showing that Pezzola actually obtained [a] shield by finding it unattended on the ground" rather than by robbing a police officer. ECF No. 374, p. 13. But the other "central questions in this case," the government continues, "do not involve the defendants' physical conduct but rather their intent, as well as the existence and nature of the agreement among them. On these issues, *Brady* is more difficult to define, and is subject to differing interpretations." *Id.*

The government's argument is nonsense, as shown by the example Nordean cited above involving a video clip depicting him saying he had no plan to enter the Capitol Building. Because there is no such thing as a criminal conspiracy to protest nonviolently outside Congress, evidence indicating that Nordean did not have a plan to enter the Capitol is *Brady* material. Yet the government not only failed to identify it as such, it failed even to notify the defense that any video filmed by the *Hemphill* defendant of Nordean had been produced at all.

The contention that the government can never run afoul of the *Brady* rule in connection with intent evidence that is "subject to different interpretations" proves far too much. Were the government correct, *Brady* would not exist at all in white-collar cases, all of which revolve around intent evidence. Nor does the government advance its argument by quibbling over difficult "line drawing" in the context of inconsistent statements, or by complaining about its "Hobson's choice" of taking too broad an approach and "giving the defense red herrings" or

10

taking too narrow an approach and "miss[ing] something the defense may care about." ECF No. 374, pp. 14-15. These are not "problems" created by Nordean's request—they are questions the government daily considers in deciding what materials it must *produce* to the defense.

Just as the too broad-too narrow "Hobson's choice" faced by the government in deciding what materials to *produce* to the defense does not somehow relieve it of the obligation of producing Rule 16 and *Brady* material altogether, the same "choice" does not relieve it of the duty to identify *Brady* material in the massive open file production it has made.[4] As in all matters in which judgment is exercised, the government discharges its duty by following the Court's order in good faith. That subjectivity may exist at the margins does not somehow support the (cynical) argument that the government's duties are thereby impossible to define or execute.

The government contends that if it is required to identify *Brady* material that would "only invite[] future disputes as to whether the Government did an adequate job of identifying such material or characterized the material consistent with Defendants' view of it." ECF No. 374, p. 15. That has it exactly backwards. If the government makes no effort to identify objective *Brady* material to the defense among its massive discovery productions—such as the *Hemphill* videos discussed above—and the *Brady* is not located by the incarcerated and indigent defendant and small defense team before trial, *that* scenario will invite future *Brady* disputes. Conversely, if the government complies in good faith with an order to identify *Brady* material before trial, it

---

[4] Similarly, the government catastrophizes that "the potential *Brady* analysis would constantly be shifting: what may seem material before trial began would likely shift after an opening statement by the defense or after a witness testified." ECF No. 374, p. 15. The government appears confused. Nordean seeks an order requiring the government to identify *Brady* material of which it is aware before trial. He does not seek an order that would require the government to continuously recharacterize evidence as *Brady* or not-*Brady* as the trial proceeds.

would reduce the likelihood of future *Brady* disputes. None of the government's theoretical objections to Nordean's requested order persuaded the courts in *Hsia*, *Saffarina*, *Salyer* or *Blankenship*. Nor should they persuade this Court.

The government has identified no concrete burden, much less an "extraordinary" one, should it be required to identify *Brady* material of which it is aware in its historically large discovery production. Nordean is an incarcerated and indigent defendant with one defense lawyer reviewing discovery. He respectfully requests that the Court grant his motion.

Dated: June 7, 2022                              Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 7th day of June, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*