UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO: 1:21-cr-0715-3 (APM) |
| | * | |
| ZACHARY REHL, | * | |
| Defendant | * | |

********

**ZACHARY REHL'S MOTION TO ADOPT AND SUPPLEMENT MOTION TO TRANSFER VENUE FILED BY CODEFENDANT TARRIO**

Zachary Rehl, by his undersigned counsel, hereby respectfully moves for leave to adopt the Motion filed by Co-Defendant Enrique Tarrio To Transfer Venue and related filings (ECF 349, 351) and to supplement the Motion with the instant filing.

**Recent Prejudicial Pretrial Publicity**

1. Mr. Rehl respectfully submits that the renewed media frenzy about the allegations against the Proud Boys that refer to the Proud Boys and their alleged conduct in hyperbolic terms are unduly prejudicial to the defendant's right to due process of law and a fair trial.

2. The media reports resurfaced on June 6, after the government filed the Third Superseding Indictment which included the unprecedented seditious conspiracy count despite including barely any new allegations generally and no allegations that Mr. Rehl or the others used force on January 6.

3. The reports have also intensified in the wake of the hearings by the House Select Committee investigating January 6, which are scheduled to begin on June 9, 2022. The Committee has announced that it plans to focus its attention on the Proud Boys.

4. The reporting has referred to the pending federal charges as well as more pointedly to materials "previously released by federal prosecutors."

> The House Committee investigating the Jan. 6 attack on the US Capitol will featuring a British filmmaker who interacted with the far-right group Proud Boys before and during the riot as one of its witnesses Thursday night.
>
> The committee announced Tuesday that Nick Quested would appear in person for the prime-time opening hearing. Footage by Quested and his crew that was *previously released by federal prosecutors* includes an encounter between long-time Proud Boys leader Enrique Tarrio and Stewart Rhodes, the founder of another group, Oath Keepers, in a Washington parking garage the day before the assault.

*Proud Boys Extremists Get Role Via Film in First Jan. 6 Hearing*, Bloomberg News, 6/8/22 at

https://tinyurl.com/5e8uf6t3 (emphasis added)

> An amended federal indictment charged five members of the far-right group, including Enrique Tarrio, its former leader, with seditious conspiracy for their roles in the Jan. 6 assault.
> . . .
> The group and its actions around the Capitol will be central to the narrative being pieced together by the House committee investigating the attack and Mr. Trump's efforts to overturn the election results, two people familiar with the committee's plans said on Monday.

*Proud Boys Charged With Sedition in Capitol Attack*, The New York Times, 6/6/22 at

https://tinyurl.com/3m39f68x

> With the first public hearing scheduled for this week and the Proud Boys expected to feature prominently in the committee's initial presentation to the public, it's useful to walk through what we know about the group's actions in the months before the riot.

*What we know about the Proud Boys' involvement in Jan. 6*, Washington Post, 6/7/22 at

https://tinyurl.com/26b3bj6e

> The actions of the Proud Boys in the lead up and during the insurrection are expected to be a key focus of the first prime-time hearing of the January 6 investigative committee.

*Morning Joe*, MSNBC at https://tinyurl.com/2p8sz3a7.

> The [House] panel announced Tuesday that the witnesses at Thursday night's prime-time hearing will be British filmmaker Nick Quested, who recorded members of the far-right Proud Boys as they stormed the building, and Caroline Edwards, a U.S. Capitol Police officer who was seriously injured as the rioters, including members of the Proud Boys, shoved past police officers and forced their way into the Capitol.

*Proud Boys documentarian to be among first Jan. 6 witnesses*, AP News, 6/7/22 at

https://tinyurl.com/ny4c9pv7

> The House select committee investigating the January 6 Capitol attack is scheduled to hold its inaugural hearing on Thursday and according to the running order obtained by the Guardian, the panel will track the activities of the far-right Proud Boys group before and during the insurrection

*Inaugural January 6 hearing to track activities of Proud Boys during Capitol attack,* The

Guardian,  6/8/22 at https://tinyurl.com/4jkbju6b

### Proximity of Prejudicial Publicity to Trial

To supplement the arguments made in Mr. Tarrio's Motion for Change of Venue (ECF 349 at 13-14), Mr. Rehl notes that in *Skilling v United States*, 561 U.S. 358, 130 S.Ct. 2896 (2010), the Supreme Court recognized the significance of prejudicial pretrial publicity that occurs in close proximity to the trial.  *Skilling*, 561 U.S. at 383.  *Skilling* distinguished *Rideau v. Louisiana*, 373 U.S. 723, 727 (1963) where the Court reversed a conviction based on prejudicial pretrial publicity from the situation in *Skilling* because by the time the trial took place four year later "the decibel level of media attention diminished somewhat in the years following Enron's collapse."  *Skilling,* 130 S.

Ct. at 2902. Here, both the congressional hearings and the government's just-filed superseding indictment are having a pronounced effect in close proximity to the August 8 trial. The close proximity of the prejudicial publicity must be attributed at least in part to the government's decision to late-file its Third Superseding Indictment ("TSI") so close to trial. The government's decision is difficult to explain as the only two new allegations in the TSI do not involve the use of force, which is the hallmark of a seditious conspiracy charge.[1] The two new allegations are not new as they refer to materials found on Mr. Tarrio's electronic devices, which have been in the government's possession for one year or longer and definitely since the filing of the Second Superseding Indictment on March 7, 2022 (ECF 305). This factor therefore weighs heavily in favor of relocating the trial from D.C.

