UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA   * | |
| * | |
| v.           * | Case No.  21-cr-00175-TJK-3 |
| * | |
| ZACHARY REHL         * | |

**MOTION TO SEVER DEFENDANTS AND COUNTS**

Zachary Rehl, through undersigned counsel, pursuant to Rules 8(a) and 14 of the Federal Rules of Criminal Procedure, respectfully requests that this Honorable Court sever Mr. Rehl's case so that he may be tried separately from the co-defendants. In support of his request, Mr. Rehl states the following.

**FACTUAL BACKGROUND**

The Court is well aware of the charges brought against Mr. Rehl so only a summary is necessary. The case arises out of the political rally organized by former President Trump and his supporters on January 6, 2020. The first act in furtherance of the conspiracy allegedly takes place on December 19, 2020, the date the "Stop the Steal" rally was announced.[1]

In connection with the events at the Capitol on January 6, Mr. Rehl is charged with eight separate offenses, namely: seditious conspiracy; conspiracy to obstruct an official proceeding; obstruction of an official proceeding; conspiracy to prevent an officer from discharging his duties;

---

[1] In pertinent part, the Indictment alleges:

13. On December 19, 2020, plans were announced for a Stop the Steal protest event in Washington, D.C., on January 6, 2021, to coincide with Congress's Certification of the Electoral College vote.
. . .
29. On December 19, 2020, shortly after plans for the rally on January 6 were publicly announced, BIGGS sent a private message to TARRIO in which he stated that the Proud Boys "recruit losers who wanna drink." BIGGS suggested, "Let's get radical and get real men."

civil disorder; two counts of destruction of government property; and two counts of assaulting an officer.

Every count is based on the conduct of others. In particular, every one of the substantive counts is based on allegations that others destroyed property, interfered with law enforcement officers, or assaulted officers. Mr. Rehl did not do any such thing. The entirety of the charges against Mr. Rehl is based on a handful of statements commenting on political events that he is alleged to have made. Under binding Supreme Court and Circuit precedent, Mr. Rehl's statements implicate his rights under the First Amendment.

Mr. Rehl is not alleged to have injured or assaulted anyone or battled law enforcement. He is not alleged to have destroyed any property or removed any police barricades. He is not alleged to have interfered with any officer in the discharge of his duties. He is not alleged to have used force in any fashion. He did not toss water bottles at anyone. He did not wrest any police shields from officers. He did not use a weapon or deploy irritants. When he allegedly entered the Capitol at 2:53 p.m., the proceedings had been suspended for nearly 40 minutes. He did not force his way into the building. He entered at the same time as hundreds or thousands of other Americans, none of whom have been charged with multiple felonies, including seditious conspiracy.

As quoted in the discovery produced by the government, Mr. Rehl and three other members of the Philadelphia Proud Boys made the decision to enter the Capitol Building "as a group." They wanted to "go in and take a peek." They were "curious as to what was going on inside the Capitol Building." They did not enter the Capitol until after they heard from others in the crowd that the Vice President had left the Capitol. They did not force their way into the building. They did not take any action against any law enforcement officer or member of Congress; did not intimidate any one; did

not obstruct any proceedings. No allegation in the Indictment supports any contrary inference.

With respect to the seditious conspiracy count, there is no allegation that Mr. Rehl or any of the other named defendants brought any weapons or firearms to DC. In contrast, the seditious conspiracy charges brought against the Oath Keepers included only those persons who are alleged to have brought firearms, including in some instances AR-15s, to a hotel in Northern Virginia allegedly for use as a "quick reaction force," *See, e.g., United States v. Rhodes,* No. 22-cr-15 (APM).

## THE LAW

Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment "if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 14, on the other hand, provides that a court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." When of either defendants or offenses causes or threatens to deprive a defendant of a fair trial, severance is mandatory. Rule 14(b) also provides that "Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence."

