UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ZACHARY REHL,<br>      *Defendant*. | Criminal Action No. 21-175-3 (TJK) |

**MEMORANDUM ORDER**

Before the Court is Defendant Zachary Rehl's second motion to reopen his detention hearing. ECF No. 401. Rehl has been detained since July 1, 2021, when the Court granted the Government's motion to revoke pretrial release. At that time, the Court explained in detail its analysis of the Bail Reform Act ("BRA") factors in support of the detention order. *See* ECF No. 147 at 36–60; 18 U.S.C. § 3142(g). Then, on December 14, 2021, the Court denied Rehl's first motion to reopen his detention hearing, again laying out its reasoning in detail. *See* ECF No. 252 at 8–24. Rehl appealed that ruling. ECF No. 264. The D.C. Circuit is holding that appeal in abeyance pending the Court's resolution of this motion.[1] *See United States v. Rehl*, No. 21-3098 (D.C. Cir. July 7, 2022). The Court held a hearing on the instant motion on October 7, 2022. For the following reasons, the Court will deny the motion.[2]

\*   \*   \*

---

[1] Rehl's alleged coconspirators, Defendant Ethan Nordean and Defendant Joseph Biggs, also appealed the Court's decisions to detain them, which the Circuit affirmed. *See United States v. Nordean*, No. 21-3096, 2022 WL 758061 (D.C. Cir. Mar. 4, 2022) (per curiam); *United States v. Biggs*, 851 F. App'x 220 (D.C. Cir. 2021) (Mem) (per curiam).

[2] Federal Rule of Criminal Procedure 37(a)(2) allows a court "lack[ing] authority to grant [a motion for relief] because of an appeal that has been docketed and is pending" to "deny the motion."

The Court may reopen a detention hearing only if it "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Thus, information offered to reopen a detention hearing must be both "new" and "material." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). "New and material information . . . consists of something other than a defendant's own evaluation of his character or the strength of the case against him; instead, it must consist of truly changed circumstances, something unexpected, or a significant event." *Id.* (cleaned up). "[T]he sort of new information capable of reopening a detention hearing must . . . relate in some *significant* or *essential* way to the decision whether to detain." *United States v. Worrell*, No. 1:21-cr-292 (RCL), 2021 WL 2366934, at *9 (D.D.C. June 9, 2021). Put another way, it must "cast[] different light" on the BRA factors. *Lee*, 451 F. Supp. 3d at 5.

*   *   *

In his motion, Rehl identifies four "new" categories of evidence or information he contends "refute[] the government's allegation that [his] alleged leadership role in the Proud Boys' Ministry of Self-Defense ('MOSD') meets its burden to show that he presents a concrete prospective threat to public safety." ECF No. 401 at 3. He also highlights evidence throughout his motion without identifying how it satisfies Section 3142(f)(2)'s reopening standard, and he makes several arguments that fall outside that standard altogether. The Court takes up each of Rehl's points in turn, beginning with the evidence he points to as new and material.

I.     Rehl's Alleged New and Material Evidence

    A.     The Ministry of Self-Defense Videoconference

First, Rehl directs the Court to a Ministry of Self-Defense ("MOSD") videoconference from December 30, 2020.³ He argues that the videoconference shows that Proud Boys members created the MOSD to impose discipline and structure on Proud Boys rallies—not to orchestrate an attack on the Capitol. But the video is not new evidence for purposes of reopening the detention hearing. In its opposition, the Government represents that it provided Rehl a copy of the video on June 2, 2021—weeks before the hearing on the Government's motion to revoke his pretrial release and months before Rehl filed his first motion to reopen. ECF No. 421 at 4.

Rehl does not contest this timing, but he still argues that the Court should consider this evidence as new for purposes of reopening his detention hearing. He points out, correctly, that discovery in this case is voluminous, to say the least. But the videoconference was hardly produced to Rehl as a needle in a haystack. The production cover letter identified and described it as a 1 hour, 38 minute "video from December 30, 2020, featuring [Defendant] Enrique Tarrio, [Defendant] Joe Biggs, Zach Rehl, and others describe the Ministry of Self Defense." ECF No. 421-1 at 5. More importantly, the Government put Rehl on notice as to its importance in the detention context by discussing it in its reply brief ahead of Rehl's release-revocation hearing. *See* ECF No.

