UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO: 21-cr-0175-3 (TJK) |
| | * | |
| ZACHARY REHL, | * | |
| Defendant | * | |

********

## ZACHARY REHL'S MOTION TO DISMISS, GRANT IMMUNITY OR SEVER AND CONTINUE TRIAL AND TO ADOPT AND SUPPLEMENT DEFENDANT TARRIO'S MOTION TO DISMISS AND NORDEAN'S NOTICE OF WITNESS INTIMIDATION

Zachary Rehl, by his undersigned counsel, hereby respectfully moves this Honorable Court to Dismiss the Indictment against him on the grounds that the Government has made unavailable to the defense percipient witnesses, who have exculpatory information in violation of Mr. Rehl's Sixth Amendment right to present a defense and to compulsory process and his rights under the Due Process Clause to a fair trial. Mr. Rehl also seeks to adopt and incorporate by reference the Motion to Dismiss (ECF 572) filed by Mr. Tarrio in connection with the government's conduct relating to MPD Lieutenant Lamond; the Notice of Government's Intimidation of Defense Witness (ECF 579) filed by Mr. Nordean; and the Motions to Dismiss based on *Brady* violations filed by Mr. Rehl and the other defendants (ECF 533, 535, 536)[1] relating to materials designated by the government as "highly sensitive".

Mr. Rehl seeks to join, adopt and incorporate by reference the legal arguments made and relief sought in the noted motions on the merits. He also seeks to join, adopt and incorporate by reference said motions to the extent they support a pattern of conduct by the government, to keep

---

[1] Some of the motions and responses were filed Under Seal so that an ECF number is not currently known to counsel.

exculpatory witnesses from the defendants – either intentionally or effectively. The issues raised and arguments made in the noted motions apply with equal force to Mr. Rehl. Joining and incorporating said motions and notice will promote the just determination of the case, simplify procedures and eliminate unjustifiable expense and delay in accordance with Rule 2, Fed. R. Crim. Proc.

## I.  Factual Background

The factual basis of the instant motion involves three percipient witnesses, who would be able to provide exculpatory evidence as to Mr. Rehl's conduct and intent relating to the charged conspiracies but for the government's conduct. All three witnesses were members of the Proud Boys, were with Mr. Rehl on January 6, and all three entered the Capitol with him. Indeed, the government might seek to characterize the witnesses as "tools" under its "tools theory of the conspiracy" which it describes as encompassing "Proud Boys members and affiliates whom the defendants recruited and led to the Capitol as part of their marching group." Gov. Supplemental Memorandum (ECF 550) at 12-13. All three witnesses have only been charged with misdemeanor offenses; none have been charged with engaging in seditious conspiracy, obstruction, destruction of property, assault, or interfering with officers, the charges brought against Mr. Rehl.

All three witnesses were with Mr. Rehl at critical times on January 6. Two of the witnesses, who were members of the Philadelphia chapter of the Proud Boys, were with Mr. Rehl and spoke with him in the days and months before January 6. They traveled to DC with Mr. Rehl on January 5, stayed together that evening at the same hotel, where they consumed substantial amounts of alcohol, remained together for much of the day on January 6 and returned to Philadelphia together on January 7. All three witnesses have been charged only with misdemeanor offenses. In each case, the government has filed motions to continue the resolution of the cases until sometime after February

1, 2022, making those witnesses effectively unavailable to Mr. Rehl, as they each retain a Fifth Amendment right not to testify.

Undersigned counsel has spoken to counsel for each of the three witnesses.[2]  All three have indicated that if subpoenaed to testify, their clients would assert their Fifth Amendment rights to remain silent in light of the posture of their own cases.  The delays that have made these witnesses unavailable are attributable to government conduct.

