UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:21-cr-175 (TJK) |
| v. : | |
| : | |
| ETHAN NORDEAN : | |
| and : | |
| ZACHARY REHL, : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT REHL'S MOTION TO DISMISS,
GRANT IMMUNITY OR SEVER AND CONTINUE TRIAL**

In his motion (at ECF 581), Defendant Rehl moves for various forms of relief, including dismissal of the indictment, judicial grant of immunity for witnesses, and severance, on the basis that the government's conduct has made potentially exculpatory evidence unavailable to Defendant Rehl by virtue of its prosecution of other rioters at the Capitol. Defendant Nordean moved to join and supplement Defendant Rehl's motion (at ECF 584) by introducing an additional allegedly exculpatory witness that he claims has been "placed in fear of testifying at trial" as a result of the putative witness's expectation that his son may be charged for his conduct at the Capitol. Defendants claim that their motions demonstrate a "pattern of conduct by the government to keep exculpatory witnesses from the defendants -- either intentionally or unintentionally." ECF 581 at 1-2; ECF 584 at 1. This is false. For the reasons set forth herein the motions should be denied.[1]

\*   \*   \*

---

[1] The government has previously responded to and opposed Defendant Tarrio's motion to dismiss the Indictment (ECF 572), which was joined by Defendant Biggs (ECF 570). The government hereby incorporates its memorandum in opposition to Tarrio's motion, which was filed under seal and docketed at ECF 576.

The "pattern of conduct" the defendants identify is not nefarious. The government is conducting a large-scale investigation of the thousands of people who joined in the riot at the Capitol on January 6. Over the past 23 months, the government has filed criminal charges against more than 900 individuals. *See https://www.justice.gov/usao-dc/23-months-january-6-attack-capitol*. Approximately 470 of those defendants have entered pleas of guilty; and slightly more than 30 have been found guilty at contested trials. *Id.* As of December 6, 2022, 335 defendants who had been found guilty had been sentenced; which comprises roughly one-third of the defendants who have been charged to date. *Id.* According to the George Washington University Program on Extremism Legal Proceedings Tracker, *available at https://extremism.gwu.edu/legal-proceedings-tracker*, the average length of time to resolution by guilty plea or verdict for all January 6 prosecutions is 52.6 weeks. And, of course, it is typical for sentencing to occur no sooner than two months after a case is resolved to permit for the preparation of a Presentence Investigation and the submission of sentencing memoranda by the parties.

With respect to the five defendants in the instant case, the government continues to identify, investigate, and prosecute the scores of individuals that they led to the Capitol on January 6. Many of these individuals charged onto Capitol grounds alongside the defendants in this case and proceeded to commit crimes. Defendants Rehl and Nordean assert that the Court should discern a pattern of *mis*conduct because the government has continued to investigate and charge individuals with whom these defendants have relationships. In so doing, defendants point to the fact that the same prosecutors in this case are involved in other investigations of related individuals. ECF 584 at 2. But that is not nefarious – it is efficient. The government has established a dedicated team of agents and prosecutors who are responsible for investigating the conduct of the large group of Proud Boys who marched to the Capitol on January 6, and the individuals who were associated

2

with that group. The defendants also allege that there is a nefarious inference to be made from the fact several prosecutors have "withdrawn" their appearances from these cases. ECF 584 at 4 n.1; ECF 581 at 5. But there is nothing unusual in the fact that various attorneys have cycled both on and off this investigation over the past two years. Indeed, the only pattern offered in the defendants' retelling is the significant number of individuals with links to these defendants who have been charged with committing crimes on January 6. That is not a feature of the government's making, and the defendants' attempts to make it such should be rejected by this Court.

**I.      The government has not engaged in malfeasance with respect to the witnesses identified by the defendants.**

The defendants have failed to establish that the government has engaged in malfeasance with respect to any of the individuals it has referenced in its briefing to the Court. The examples cited by the defendants are each individually, and in the aggregate, a proper exercise of the government's law enforcement function. There is no basis, on these facts, for the Court to dismiss the indictment as a sanction to the government.

