**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| |
| v. |
| |
| ETHAN NORDEAN et al., |
| *Defendants*. |

Criminal Action No. 21-175 (TJK)

<u>**MEMORANDUM ORDER**</u>

Defendants Enrique Tarrio and Zachary Rehl, joined by Joseph Biggs, have again moved to dismiss the Third Superseding indictment.  They argue that the Government's collateral investigations and prosecutions related to the January 6, 2021 attack on the Capitol have led several potential defense witnesses to invoke the Fifth Amendment in response to trial subpoenas. Defendant Ethan Nordean has moved to join them, supplementing their motions with allegations that the Government has endeavored to intimidate other defense witnesses.  As an alternative to dismissal, Rehl further moves the Court to immunize these witnesses itself, or else to sever him from the indictment and continue his trial.  The Court will deny the motions.

**I.      Background**

Tarrio's motion centers on Lieutenant Shane Lamond.  *See* ECF No. 572.[1]  Lt. Lamond is a 20-year veteran of the Metropolitan Police Department in Washington, D.C.  According to Tarrio, he communicated with Lt. Lamond before every trip into the District of Columbia, informing him of the Proud Boys' plans—including those for January 6th. *Id.* at 3.  For that reason, Tarrio has subpoenaed Lt. Lamond to testify at trial.  But because Lt. Lamond is under criminal

---

[1] ECF No. 572 amends ECF No. 569, Tarrio's initial motion to dismiss the case.

investigation for reasons related to his relationship with Tarrio and is facing potential prosecution, his counsel has communicated to Tarrio that he will invoke the Fifth Amendment if called to testify. *Id.* at 7.

Rehl's motion, while adopting and incorporating Tarrio's arguments about Lt. Lamond, focuses on three witnesses he would call in his defense. One witness, Jeffery Finley, has pleaded guilty to misdemeanors and is awaiting sentencing, and the other two face pending misdemeanor charges. *See* ECF No. 581 at 3–5; ECF No. 590 at 3–5. All three witnesses were members of the Proud Boys and entered the Capitol with Rehl on January 6th. ECF No. 581 at 2. Indeed, two of the witnesses travelled to the District of Columbia with Rehl ahead of the rally. *Id.*

The Government moved to continue Finley's sentencing until February. ECF No. 581 at 4. On Judge Chutkan's order, the Government filed an explanation for the delay under seal. *See id.* At Rehl's suggestion, the Government has submitted a copy of that filing to the Court *ex parte*, which the Court has reviewed. As for the two other witnesses with pending charges, the next status hearings are also scheduled to take place in February 2022. *Id.* at 5. Counsel for each of these witnesses has communicated to Rehl that the witnesses would invoke the Fifth Amendment if subpoenaed to testify in this case. *Id.* at 3.

Nordean then moved to join and supplement Tarrio's and Rehl's motions, alleging the Government had intimidated two other defense witnesses, Adrienna DiCioccio and Shannon Rusch. *See* ECF No. 584[2]; *see also* ECF No. 579 (Nordean's "Notice of Government's Intimidation of Defense Witness"). He claims, in short, that the Government implicitly threatened criminal prosecution against DiCioccio and Rusch's son if they refused to corroborate the Government's theory against Nordean or testified in his defense. But importantly, Nordean has

---

[2] The Court hereby grants Nordean's Motion to Join and Supplement.

not asserted that either witness would invoke the Fifth Amendment if subpoenaed to testify on his behalf at trial.

Weeks after these filings, Tarrio supplemented his initial motion.[3]  He incorporated Rehl's and Nordean's allegations, discussed above, and also explained that, since the first motions were filed, two more defense witnesses have asserted they would invoke the Fifth Amendment at trial. *See* ECF No. 612 at 10–12.  One of these witnesses is Eddie Block, whom Nordean has moved before to depose.  *Id.* at 10–11; *see* ECF No. 599; Minute Order of Dec. 28, 2022 (denying Nordean's motion without prejudice).  The Government had noted in opposition to Nordean's motion to depose Block that "Nordean [had] . . . not proffered that Mr. Block [was] willing to submit to a compelled deposition" and questioned whether he might assert a Fifth Amendment privilege considering his own conduct on January 6th.  ECF No. 603 at 7.  As for the second witness, whose "name is sealed," Tarrio represents that Nordean has subpoenaed the witness after several conversations between Nordean's counsel and the witness's counsel.  *See* ECF No. 612 at 11.  Tarrio reports that, on December 30, 2022, the witness's counsel communicated for the first time that the witness "would make a blanket privilege assertion at trial."  *Id.*  Tarrio does not allege that the Government communicated with either witness at all, no less improperly, before the witnesses declared they would invoke their Fifth Amendment privileges at trial.

