**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE NO: 1:21-cr-0715-3 (APM)** |
| | * | |
| **ZACHARY REHL,** | * | |
| Defendant | * | |

********

**ZACHARY REHL'S MOTION TO EXCLUDE OVERVIEW TESTIMONY**
**BY LAW ENFORCEMENT OFFICERS**

Zachary Rehl, by his undersigned counsel, hereby respectfully moves this Honorable Court to preclude overview testimony by FBI or other law enforcement officers.  In particular, Mr.  Rehl seeks to preclude overview testimony which the government appears to plan to present on Monday, January 30, 2023 through an FBI agent.  The purpose of the testimony only came to light on Sunday, evening when the government produced 17-pages of handwritten notes made by the prospective witness.

**I.      FACTUAL BACKGROUND**

1.      At 6:53 p.m. on Sunday, January 29, 2023, the government produced 17-pages of handwritten notes of a witness it plans to put on the stand on Monday, January 30, 2023.  The email that was included with the notes stated, in pertinent part,

> I met with SA Camiliere this afternoon in preparation for her testimony tomorrow.  During the meeting, SA Camiliere referred to a spiral notebook.  I reviewed the notebook with SA Camiliere and the notebook included handwritten notes by SA Camiliere that reference subjects to which she will be testifying. The notes are undated, but I understand that these are primarily notes that SA Camiliere has taken as she has reviewed evidence and prepared for her testimony at trial.  In other words, much of this material has been created after the Jencks deadline of November 28.

Email from AUSA McCullough.

2.      Because they are handwritten, the notes are not entirely clear.

3.      Before receiving the notes, counsel was under the impression that the witness would be testifying solely to introduce social media posts of one or more of the defendants.

4.      However, rather than notes of interviews or descriptions of observable events, the notes appear to provide an overview of the case from the agent's point of view.  The notes are not dated.  The notes are flush with opinions rather than facts.

5.      Based on the preliminary review of the notes and the email from government counsel, it appears that the government plans to use the FBI agent as a overview witness in a manner that the D.C. Circuit has determined is not appropriate.

## II.   OVERVIEW WITNESSES VIOLATE THE RULES OF EVIDENCE AND THE SIXTH AMENDMENT'S RIGHT TO A FAIR TRIAL

The DC Circuit has condemned the use of overview witnesses.  *United States v. Moore*, 651 F.3d 30, 60 (D.C. Cir. 2011), *aff'd sub nom. Smith v. United States*, 568 U.S. 106 (2013) ("Because a witness presenting an overview of the government's case-in-chief runs the serious risk of permitting the government to impermissibly "paint a picture of guilt before the evidence has been introduced," and may never be introduced, we join the circuits that have addressed the issue in condemning the practice.")

The D.C. Circuit has identified three "obvious dangers posed by summarization of evidence." *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir.1983).  First, "the jury might treat the summary evidence as additional or corroborative evidence that unfairly strengthens the government's case." *Moore*, 651 F.3d at 56.  Second, "summary witness testimony posed the risk that otherwise

inadmissible evidence might be introduced." *Id.*  Third, "a summary witness might permit the government to have an extra closing argument." *Id.*

In the instant case, it appears that the overview testimony that the government seeks to present violates all three of the dangers that the D.C. Circuit has identified.  From the snippets contained in the lengthy handwritten notes the government recently provided, it appears that the government will elicit S/A Camiliere's opinions about the charged conspiracies, the reasons for Mr. Rehl's and the other defendants' actions in various situations, the nature of the charged conspiracies and the relationships between the defendants, including the cooperating co-conspirators who will be testifying as government witnesses, and the strength of the evidence – all before the government has presented any such evidence.

