IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| v. | *   Case No.  21-CR-0175-3 (TJK) |
| | * |
| **ZACHARY REHL**, | * |
| Defendant. | * |
| | * |

**ooOoo**

### NOTICE OF FILING OBJECTIONS TO ELICITING OPINION TESTIMONY FROM A FACT WITNESS, USE OF LEADING QUESTIONS AND REQUEST FOR LIMITING INSTRUCTIONS

Mr. Rehl objects to the government's proposal that S/A Dubrowski be allowed to give opinion testimony about the meaning of the term "Minecraft" when found in some telegram messages. He also objects to the government's continued examination of S/A Dubrowski through the use of leading questions that set out the bases for the agent's testimony and effectively vouch for the witness' testimony, misleading the jury, and defeating the purposes of FRE 701.  *See, e.g., United States v. Williams*, 827 F.3d 1134, 1159 (D.C. Cir. 2016).  He also requests that the Court give a limiting instruction regarding the materials being introduced under hearsay exceptions.  FRE 105.

**Opinion Testimony**

The D.C. Circuit has been clear that the government's proposal that S/A Dubrowski be allowed to provide testimony that he has learned from the internet and other sources not before the jury is not admissible under the Rules of Evidence.  The Court must exercise its gatekeeping responsibilities to preclude such testimony.

> FRE 701 provides that a witness who is not testifying as an expert may only provide testimony regarding his or her lay opinion where it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact

in issue; and (c) not based on scientific, technical, or other specialized knowledge" of the sort that is properly the subject of expert opinion testimony under FRE 702.  FRE 701 was designed to ensure that any opinions offered by a lay witness are based on personal, "first-hand knowledge or observation," and "a process of reasoning familiar in everyday life."  The "prototypical example[s]" of lay opinion testimony envisioned by the Advisory Committee when proposing to add subsection (c) were opinions regarding "items that cannot be described factually in words apart from inferences," such as size, degrees of darkness, speed, distance, or whether a person appeared sad or angry. Fed. R. Evid. 701, adv. comm. note (2000 amend.).  The addition of subsection (c) was intended to preclude litigants from proffering an expert in lay witness's clothing and thereby avoid the disclosure and other requirements for expert opinion testimony under FRE 702.

FRE 702 addresses expert testimony. It provides that a witness who is "qualified as an expert by knowledge, skill, experience, training, or education" may testify about his or her opinion where: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." These factors reflect that the Supreme Court has placed "gatekeeping" responsibilities on the trial courts "at the outset" and thereafter during trial to ensure that expert testimony is sufficiently reliable to help, as opposed to confuse and hinder, the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 597 (1993).  The Advisory Committee contemplated that this could be done through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction," which it considered especially important in order to inform the jury of the limits of expert testimony.  Fed. R. Evid. 702 adv. comm. note (2000 amend.) (quoting Daubert, 509 U.S. at 595, 113 S.Ct. 2786). To facilitate the evaluation of reliability, expert opinion testimony is subject to disclosure requirements.  *Se*e Fed. R. Evid. 703 & 705; *see also* Fed. R. Civ. P. 26(a)(2); Fed. R. Crim. P. 16(a)(1)(G). In addition, FRE 704(b) prohibits an expert witness from "stat[ing] an opinion about whether [a] defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense" as such matters "are for the trier of fact alone."

The court held in *United States v. Wilson*, 605 F.3d 985, 1026 (D.C. Cir. 2010), that "an individual without personalized knowledge of a specific drug conspiracy may not testify about drug topics that are beyond the understanding of an average juror under Rule 701. Such a witness may be permitted to testify only as an expert under Rule 702." Lay opinion is proper when it is based upon personal knowledge of events that occurred in the case being tried, because "[a]n individual testifying about the operations of a drug conspiracy because of knowledge of that drug conspiracy has 'particularized' knowledge and should be admitted as a lay witness." *Id*. On the other hand, "an individual testifying about the operations of a drug conspiracy based on previous experiences with other drug conspiracies has 'specialized' knowledge and—provided his testimony meets the rule's enumerated requirements – should be admitted as an expert." *Id*. The court has "drawn that line because knowledge derived from previous professional experience falls squarely 'within the scope of Rule 702' and thus by definition outside of Rule 701." *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (quoting FRE 701(c)).

