UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:21-cr-175-3 (TJK) |
| v. : | |
| : | |
| ZACHARY REHL, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO ZACHARY REHL'S MOTION TO DISMISS THE INDICTMENT AND FOR AN EVIDENTIRAY HEARING**

The United States of America respectfully files this response to defendant Zachary Rehl's Motion to Dismiss the Indictment and for an Evidentiary Hearing (ECF 694). For the reasons that follow, the Court should decline to dismiss the indictment against defendant Zachary Rehl because there has been no violation of his rights under the Sixth Amendment. Rehl knowingly waived any privilege that may have existed in emails allegedly accessed by the FBI, and in any event, if any privilege had not been waived, he has not met his burden of demonstrating substantial detriment caused by any government action. The Court can and should decide this motion on the papers, based on the representations therein, and the attachments thereto, and thus we oppose the defendant's request for a hearing.

**FACTUAL BACKGROUND**

On March 13, 2023, Rehl filed a motion alleging that his rights under the Sixth Amendment and Due Process Clause were violated by an FBI agent who allegedly accessed emails, sent from a monitored email account, between Rehl and his then-attorney Jonathan Moseley. Rehl has cited a conversation between two FBI agents that occurred over the FBI's Lync messaging system, in which one agent tells the other that he found some emails between Rehl and his attorney Moseley, states that the emails mention how the government allegedly did things improperly, and that the

emails read by the agent indicated that Rehl wanted to go to trial. The Lync messages are dated October 21, 2021. *See* ECF 694 at 2.

Rehl first retained Moseley in or around September of 2021. From that date through the date of the Lync conversation referenced above, Rehl was detained at the Federal Detention Center Philadelphia ("FDC-PH"). The only emails between Rehl and Moseley that the FBI could plausibly have accessed therefore, are those sent and received through FDC-PH's "TRULINCS" email system, which is described below. The government did, in fact, obtain Rehl's TRULINCS emails — in three sequential batches. The third batch, which the government did not obtain pursuant to a subpoena, was received no earlier than October 14, 2021,[1] and appears to contain the emails with Moseley that are the subject of Rehl's motion. The government received a set of materials from FDC-PH that includes the emails Rehl claims are privileged.[2] The email messages were contained within a single .pdf file, and the correspondence between Rehl and then-attorney Moseley was commingled with his correspondence with non-attorneys.

Email correspondence with inmates housed at FDC-PH is facilitated through the TRULINCS program. TRULINCS is a computer system operated in federal facilities that facilitates the use of email communications through a program branded as CorrLinks. As relevant to the issues before the Court, inmates expressly consent to monitoring of their use of the TRULINCS and electronic messaging systems by clicking on a "banner warning" every time they

---

[1] We say "no earlier than October 14, 2021," because the materials in this particular production from FDC Philadelphia included calls and/or emails through October 14, 2021.

[2] None of the government counsel in this case have read the emails at issue. Although the communications are not privileged (for the reasons stated herein), as we noted to counsel for Rehl, we will maintain that *status quo* while the claim of privilege is pending before the Court. Thus, the instant motion does not address the substance of what the emails actually say. The government has appointed a filter attorney to identify and provide those emails to the Court, *in camera.*

login to a TRULINCS terminal at the FDC. In the banner warning, inmates are explicitly advised that "electronic messages and system activity" are subject to monitoring and retention. The banner that is displayed each time an inmate logs onto the system further specifically advises that electronic messages to and from an attorney are monitored and "will not be treated as privileged communications." The banner states that accessing the system, inmates consent "to such monitoring and information retrieval for law enforcement and other purposes." *See* Declaration of Alisha Gallagher, Exh A, at ¶ 4 and Attachment 2.

Each time Rehl logged into TRULINCS, therefore, he reaffirmed his understanding that such communications were monitored and gave consent to the monitoring of his electronic communications. Rehl, moreover, could not communicate with anyone outside the facility—including Mr. Moseley—without both inviting that person and having that person accept the terms (including monitoring. Mr. Mosely, in turn, would have been required to accept monitoring to create an account. *See* Exh. A, ¶¶ 5-6, Attachment 4.

## ARGUMENT

**A. There was no Attorney-Client Privilege Implicated by the Defendant's Email Communications**

As a threshold matter, "[a]ny voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege." *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982). The communications at issue occurred over a Bureau of Prisons (BOP) electronic communications system that Rehl was on notice of, and understood, was monitored. Specifically, the banner that appeared each time he logged on Trulincs stated, "I understand and consent to having my electronic messages and system activity monitored, read, and retained by authorized personnel. I understand and consent that this provision applies to electronic messages both to and from my attorney or other legal representative, and that such

3

electronic messages will not be treated as privileged communications, and that I have alternative methods of conducting privileged legal communications." Exh. A & Attachment 2.

