UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ETHAN NORDEAN et al.,<br><br>*Defendants*. | Criminal Action No. 21-175 (TJK) |

**MEMORANDUM ORDER**

Before the Court is Kenneth Lizardo's motion to quash his trial subpoena, which Defendant Ethan Nordean issued. ECF No. 712. Lizardo asserts a blanket Fifth Amendment privilege against testifying on Nordean's behalf. Nordean opposes the motion. To facilitate its resolution of this motion, the Court ordered sealed, *ex parte* proffers from Lizardo on the factual basis for invoking the privilege and from Nordean and the Government outlining matters on which they would anticipate questioning Lizardo. The Court further held a sealed, *ex parte* hearing with Lizardo. After considering all the parties' submissions, Lizardo's representations at the *ex parte* hearing, and the entire record, the Court finds that Lizardo may assert a blanket Fifth Amendment privilege. Thus, it will quash the trial subpoena.

\*   \*   \*

Courts have long recognized that a defendant's Sixth Amendment Compulsory Process rights do not override a potential witness's Fifth Amendment privilege against self-incrimination. *See United States v. Reynoso*, 38 F.4th 1083, 1096 (D.C. Cir. 2022). The Fifth Amendment provides that "No person . . . shall be compelled in any Criminal Case to be a witness against himself." U.S. Const. amend V. "This provision of the Amendment must be accorded liberal

construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  To that end, the privilege "not only extends to answers that would themselves support a conviction under a federal criminal statute but likewise embraces those which would *furnish a link in the chain of evidence* needed to prosecute the claimant for a federal crime." *Id.* (emphasis added).

Ultimately, it is up to the trial court to sustain or reject a witness's privilege claim.  "[T]he district judge must determine only whether there is a reasonable basis for believing a danger to the witness *might* exist in answering a particular question." *United States v. Thornton*, 733 F.2d 121, 125 (D.C. Cir. 1984); *see also United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) ("The central standard for the privilege's application has been whether the claimant is confronted by substantial and real, not merely trifling or imaginary, hazards of incrimination." (cleaned up)).  To make this determination, "the trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify where a narrower privilege will adequately protect him." *United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977).  But the "inquiry into the scope of privilege asserted . . . is limited by the Fifth Amendment, and the court may not force the witness to prove that he will in fact incriminate himself by testimony." *Id.*  A court's decision ultimately turns on this inquiry coupled with its "personal perception of the peculiarities of the case." *Id.*

Recognizing that "a trial court [usually] cannot speculate whether all relevant questions would or would not tend to incriminate the witness," courts typically require witnesses to comply with a trial subpoena and invoke the privilege question by question. *Thornton*, 733 F.2d at 125–26.  But "[i]n unusual cases," "a district judge may sustain a blanket assertion of privilege after

determining that there is a reasonable basis for believing a danger to the witness might exist in answering *any* relevant question." *Id.* at 126.

*    *    *

Lizardo moves to quash his trial subpoena from Nordean, claiming a blanket Fifth Amendment privilege against testifying.[1]  Upon review of Lizardo's motion, Nordean's opposition, the Government's response, and all three *ex parte* submissions, coupled with its understanding of the "peculiarities of [this] case," the Court will sustain Lizardo's invocation of his Fifth Amendment privilege.  For that reason, the Court will grant his motion to quash the trial subpoena.[2]

Lizardo's connection to this case and the Defendants is apparent from the trial record. Lizardo is a Proud Boy and was a member of both the Ministry of Self Defense ("MOSD") and Boots on Ground Telegram chat groups, as well as some other related Telegram chat groups.  Tr. at 13,662.  The Government alleges that the Defendants used the MOSD and the Boots on the Ground chat group as platforms to recruit and mobilize select Proud Boys to deploy them as part of their conspiracy to use force against the Government on January 6, 2021.  And although there is also evidence that those groups were created at least in part for other purposes, several members of these groups have been charged in connection with January 6, *see, e.g.*, *United States v. Rae*, 21-cr-378 (TJK) (D.D.C.); *United States v. Fonticoba*, 21-cr-638 (TJK) (D.D.C.)—including some with conspiracy offenses, *see United States v. Pepe*, 21-cr-52 (TJK) (D.D.C.).  Lizardo was also

---

[1] In his sealed motion, Lizardo raises other grounds for quashing his subpoena.  Because the Court will sustain his blanket invocation of a Fifth Amendment privilege, it need not reach his other arguments.

[2] Nordean requested oral argument on this motion.  The comprehensive briefing before the Court is enough to resolve the motion, so that request is denied.

part of the Defendants' group that marched from the Washington Monument until they were adjacent to the Capitol, near some food trucks, that day. Tr. at 13,812.

The trial record also reveals that Lizardo closely interacted with Defendant Enrique Tarrio, the national leader of the Proud Boys, in the days leading up to January 6. Nicholas Quested, a documentary filmmaker who had been following Tarrio in the weeks beforehand, testified for the Government that Lizardo had a "close" relationship with Tarrio. Tr. at 4,523. On January 5, Lizardo picked up Tarrio from the District of Columbia jail after his arrest the day before. *See* Tr. at 13,523. From there, Lizardo drove Tarrio to a parking garage where he met with Oathkeepers founder Stewart Rhodes—a meeting about which the Government elicited information on Quested's direct examination. *See* Tr. at 4,523–26. Of course, before this trial began, a jury convicted Rhodes of seditious conspiracy and other charges related to January 6. *See United States v. Rhodes*, 22-cr-15 (APM), ECF No. 410 (D.D.C. Nov. 29, 2022).

