UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ZACHARY REHL,<br><br>*Defendant*. | Criminal Action No. 21-175-3 (TJK) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Zachary Rehl's motion to dismiss the indictment and for an evidentiary hearing. ECF No. 694. He argues that the Government violated his Sixth Amendment rights when FBI agents reviewed communications with his former attorney over the email system maintained and monitored by the Bureau of Prisons. The Government opposes the motion, arguing Rehl waived attorney-client privilege over these messages. On the record before it, the Court agrees that Rehl knowingly waived any claim to privilege over these communications. Thus, the Court will deny Rehl's motions to dismiss and for an evidentiary hearing.

### I. Background

Rehl's dispute arises out of the Government's disclosure of certain communications Special Agent Nicole Miller received from other, nontestifying agents over the FBI's Lync messaging system. The Government inadvertently produced these statements to the defense as part of Special Agent Miller's *Jencks* production. Counsel for Defendant Ethan Nordean revealed his discovery of this oversight at the start of his cross-examination of Special Agent Miller, and a cacophony of argument, briefing, and a limited examination of Special Agent Miller outside the jury's presence ensued.

Through the din, Rehl points to messages Special Agent Miller received from a Special Agent Wang, in which he summarizes communications he reviewed between Rehl and his former counsel, Jonathan Moseley. Special Agent Wang wrote:

| Timestamp | From/To | Message |
|---|---|---|
| 2021-07-15 13:13:15 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | . . . I got REHL's email from FDC, he doesnt (sic) appear to be a ticking time bomb in the emails he sent as JENKINS described him to be. |
| 2021-10-21 19:36:15 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | … found an email thread with REHL and his attorney MOSELEY. the attorney raised some |
| 2021-10-21 19:51:59 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | interesting points |
| 2021-10-21 19:53:31 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | nope. he mentioned how we (GOV) did things improperly |
| 2021-10-21 19:54:02 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | i need to find other emails, but this one email def indicates that they want to go to trial. but dont freak out jason and luke yet |
| 2021-10-21 19:54:07 | twang2@fbi.sgov.gov nmiller2@fbi.sgov.gov | or urself |

ECF No. 694 at 2.

The FBI obtained the emails Special Agent Wang referenced as part of the Philadelphia Federal Detention Center's production of Rehl's communications over the facility's Trust Fund Limited Computer Systems ("TRULINCS"). All Bureau of Prisons facilities use TRULINCS to provide inmates access to, among other things, an electronic messaging system. *See* ECF No. 709-1 at 1 ¶ 3 ("Gallagher Decl."). To use the messaging system, inmates must first consent to "monitoring and information retrieval for *law enforcement* and other purposes." ECF No. 709-3 (emphasis added); *see also* Gallagher Decl. ¶ 4. They must further acknowledge that such consent "applies to electronic messages both to and from [their] attorney or other legal representative, and that such messages will not be treated as privileged, and that [they] have alternative methods of conducting privileged legal communication." ECF No. 709-3. Furthermore, when members of

the public receive an invitation to communicate electronically with an inmate, they are notified, "By approving electronic correspondence with federal prisoners, you consent to have the Bureau of Prisons staff monitor the content of all electronic messages exchanged."  ECF No. 709-5.

The Government, through "filter" attorneys who are not members of the trial team, has provided these communications to the Court for its review.[1]  Many reflect Rehl's awareness that his TRULINCS communications were monitored.  *See* ECF No. 709-7 (telling others, "[T]hey monitor all my emails"; "[T]hey monitor these emails like crazy").  More than that, the communications reflect that both Rehl and Moseley expected *prosecutors* would read them.  ECF No. 711-1 at 14, 33.  TRULINCS does "provide[] for designating a contact as an attorney," ECF No. 694 at 3, but the system manual reflects that an attorney may be so designated only "with the acknowledgment that public emails exchanged with such individuals will not be treated as privileged communications and will be subject to monitoring," ECF No. 709-4 at 134.

