UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSEPH R. BIGGS and ZACHARY REHL,<br><br>*Defendants*. | Criminal Action No. 21-175-2, 3 (TJK) |

## ORDER

Before the Court are Defendant Zachary Rehl's motions for Attorney Carmen Hernandez to withdraw as counsel, ECF No. 811, and for leave for Attorney Norman Pattis to appear as counsel on his behalf, ECF No. 812. Because Attorney Pattis has represented Rehl's codefendant, Joseph Biggs, in this matter since June 2022, the Court promptly initiated an inquiry into the propriety of joint representation at this stage in the proceedings. *See* Fed. R. Crim. P. 44(c). After considering the parties' filings, *see* ECF Nos. 816 & 817, the Court held a conflicts hearing on June 23, 2023.

At the hearing, the Court conducted individual colloquies first with Attorney Pattis and then with each defendant, under seal. After each defendant's colloquy, both waived their right to conflict-free counsel and provided informed consent to joint representation for purposes of posttrial motions and sentencing. As announced at the close of the hearing, the Court accepts their waivers and will grant Rehl's motions. The Court now elaborates on its reasons for doing so.[1]

---

[1] The Government requested that the Court appoint both Defendants Rehl and Biggs independent conflicts counsel, as this Court and others in this district have done at times. ECF No. 816 at 2; *see, e.g.*, *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 132–33 (D.D.C. 2015). Attorney Pattis maintained doing so was unnecessary. ECF No. 817 at 6. When potential conflicts—like that the Court addressed earlier in this matter, *see* ECF No. 600—arise *before* trial, actual conflicts might manifest in any number of unpredictable ways. *See Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978). So the need for independent conflicts counsel is greater. Here, by

\*   \*   \*

Attorney Pattis's joint representation of Biggs and Rehl for the rest of these proceedings implicates two sets of rules: the D.C. Rules of Professional Conduct and both defendants' Sixth Amendment right to conflict-free counsel.

While various ethical rules might bear on these circumstances, two predominate: Rules 1.6 and 1.7. As relevant here, Rule 1.6 prohibits an attorney from revealing or otherwise using "a confidence or secret" of one client in his defense of another unless both defendants provide informed consent. *See* D.C. Rule of Prof'l Conduct 1.6(a), (e)(1). As for Rule 1.7, Attorney Pattis's joint representation of Biggs and Rehl implicates both Rules 1.7(a) and 1.7(b). Rule 1.7(a) bars an attorney from "advanc[ing] two or more adverse positions in the same matter," meaning counsel may not "*actually* assert[] two incompatible arguments on behalf of two different clients on the same issue in the same proceeding." *Iacangelo v. Georgetown Univ.*, 710 F. Supp. 2d 83, 89 (D.D.C. 2010). Such a conflict is not waivable. *See* D.C. Bar Legal Ethics Op. 217 ("Rule 1.7(a) . . . prohibits multiple representation without regard to client consent."). But when the benefits of joint representation are great, "each of the [affected] clients might after 'consultation' choose to forgo . . . arguments" that Rule 1.7(a) would otherwise bar. *Id.*

Rule 1.7(b), on the other hand, requires that "a lawyer shall not represent a client with respect to a matter if, . . . such representation will be or is likely to be adversely affected by representation of another client"; "representation of another client will be or is likely to be

---

contrast, the potential conflicts that might arise during posttrial motions and sentencing are far more discrete and predictable. Thus, after considering both positions, the Court declined to automatically appoint conflicts counsel and instead asked each defendant whether he wished to consult such counsel. Both defendants declined. The Court accepted their answers, and with the benefit of having presided over the lengthy trial in this matter, conducted a thorough waiver colloquy with both defendants.

adversely affected by such representation"; or "the lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party." D.C. Rules Prof'l Conduct, 1.7(b)(2)–(4). But conflicts arising under this rule are waivable so long as "each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation," and "[t]he lawyer reasonably believes that [he] will be able to provide competent and diligent representation to each affected client." D.C. Rule Prof'l Conduct 1.7(c). "Informed consent" refers to a client's agreement "to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." D.C. Rule Prof'l Conduct 1.0(e).