Moreover, ongoing negative publicity generated by congressional committees creates presumed prejudice for defendants. In fact, Mr. Rehl respectfully submits that requiring him to go to trial in the District in the shadow of the Select Committee's investigation, would be highly

---

[1] The new allegations are:

107. At 7:39 p.m., PERSON-1 sent two text messages to TARRIO that read, "Brother. You know we made this happen[,]" and "I'm so proud of my country today." TARRIO responded, "I know." At 7:44 p.m., the conversation continued, with PERSON-1 texting, "1776 motherfuckers." TARRIO responded, "The Winter Palace." PERSON-1 texted, "Dude. Did we just influence history?" TARRIO responded, "Let's first see how this plays out." PERSON-1 stated, "They HAVE to certify today! Or it's invalid." These messages were exchanged before the Senate returned to its chamber at approximately 8:00 p.m. to resume certifying the Electoral College vote.

108. At 11:16 p.m., TARRIO posted a message on social media that featured a video of a masked man resembling TARRIO, wearing a flowing black cape, standing in front of a deserted Capitol. The video was captioned, "Premonition."

TSI (ECF 380, filed 6/6/22)

prejudicial. The First Circuit, for example, addressed the prejudicial effect of contemporaneous congressional hearings in *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952). In *Delaney*, the trial judge refused to grant a lengthy defense continuance request, which was based upon ongoing congressional hearings into the "scandal" involving the defendant. *Id*. at 114. The First Circuit ruled that the trial judge abused his discretion in not granting the continuance, noting that the actions of Congress in generating adverse publicity were equivalent to prosecutors doing the same:

> [B]eing brought to trial in the hostile atmosphere engendered by all this pre-trial publicity, would obviously be as great, whether such publicity were generated by the prosecuting officials or by a congressional committee hearing. In either case he would be put under a heavy handicap in establishing his innocence at the impending trial. Hence, so far as our present problem is concerned, we perceive no difference between prejudicial publicity instigated by the United States through its executive arm and prejudicial publicity instigated by the United States through its legislative arm.

*Id*.

The DC Circuit addressed a similar issue during the Watergate investigation. Former Nixon official Robert Ehrlichman sought a continuance of his trial date based upon the Senate Watergate hearings, which was denied by the trial judge. Upholding the trial court's ruling, the Court of Appeals distinguished *Delaney* on the grounds that the Ehrlichman was a full year in the rear-view mirror:

> Similarly, a continuance in the circumstances at bar is not required by *Delaney v. United* States, 199 F.2d 107 (1st Cir. 1952), where legislative hearings were held concerning the criminal activity to be tried. In this case, unlike *Delaney*, the Senate Watergate hearings occurred almost a year before the trial commenced and the defendants were not under indictment at the time of the hearings.

*United States v. Ehrlichman*, 546 F.2d 910, 916, n. 8 (D.C. Cir. 1976).

Here, the non-stop prejudicial publicity requires the Court to either transfer venue to a federal district that is not as impacted by the Select Committee's work. The instant case is far worse than *Delaney* and *Ehrlichman*. On top of the Select Committee, J6 is reported on every day in local news. The government's late-filed Superseding Indictment charging the seditious conspiracy has intensified the prejudicial publicity particularly when filed the same week as the start of the Committee's public hearings. The one-year anniversary of the event, as well as recent sentencings of high-profile J6 defendants, have kept the matter in the forefront of local discourse. During a press conference announcing the filing of a civil suit against the defendants, DC Attorney General Racine referred to the Proud Boys as "conspiring to terrorize" the citizens of the District of Columbia, referred to the Proud Boys as terrorists, mentioned that the law suit was brought pursuant to the Klu Klux Klan Act of 1871 and made other hyperbolic allegations that have no relation to the non-violent actions of Mr. Rehl on January 6. Several Trump Administration officials have now been charged with obstruction for refusing to comply with the House Committee's subpoenas; the prosecutions again have generated substantial negative and prejudicial publicity.

A lengthy continuance of the trial to blunt the prejudicial publicity is not a viable alternative so long as Mr. Rehl remains detained pretrial. Accordingly, the only solution would be to transfer venue.

### Juror Composition Surveys

Mr. Rehl respectfully requests the opportunity to submit to the Court to supplement the change of venue motion four separate surveys of the potential juror pool in the District of Columbia conducted by defendants in other January 6 cases that shed light on the need for a change of venue.

### Joining and Adopting the Motion filed by Mr. Tarrio

Mr. Tarrio also seeks to join and adopt Mr. Tarrio's motion and related filings and to supplement said motion with legal arguments and particularized facts pertinent to him, as necessary.

### Conclusion

Mr. Rehl seeks to join and adopt the legal arguments made and relief sought in the Motion to Transfer Venue filed by Mr. Tarrio and related filings. all motions filed by co-defendants unless he moves not to adopt and join a particular motion. Proceeding in this fashion will promote the just determination of the case, simplify procedures and eliminate unjustifiable expense and delay in accordance with Rule 2, FED. R. CRIM.

The Proud Boys are in a class by themselves when it comes to prejudicial pretrial publicity, which began when they were mentioned during a Presidential debate on September 29, 2020 where it was implied that they were a white supremacist militant group despite the fact that Mr. Tarrio self-describes as being of Afro-Cuban descent and a number of other Proud Boy members are multi-racial and none of them carried firearms to the Capitol.

Accordingly, for the reasons stated above, a transfer of venue outside of the District of Columbia is necessary to afford Mr. Rehl a fair trial as guaranteed to him by the Due Process clause and the Fifth and Sixth Amendment to the United States Constitution.

Respectfully submitted,

/s/

**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 9th day of June, 2022.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**