As the Supreme Court observed in Kotteakos:

> Guilt with us remains individual and personal, even as respects conspiracies. It is not a matter of mass application. There are times when of necessity, because of the nature and scope of the particular federation, large numbers of persons taking part must be tried together or perhaps not at all, at any rate as respects some. When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every

> safeguard to individualize each defendant in his relation to the mass. Wholly different is it with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group.
>
> Criminal they may be, but it is not the criminality of mass conspiracy. They do not invite mass trial by their conduct. Nor does our system tolerate it. That way lies the drift toward totalitarian institutions. True, this may be inconvenient for prosecution. But our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials. About them we dare not become careless or complacent when that fashion has become rampant over the earth.

*Kotteakos v. United States*, 328 U.S. 750, 772-73 (1946).

Joinder is improper where it allows the government to introduce evidence that would have been inadmissible if the trial were separate. *See Drew v. United States*, 331 F.2d 85, 90 (D.C. Cir. 1964) (reversing conviction, explaining that "the admissibility of the other crimes evidence in separate trials is a highly significant factor in determining whether joinder is prejudicial..."). Joinder is also improper where there are significant disparities in the seriousness of the charged crimes because of the high risk of prejudice in such cases. Thus, a court should sever a joint trial where evidence against the one defendant would be "far more damaging" than the evidence against the other. *United States v. Tarantino*, 846 F.2d 1384, 1398 (D.C. Cir. 1988). The risk of prejudice is heightened when several defendants, tried together in a complex case have markedly different degrees of culpability. *Kotteakos,* 328 U.S. at 774-775.

Severance should be granted

> if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant

> and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.

*Zafiro v. United States*, 506 U.S. 534, 537-38 (1993). Prejudice also arises when evidence that is probative of a defendant's guilt but technically admissible only against a codefendant. *See Bruton v. United States*, 391 U.S. 123 (1968). Defendants' "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances that severance should be granted. *Zafiro*, supra.

### APPLYING THE FACTS TO THE LAW

Here, joinder is improper on nearly every ground that courts have merited. The offenses charged against Mr. Rehl are not of the "same or similar character" and are not "based on the same act or transaction" when Mr. Rehl's conduct and not of his codefendants is considered. There are significant disparities in the evidence and conduct alleged against Mr. Rehl and that of his codefendants. The government will also seek to introduce highly prejudicial evidence against Mr. Tarrio and Mr. Pezzola that would not be admissible were Mr. Rehl to be tried separately. For example, the government will seek to introduce evidence that Mr. Tarrio was arrested on January 4, 2021 for burning a Black Lives Matter banner that was torn down from a historic Black church in downtown Washington and bringing two high-capacity firearm magazines into the nation's capital. *See* Indictment (ECF 380) at ¶ 22. The government will also seek to introduce evidence of an alleged meeting between Mr. Tarrio and the leader of the Oath Keepers. *Id.* at ¶ 23. The government will also seek to introduce evidence of a document allegedly sent to Mr. Tarrio with a plan to occupy buildings on January 6. *Id.* at ¶ 41. It is anticipated that the government will seek to introduce additional instances of unduly prejudicial evidence against Mr. Tarrio. Such evidence is highly

inflammatory and create significant evidence in the quantum of evidence.

The allegations against Defendant Pezzola are also unduly prejudicial and present a significant disparity in the quantum of evidence. Moreover, Mr. Rehl's defense will be decidedly antagonistic and irreconcilable with Mr. Pezzola's defense.

The allegations in the indictment as well as the discovery produced and other filings in the case show that the government has failed to allege a single conspiracy that involves a single common plan that involved Mr. Rehl, the very type of prejudice that the Supreme Court found to be reversible error in *Kotteakos*. Thus, the Indictment explicitly alleges the existence of multiple separate plans. One plan is allegedly set out in the document *1776 Returns*, which "set forth a plan to occupy a few crucial buildings in Washington, D.C." *Id.* at ¶ 42. That plan involved Tarrio and an unnamed individual. *1776 Returns*, which was produced in discovery, does not propose occupying the Capitol, nor does it even mention the Capitol.[2] The government has acknowledged that Tarrio did not share *1776 Returns* or discussed it with Mr. Rehl or the other named defendants.