---

³ Rehl also points to "other information" "contradict[ing] allegations of a plan to attack." ECF No. 401 at 17. But he does not even try to show that any of the information he discusses within that section of his motion is new. *Id*. at 17–18. The Government asserts, without contradiction, that it produced most of the information (which is under seal) to Rehl before his first reopening hearing. ECF No. 421 at 13 n.5. And it appears that the Court already considered at least some of this material in denying Rehl's first motion to reopen. *See* ECF No. 252 at 18. Finally, even if the evidence he cites about Defendant Charles Donohoe is new, whether Donohoe's "bottle throwing was [] part of any plan to attack the Capitol or interfere with law enforcement" is immaterial for reopening purposes, on the entire record before the Court. *See* ECF No. 401 at 17.

3

91 at 2. Thus, because this videoconference is not new evidence, it cannot offer grounds to reopen Rehl's detention hearing.[4]

    **B.**    **The "Hemphill" Video**

Second, Rehl points to a video recorded by a woman who spoke with Defendant Ethan Nordean outside the Capitol on January 6, 2021. In the video, she asks Nordean—with Rehl nearby—whether they were "going inside"; the woman also says that she too wants to go inside. ECF No. 401 at 22. Nordean responds, "No, we are not going inside." *Id.* Rehl holds this video out as suggesting that there was no plan—at least that he was a part of—to enter the Capitol or obstruct Congress's proceedings.

The Government first produced this video to Rehl in May 2022, so it is new for reopening purposes. But it is immaterial. On the entire record here, the Court can hardly put much stock in Nordean's denial of any interest in entering the Capitol to an apparent stranger, especially when

---

[4] Even if the MOSD videoconference were new for purposes of reopening Rehl's detention hearing, on the entire record before the Court, it is not material; it does not cast the BRA factors in a "different light." *Lee*, 451 F. Supp. 3d at 5. True, as Rehl argues, the video does not specifically show Rehl and his alleged coconspirators articulating a plan to attack the Capitol. But facially, most of it is not inconsistent with such a plan, either. Rather, the Government contends it shows that Rehl would be among the Proud Boys' leaders providing directions on the ground at rallies to advance the "strategic objective" of their "marketing team"—Tarrio, Nordean, and Biggs. *See* ECF No. 421 at 5. Rehl also points out that the videoconference shows Tarrio asserting that the Proud Boys were "never going to be the ones to cross the police barrier or cross something in order to get to somebody." ECF No. 401 at 14. Relatedly, he suggests that it shows another Proud Boys member, Jeremy Bertino, expressing what Rehl characterizes as a "sense of trying to avoid chaos and violence." *Id.* at 15. But again, on the entire record before it, the Court does not find these points material such that they warrant reopening Rehl's detention hearing. The Court also notes that since Rehl filed this motion, Bertino has pleaded guilty to participating in a seditious conspiracy with Rehl to disrupt Congress's certification of the Electoral College vote. *See United States v. Bertino*, No. 22-cr-329 (TJK), ECF Nos. 1, 4 (D.D.C. Oct. 6, 2022). And in Bertino's statement of offense, he described how MOSD leadership increasingly disavowed the police as January 6th approached. *See id.* at ECF No. 5.

not long afterward, he is alleged to have done just that. Thus, this video does not "cast[] different light" on the factors relevant to the Court's earlier detention ruling. *Lee*, 451 F. Supp. 3d at 5.

    **C.**    **The New Guilty Pleas**

Third, Rehl asserts that new "plea agreements and statements by persons present on the Capitol Grounds . . . show that [he] was not involved in any plan to attack the Capitol and was not 'calling the shots' on January 6." ECF No. 401 at 3. He points specifically to Jeffery Finley, who pleaded guilty on April 22, 2022, and Rehl's alleged coconspirator, Defendant Charles Donohoe, who pleaded guilty on April 8, 2022.[5] ECF No. 449 at 12–13.