> A.  By Delaying the Sentencing of an Exculpatory Witness, the Government Has Made That Witness Unavailable To Mr. Rehl

One of the witnesses noted above entered a guilty plea to a misdemeanor on April 6, 2022.[3] The statement of facts entered in the case shows that the witness does not implicate Mr. Rehl in any attempt to interfere with Congress by force or corruptly.[4]  Sentencing in the case was originally scheduled for July 19, 2022.  At the request of AUSA Jason McCullough, the July sentencing was vacated.[5] Sentencing is now to be scheduled on February, 13, 2023 or a later date, after Mr. Rehl's trial is completed.[6]  Because a defendant retains a right to assert a claim to remain silent under the Fifth Amendment until after sentencing is imposed, *Mitchell v. United States*, 526 U.S. 314 (1999), that witness is now unavailable to Mr. Rehl.  By delaying the sentencing of this witness until after Mr. Rehl's trial has concluded, the government has placed that witness outside Mr. Rehl's Sixth

---

[2]  One of the counsel was not available to speak to undersigned counsel until today, which is why the instant motion had not been filed earlier.

[3]  Case No. 21-cr-00526-TSC.

[4]  *Id.* at ECF 38.

[5]  *Id.* at ECF 41.

[6]  *Id.* at ECF 43.

Amendment right to compulsory process and has impeded Mr. Rehl's right to present a complete defense.

At the plea hearing, the district court entered an order setting sentencing for July 19, 2022. On July 7, 2020, AUSA Jason McCullough filed an unopposed motion to continue sentencing. On July 11, 2022, not satisfied with the government's failure to explain why it needed additional time to prepare for sentencing in a misdemeanor case, the district court ordered the government to "fully explain why such a delay would be warranted."[7] The government appears to have filed a sealed explanation in the following days, as ECF 42 does not appear on the docket. While Mr. Rehl does not have access to that sealed document, he respectfully requests that the Court review that document in camera to determine whether it provides support for the argument that the government is intentionally and not merely effectively interfering with his right to present exculpatory evidence.

On July 13, the Court vacated the July sentencing hearing and ordered the parties to submit a status report with proposed dates for a later sentencing. On November 2, the parties filed a Joint Status Report, signed by AUSA McCullough, requesting a sentencing date sometime after February 13, 2023.

---

[7] Minute Order (7/11/22): "In its 41 Motion to Continue Sentencing Hearing, the Government seeks to delay [defendant's] sentencing to some, yet-undetermined future date, to be proposed by the parties four months from now via a Joint Status Report. As rationale, the Government cites the need to allow time for the parties to fully evaluate the nature and seriousness of the defendants misconduct and for the parties to prepare a full and complete allocution to assist this Court in its sentencing. Mot. at 1. But this case has already been subject to frequent, last-minute continuances, and the court has informed the parties that further continuances would not be granted absent extraordinary circumstances. Feb. 23, 2022 Min. Order. No such circumstances are apparent to the court, and the Governments motion fails to provide any information as to why it requires nearly four more months to prepare for a misdemeanor sentencing hearing. The Government is therefore ORDERED to submit additional briefing that fully explains why such a delay would be warranted. This additional briefing must be filed on or before the close of business on July 15, 2022, and may be filed under seal if necessary. SO ORDERED."

### B. The Government Has Delayed Resolution of Cases Involving Two Other Exculpatory Witnesses

On December 8, 2021, the two Philadelphia Proud Boys were charged by complaint with four misdemeanor offenses relating to their January 6, 2021 entry into the the United States Capitol.[8] AUSA Luke Jones, who was prosecuting the instant case until his withdrawal in May 2022, also filed the original charges against these two defendants. Since that time, the government has moved to continue their case, with the consent of the defendants, five separate times.[9] The continuance motions reference the voluminous discovery, which is present in every misdemeanor case. The only other explanation given is the need to allow the government more time to "continue discussions potential pre-charging resolution of this matter." The next status hearing in the case is scheduled for February 3, 2023, after Mr. Rehl's case is case is scheduled to be completed.

The record shows that the government has not made any plea offers to these two defendants.