**A.  Philadelphia Proud Boys**

Defendant Rehl asserts that the government has delayed the resolution of cases involving two Philadelphia Proud Boys who were charged by complaint on December 8, 2021. Defendant Rehl suggests that the parties' motions to continue the case due to, *inter alia*, voluminous discovery and the need to "continue discussions [of a] potential pre-charging resolution in this matter" are somehow pretextual. ECF 581 at 5. They are not. The charges against these defendants have been pending for 52 weeks – which is the average length of time across all 900 January 6 cases that it takes to resolve a case by plea or trial.[2] Indeed, many January 6 cases have been pending for far

---

[2]   A third codefendant in the case recently pleaded guilty pursuant to a cooperation agreement. *See, e.g.,* Case No. 21-mj-689 RMM, ECF 27.

longer – 89 cases have been pending for 90 weeks or longer without resolution by plea or trial. And it is hardly remarkable that the remaining two defendants in the case would seek additional time to review the voluminous discovery in the case, and to continue to engage in discussions regarding potential pre-trial resolution.

### B. Jeffery Finley

Defendant Rehl also asserts that the government has acted improperly by delaying sentencing of Mr. Jeffery Finley, Case No. 21-cr-526 (TSC). Mr. Finley's case was continued, at the request of the government, without opposition by his counsel, upon an order from the Court, and not in any way to prohibit him from being available to testify as a witness at trial.[3]  Mr. Finley has evidently recently indicated through his counsel that he will invoke his Fifth Amendment privilege if called to the witness stand by defendant Rehl. ECF 581 at 3 & n.2. Defendant Rehl is certainly correct that, in general, a defendant's Fifth Amendment right against self-incrimination only extinguishes once "the sentence has been fixed and the judgment of conviction has become final." *Mitchell v. United States*, 526 U.S. 314, 326 (1999).[4] But the government has engaged in no untoward conduct in continuing Mr. Findley's sentencing.

No party owns a witness, but the admitted facts in Finley's Statement of Offense are soundly inculpatory of defendant Rehl.  Mr. Finley's describes a march to the Capitol that was led

---

[3]     At the invitation of counsel for Defendant Rehl, the government will provide this sealed filing to the Court, *ex parte*.

[4]     The government notes – without suggesting that this is true in Mr. Finley's case – that the January 6 investigation is replete with instances where a defendant has entered a plea of guilty only to have the government or counsel identify additional instances of criminal conduct by the defendant through diligent review of videos.  Thus for many defendants, even those who have been sentenced, it is possible that defense counsel may believe that their client continues to have a legitimate Fifth Amendment privilege.

by Nordean. Mr. Finley describes that a "small group" of "Proud Boys leaders" including Zachary Rehl, "broke off" from the larger group to talk to one another during the march. Mr. Finley describes "following" Nordean and other Proud Boys onto the restricted grounds of the Capitol after seeing "Nordean advance onto Capitol grounds with other Proud Boys." And Mr. Finley describes that, prior to entering the Capitol, Rehl asked the group whether they "wanted to go inside the Capitol" and then Mr. Finley "followed Rehl and some members of Rehl's chapter into the Capitol building."

### C.  Shannon Rusch

Defendant Nordean asserts that Shannon Rusch "has been placed in fear of testifying at trial" because a prosecutor communicated to Rusch's son that Rusch's son may be charged with offenses in connection with January 6. Even taking these statements at face value, the only pattern established by this claim is that the government continues to identify, investigate, and prosecute scores of individuals for crimes committed at the Capitol, many of whom have connections to the defendants in this case.

Moreover, the situation presented by Defendant Nordean with Shannon Rusch offers a plain example of the motivated reasoning that drives the defendants' allegations of government misconduct. Had the government charged Mr. Rusch's son last month, would Defendant Nordean use those facts to make the same argument? The government submits that the answer is yes. Were the government to charge Mr. Rusch's son next month, will Defendant Nordean make the same fundamental argument? Yes, again. But the circumstances that give rise to Rusch's son's potential criminal liability for his actions on January 6 have existed for the past 23 months.  Rusch's fear that his son may be charged will only be extinguished when the government actually brings charges, or when the statute of limitations runs.

### D. Adrienna DiCioccio

The government did not pressure or intimidate Adrienna DiCioccio in September 2021 or November 2021. As explained in its earlier response, prior to the November 2021 interview, Ms. DiCioccio understood that she faced legal liability for her actions on January 6. Ms. DiCioccio voluntarily met with the government in November 2021 and provided additional information. At the end of the second discussion, she was given a form to retain counsel. Just as she had done in the first interview, Ms. DiCioccio asked about her potential charges. She was advised of the possibilities, which ranged from misdemeanors to felonies. No further efforts were made in that session or any other to gather facts from Ms. DiCioccio.