Collectively, Defendants argue that, to preserve their constitutional rights to due process and compulsory process, the Court should present the Government with an ultimatum: immunize Lt. Lamond and Rehl's witnesses, or else the Court will dismiss the indictment.  *See* ECF No. 572

---

[3] On December 30, 2022, Tarrio filed Second and Third Amended Motions to Dismiss.  *See* ECF Nos. 611 & 612.  The Third Amended Motion corrects a factual inaccuracy from the Second Amended Motion but is identical in all other respects.  *Compare* ECF No. 611 at 11 *with* ECF No. 612 at 11–12.  So the Court will reference throughout the Third Amended Motion at ECF No. 612.

at 1.   Alternatively, Rehl argues the Court should compel his witnesses to testify despite their invocations of Fifth Amendment rights, effectively immunizing their testimony by judicial fiat. *See* ECF No. 581 at 8–11.   Finally, if the Court declines these options, Rehl moves to sever his case from his codefendants and continue his trial until the cases against these witnesses are fully resolved. *See id.* at 11–12.

## II.   Analysis

The Court will deny Defendants' motions.   On the record before it, the Court cannot conclude the Government's conduct related to any of the defense witnesses warrants the extreme sanction of dismissal.   As for Rehl's requests for alternative relief, the path to immunity he seeks is unavailable, and his argument for severance—relief the Court has already once denied, *see* ECF No. 594 at 66–70—is unconvincing.

### A.   Motions to Dismiss

To start, the Court will not dismiss the indictment against the Defendants or otherwise order the Government to immunize the potential defense witnesses to avoid dismissal.   "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," which generally stems from the Fifth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process Clause. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up).   Government conduct "aimed at discouraging defense witnesses from testifying . . . deprive[s] the criminal defendant of his Sixth Amendment compulsory process right." *United States v. Davis*, 974 F.2d 182, 186 (D.C. Cir. 1992).

To that end, some circuits have said a court may require the government to immunize defense witnesses or else risk dismissal of its case. *See, e.g.*, *United States v. Bahadar*, 954 F.2d 821, 826 (2d Cir. 1992).   But the D.C. Circuit has suggested such an order would be appropriate

only under "extraordinary circumstances," which generally means "prosecutorial misconduct." *See United States v. Lugg*, 892 F.2d 101, 104 (D.C. Cir. 1989) (cleaned up).  As one court has explained, to obtain such an order, "the defendant must show that the government has used immunity in a discriminatory way, has forced a potential witness to invoke the Fifth Amendment through overreaching, or has deliberately denied immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation." *United States v. Ebbers*, 458 F.3d 110, 119 (2d Cir. 2006) (cleaned up).  "Overreach" includes "the use of threats, harassment, or other forms of intimidation." *Id.* (cleaned up).

The Court has no grounds on which to conclude the Government has engaged in such misconduct here with respect to the witnesses at issue.  Beginning with Lt. Lamond, Tarrio offers no evidence that the Government has strategically pursued its investigation against him to intentionally deprive Defendants of his testimony.  All he suggests is that it is "curious" the Government has yet to complete its investigation, despite Lt. Lamond's consistent cooperation, and "[i]t is not reasonable to expect any additional evidence to be obtained from any further investigation against Lamond or that the government has sufficient evidence to support an indictment against Lamond."  ECF No. 572 at 7.  But given the complexity of these cases and the Government's detailed representations about the timing and nature of its investigation, the Court cannot conclude that anything untoward is afoot.[4]  With no evidence of threats, harassment, intimidation, or other misconduct, the Court will not second-guess the Government's investigative

---

[4] The Government moved to file its opposition to Tarrio's motion under seal to avoid making public further details about its investigation into Lt. Lamond.  ECF No. 576.  The Court hereby grants that motion.

or prosecutorial decisions, matters which are firmly committed to the executive branch's discretion.[5]