Indeed, Mr. Rehl anticipates that the government will seek to elicit testimony from S/A Camiliere that is based on inadmissible hearsay, namely testimony based on the agent's conversations with witnesses, informants, and other agents that courts have found to be in violation of FED. R. EVID. 802 and 701.  Rule 802 "generally bars a government agent from relaying inadmissible hearsay to the jury." *United States v. Smith*, 640 F.3d 358, 366 & n. 5 (D.C. Cir. 2011) (internal citations omitted).  Rule 701 precludes a government agent from offering the agent's "opinions or inferences" as a lay witness based on inadmissible hearsay obtained from conversations with informants and other agents. *Id.*

## A.    Overview Witnesses Present a Serious Danger of Prejudice to a Fair Trial

As the *Moore* Court went on to explain, other circuits "have reached uniformly negative conclusions in view of the serious dangers of prejudice to a fair trial." *Moore*, 651 F.3d at 56

> "[S]uch testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence. There is also the possibility that later testimony might be different than what the overview witness assumed; objections could be sustained or the witness could change his or her story. Overview testimony by government agents is especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government." *Casas*, 356 F.3d at 119-20 (internal citation omitted).

*Moore*, 651 F.3d at 56-57.

The D.C. Circuit went on to adopt and explain the reasoning of the other circuits:

> Approaching the question from a different perspective, the Second Circuit prohibited overview witnesses from giving lay opinions about anticipated evidence without satisfying the three requirements of Federal Rule of Evidence 701 – that the witness's testimony (1) be based on his personal perception, (2) be helpful to the jury, and (3) not be based on scientific, technical, or other specialized knowledge. As regards the second factor, the Second Circuit dismissed the notion that an overview witness aided the jury by framing how the government's case-in-chief will unfold, observing that "[t]he law already provides an adequate vehicle for the government to 'help' the jury gain an overview of anticipated evidence as well as a preview of its theory of each defendant's culpability: the opening statement." To the extent the summary witness testified to the ultimate question of fact, the Second Circuit noted that "courts should be wary of opinion testimony whose 'sole function is to answer the same question that the trier of fact is to consider in its deliberations,'" (quoting 4 Weinstein's Federal Evidence § 701.05 (2d ed.2004), and citing Fed. R. Evid. 704 advisory committee's notes to 1972 proposed rules), observing that it had previously held in two other cases that it was "error to allow law enforcement witnesses to express opinions as to [the] defendants' culpability based on the totality of information gathered in the course of their investigations," The court held that "the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion ... based [on investigative work] and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience."

*Moore*, 651 F.3d at 57 (quotes and internal citations omitted).

4

### 1. Evidence Not Yet Presented

This Court must preclude the government from inserting into the case all three dangers attendant to overview witnesses.  The Court cannot allow  S/A Camiliere to testify "about evidence not yet presented."  *Id.* It also cannot allow S/A Camiliere to opine that the cooperating witnesses will present truthful evidence because they are insiders and are guilty themselves "in an attempt to strengthen the government's yet-to-be presented case," to offer inadmissible evidence, nor allow her to provide "the government with a second opening argument."  *Id.*   She cannot be allowed to testify about alleged events of which she has no personal knowledge.  To allow such testimony would allow the prosecutors to impermissibly invite the jury to "rely upon the alleged facts in the [overview] as if [those] facts had already been proved."  *Id.*

### 2. Opinion Testimony is Prohibited

"Weighing trial evidence and making "determinations of credibility are for the jury," as is "draw[ing] the ultimate conclusion of guilt or innocence."  *Moore,* 651 F. 3d at 60.  Thus, S/A Camiliere cannot be allowed to "impermissibly comment on the strength of the government's yet-to-be introduced evidence, vouch for the credibility of witnesses the government intends to call at trial, and [give her] personal opinion as to guilt or innocence."  *Id.*  (cleaned up)

The *Moore* Court noted that the FBI agent's "testimony crossed the line in a number of instances" when testifying about cooperating witnesses.  *Moore*, 651 F. 3d at 59.