More recently, in *Hampton*, 718 F.3d 978, 981-84 (D.C. Cir. 2013), the court held that the district court erred in admitting, over a proper objection, lay opinion testimony by an FBI agent interpreting recorded conversations between a defendant and an alleged co-conspirator without requiring him to disclose the "objective bases" of his opinion. As a consequence, FRE 701's requirements were not met and the jury was denied the information it needed in order to exercise its fact-finding function by independently assessing the FBI agent's lay opinion. The court adopted the analysis of the Second Circuit Court of Appeals stating: "[W]hen a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." Id. at 981 (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). The court concluded that the proffered bases for the FBI agent's opinion – namely, his having listened to "all of the [recorded] calls" and his "knowledge of the entire investigation"—was inadequate because its lack of specificity invited "the risk that he was testifying based upon information not before the jury, including hearsay" and left the jury with "no way of verifying his inferences or of independently reaching its own interpretations" as FRE 701 requires. Id. at 982–83

(quoting *United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004)). Additionally, the court emphasized that "[j]udicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experiences with similar crimes." *Id* at 981–82 (*citing Grinage*, 390 F.3d at 750–51).

As noted in *Hampton*, 718 F.3d at 983, the court's analysis reflects similar concerns the court has expressed with regard to the Government's use of overview and summary witnesses to anticipate or interpret evidence for the jury, *see United States v. Moore*, 651 F.3d 30, 57 (D.C. Cir. 2011), concerns shared by other circuits, *see United States v. Garcia*, 413 F.3d 201, 210–17 (2d Cir. 2005); *United States v. Casas*, 356 F.3d 104, 117–20 (1st Cir. 2004). *See also United States v. Lemire*, 720 F.2d 1327, 1348–50 (D.C. Cir. 1983). Subsequent to *Hampton*, the court held in *United States v. Miller*, 738 F.3d 361, 373 (D.C. Cir. 2013), that the admission of lay opinion testimony by two FBI agents and a detective who did not "set forth the specific bases (events, other calls, seizures of contraband, etc.) upon which their opinions rested ... other than broad claims about knowledge they had gained from the investigation" is plain error because the jury had "no effective way to evaluate their opinions."

*United States v. Williams*, 827 F.3d 1134, 1155-57 (D.C. Cir. 2016) (internal citations omitted).

**Leading Questions**

In examining S/A Dubrowski, the prosecutor repeatedly used leading questions, over the objections of the defendants, and followed the leading question by reference to a particular exhibit.[1] Particularly with a witness of Dubrowski legal background, there is no basis for allowing the

---

[1] See, e.g., Tr 2/8/23 at 8085:

Q. Based on your review of all the chats in this timeframe, were they consistent with the idea that the Proud Boys going to the December rally would only use force reactively and never proactively?
. . .
MR. MULROE: Your Honor, the answer will be no, and it is to tee up the very next exhibit, which is the same one that's next in the exhibits that we provided to the defense.

government to lead the examination in this manner.

**Limiting Instruction**

FRE 105 provides:

> If the court admits evidence that is admissible against a party or for a purpose — but not against another party or for another purpose — the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.

The exhibits the government is introducing through S/A Dubrowski are replete with information admitted for limited purposes and against some but not other defendants. For example, much of the information predates the existence of the conspiracy, involves "side-chats" between only one or two defendants, and involve group chats as to which Mr. Rehl was not a participant. As to each such exhibit, Mr. Rehl is entitled to a limiting instruction. For example, Mr. Rehl was not a member of the following telegram chat groups:

- Skull and Bones;
- Elders
- MOSD Vetting;
- East Coast Prospect (or MOSD Prospect chat);
- OG Pickleback Crew
- Space Force; and
- WB Stream.

He proposes the following limiting instruction:

> The court has admitted certain statements, primarily so-called chats, which include statements made out of court before the time which the alleged conspiracy began. The government has also offered statements made in chats in which Mr. Rehl was not a participant. These include: Skull and Bones; the Elders; MOSD Vetting; East Coast Prospect (or MOSD Prospect chat); OG Pickleback Crew; Space Force; and WB Stream. It also has introduced private chats between other persons that do not include Mr. Rehl. The government has offered these allegedly to show motive of the speakers and the effect on the listener [specify other reason]. As to each statement, I

instruct you that you may not consider it against Mr. Rehl unless the government has shown that the defendant either wrote or received the communication. For purposes of this instruction, to receive means by electronic transmission or being in the presence of others who discussed the communication.

Mr. Rehl also respectfully requests the Court give the First Amendment limiting instruction.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
BAR No. MD03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 9th day of February, 2023 on all counsel of record via ECF.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**