Jonathon Moseley, the then-attorney[3] whose communications with Rehl over the FDC-PH computer system at issue here, entered his appearance in this case on behalf of Rehl on September 6, 2021. ECF 159. According to Rehl, the emails at issue were sent between October 5 and 15, 2021. ECF 694 at 2. Well before then, Rehl had both agreed to the terms of the TRULINCS system, which included accepting that his messages may be retrieved from the system for law enforcement purposes, among others. Exh. A at ¶ 4 & Attachment 2. Rehl well understood these warnings, as shown by multiple statements evincing his subjective knowledge of the monitoring system. For example, on June 30, 2021, Mr. Rehl wrote in an email to an acquaintance: "Just to give you a heads up, these emails take a while to go back and forth sometimes, they monitor ***all my emails***, so my emails are at the mercy of someone's work schedule. lol." Exh. B (emphasis added). On July 14, 2021, he emailed a different acquaintance, "Anyway, I'm not gonna get in too many details on anything here, they monitor these emails like crazy and I pay a lawyer to worry about that crap, this way I can continue on with how shitty the food is and vow to leave bad Yelp reviews for the cuisine when I get out lol. With the monitoring in mind, sometimes it may take a day or two for me to get an email you send, so if I don't respond right away, its because of the monitoring. I heard you guys had some good parties at your place in the meantime, anyone break the towel rack." Exh. B.

Rehl also had to make a knowing decision to include Moseley on his contact list for TRULINCS, and Mr. Moseley was required to accept the terms to use the system, including monitoring. Exh. A at ¶¶ 5-6 & Attachment 4.

---

[3] As the Court is already aware, Mr. Moseley has since been disbarred.

4

Rehl waived any privilege by knowingly using FDC-PH's monitored email system to communicate with his attorney. *See, e.g.*, *In re Sealed Case*, 676 F.2d at 809 (quoted above). The party claiming a privilege bears the burden of establishing that it exists, including the fact that it has not been waived. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). Rehl has not met that burden with respect to the explicitly monitored communications. Courts have routinely applied the waiver principle to jailhouse communications, including in recent years to emailed communications. *See, e.g.*, *United States v. Walia*, No. 14-CR-213 MKB, 2014 WL 3734522, at *16 (E.D.N.Y. July 25, 2014); *United States v. Asaro*, 2014 WL 12828985, (E.D.N.Y. July 17, 2014); *Aciero v. Holder*, 2015 WL 5769223 at *4 (D. Hawaii 2015); *Fed'l Trade Comm'n v. National Urological Group, Inc.*, 2015 WL 13687741 at *2 (N.D. Ga. 2015); *see also United States v. Mejia,* 655 F.3d 126, 133 (2d Cir.2011) (finding that because the defendant was aware that his phone calls were being monitored by BOP, his decision to communicate telephonically constituted a waiver of privilege and noting that "[c]ourts that have been faced with the question have similarly decided that, where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege").

Rehl's knowing waiver of the attorney-client privilege ends the Court's analysis. If the emails at issue were not privileged, even assuming *arguendo* that some number of FBI agents accessed them, there was no breach of any privilege because Rehl and his then-attorney knowingly chose to communicate on a monitored system. Not only was the email system at issue overtly monitored, Rehl had to acknowledge every time he logged onto the system that the emails in the information in the system could be retrieved at any time for, among other purposes, law-enforcement purposes. Every case cited by Rehl in his motion involves some sort of *covert intrusion* into the attorney-client relationship, whether that be a surreptitious recording or the

5

presence of an informant whose status as an informant is unknown. Those scenarios are 180 degrees from the knowing consent to monitoring provided by Rehl here. *See Weatherford v. Bursey*, 429 U.S. at 545 (1977) (undercover agent); *Coplon v. United States*, 191 F.2d 749, 756-57 (D.C. Cir. 1961) (alleged surreptitious wiretapping); *Hoffa v. United States*, 385 U.S. 293, 299 (1966) (informant); *Caldwell v. United States*, 205 F.2d 879, 879-80 (D.C. Cir. 1953). The three out-of-circuit cases cited by Rehl also involve the use of informants. ECF 694 at 7-8.