On this record, and with the benefit of over two months of trial testimony and two years of extensive pretrial litigation over the "peculiarities of [this] case," the Court finds Lizardo has a "reasonable basis for believing a danger to [him] *might* exist" if he were to testify. *Thornton*, 733 F.2d at 125–26 (cleaned up). As Lizardo points out, this case involves "expansive inchoate offenses," ECF No. 712 at 2, such as conspiracy and aiding-and-abetting theories of liability, linked throughout the record to groups and events of which Lizardo was a part. In fact, swaths of Proud Boys with whom Lizardo affiliated on and before January 6 have been criminally charged. And the Government's efforts to investigate the attack on the Capitol and prosecute those involved remain ongoing. Against this backdrop, the Court can hardly say that Lizardo's fear of self-incrimination is "trifling or imaginary." *Apfelbaum*, 445 U.S. at 128.

The Court also agrees with Lizardo that this is one of the "unusual cases" warranting blanket privilege. *See Thornton*, 733 F.2d at 126. To be sure, Nordean has proffered lines of inquiry that may not, at first blush, seem incriminating. But that is not the standard. *Any* information about Lizardo's status within the Proud Boys, participation in the MOSD or Boots on Ground chat groups, and his relationship with Tarrio or any other defendant all risk "furnish[ing] a link in the chain of evidence needed to prosecute [Lizardo] for a federal crime." *Hoffman*, 341 U.S. at 486. As the record here amply demonstrates, circumstantial evidence—even evidence subject to more than one interpretation—can play a role in proving up the kinds of inchoate offenses charged here. Thus, "there is a reasonable basis for believing a danger to [Lizardo] might exist in answering *any* relevant question." *Thornton*, 733 F.2d at 126.

True enough, some facts here point in the other direction. First, there is no evidence that Lizardo entered the Capitol or even a restricted area on January 6. But on the other hand, neither did Defendant Tarrio nor other MOSD leaders who have pleaded guilty to conspiracy charges. Indeed, the evidence shows that Lizardo left the Capitol area and did not participate in the attack that day. But whether Lizardo has a winning affirmative defense to any criminal liability does not materially affect whether "a danger to [him] *might* exist" in the first place. *See Thornton*, 733 F.2d at 125.

Second, Lizardo has had a reporting relationship with the FBI. *See* Tr. at 13,524. And the Government has represented—in an unrelated filing months ago—that its view at that time was that Lizardo "neither joined in the conspiracy, nor was used as a tool in furtherance of it. In fact, [Lizardo] purposely removed himself from the group based on his 'feeling' about where events were headed." ECF 538 at 17. But to the Court, both these points mostly bear on the likelihood that the Government will charge Lizardo—not whether he has a reasonable basis to believe that

his testimony *might* incriminate him.  And in determining whether to sustain Lizardo's invocation of the privilege, it is not the Court's province to try to guess whether he will ultimately be prosecuted.  *See United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) ("We find no justification for limiting the historic protections of the Fifth Amendment by creating an exception to the general rule which would nullify the privilege whenever it appears that the government would not undertake to prosecute.").

The privilege analysis the district court undertook in *United States v. Avenatti* is instructive. 2020 WL 418453 (S.D.N.Y. Jan. 26, 2020).  There, the trial court denied the defendant's motion to compel the testimony of a witness at trial.  *Id.* at *12.  The witness was another lawyer who had participated in conduct underpinning the defendant's conspiracy and extortion charges, and the first indictment in the case had referred to him as an unindicted coconspirator.  *Id.* at *2–*4.  But the witness and his counsel later met with the government to conduct several "innocence proffers," at which he waived his Fifth Amendment rights.  Afterward, the government obtained a superseding indictment against the defendant that dropped the extortion conspiracies and referred to the witness as "Attorney-1" instead of "CC-1."  *Id.* at *6.

Even so, the trial court declined to compel the witness to testify.  Over the defendant's argument that "the government ha[d] obviously decided not to prosecute [the witness]," the court emphasized that "it is dangerous to predict in what cases the Government will proceed with a criminal prosecution."  *Avenatti*, 2020 WL 418453, at *10.  The court found that "the Government ha[d] not exonerated [the witness], and it ha[d] not given him any assurances that he [would] not be prosecuted.  He was personally involved with conduct that the Government has identified as criminal."  *Avenatti*, 2020 WL 418453, at *11.  And under these circumstances, the witness was

6

"confronted by substantial and real . . . hazards of incrimination." *Id.* at *12 (quoting *Apfelbaum*, 445 U.S. at 128).

So too here. Like the witness in *Avenatti*, the Government—despite signaling it does not foresee charging Lizardo—has not given him any such assurances. Neither has the Government offered Lizardo immunity. And Lizardo "was personally involved with conduct that the Government has identified as criminal." *See Avenatti*, 2020 WL 418453, at *11. In the Court's view, it is enough that, on the record before it, Lizardo's fear that answering any relevant question will risk "furnish[ing] a link in the chain of evidence needed to prosecute [him]" is reasonable. *Hoffman*, 341 U.S. at 486. And because the Sixth Amendment confers "no right [on Nordean] to put a witness on the stand simply to require him to assert his Fifth Amendment privilege before the jury," *Reese*, 561 F.2d at 899, it is hereby

**ORDERED** that Lizardo's Motion to Quash his Subpoena, ECF No. 712, is **GRANTED.** It is further **ORDERED** that Lizardo's trial subpoena is **QUASHED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 21, 2023