Still, in his motion, Rehl argues that FBI agents' review of his communications with Moseley over TRULINCS intruded upon the attorney-client relationship, thereby violating his Sixth Amendment and Due Process rights.  *See* ECF No. 694.  He therefore moves the Court to dismiss the charges against him.  In opposition, the Government counters that Rehl waived attorney-client privilege over his TRULINCS messages with Moseley, foreclosing any constitutional challenge.  *See* ECF No. 709 at 3–6.  Alternatively, assuming the communications were privileged, the Government argues Rehl has not suffered the requisite prejudice to prove a

---

[1] In response to Rehl's motion, the Government appointed a "filter" team to review the relevant TRULINCS production, and it uncovered 16 email threads between Rehl and Moseley.  ECF No. 711-1 at 1 n.1.  The Government asserts that no prosecutor on the trial team has reviewed the communications at issue.  ECF No. 709 at 2 n.2.

3

Sixth Amendment violation. *See id.* at 6–12. Along with the parties' filings, the Court has reviewed the Government's supplemental opposition, submitted by the "filter" attorneys.

**II.     Analysis**

Although the attorney-client privilege "has not been elevated to the level of a constitutional right," courts have long acknowledged it "is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial." *United States v. Neill*, 952 F. Supp. 834, 839 (D.D.C. 1997) (citing *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir. 1951)). Government intrusion into privileged communications compromises defense counsel's "ab[ility] to communicate freely without fear that his or her advice and legal strategy will be seized and used against the client" and raises "substantial questions of fundamental fairness." *Id.* Drawing on the Supreme Court's decision in *Weatherford v. Bursey*, 429 U.S. 545 (1977), the D.C. Circuit has recognized that invading the attorney-client privilege may give rise to a Sixth Amendment violation. *See United States v. Kelly*, 790 F.2d 130, 136–38 (D.C. Cir. 1986).

But where there is no privilege, there can be no intrusion. *See United States v. Singhal*, 800 F. Supp. 2d 12, 15 (D.D.C. 2010) (holding that the government did not violate the defendant's Sixth Amendment rights because the attorney-client communications it obtained "[fell] outside the category of communications to which the privilege applies"); *see also United States v. Chandler*, 56 F.4th 27, 40 (2d Cir. 2022); *United States v. Hamilton*, 19 F.3d 350, 352–53 (7th Cir. 1994). "Any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege." *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982); *see United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) ("To preserve the [attorney-client] privilege, the holder must 'zealously protect the privileged materials,

4

taking all reasonable steps to protect their disclosure.'" (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)).

Thus, courts in this district have held that, for emails sent over a third party's server, "the question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable." *Doe I v. George Washington Univ.*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020) (quoting *Convertino v. U.S. Dep't of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009)). And as for communications by incarcerated defendants, several circuits have "decided that, where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege." *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (citing *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003)); *see also United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (holding that the marital-communications privilege did not protect conversations with an incarcerated spouse because the couple should have anticipated monitoring or eavesdropping).

### A.     Rehl Waived Attorney-Client Privilege

To begin, Rehl has not attempted to meet his burden to show that any of the messages the Government obtained from TRULINCS were privileged. *See In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("It [is] the claimant's burden . . . to present to the court sufficient facts to establish the privilege."); *see also Singhal*, 800 F. Supp. 2d at 15 (noting that "not all communications between a lawyer and client are privileged" and citing requirements to show privilege (citing *In re Sealed Case*, 737 F.2d at 98–99)). Instead, he seems to assume the privilege applies, noting only that a message Special Agent Wang purportedly read "involve[d] 'trial strategy'" because it "indicate[d] that [Rehl and Moseley] want[ed] to go to trial." *See* ECF No. 694 at 1–2.

But even assuming the attorney-client privilege would have protected the content of Rehl's TRULINCS communications with Moseley, on the record here, the Court finds that Rehl waived

5

the privilege. Not only was Rehl "aware that his [messages were] being recorded," *see Mejia*, 655 F.3d at 133, but the undisputed record reflects his consent to "monitoring and information retrieval for *law enforcement* . . . purposes," ECF No. 709-3 (emphasis added); *see also* Gallagher Decl. ¶ 4. Indeed, it also reflects Rehl's belief that the prosecutors themselves would be reading his TRULINCS messages. *See* ECF No. 711-1 at 14, 33. And if doubt remained whether any "intent to communicate in confidence [could have been] objectively reasonable," *Doe I*, 480 F. Supp. 3d at 226, Rehl's express acknowledgment that his consent "applie[d] to electronic messages both to and from [his] attorney . . . and that such messages [would] not be treated as privileged" places the matter beyond dispute. *See* ECF No. 709-3.