Last, a criminal defendant's Sixth Amendment right to counsel includes the "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). While courts "must recognize a presumption in favor of [the accused's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but . . . by a showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988). Yet, a conflict of interest "will not violate the Sixth Amendment, if the conflict does not adversely affect counsel's performance." *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 135 (D.D.C. 2015). Moreover, a defendant may waive his right to conflict-free counsel so long as that waiver is knowing and voluntary. *See id.*

\*   \*   \*

After conducting individual colloquies with Biggs and Rehl, as well as Attorney Pattis, the Court is satisfied that both defendants have provided informed consent to the risks of joint

3

representation where the ethics rules so require, and their on-the-record waivers of their right to conflict-free counsel were knowing and voluntary. For starters, although the record does not yet support a finding that either defendant has authorized Attorney Pattis to share confidences with the other under Rule 1.6, both have, through informed consent, waived any conflict of interest arising out of his inability to do so. Moreover, assuming neither Biggs nor Rehl consents to Attorney Pattis sharing confidences with the other, and considering the limited, posttrial scope of this joint-representation arrangement, the Court finds it unlikely that this potential source of conflict will manifest into an actual conflict.

Turning to Rule 1.7, the Court will address the potential risk for conflict at both stages remaining in these proceedings: posttrial motions and sentencing. First, the Court considers the risk of an actual conflict arising with respect to posttrial motions to be low. Biggs and Rehl were convicted of the same offenses and, considering the entire record, it is not at all clear that any argument appropriate for a posttrial motion would favor one defendant but disfavor the other.

Sentencing is a different matter, where appropriate arguments about relative culpability and certain enhancements, like those relating to leadership roles, present a greater risk that an actual conflict might take form. But considering its colloquies with Attorney Pattis and both defendants, as well as its own understanding of the extensive record in this case, the Court is satisfied—at least at this point—that no potential conflict at sentencing would so "adversely affect counsel's performance" as to raise constitutional concerns. *Lorenzana-Cordon*, 125 F. Supp. 3d at 135. And for purposes of Rule 1.7(c), the Court discussed the various ways Attorney Pattis's representation of one defendant at sentencing might—even implicitly—adversely affect the other's interests, including arguments the defendants may have to forgo given Rule 1.7(a). After thorough

4

examination, both defendants clearly expressed that they understood each risk and, despite it, voluntarily waived any conflict of interest.

To be sure, a defendant's waiver of conflict and consent to joint representation does not necessarily end a court's inquiry. District courts retain "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated . . . , but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict." *Wheat*, 486 U.S. at 163. But this Court does not face the more familiar, daunting task of predicting the myriad ways actual conflicts might arise "in the murk[y] pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162. Rather, the Court analyzes the propriety of joint representation here with the benefit of having presided over two years of pretrial litigation and several months of trial in this case, as well as a fully developed record.

From that vantage point, the record itself constrains the arguments Attorney Pattis might make on either defendant's behalf in good faith. And in the Court's view, the record does not position Biggs and Rehl so differently that effective representation of one at sentencing must—or even is reasonably likely to—come at the other's expense. To the extent Attorney Pattis may have to argue about various enhancements or the defendants' relative culpability, the record does not reasonably support fundamentally inconsistent positions. And the defendants have waived any conflict that might arise when, at sentencing, Attorney Pattis might emphasize facts relating to one defendant's culpability (or lack thereof) that implicitly contrast with the facts related to the other defendant. Furthermore, Attorney Pattis is an experienced advocate who is well positioned, given his role at trial, to know whether his "belie[f] that [he] will be able to provide competent and diligent representation to each affected client" is a reasonable one. *See* D.C. Rule Prof'l Conduct

1.7(c).  And after its colloquy with Attorney Pattis, the Court agrees that it is.  Furthermore, Attorney Pattis has assured the Court that, in the unlikely event his belief changes, he would promptly alert his clients and the Court.

At bottom, when district courts balance a defendant's competing Sixth Amendment interests in counsel of choice versus conflict-free counsel, "[t]he evaluation of the facts and circumstances of each case . . . must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164.  And it is the Court's judgment, accounting for the entire record, that Attorney Pattis is able to navigate subtle arguments about relative culpability and effectively represent both Biggs and Rehl for the rest of these proceedings.  For that reason, the Court accepts the defendants' waivers of the right to conflict-free counsel.

Therefore, it is hereby **ORDERED** that Defendant Rehl's motions for Attorney Hernandez to withdraw as counsel, ECF No. 811, and for Attorney Pattis to appear as counsel for him, ECF No. 812, are **GRANTED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 27, 2023