The second explicit plan involved Biggs, Nordean and Tarrio:

> We just had a meeting woth (sic) a lot of guys. Info should be coming out" and then posted "Just spoke with Enrique"
> . . .
> At approximately 9:20 p.m., Biggs posted a message on the New MOSD Leaders Group that read, "*We have a plan*. I'm with rufio [Nordean]." Donohoe responded, "What's the plan so I can pass it to the MOSD guys." Bigg responded, "I gave Enrique a plan. The one I told the guys and he said he had one."
>
> At 12:01 a.m. on January 6, 2021, Tarrio posted a message on the New MOSD Leaders Group. At 12:03 a.m., Donohoe posted, "Standby" and then reposted the instructions that had been issued in the Boots on Ground group and the New MOSD Members Group

---

[2] *1776 Returns* was filed as an exhibit by Mr. Rehl (ECF 401-1), filed 6/15/22.

regarding the plan to meet at the Washington Monument at 10 a.m. Indictment at ¶¶ 63, 65, 67.

Mr. Rehl was not part of the group that met with Biggs that evening. The only information that was communicated to him about this "plan" was to meet at the Washington Monument at 10 am. Indeed, after Biggs posted about the plan, Mr. Rehl responded to Biggs "If we still have plans to break off in teams, we can pick them there on the spot obviously." (Bates #21CR175_00006718). The plan to break off in smaller teams was one discussed in the December 30 MOSD zoom meeting to avoid the chaos that had occurred on December 12.

A third implicit plan appears to involve Pezzola and Donohoe where Pezzola snatched a riot shield, and he and Donohoe paraded around with it and later allegedly used it to break a window. Indictment at ¶¶ 86-88, 93. Mr. Rehl was not involved in that plan and later on January 6, Mr. Rehl expressed surprised that the person who had snatched a shield was a member of the Proud Boys. The discovery reflects that during the period of the charged conspiracy, Mr. Rehl did not interact with Pezzola, who had only recently become a member of the Proud Boys in New York State.

Thus, instead of alleging a single common plan, the government has strung together a series of acts and statements that impermissibly allege multiple, separate independent agreements into a single conspiracy, which creates reversible prejudice. *See Kotteakos,* 328 U.S. at 773-775

It is also anticipated that the government will seek to introduce a number of statements made by others that do not constitute co-conspirator statements and will present *Bruton* problems. *See* Gov't Motion in Limine to Admit Statements (ECF 475). Each one of the statements the government claims are admissible either because it is not hearsay or because it fits some hearsay exception nonetheless presents a confrontation issue for Mr. Rehl, who will not be able to confront or cross-

examine the declarant, unless his case is severed from the codefendants.

Moreover, assuming *arguendo* that the charges are properly joined, Mr. Rehl is nevertheless entitled to severance under FED. R. CR. PROC. 14. That rule mandates severance where there is a showing of substantial prejudice to the defendant's right to a fair trial. *See Zafiro v. United States*, 506 U.S. 534 (1993); *United States v. Hackley*, 662 F.3d 671 (4th Cir. 2011). Clearly, joining what amounts to entirely separate offenses in a single trial will cause the trial to be about the defendants' bad character rather than a relatively complex analysis of facts and governing law.

While a court's decision on severance is reviewed for abuse of discretion, see *United States v. Hackley*, *supra*, Mr. Rehl submits that a failure to grant a severance in this case would constitute a clear abuse. Given the nature of the joined offenses and the spill-over effect, the unduly prejudicial nature of the evidence that the government will seek to introduce against Mr. Rehl's codefendants and the other risks set out above. The risk of undue prejudice is real and substantial that the case will become about the defendants' character and not proof of the elements of particular crimes.

Wherefore, Mr. Rehl respectfully moves to sever the trial of his case from that of his codefendants and to sever the substantive counts from the conspiracy counts.

    Respectfully submitted,

    /s/ *Carmen D. Hernandez*
    **Carmen D. Hernandez**
    Trial Bar No. 03366
    7166 Mink Hollow Road
    Highland, MD 20777
    (240) 472-3391; (301) 854-0076 (fax)

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of this Motion was served on all counsel of record via ECF this 14th day of October, 2022.

                              /s/ *Carmen D. Hernandez*
                              **Carmen D. Hernandez**