Finley, the president of a West Virginia Proud Boys chapter, was charged with four misdemeanors, and he pleaded guilty to one of them. *See United States v. Finley*, No. 21-cr-526 (TSC), ECF Nos. 1, 39 (D.D.C. Mar. 21, 2021 & Apr. 6, 2022). The Government did not seek, and the court in that case did not order, his pretrial detention. To the extent Rehl relies on the decision not to detain Finley to support his motion, *see* ECF No. 401 at 10–12, this information is neither new nor material. In fact, Rehl discussed Finley's case in his *first* motion to reopen. *See* ECF No. 191 ¶¶ 70–79. And as the Court explained then, "purported comparators are of little value" because detention decisions require "individualized," "fact-intensive" evaluations of the BRA factors. *See* ECF No. 252 at 14. That is especially true here because Finley, suffice it to say,

---

[5] Rehl also cites another January 6th defendant's statement to the FBI that Rehl was "not calling the shots." *See* ECF No. 401 at 10. Even assuming this information is new, the Court does not find it material. The Court's decision to detain Rehl was not based on a finding that he was ultimately "calling the shots" on January 6th. To the contrary, the Court recognized that Rehl "may not have been as prominent as the leadership role that Mr. Nordean or Mr. Biggs had that day," but "evidence strongly suggests that he was, at a minimum, . . . a trusted lieutenant of those perhaps higher leaders." ECF No. 147 at 49.

was not alleged to have "played a planning and leadership role" in a January 6th-related conspiracy like Rehl. *Id.*

Rehl also argues that the statements of fact supporting both Donohoe's and Finley's guilty pleas include new information suggesting Rehl "did not plan and was not aware of any plan to attack the capitol."[6] *See* ECF No. 401 at 19–21. He argues these documents show "the only 'plan' that was passed on to the MOSD was to meet at the Washington monument at 10 am." *Id.* at 20.

Even if new, the information in these statements of fact is immaterial, for several reasons. First, Donohoe, in pleading guilty to violating 18 U.S.C. §§ 1512(k) and 111(a), admitted he conspired *with Rehl* and his codefendants to obstruct Congress's certification of the Electoral College vote. *See* ECF No. 336 ¶¶ 7–47. So if anything, Donohoe's plea supports detention, not release. Second, the information Rehl points to in the statements of fact supporting these guilty pleas—as well as the other evidence he marshals on this point—does not suggest, on its face, that the *only* plan Rehl knew about was to meet at the Washington Monument on January 6th.[7] To the contrary, Donohoe stated, "Everyone needs to meet at the Washington Monument at 10am tomorrow morning! . . . Details will be laid out at the pre meeting!" ECF No. 401 at 20. Thus, this message tracks the Government's theory that plans—or "details"—existed beyond meeting at the Washington Monument. Third, none of the other information Rehl cites in these statements of fact undermines

---

[6] Rehl also advances other arguments that he was unaware of any plan to attack the Capitol. First, he argues that "not a single text message or social media posting by [him] indicates he was aware of [a plan to 'oppose by force' and 'corruptly obstruct' the Congress], that he joined a conspiracy during [December 2020 through January 2021], that he traveled to the District of Columbia to carry out such a plan, or that he aided and abetted any person in any such plan." *See* ECF No. 401 at 19. Second, he says that the Government's allegations that he obtained radios for the rally and helped fundraise travel expenses are "red herrings." *Id.* at 21–22. These arguments are not based on any purported new evidence for purposes of reopening Rehl's detention hearing.

[7] *See* ECF No. 401 at 20–21.

the Government's allegations and evidence related to Rehl's role in the charged conspiracy, even if it suggests that Rehl did not have as prominent a leadership role as some of his alleged coconspirators. *See* ECF 449 at 12 ("Among other things, Finley identified Nordean and Biggs as the persons directing the others, that he looked to Nordean as the leader, [and] that he saw others remove barricades.").