As a result of these continuances, the government has effectively placed these two defendants who would be able to offer exculpatory evidence on behalf of Mr. Rehl outside the reach of Mr. Rehl's right to present a defense and to compulsory process.

### II. The Government is Violating Mr. Rehl's Rights Guaranteed to Him Under the Sixth Amendment and the Due Process Clause to Present a Complete Defense

The Fifth and Sixth Amendments – including in particular the Due Process and Compulsory Process Clauses – combine to afford "the accused" in "all criminal prosecutions" (U.S. Const.,

---

[8] A third defendant in this group has recently pleaded guilty pursuant to a cooperation agreement to a misdemeanor plea. *United States v. Giddings,* No. 22-cr-00389-TJK-1. Despite an inordinately lengthy Statement of Offense for a misdemeanor and multiple mentions of Mr. Rehl, there is no assertion that Mr. Rehl had a plan to interfere with Congress by force or corruptly.

[9] Case No. 21-mj-00689-RMM, Doc 20, 24, 27, 30, 37.

amend. VI) "'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

As stated in the foundational decision:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19-23 (1967). *See generally* Peter Westen, *The Compulsory Process Clause*, 73 U.Mich.L.Rev. 71 (1974); Peter Westen, *Compulsory Process II*, 74 U. Mich. L. Rev.191 (1975). Mr. Rehl adopts and incorporates the legal arguments set out in Mr. Tarrio's Motion to Dismiss (ECF 569) at 3-7, which set out binding precedent from the D.C. Circuit as well as cases from other circuits.

As an initial matter, even if the prosecutors' motives in delaying resolution of the exculpatory witnesses' cases were impeccable "the implication of what [they did] was calculated to transform [each witness] from a willing witness to one who would refuse to testify [on Fifth Amendment grounds], and that in fact was the result." *United States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973) (reversing conviction because of prosecutor's threat to witness). This result has prejudiced Mr. Rehl and the defendants. *Id.*

A. **The Court Should Dismiss the Case**

In light of the conduct by the government, which has resulted in making three exculpatory witnesses unavailable and viewed in light of the pattern set out above to violate the constitutional

rights of Mr. Rehl and the other defendants to present a complete defense, to compulsory process and to the due process of law, the Court should dismiss the case. Mr. Rehl adopts and incorporates the legal arguments in Mr. Tarrio's Motion to Dismiss (ECF 569) at 3-7, which set out binding precedent from the D.C. Circuit as well as cases from other circuits in support of dismissal.

Moreover, in light of the prima facie case of improper conduct by the government that defendants have shown, the Court can require the government to explain its conduct. The Court should then determine whether the prosecutors' stated reasons were the actual reasons or instead were a pretext for burdening the defendants' rights under the Sixth Amendment and the Due Process clause. *Cf. Batson v. Kentucky,* 476 U.S. 79, 97-98 (1986)("once a prima facie case of discrimination has been shown by a defendant, the State must provide race-neutral reasons for its peremptory strikes. The trial judge must determine whether the prosecutor's stated reasons were the actual reasons or instead were a pretext for discrimination"). If the government's conduct was intended to burden Mr. Rehl's right to present a defense and to compulsory process, the Court should impose sanctions it deems just and proper.

Moreover, in light of the Notice of Witness Intimidation filed by Mr. Nordean it is unclear how widespread the government's conduct and how many witnesses (including those referenced in the Sealed filings) have been made unavailable to Mr. Rehl and the other defendants as a result of the government's conduct in this case.[10]  It thus appears that the government's conduct has so

---

[10] Mr. Rehl notes that in the recent Oath Keepers conspiracy, *United States v. Rhodes*, No. 22-cr-15 (APM) defendants complained that the government indicted two persons, shortly after they were first noted as defense witnesses. *See, e.g. Oath Keepers sedition trial could reveal new info about Jan. 6 plotting*, Wash Post, 9/24/22("Rhodes's defense has been hampered by the indictments in June and August of two of his key aides - deputy Michael Greene and attorney SoRelle, respectively - whose ability to testify may be limited without jeopardizing themselves") at https://www.washingtonpost.com/dc-md-va/2022/09/24/oath-keepers-sedition-trial-preview/

compromised the defendants' constitutional rights "as to render the proceedings fundamentally unfair, allowing the presumption of prejudice without any particular assessment of prejudicial impact. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 251(1988) referencing *Vasquez v. Hillery*, 474 U.S. 254 (racial discrimination in selection of grand jury); *Ballard v. United States*, 329 U.S. 187 (exclusion of women from grand jury).