The examples cited by the defendants fail to show a single instance of government malfeasance, let alone the "pattern" that defendants seek to tease out of the examples it has set forth. Defendants have fallen well short of any standard that would support dismissal of the case or the imposition of sanctions.

### II. The concept of "judicially granted [] witness immunity" is not supported by the law of the Supreme Court or this Circuit.

As the Supreme Court has explained, "[n]o court has authority to immunize a witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983). "That responsibility [] is peculiarly an executive one, and only the Attorney General or a designated officer of the Department of Justice has authority to grant use immunity." *Id.; accord United States v. Quinn,* 728 F.3d 243, 257 (3d Cir. 2013) ("We know of no precedent [5] to support use immunity grants by the Judiciary, as that right is reserved to the Executive Branch."). As the Supreme Court has explained, the concept of

---

5   In reaching its holding, the Third Circuit referred to and abrogated its prior ruling in *Gov't of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980).

judicially granted immunity would be "inconsistent with the congressional policy of leaving the granting of immunity to the Executive Branch." *Id.* at 262.

For this reason, the D.C. Circuit has uniformly rejected the concept of "judicially-imposed immunity." *United States v. Lugg*, 892 F.2d 101, 101 (D.C. Cir. 1989) ("The cases are legion and uniform that only the Executive can grant statutory immunity, not a court."). *Lugg* further held that the trial court does not have authority to order the executive branch to exercise its statutory authority to grant immunity to a defense witness. *Id.* at, 104 ("We are not an exception to this universal rule and have previously approved the view that 'it is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness." (*quoting United States v. Heldt*, 668 F.2d 1238, 1283 (D.C. Cir. 1981)) (other citations omitted).

The cases cited by Defendant Rehl do nothing to shake this conclusion. Contrary to his claim, the Supreme Court's decision in *Murphy v. Waterfront Commission* does not bestow power on the judiciary to immunize witnesses. 378 U.S. 52, 77 (1964), *abrogated by United States v. Balsys*, 524 U.S. 666 (1998). Rather, *Murphy* held that lawfully compelled testimony in one jurisdiction in our federalist system (e.g., a state proceeding) must also be afforded immunity in other jurisdictions (e.g., a federal proceeding). *Id.* The Supreme Court advocated for no role by the judiciary in *granting* immunity to a prospective witness, but rather acted only to ensure that lawfully compelled testimony received its fullest Constitutional protections in all venues. *Id.*

### III. Defendant Rehl is not entitled to a delay in his trial until all witnesses are available

Defendant Rehl asserts that the Fifth and Sixth Amendments compel the conclusion that his trial must be delayed until all exculpatory witnesses are either immunized or available to testify. The law requires no such result. In fact, in *Lugg*, the D.C. Circuit specifically upheld the conviction

of defendant Lugg even when his co-defendants were rendered unavailable for testimony because they were pending sentencing. *Lugg*, 892 F.2d at 104.

If adopted, Defendant Rehl's rule would lead to absurd results. Under the rule proposed by Defendant Rehl, only the final defendant to go to trial (after all co-conspirators and percipient witnesses had been tried and sentenced) would actualize his rights under the Sixth Amendment. No court has so held, and Defendant Rehl's motion to sever on this ground should be denied.

### IV.  Conclusion

For the reasons set forth herein, the Court should deny the defendants' motion to sanction the government by dismissing the indictment or requiring the government to grant immunity where, as here, there is no evidence of government malfeasance.

        Respectfully Submitted,
        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Jason McCullough*
       JASON B.A. MCCULLOUGH
        NY Bar No. 4544953
      ERIK M. KENERSON // Ohio Bar No. 82960
     NADIA E. MOORE // N.Y. Bar No. 4826566
       On Detail to the District of Columbia
      Assistant United States Attorneys
      601 D Street NW
      Washington, D.C. 20530
      (202) 252-7201
      Erik.Kenerson@usdoj.gov

      */s/ Conor Mulroe*
     CONOR MULROE // N.Y. Bar No. 5289640
     Trial Attorney // U.S. Department of Justice,
      Criminal Division
     1301 New York Avenue, Suite 700
     (202) 330-1788
     conor.mulroe@usdoj.gov