Turning to Rehl's motion, he too offers no evidence of government misconduct to support dismissing the indictment.  In fact, the Government appears to be prosecuting the witnesses he has identified for their alleged conduct on January 6th in the ordinary course.  Rather, he insists that "even if the prosecutors' motives in delaying resolution of the exculpatory witnesses' cases were impeccable 'the implication of what [they did] was calculated to transform [each witness] from a willing witness to one who would refuse to testify [on Fifth Amendment grounds], and that in fact was the result.'"  ECF No. 581 at 6 (quoting *United States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973)).  But in *Smith*, a defense witness represented that a prosecutor told him, *during the trial*, that he would be prosecuted for certain offenses if he testified for the defense.  *See* 478 F.2d at 978.  This conduct, the Court found, was "calculated" to inspire the witness to invoke the Fifth Amendment, even if the prosecutors were genuinely concerned the witness was ignorant of his rights.  *See id.* at 979.  There is no evidence that something similar happened here, or that the Government has otherwise pursued cases against these witnesses in such a way to intentionally deprive Rehl of favorable testimony.[6]  So *Smith* offers no basis for relief.

Nor will the Court infer the Government committed misconduct with respect to Lt. Lamond or Rehl's witnesses based on Nordean's claims about DiCioccio and Rusch.  To be clear, at least

---

[5] Because the Court finds that Tarrio has not shown prosecutorial misconduct warranting the relief he seeks, the Court will not consider whether Lt. Lamond's testimony would be "material, exculpatory and not cumulative" or available from some other source.  *See Ebbers*, 458 F.3d at 119.

[6] As for Jeffery Finley, the witness awaiting sentencing, the Court has reviewed the Government's sealed explanation for the continuance, per Rehl's request.  *See* ECF No. 581 at 4.  It does not suggest the Government continued the sentencing to intentionally interfere with Rehl's right to defend himself or to present exculpatory information.

on the record before the Court, neither DiCioccio nor Rusch has suggested any intent to invoke the Fifth Amendment if subpoenaed. So the Government's interactions with these witnesses are, for purposes of resolving these motions, only relevant if they change the Court's assessment of the circumstances related to Tarrio's and Rehl's witnesses, who *have* asserted a privilege. In short, they don't.

Nordean alleges that, when federal agents and prosecutors interviewed DiCioccio over a year ago, in November 2021, she "informed the government that she did not agree with the government's claim that Nordean and others had conspired to attack the Capitol or use violence on January 6, [and] a government prosecutor *only then announced*—in the same November 2021 interview—that the witness would be prosecuted for an offense." ECF No. 579 at 1 (emphasis added). But DiCioccio was on notice that she was facing potential criminal charges for her actions on January 6th a few months beforehand when she was first interviewed by law enforcement. *See* ECF No. 580 at 3. Indeed, she appears to have known this from the start: the Government represents that video evidence depicts her asking, "Are we all gonna get arrested?" as she entered the Capitol that day. ECF No. 580 at 3. And of course, it would have been obvious to her by November 2021 that, broadly speaking, the Government was pursuing charges against those who had entered the Capitol. Finally, however DiCioccio interpreted her November 2021 interaction with agents and prosecutors, her account of the facts is consistent with the Government's that when her partner asked if DiCioccio would be prosecuted "if [she] didn't give the government what it wanted," the Government responded that she would only be prosecuted "because of what [she] did." ECF No. 579-1 at ¶ 7; *see also* ECF No. 580 at 2.

As for Rusch, Nordean alleges only that "he has been placed in fear of testifying at trial" because "[a] prosecutor communicated that Rusch's son may be charged with offenses in

connection with January 6." ECF No. 584 at 1. There is no allegation that the Government suggested that these charges would turn on whether Rusch testified for the defense, or for the Government, for that matter.

In short, the Government's interactions with these witnesses do not impact the Court's assessment of the claims concerning Lt. Lamond or Rehl's witnesses and do not otherwise warrant dismissal of the case.

Finally, the information presented by Tarrio in his supplement that Block and another witness have now said—through counsel—that they would invoke the Fifth Amendment if called to testify does not sway the Court. Again, Tarrio does not allege any Government misconduct related to these witnesses or make any representation at all about the Government's communication with them before they asserted the privilege. Tarrio suggests that the Court should infer nefarious activity simply from the number of potential defense witnesses who have claimed privilege. *See* ECF No. 612 at 12. The Court has no grounds to do so. To the contrary, it is hardly surprising that these witnesses—who are represented by counsel, after all—might believe that they could face criminal exposure.