> All of this was opinion testimony that went far beyond "constructing the sequence of events in the investigation ... to provide background information and to explain how and why the agents even came to be involved with [a] particular defendant." Instead, these statements suggested both directly and indirectly to the jury that an experienced and highly trained FBI agent had determined that the cooperating co-conspirators who would testify at trial were to be treated as

credible witnesses and that appellants were guilty of the charged crimes. The clear implication was that the government had selected only truthful co-conspirator witnesses for the pre-indictment investigation, from whom the jury would hear during the trial.

In sum, FBI Agent Sparks's testimony was improper in offering his non-expert opinions about the charged conspiracy and appellants, vouching for the reliability of the investigation and of the cooperating co-conspirator witnesses the government planned to have testify at trial, and discussing evidence that had yet to be introduced. . . .But the prosecutor went too far in questioning, allowing FBI Agent Sparks to act as an expert witness with respect to gang investigations and to refer to evidence that would never be introduced at trial. The district court, in turn, failed to sustain appropriate defense objections to FBI Agent Sparks's testimony that purported to offer opinion testimony and to confirm government evidence that had yet to be introduced.

Because a witness presenting an overview of the government's case-in-chief runs the serious risk of permitting the government to impermissibly "paint a picture of guilt before the evidence has been introduced," we join the circuits that have addressed the issue in condemning the practice. The use of overview witnesses exacerbates the "obvious dangers" this court identified in *Lemire* in the use of non-expert summarization evidence. Overview testimony offers an opportunity to "poison the jury's mind against the defendant or to recite items of highly questionable evidence." Avoidance of those dangers is largely beyond the ability of the district court, much less the defense, to prevent. As the record here demonstrates, a trained law enforcement officer is likely to go as far as the questions allow, presenting a picture for the jury of a solid prosecution case based on his opinion of the strength and credibility of the witnesses the government plans to call to testify at trial for reasons made persuasive in view of the officer's training and experience. After-the-fact limiting instructions can, at best, mitigate prejudice, rather than invariably eliminate its effects completely. The view of the government's case has been implanted in the mind of the jury by an agent of the Federal Bureau of Investigation who worked on the case—he should know!

6

**B.      Testimony Must Comply With Rules of Evidence and Be Consistent with Constitutional Guarantees**

The government remains free to call as its first witness a law enforcement officer who is familiar with the pre-indictment investigation or was otherwise personally involved, where permissible under the Rules of Evidence and consistent with constitutional guarantees. *See Old Chief v. United States*, 519 U.S. 172, 186-88 (1997); *United States v. Curtis*, 481 F.3d 836, 838 (D.C.Cir.2007). Such a witness may, for example, be able to provide relevant background information as to the investigation's duration and scope or the methods of surveillance, based on personal knowledge. Put another way, a law enforcement officer may "describe a complicated government program in terms that do not address witness credibility," but he may not offer "tendentious testimony."   Thus, FBI Agent Sparks could properly describe, based on his personal knowledge, how the gang investigation in this case was initiated, what law enforcement entities were involved, and what investigative techniques were used. What he could not do was present lay opinion testimony about investigative techniques in general and opine on what generally works and what does not, as illustrated by informants who pled guilty. Neither could he anticipate evidence that the government would hope to introduce at trial about the charged offenses or express an opinion, directly or indirectly, about the strength of that evidence or the credibility of any of the government's potential witnesses, including the cooperating co-conspirators.

*Moore*, 651 F.3d at 60-61 (internal citations omitted).

7

**CONCLUSION**

Given the dangers of overview witnesses and potential prejudice to Mr. Rehl and the other defendants, the Court should follow the practice approved by the D.C. Circuit and hold a "full voir dire examination before deciding whether S/A Camiliere may be allowed to testify, subject to limiting instructions." *United States v. Lemire*, 720 F.2d 1327, 1346-47 (D.C. Cir. 1983).

Respectfully submitted,

/s/

**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 30th day of January, 2023.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**