No case cited by the defendant in his brief has found a Sixth Amendment violation based on a defendant's knowing use of a monitored email system that explicitly informs its users that information will be retrieved for law enforcement purposes. Such a holding would be nonsensical, because it would allow defendants to lay traps by delivering "confidential" communications into the government's possession (as Rehl did here) and then accusing the government of malfeasance when investigators stumble across them.

Accordingly, the communications at issue were not privileged.

**B. Even if the Emails were Privileged, Rehl Suffered no Prejudice under *Weatherford***

Preliminarily, even assuming *arguendo* that certain communications are governed by the attorney-client privilege, if the government has not reviewed privileged conversations (*i.e.*, there is no tainted evidence), the Sixth Amendment is not violated. *See Weatherford*, 429 U.S. at 558. The substance of the information accessed by the agent at issue was not passed to the trial team.Furthermore, even if the government has had some level of access to privileged communications, if there is no communication of defense strategy to the prosecution, or purposeful intrusion of the defense camp, there is no Sixth Amendment violation. *Id.* Intrusion alone is insufficient; the defendant must also demonstrate prejudice to establish a Sixth Amendment violation. *Id.*

As set forth by the D.C. Circuit, even if there has been an intrusion on the defense camp, the Court must assess the following four factors to determine whether the defendant has demonstrated the requisite prejudice to support his claim of a Sixth Amendment violation: "(1) was evidence used at trial produced directly or indirectly by the intrusion; (2) was the intrusion by the government intentional; (3) did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion; and (4) were the overheard conversations and other information used in any other way to the substantial detriment of the defendant?" *United States v. Kelly*, 790 F.2d 130, 137 (D.C. Cir. 1986).

The defendant bears the burden to prove the existence of any privilege he relies upon in support of his motion. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). He additionally bears the burden of proof in demonstrating prejudice if the Court finds there was some intrusion on the defense camp. *See United States v. Hsia*, 81 F. Supp. 2d 7, 18 (D.D.C. 2000) ("the Court finds that defendant has failed to carry her burden of proving *any* of the four *Kelly* factors"); *United States v. Swatzky*, 994 F.3d 919, 923 (8th Cir. 2021) ("Assuming, without deciding, that the government knowingly intruded into the attorney-client relationship when officers seized privileged documents from Sawatzky's cell, he has the burden of demonstrating he suffered prejudice").

There was no intrusion here, but even assuming *arguendo* that there had been one, the defendant has not demonstrated the requisite prejudice under the *Kelly* factors because (1) no evidence used at trial was produced directly or indirectly; (2) the alleged intrusion was not intentional; (3) the government received no confidential information about trial preparation; and (4) no information was used to the substantial detriment to the defendant. *See Kelly*, 790 F.2d at 137. The government addresses each of these factors in turn.

1. <u>No Trial Evidence was Derived from the Emails</u>

The Court has presided over 51 trial days, including *voir dire*, to this point. The government's evidence has consisted largely of the following categories of evidence: (1) video taken on January 6, 2021, December, 12, 2020, or November 14, 2020; (2) social media posts made by the defendants, obtained through search warrants that predate the government's receipt of the emails at issue from FDC-PH; (3) information recovered pursuant to search warrants (*e.g.*, those targeting the defendants' electronic devices and cloud storage accounts) that predate the government's receipt of the emails in question;[4] and (4) the testimony of eyewitnesses, including cooperating witnesses, none of whom had knowledge of the emails in question. The eyewitness testimony came from officers on the scene on January 6, 2021, and the cooperating witnesses largely testified to events that predate the emails, *i.e.*, the November and December rallies, and the events of January 6, 2021. Accordingly, the first factor does not weigh in the defendant's favor.

2. <u>Any Intrusion was Unintentional</u>

The government's receipt of these emails was not intentional. They were obtained as part of a bulk email pull from FDC-PH. The government requested all email communication; it did not seek out emails the defendant had with Mr. Moseley. The emails were produced to the government in a single pdf (rather than separate documents for each email) which does not have the technical capability to segregate the emails by sender or recipient. Special Agent Nicole Miller, the case agent who testified, did not access them and did not have access to them at the time she received

---

[4]   The government accessed defendant Enrique Tarrio's device after it came into possession of the emails, but it seized and obtained the warrant for that device prior to the emails being written, let alone being provided to the Department of Justice. For any evidence obtained after the date of the messages at issue, Rehl has made no proffer as to how it may be connected to those messages, and the no such connection is readily apparent.

the communications at issue from the other agent. She has had no further conversations with the agent about them, outside of what was contained in the Lync messages.[5]

### 3. The Government Obtained no Confidential Information about Trial Preparation

The information contained in the Lync messages that were produced to the defense contains no content of communications, but instead a passing reference to allegations of government impropriety by the defense and the fact that Rehl was planning to go to trial. Prior to the date of the communication between the agents, Mr. Moseley filed several motions accusing the government of doing things improperly. *See* ECF 184 (alleging that the indictment did not properly allege a conspiracy as to Rehl); 194 (same); 200 (arguing that the government improperly argued Rehl was an organizer because another individual took credit for organizing the "Stop the Steal" rally); 203 (alleging that the government searched another individual's house because it knew its case against Rehl was weak). Consequently, the conversation between the two FBI agents as referenced in the Lync messages disclosed less information about the defense strategy than Mr. Moseley's public court filings that predated the conversation.