On this record, it is hardly surprising that this Court is not alone in concluding that defendants who communicate with their counsel over TRULINCS waive any attorney-client privilege over those communications. *See, e.g.*, *United States v. Walia*, No. 14-cr-213 (MKB), 2014 WL 3734522, at *16 (E.D.N.Y. July 25, 2014); *United States v. Asaro*, No. 14-cr-26 (ARR), 2014 WL 12828985, at *1 n.1 (E.D.N.Y. July 17, 2014)*; Aciero v. Holder*, No. 14-cv-506 (LEK-BMK), 2015 WL 5769223, at *4 (D. Hawaii 2015); *Fed'l Trade Comm'n v. Nat'l Urological Grp., Inc.*, No. 04-cv-3294 (CAP), 2015 WL 13687741, at *2 (N.D. Ga. 2015). And while the Court regrets that TRULINCS places such a convenient means of communicating beyond the reach of privilege, that shortcoming "does not change the fact that, here, [Rehl has] waived the attorney-client privilege." *Aciero*, 2015 WL 5769223, at *6.

Rehl fails to respond to the Government's waiver argument. In his initial motion, Rehl asserted that, on the then-existing record, the Government offered no "sworn declarations by BOP officials" or "evidence that he in fact read or accepted . . . a condition" that his TRULINCS communications would be "subject to monitoring and retention." ECF No. 694 at 3. He also

asserted that the TRULINCS system, unlike cases involving jail calls, did not notify users that the messages were being monitored, and the evidence "undermine[d] any argument that Mr. Moseley and Mr. Rehl were on notice." *See id.* at 4. The Government's opposition to his motion, including the messages sent between Moseley and Rehl and other supporting evidence, thoroughly debunks these claims. Rehl never replied to contend otherwise.

In his motion, Rehl *did* point out that Moseley labeled some of his emails to Rehl attorney-client privileged. *See* ECF No. 694 at 3–4; ECF No. 711-1 at 8, 12, 24, 26, 31. But magic words alone will not do. The standard is whether the "intent to communicate in confidence was objectively reasonable." *Doe I*, 480 F. Supp. 3d at 226; *cf. Singhal*, 800 F. Supp. 2d at 17 (finding email communications were not attorney-client privileged despite the subject line "Attorney Client Confidential"). The record reflects that even Moseley believed that his communications with Rehl were not confidential, and that he so informed Rehl. *See, e.g.*, ECF No. 711-1 at 12 ("I assume that these communications are monitored."). On this record, neither Rehl nor Moseley could have had an objectively reasonable intent to communicate in confidence.

Thus, Rehl's waiver of the attorney-client privilege dooms his Sixth Amendment challenge. *See Singhal*, 800 F. Supp. 2d at 15; *see also Chandler*, 56 F.4th at 40 (rejecting a Sixth Amendment challenge in part because statements the defendant communicated to a third party "of his own volition, in disregard of the confidentiality required to maintain attorney-client privilege" were "by definition not privileged and [could not] be used to establish an 'invasion' of the attorney-client relationship *attributable to the government*"); *Hamilton*, 19 F.3d at 352–53 (rejecting a Sixth Amendment challenge where the government learned about the defendant's trial strategy from his cellmate because "regardless of whether [the defendant] could demonstrate that the information .

7

. . was [attorney-client] privileged, [defendant] waived any such privilege when he voluntarily disclosed the confidential information to his cellmate").