### D.   The "1776 Returns" Document

Fourth, Rehl directs the Court to the "1776 Returns" document, the subject of certain allegations in the Third Superseding Indictment. ECF No. 401-1; *see* ECF No. 380 ¶ 41. The Government alleges that the document, which supposedly advances a plan to occupy government buildings in the District of Columbia on January 6th, was sent to Tarrio, Rehl's codefendant. Rehl insists he did not know about this document. This information is new, but again, it is immaterial. The Government has never alleged that Rehl knew about the document, nor do the allegations in the Third Superseding Indictment appear to turn on whether he did. Thus, that Rehl did not know about it does not materially change the Court's prior analysis of the BRA factors.

\*     \*     \*

In sum, the Court finds that Rehl has not identified new and material information, individually or collectively, that supports reopening his detention hearing under Section 3142(f)(2).[8]

---

[8] Rehl also offers letters from his wife and others in the community in support of his release, which the Court has read carefully. *See* ECF No. 401 at 37–39. And the Court heard from both Rehl and his wife at the hearing on the motion. The Court is sympathetic to the impact that Rehl's detention has had on his wife and young child. Even so, none of this evidence is new or material for reopening purposes. At Rehl's initial hearing, the Court found that Rehl's history and family circumstances favored release. *See* ECF No. 147 at 52–54. Still, this factor was "undercut by other considerations; namely, that these family ties . . . did not stop him from taking the actions he did related to January 6th." *Id.* at 54.

## II.     Rehl's Remaining Arguments

Finally, throughout his motion, Rehl argues that the Court should reopen his detention hearing for reasons that fall outside Section 3142(f)(2)'s parameters. None are persuasive.

To start, Rehl advances several arguments that are simply improper or untimely in this posture. Among them, he argues this Court wrongfully used his membership in the Proud Boys to detain him in violation of his First Amendment rights and that it improperly incorporated factual findings from an earlier ruling detaining his alleged coconspirators, Nordean and Biggs. *See* ECF No. 401 at 5–8, 28. The appropriate avenue to litigate these issues would have been to appeal the Court's initial decision granting the Government's motion to revoke Rehl's pretrial release—not a motion to reopen the hearing under Section 3142(f)(2).

Rehl also argues the Government did not present certain favorable evidence to the grand jury. ECF No. 401 at 27. He asks the Court to take these supposed omissions "into account" when "weighing the evidence [he] has submitted in this Motion against the fact of an indictment." *Id.* But whether the Government provided every stitch of favorable evidence to the grand jury (which Rehl, at any rate, concedes it need not do, *see id.*) is ultimately not relevant to the Court's weighing of the BRA factors. The *Court* has considered the entire record of allegations and evidence before it—including the evidence Rehl accuses the Government of withholding from the grand jury—and has found it does not warrant reopening his detention hearing.

Last, Rehl argues—for the first time in his reply—that the Court should exercise its discretion to reopen his detention hearing in the interest of justice. *See* ECF No. 449 at 7 (citing *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47 (D.D.C. 2013)). Courts generally "will not consider arguments raised for the first time in a reply brief." *Nat. Res. Def. Council, Inc. v. U.S. EPA*, 25 F.3d 1063, 1071 n.4 (D.C. Cir. 1994) (cleaned up). None of Rehl's arguments persuade the Court

to depart from this longstanding rule.  For example, Rehl leans on the Circuit's opinion in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).  But *Munchel* is not "a controlling or significant change in the law" justifying reopening in the interests of justice.  *See Hong Vo*, 978 F. Supp. 2d at 48 (cleaned up).  In fact, this Court relied on *Munchel* to *deny* Rehl's first motion to reopen because, as the Circuit held, "[t]hose who actually assaulted police officers and broke through doors, windows, and barricades, . . . *and those who aided, conspired with, planned, or coordinated such actions*, are in a different category of dangerousness than" other January 6th defendants.  ECF No. 252 at 14–15 (quoting *Munchel*, 991 F.3d at 1284 (emphasis added)).  In short, the Court finds that the interests of justice do not warrant reopening Rehl's detention hearing.

\*     \*     \*

For all these reasons, it is hereby **ORDERED** that Rehl's Motion to Reopen Detention Hearing, ECF No. 401, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 8, 2022