In any event and regardless of the government's motivation, if Mr. Rehl and the other defendants are unable to have the benefit of these exculpatory witnesses to present a complete defense, then they are prejudiced and this Court should dismiss the indictment.

**B.     If the Court Does Not Dismiss, It Should Immunize the Witnesses**

Mr. Rehl has a Sixth Amendment constitutional right to compulsory process, which allows him to obtain both the presence and the testimony of helpful witnesses. The trial court has a constitutional duty to enforce that right, including – according to a well-settled line of Supreme Court cases – sometimes by overriding the usual rules of evidence, including privileges. When a defense witness invokes his or her Fifth Amendment privilege, a conflict of constitutional rights arises. Louis M. Natali, Jr., *Does a Criminal Defendant Have a Constitutional Right to Compel the Production of Privileged Testimony Through Use Immunity?*, 30 Vill.L.Rev. 1501, 1509-14 (1985); Westen, supra, 73 Mich. L.Rev. at 166-67; Note, *The Sixth Amendment Right to Have Immunity Granted to Defense Witnesses*, 91 Harv.L.Rev. 1266, 1271-73 (1978). Neither the defendant's right of compulsory process nor the witness' protection against compulsory self-incrimination is inherently of greater value or weight.

> The authors of the Bill of Rights did not undertake to assign priorities between [Fifth] Amendment and Sixth Amendment rights, ranking one as superior to the other. ... [I]if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do.

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 561 (1976) (original refers to First Amendment, not Fifth); *accord, id*. 588 (Brennan, Stewart & Marshall, JJ., concurring: importance of protection of press freedom "does not imply ... any subordination of Sixth Amendment rights" where "fair trial may be adequately assured through methods that do not infringe" others' conflicting rights).

The concept of "judicially granted defense witness immunity," stems from the unusual circumstance that, unlike in most conflicts-of-rights situations, it is entirely possible for the trial court fully to protect both individuals' rights, that is, both the defendant and the witness. The Fifth Amendment privilege, as applied to witnesses not then on trial in a criminal case, does not really create a "right to remain silent" but rather a right not to be prosecuted on the basis of compelled testimony.  In other words, as the Supreme Court held in *Kastigar v. United States*, 406 U.S. 441 (1972), use-and-fruits immunity fully protects a witness' Fifth Amendment privilege, leaving both the witness and the government no worse and no better off than if the assertion of privilege had been sustained. *Id*. 462.  No statutory authority for the "granting" of "judicial immunity" is necessary. Whenever a court compels the testimony of a witness over that witness' proper claim of Fifth Amendment privilege, the Supreme Court has long held, the Self-Incrimination Clause by its own force confers the needed immunity. *Murphy v. Waterfront Commission*, 378 U.S. 52, 75 (1964) ("a witness does not need any statute to protect him from the use of selfincriminating testimony he is compelled to give over his objection"), *quoting Adams v. Maryland*, 347 U.S. 179, 181 (1954); *see*

9

*also Baltimore City Dep't of Social Services v. Bouknight*, 493 U.S. 549, 560-62 (1990) ("The Fifth Amendment takes care of that without a statute," at 562, quoting *Adams*). This direct-and-derivative-use protection is not "granted" by the judge (as often mistakenly framed), nor is it somehow an aspect of the defendant's Sixth Amendment rights. Rather, it arises automatically, as explained in *Murphy* and other cases, from the nature of the Fifth Amendment right invoked by the witness. Such immunity protects the witness from any direct or indirect use of that testimony against him or her in a criminal case, other than in a prosecution (or enhancement of sentence) for perjury. *United States v. Apfelbaum*, 445 U.S. 115, 125 (1980); *New Jersey v. Portash*, 440 U.S. 450 (1979). Thus, no statutory (or inherent) authority for judges to "grant immunity" is needed.