For all these reasons, the Court will not require the Government to immunize defense witnesses or else dismiss the indictment.

### B.    Judicial Immunity

Next, Rehl argues that as an alternative to dismissal, the Court should immunize the defense witnesses at issue on its own initiative. Of course, the D.C. Circuit has long held that "only the Executive can grant statutory immunity, not a court." *Lugg*, 892 F.2d at 104. But Rehl counters that the Court need not "grant" immunity, for it would arise automatically if the Court were to compel witnesses to testify. He points to *Adams v. Maryland*, 347 U.S. 179 (1954) and

8

two of its progeny—*Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52 (1964) and *Baltimore City Department of Social Services v. Bouknight*, 493 U.S. 549 (1990)—to support the idea that courts possess such a power.

The Court agrees that, taken together, *Adams*, *Murphy*, and *Bouknight*, suggest that if a witness is properly compelled to testify in one setting, the Fifth Amendment may bar the use of such testimony against them at a later criminal proceeding.[7]  But they offer no support for Rehl's suggestion that it would be a proper exercise of judicial power to compel witnesses to testify over their express invocation of privilege—especially while they are under active investigation or now facing criminal charges.  In fact, the D.C. Circuit declined to do just that in *Lugg*.  There, the court explained that compelling a witness to testify over a Fifth Amendment privilege may be "founded *only* on 'formal statutory immunity' and 'to require' a witness who has not received such statutory immunity 'to offer incriminating testimony . . . would be to do so at his peril.'"  *Lugg*, 892 F.2d at 103 (quoting *In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 887 (D.C. Cir. 1981) (emphasis added)).  For that reason, and under circumstances much like Finley's, the court declined to "compel[] testimony in the face of a Fifth Amendment privilege, solely on the basis of a plea agreement" where "the sentencing had not yet been conducted nor the other charges dismissed."  *Id.*

To be sure, the Court appreciates the difficulty of Rehl's position.  But again, "[t]he cases are legion and uniform that only the Executive can grant statutory immunity, not a court."  *Lugg*,

---

[7] *See Adams*, 347 U.S. at 180–81 (compelled congressional testimony cannot be used in later criminal prosecution); *Murphy*, 378 U.S. at 77 ("[O]ne jurisdiction within our federal structure may [not] compel a witness to give testimony which could be used to convict him of a crime in another jurisdiction."); *Bouknight*, 493 U.S. at 561 (noting without deciding that a mother could not invoke the Fifth Amendment to resist a juvenile court order to produce a child, but there may be limits on "the State's ability to use the testimonial aspects of [her] act of production in subsequent criminal proceedings").

892 F.2d at 104.  And "it is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness."  *Id.* (cleaned up).  To do as Rehl suggests would render this boundary meaningless, allowing courts to effectively override a prosecutor's immunity decision, thereby usurping a function long committed to the executive branch.  In short, the Court will not—indeed, cannot—grant Rehl this relief he seeks.

**C.     Severance**

Finally, Rehl argues that his case should be severed from that of his codefendants and continued "until after the three exculpatory witnesses and MPD Lieutenant Lamond are available to testify."  ECF No. 581 at 12.  He points to, among others, *Zafiro v. United States*, where the Supreme Court noted severance is appropriate when "essential exculpatory evidence that would be available to a defendant tried alone [is] unavailable in a joint trial." 506 U.S. 534, 539 (1993); *see also United States v. Slatten*, 865 F.3d 767, 801 (D.C. Cir. 2017) (reversing a conviction for first-degree murder because the trial court denied defendant's severance motion where severance would have allowed admission of an exculpatory codefendant statement).  But unlike the cases he cites, the unavailability of Rehl's witnesses has nothing to do with the fact he is being tried jointly with his codefendants.  And at least with respect to Lt. Lamond, Rehl has no better claim to the benefit of his testimony than Tarrio or his other codefendants.  In short, Rehl offers no persuasive grounds for the Court to grant severance.

**III.**     **Conclusion and Order**

For all these reasons, it is hereby **ORDERED** that Tarrio's Motions to Dismiss, ECF Nos. 569, 572, 611, and 612, and Rehl's Motion to Dismiss, to Grant Immunity, or to Sever and Continue, ECF No. 581, are **DENIED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 5, 2023