Rehl's motion also claims that the messages' reference to Messrs. Rehl's and Moseley's desire to proceed to trial conveyed trial strategy to the government. Like the alleged government impropriety reference, this statement from one agent to the other contained no information that was not readily apparent from the public record in the case. The Court set the first trial date in this matter on September 21, 2021, well prior to the government's receipt of the messages at issue. *See* 9/21/2021 Minute Entry. Five days later, and still nearly a month prior to the Lync messages cited

---

[5] Special Agent Miller, of course, received messages from another agent, who is based in Philadelphia, which led to the attempted cross-examination of Special Agent Miller concerning that agent's messages.. That agent was not one of the six lead case agents who have been identified in the course of the testimony in this case, and he was not involved in formulating litigation strategy with the prosecutors. None of the six main case agents have reviewed the emails at issue.

9

by Rehl, Mr. Moseley filed a motion for a trial subpoena that included arguments about his dim view of the government's theory of the case. *See* ECF 186 at 3 ("The central assumption critical to the prosecution's case is that ZACHARY REHL conspired to leave the Presidency vacant for the next four (4) years," and subsequent arguments). Mr. Moseley's later motions made additional arguments about the government's theory. *See*, *e.g.*, ECF 230 at 10 ("The Grand Jury alleges that Zachary Rehl (at 2:53 p.m.) obstructed the Joint Session of Congress which recessed 33 minutes earlier at 2:20 p.m. What kind of refreshments were being served? How much sleep did the Grand Jury have? Could this be the first evidence of time travel? There is one thing that every human being on Earth knows and agrees upon: **Nothing that happened at 2:53 PM caused something to occur at 2:20 PM**") (emphasis in original). A trial date had been set as of the time the messages at issue were exchanged. Mr. Moseley was taking aim at the government's theory of the case in public filings. It is no surprise that all parties, including Rehl, were anticipating that the case was headed for trial in the fall of 2021. The government learned no new information—and certainly not the substance of any trial strategy—by the bare indication that Messrs. Rehl and Moseley anticipated going to trial.

    4.   No Information Was Used to the Substantial Detriment of Rehl

Rehl has not met his burden of demonstrating that any information was used to his detriment at all, much less his substantial detriment. Rehl alleges that "at a minimum it appears that the government used information related in Mr. Moseley's email to Rehl (10/5/21 at 9:18 am) in opposing Mr. Rehl's release from pretrial detention." ECF 694 at 8. Although, as noted above, the government is maintaining the *status quo* and has not reviewed the emails in question while Rehl's claim of privilege is pending before the Court, Ms. Hernandez has represented to undersigned counsel that the communication in question concerned a statement made by Mr.

10

Moseley regarding setting up a GiveSendGo page to support law enforcement. As we demonstrate below, the government had rebutted the defendant's claim prior to its receipt of the emails in question from FDC-PH.

The government received the emails at issue from FDC-PH no earlier than October 14, 2021. According to Rehl's motion and counsel's proffer, Mr. Moseley sent the email regarding the fundraiser on October 5, 2021. Mr. Mosely subsequently filed a supplement to his then-pending motion to release Rehl from custody on October 6, 2021, which included a reference to the fundraiser. ECF 198, ¶ 12. On October 7—at least a week prior to the government's receipt of the allegedly privileged emails—government counsel asked the FBI to "Investigate the claim that Rehl has initiated a fund-raising campaign for Capitol Police." Later that same day, the government conducted an ICANN[6] lookup of the purported fundraiser's website, which determined (among other things), that the domain name was registered on October 6, 2021 (the date of Mr. Moseley's filing) from an IP address in Virginia (where Mr. Moseley maintained his law office). *See* 10/7/21 Email string (Exh. C) and ICANN lookup (which was attached to that string) (Exh. D). On October 15, 2021, the government filed its opposition to Rehl's motion for release, to which it attached the same ICANN lookup that it circulated internally on October 7. ECF 210 & 210-1. The Lync messages between the FBI agents that mentioned Moseley's emails were sent on October 21, 2021 and in any event did not mention the purported fundraiser.