The Court also notes that even if Rehl had not waived the privilege, his Sixth Amendment challenge would likely still fall short, at least on this record. Four factors inform whether government intrusion on the attorney-client privilege contravenes the Sixth Amendment: "(1) whether evidence to be used at trial was obtained directly or indirectly by the government intrusion; (2) whether the intrusion was intentional; (3) whether the prosecution received otherwise confidential information about trial preparation or defense strategy as a result of the intrusion; and (4) whether the privileged information was used or will be used to the substantial detriment of the defendants." *Neill*, 952 F. Supp. at 840 (citing *Weatherford*, 429 U.S. at 558; *Kelly*, 790 F.2d at 137). Although the weight courts should afford each factor remains unresolved, "it is clear that there must [be] a substantial demonstration of prejudice before an indictment can be dismissed." *Id.*

To show prejudice, Rehl claims only that "the government [apparently] used information related in Mr. Moseley's email to Mr. Rehl (10/5/21 at 9:18 am) in opposing Mr. Rehl's release from pretrial detention." ECF No. 694 at 8. Not so. In this email, Moseley proposed setting up a fundraising page to support law enforcement. *See* ECF No. 709 at 10–11; ECF No. 711-1 at 8. He discussed the same fundraiser in a filing in support of his first motion to reopen Rehl's pretrial detention hearing on October 6, 2021. ECF No. 198 ¶ 12. The *very next day*, the Government researched the fundraiser's website. *See* ECF No. 709-8 & 709-9. It then used its search results in its opposition to pretrial release, which it filed on October 15, 2021. *See* ECF No. 210 at 12 & 210-1. But it does not appear that the detention facility provided the TRULICS production at issue to the Government until October 21, 2021—*after* it opposed Rehl's motion. *See, e.g.*, ECF No.

8

711-1 at 8 (date and time stamp reading 10/21/2021, 11:36 AM). Simply put, the record appears to foreclose any possibility that the Government used Moseley's email to Rehl to oppose his pretrial release.[2]

### B. No Evidentiary Hearing Is Required

Finally, the Court sees no reason to hold an evidentiary hearing. On the waiver issue, the Government responded to Rehl's motion with the very evidence he requested: "sworn declarations by BOP officials [and] . . . evidence that [Rehl] in fact read [and] accepted" monitoring of his messages to Moseley. *See* ECF No. 694 at 3. Rehl never replied to challenge the Government's evidence or otherwise argue it did not support a finding of waiver. For the reasons described above, the Court finds that on this record, further factual development on the waiver issue is unnecessary. And as the Court has already explained, a finding of waiver alone forecloses Rehl's Sixth Amendment challenge without further inquiry into the Government's use (or lack thereof) of these emails. So the Court will deny Rehl's request for an evidentiary hearing. *Cf. United States v. Strothers*, 77 F.3d 1389, 1394 n.8 (D.C. Cir. 1996) (court's decision to forgo an evidentiary hearing was "no[t an] abuse of discretion" because there was "no indication [of] any

---

[2] Rehl's remaining arguments are meritless. He takes a passing shot at a Fifth Amendment Due Process claim, suggesting the Government's conduct here "shocks the conscience." *See* ECF No. 694 at 9. Alternatively, he invokes the Court's inherent "supervisory powers" to impose sanctions, including dismissal, for government misconduct that falls short of a Fifth Amendment violation. *See id*. But for all the same reasons discussed above, the record lacks any basis to conclude that the Government committed misconduct here—no less misconduct so severe to warrant dismissal of the case against Rehl. Nor is there any basis to conclude the Government "likely violated" Federal Rule of Criminal Procedure 17(c). *See id.* at 10. The Government obtained the materials at issue via an administrative request, so Rule 17 is inapplicable. *See* ECF No. 709 at 13 n.7. And because there is no evidence of misconduct to speak of, the Government did not "conceal[ ]" such misconduct in violation of its *Brady* obligations or the Jencks Act. *See* ECF No. 694 at 13.

dispute over [material] facts . . . that the court could not resolve without a full evidentiary hearing." (cleaned up)).[3]

### III.  Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Rehl's Motion to Dismiss the Indictment and for an Evidentiary Hearing, ECF No. 694, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 3, 2023

---

[3] Because the Court finds that Rehl waived the privilege, it has no cause to "require the government to explain by affidavit or sworn declarations how it obtained these emails and what the FBI agents did after reviewing [them]." ECF No. 694 at 13.  In any event, though, the Court notes that Rehl offers neither argument nor evidence—beyond his point about the fundraiser—suggesting any possibility of prejudice.  For example, he identifies no other revelation about trial strategy that might plausibly support a claim for prejudice.  And upon its own review of the messages at issue—coupled with Rehl's ascertainment of new counsel a year before trial—the Court can see none.