The Compulsory Process Clause is not self-executing. The trial court has an important, constitutionally constrained discretion in these circumstances, to be implemented just as the court would act upon a motion under Fed.R.Crim.P. 17(b). When the defendant issues a subpoena for testimony that is essential to an adequate defense, but the witness declines to testify on Fifth Amendment grounds, the court should then compel the witness's testimony (thus leaving the witness's Fifth Amendment rights fully protected, per *Kastigar*), notwithstanding the claim of privilege. *See Bruton v. United States*, 391 U.S. 123 (1968) (court may be obligated to grant severance, even if inconvenient or detrimental to prosecution case, if necessary to protect both defendant's Sixth Amendment right to confrontation and co-defendant's Fifth Amendment right to remain silent).

The Compulsory Process Clause entitles an accused person to have the court's assistance in obtaining testimony that is necessary to an effective defense. This right sometimes overcomes the invocation of evidentiary rules, including privileges. *See Holmes, supra* (rejecting state rule precluding certain defense witnesses, when state presents forensic evidence); *Rock v. Arkansas*, 483

U.S. 44 (1987) (invalidating rule against hypnotically refreshed testimony); *Davis v. Alaska*, 415 U.S. 308 (1973) (overcoming privilege for juvenile records of witness); *Chambers v. Mississippi*, 410 U.S. 283 (1973) (application of certain hearsay rules rejected); *Roviaro v. United States*, 353 U.S. 53 (1957) (informer's privilege overcome).

Accordingly, the Court should immunize the three witnesses, who will provide exculpatory evidence on behalf of Mr. Rehl.

### C. If the Court Does Not Dismiss or Immunize the Witnesses, It Should Sever Mr. Rehl from the Other Defendants and Continue His Trial Until the Three Witnesses Are Available

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant was deprived of his rights under the Confrontation Clause where a confession by his codefendant was introduced in their joint trial.  The Court held that even where a limiting instruction was given to the jury that it could only consider the confession against the defendant who admitted guilt, the prejudice could not be dissipated in a joint trial.  In such a case, the Court explained that even if inconvenient or detrimental to the prosecution case, severance should be granted to protect both defendant's Sixth Amendment right to confrontation and the co-defendant's Fifth Amendment right to remain silent. Similarly, in *Zafiro v. United States*, 506 U.S. 534, 539 (1993) the Supreme Court held that

> a district court should grant a severance ... if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" such as when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."

*See also United States v. Slatten*, 865 F.3d 767, 810 (D.C. Cir. 2017) (reversing first degree murder conviction and remanding for new trial where district court denied motion to sever that would have

allowed introduction of exculpatory statements by codefendant).

In the instant case, as a last resort and as upheld in *Bruton* and *Zafiro*, this Court should sever Mr. Rehl's case from that of the codefendants and continue his case until after the three exculpatory witnesses and MPD Lieutenant Lamond are available to testify, after their own cases are resolved.

WHEREFORE, for the reasons stated above, Mr. Rehl respectfully moves to dismiss the case against him to avoid prejudice caused by the government's conduct in making exculpatory witnesses unavailable. Alternatively, the Court should immunize the exculpatory witnesses or, sever Mr. Rehl's case and reschedule his case for a time when the exculpatory witnesses are available to testify on his behalf. Only such remedies under the Fifth and Sixth Amendment to a fair trial where he would be able to present a complete defense, to compulsory process and to the due process of law.

Respectfully submitted,

/s/
**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 19th day of August, 2022.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**