Self-evidently, the government could not have used communications between Messrs. Rehl and Moseley that it did not yet possess in crafting its opposition to Rehl's motion for release. The government did not access Rehl's privileged attorney-client communications. But even if it did,

---

[6]   ICANN stands for the Internet Corporation for Assigned Names and Numbers, and its mission includes helping to coordinate and support unique Internet-addres identifiers around the world. *See* https://www.icann.org/en/beginners (last visited March 17, 2023).

11

Rehl has not met his burden to show prejudice because he has proffered no trial evidence that was derived from those communications; has not shown that the government acted intentionally; has not established that the government accessed any non-public information about trial strategy; and has demonstrated no prejudice, let alone the substantial detriment required under *Weatherford* and its progeny. Rehl's motion should therefore be denied.

### C. No Hearing is Required

Rehl's motion is long on rhetoric and short on factual assertions. It is his burden to establish that the privilege was not waived and to demonstrate the requisite prejudice under *Weatherford*. He has done neither, and the limited factual assertions he has made are countered by the attached declarations and evidence that establish conclusively that (1) Rehl knew his communications over the TRULINCS system were monitored, even when emailing his attorney; (2) he had to invite Mr. Moseley to communicate with him, knowing those communications were monitored; and (3) Mr. Moseley had to accept the terms to use the system, which included monitoring. The documentary evidence further conclusively establishes that the one factual allegation made by Rehl—the use of an allegedly privileged email to rebut a claim raised by Rehl in a bail motion—is false. The government independently refuted Rehl's claim less than 24 hours after he filed the supplement, and over a week prior to its receipt of the emails in question. Under these circumstances—where the defendant has put forth no factual allegations that would support his claim—no hearing is required. *See United States v. Mahdi*, 999 F. Supp. 2d 236, 245-46 (D.D.C. 2013), citing *Lynn v. United States*, 365 F.3d 1225, 1238-39 (11th Cir. 2004); *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007).

Rehl cites *United States v. Kelly*, 790 F.2d 130, 134 (D.C. Cir. 1986) for the proposition that a hearing is required here. Rehl's reliance on *Kelly* is misplaced for two reasons. First, Kelly

involved a motion for a new trial based on newly discovered evidence. *Id.* at 135. Even assuming *arguendo* that the Court should use the standard for granting a hearing in that context, those motions "can ordinarily be decided on the basis of affidavits without an evidentiary hearing." *Id.* Moreover, the defendant in *Kelly* submitted affidavits from himself, his attorney, and the alleged informant. The government submitted no affidavits in response. *Id.* This case presents the Court with precisely the opposite situation: Despite bearing the burden on this motion, Rehl submitted neither declarations nor affidavits, and the government has attached hereto a declaration with five attachments, along with other documentary evidence supporting its position. On this record, the defendant's motion should be denied without a hearing.[7]

---

[7] Rehl claims that the government violated Fed. R. Crim. P. 17 in obtaining the emails. That is false. The government obtained the materials at issue via administrative request, so Rule 17 does not apply.

Rehl also states, in a one-sentence footnote, that "the Due Process Clause of the Fifth Amendment protects a defendant against governmental misconduct that is so outrageous that it is 'shocking to the conscience.'" ECF 694 at 8, n.4. He makes no factual or legal claims to develop any argument along those lines, so the Court should consider it waived. Even if not waived, the Court should deny it on the merits for the reasons stated above—there was neither an invasion of the defense camp nor any prejudice to the defendant resulting from the government's receipt of his emails with Mr. Moseley.

**CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied without a hearing.

                        Respectfully Submitted,
                        MATTHEW M. GRAVES
                        United States Attorney
                        D.C. Bar No. 481052

By:   */s/ Erik M. Kenerson*
      ERIK M. KENERSON // Ohio Bar No. 82960
      JASON B.A. MCCULLOUGH
      NY Bar No. 4544953
     NADIA E. MOORE // N.Y. Bar No. 4826566
      On Detail to the District of Columbia
     Assistant United States Attorneys
     601 D Street NW
     Washington, D.C. 20530
     (202) 252-7201
     Erik.Kenerson@usdoj.gov

     */s/ Conor Mulroe*
     Conor Mulroe // N.Y. Bar No. 5289640
     Trial Attorney // U.S. Department of Justice, Criminal
        Division
     1301 New York Avenue, Suite 700
     (202) 330-1788
     conor.mulroe@usdoj.gov