```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00175-TJK-1
                                          1:21-cr-00175-TJK-2
v.                                        1:21-cr-00175-TJK-3
                                          1:21-cr-00175-TJK-5
1-ETHAN NORDEAN                           1:21-cr-00175-TJK-6
2-JOSEPH R. BIGGS
3-ZACHARY REHL                    Washington, D.C.
5-ENRIQUE TARRIO                  Wednesday, March 15, 2023
6-DOMINIC J. PEZZOLA,             9:00 a.m.
                    Defendants.
- - - - - - - - - - - - - - - - x
```

_____

TRANSCRIPT OF JURY TRIAL - DAY 48
*** MORNING SESSION ***
HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

For the United States:    Jason B.A. McCullough, Esq.
                          Erik M. Kenerson, Esq.
                          Nadia Moore, Esq.
                          Conor Mulroe, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          Norman A. Pattis, Esq.
                          PATTIS & SMITH, LLC
                          383 Orange Street
                          1st Floor
                          New Haven, CT 06511
                          (203) 393-3017

                          John D. Hull, IV, Esq.
                          HULL MCGUIRE PC
                          1420 N Street, NW
                          Washington, DC 20005
                          (202) 429-6520

APPEARANCES CONTINUED:

For the Defendants:        Carmen D. Hernandez, Esq.
                           7166 Mink Hollow Road
                           Highland, MD 20777
                           (240) 472-3391

                           Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

                           Roger I. Roots, Esq.
                           ROGER ROOTS, ATTORNEY AT LAW
                           113 Lake Drive East
                           Livingston, MT 59047
                           (775) 764-9347

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

13574

# C O N T E N T S

**WITNESS:**                                                      **PAGE:**

NICOLE MILLER
Cross-Examination by Mr. Jauregui................13644
Cross-Examination by Ms. Metcalf................13667

1                    **P R O C E E D I N G S**

2            THE DEPUTY CLERK:  This is Criminal Matter 21-175,

3    United States of America v. Defendant 1, Ethan Nordean;

4    Defendant 2, Joseph R. Biggs; Defendant 3, Zachary Rehl;

5    Defendant 5, Enrique Tarrio; and Defendant 6, Dominic J.

6    Pezzola.

7            Present for the Government are Jason McCullough,

8    Erik Kenerson, Conor Mulroe, and Nadia Moore; present for

9    Defendant 1 is Nicholas Smith; present for Defendant 2 are

10   John Hull and Norman Pattis; present for Defendant 3 is

11   Carmen Hernandez; present for Defendant 5 are Nayib Hassan

12   and Sabino Jauregui; present for Defendant 6 are Steven

13   Metcalf and Roger Roots.  Also present are Defendant 1,

14   Mr. Nordean; Defendant 2, Mr. Biggs; Defendant 3, Mr. Rehl;

15   Defendant 5, Mr. Tarrio; and Defendant 6, Mr. Pezzola.

16           THE COURT:  All right.  Well, good morning to

17   everyone.

18           I -- let me try to suggest a way we can proceed

19   here.  We -- I did receive objections from, I think,

20   Mr. Smith and Ms. Hernandez, and then some Rule 106 issues

21   from, I believe, Mr. Smith, as well.  I think what we should

22   do is go through -- I'll just briefly hear Mr. Smith on his

23   objections and the Rule 106 -- and Mr. -- part of

24   Mr. Smith's objections involve videos that I wasn't able

25   to -- due to some technical problems, wasn't able to pull

1    them all up.  So I think it makes sense for us to go through

2    those matters, including the 106.

3          Then, with regard to Ms. Hernandez's, I picked out

4    a few that I would like to hear more from the Government and

5    Ms. Hernandez on.

6          I think, Ms. Hernandez, a lot of what you objected

7    to, I didn't quite understand it in the sense that you would

8    say, you know -- again, "hearsay," when it was clearly a

9    statement of one of the defendants.  You -- First Amendment

10   is not an objection, number two.  And some other things

11   that, I think, I've already ruled on.  It's not an objection

12   that your client wasn't involved in a particular chat, for

13   example.  So I don't know that I need to hear -- let's put

14   it this way.  I think if we get through the -- Mr. Smith's

15   stuff and the handful of things I've pulled out on yours, if

16   you want to -- I mean, and then we get started rolling with

17   the witness -- with the witness we have to finish up and

18   then perhaps -- and we'll hit another break, or lunch, and

19   if you want to be heard on anything else particular that

20   you've raised, I'm happy to do it, but I don't think it

21   makes sense to grind through each one because, as I said, a

22   lot of them, I think, I've already ruled on or I don't even

23   think they're really cognizable objections.

24         MS. HERNANDEZ:  Well, that's fine, Your Honor.  I

25   understand you've ruled on some of these before, but I feel

```
 1    like I have to make a record that I'm objecting.  And I can

 2    explain what those shorthand statements are --

 3              THE COURT:  Okay.

 4              MS. HERNANDEZ:  -- later.  I'll tell the Court, I

 5    didn't get power -- I did those here, then I went home.  I

 6    didn't get power until midnight last night.  So I have 106

 7    proposals that I wasn't able to do.

 8              THE COURT:  All right.  Well, maybe, we'll hit a

 9    break beforehand and you can take those up with the

10    Government.

11              MS. HERNANDEZ:  And I do have a -- would like to

12    reopen an objection that I had yesterday with respect to

13    this witness, but the Court can -- I don't know what the

14    Court's --

15              THE COURT:  All right.  Well, let's take --

16              MS. HERNANDEZ:  -- timing on this stuff is.

17              THE COURT:  Maybe we'll take that up afterward.

18              So let me -- again, I think Mr. Smith's -- let me

19    just start with the things that Mr. Smith had identified.

20    So --

21              MR. SMITH:  Your Honor, could I -- I think some --

22    Your Honor might point out that some of the objections we

23    made, we already dealt with pretrial.  And so in the

24    interest of saving time, I could just jump right to what I

25    think are just the most -- the newest and most easy ones to
```

```
 1    deal with and then we could --
 2              THE COURT:  Fair enough.
 3              MR. SMITH:  And -- okay.  Your Honor, at -- if
 4    there -- if Your Honor goes to Government Exhibit-516-1.
 5    It's in the PDF that Mr. Mulroe provided called SA Dubrowski
 6    Part 2.
 7              THE COURT:  This is the 106 issue?
 8              MR. SMITH:  This is the 106 issue that we think
 9    should be the most straightforward.  We make a couple more
10    arguments that we agree would be a little more expansive,
11    but this one is pretty tight, and the Government exhibit is
12    516-1.
13              THE COURT:  Yeah, yeah, I -- give me one -- okay.
14    I'm there.
15              MR. SMITH:  Okay.  Does Your Honor see -- so this
16    is the chat from MOSD Leaders - January 9th.  And Your Honor
17    can see that the first chat in this window is one from
18    Mr. Nordean at 2:14:02 p.m.  It says "Everyone needs to shut
19    the fuck up."  Then it says -- he says "There's way too many
20    videos and pictures that are being shared."  And Captain
21    Trump says "Yeah, exactly."  Can Your Honor see that?
22              THE COURT:  I don't have --
23              MR. SMITH:  This is 516-1.
24              THE COURT:  Yeah, I have -- okay.  I don't see the
25    "Yeah, exactly," but I believe you.
```

1          MR. SMITH:  Does --

2          THE COURT:  I have "Everyone needs to shut the eff

3     up.  There's way too many videos."  And then who says "Yeah,

4     exactly"?

5          MR. SMITH:  Captain Trump.

6          THE COURT:  Okay.  Yep.

7          MR. SMITH:  And then, Your Honor, can you see --

8     then it says -- Jeremy Noble Beard says "Yes" at the end of

9     the --

10         THE COURT:  Okay.

11         MR. SMITH:  So Your Honor, there's a message

12    immediately above -- I don't mean several chats above --

13    immediately above Rufio Panman's from Captain Trump.  So

14    this is a -- so Captain Trump starts the conversation; then

15    Rufio Panman responds.  And what they're talking about

16    here -- you can see Rufio Panman's talking about too many

17    videos and pictures being shared.  The chat immediately

18    above is Captain Trump linking to an extremism report from

19    GW University and it says -- Captain Trump says "The FBI

20    affidavit for Biggs, it's, of course, a steaming pile of dog

21    shit that tries to make it seem like the Capitol shit was

22    planned."  And then -- so then Mr. Nordean says in response

23    "What the fuck?  Everyone needs to shut the fuck up.

24    There's way too many videos and pictures and words being

25    shared."

1          So Your Honor, that's essential context because if
2     you just look at the Government's exhibit, it says Rufio
3     Panman saying "Everyone needs to shut the fuck up."  Like,
4     you don't know what the antecedent is there that he's
5     referring to, but what he's referring to is a report that
6     Captain Trump posts right above that suggesting -- it's a
7     news -- some kind of -- I mean, a media report -- or
8     academic report saying that the Capitol attack was planned.
9     So if the defense -- defendant's response is "Everyone needs
10    to shut the fuck up," that adds context to what he's
11    referring to.  Now, you could think -- just seeing this in
12    isolation, "Everyone needs to shut the fuck up," you could
13    infer that Mr. Nordean's referring to talking about the
14    Capitol attack, et al., but if you see the comment
15    immediately above, you could interpret this in an entirely
16    different fashion which is the media reporting on this is
17    false, so people need to shut -- they need to shut the fuck
18    up about that reporting.  So -- and this isn't a stretch 106
19    argument.  This is the text right above his comment there.
20          And so, Your Honor, I think the -- what the
21    Government might say is, "Well, that Captain Trump statement
22    above is a self-serving statement," but that's not the
23    point, Your Honor.  It's not being offered to show the truth
24    of whether the Capitol attack was planned or not.  It shows
25    context that the -- it's about the fairness of the

1    interpretation of Mr. Nordean's comment right below it, Your

2    Honor.

3        And then, Your Honor, we make a couple more

4    arguments about -- since they're talking about media,

5    Captain Trump later says -- I mean, earlier -- Captain

6    Trump, a couple of days before in the same thread, says

7    "They were trying to make it out like we led the Trump rally

8    to the Capitol which obviously couldn't be further from the

9    truth."  That's on -- that's at January 15th at -- that's on

10   January 15th in the same chat thread; then on January 17th,

11   Captain Trump says "He spoke of invading the GOP.  The media

12   took that and twisted it into saying that we were planning

13   on invading the Capitol."  Now, those -- now, the

14   Government's going to say those two comments are from

15   several days before 516-1, and I agree that's more

16   expansive, but at the very least the text right above

17   Mr. Nordean's in 516-1, we think, should be included in

18   fairness.

19       THE COURT:  Let me ask you about, you know --

20   there is -- he -- your client responds -- it -- well, it's

21   hard to tell.  The -- just going through -- putting aside

22   the two posts that are not on the same day for the moment,

23   Captain Trump posts his post at 10:37 on the 20th and

24   then the "What the eff" post happens at 11:13.  So it's the

25   next post, but there's a little bit of a gap.  And then

 1     there's -- and then "Everyone just needs to shut the eff up"

 2     is a minute later, essentially -- less than a minute later.

 3              MR. SMITH:  Right.

 4              THE COURT:  It's -- I mean, I suppose -- all

 5     right.  Let me hear from the Government on that -- on this

 6     point.

 7              MR. MULROE:  Good morning, Your Honor.

 8              The first thing to note is that, unless I'm

 9     mistaken, this exhibit is actually already in evidence.  We

10     offered this during the testimony of Jeremy Bertino.  I

11     don't think any defendant raised any Rule 106 requests or

12     objections of that type when it was offered.  And, in fact,

13     Mr. Bertino testified -- given that he was a member of this

14     chat group, he testified about this exchange and gave his

15     perspective on it and was open to cross-examination on that

16     perspective.  So I think that, you know -- this is not

17     necessarily a waiver argument, but I do think that the

18     appropriate time to have made this request would have been

19     when the exhibit was actually offered.  I think that is what

20     Rule 106 contemplates.

21              Putting that to the side, though, and going to the

22     actual substance of the communications, I do not think that

23     this is the type of message that, under the rule, fairness

24     requires to be considered alongside the messages that we

25     propose to show during Agent Dubrowski's testimony.  I just

1      don't think that Mr. Smith is correct that this lends any

2      necessary context or even any helpful or probative context

3      to Mr. Nordean's statements that "Everyone needs to shut the

4      eff up because there's way too many videos and pictures and

5      words being shared."  So to try to make that link, Mr. Smith

6      has argued that Mr. Nordean's instruction that everyone

7      needs to shut up pertains specifically to people shutting up

8      about the FBI affidavit or the facts that are described in

9      that affidavit or the media reporting about the content of

10     the affidavit, but I just don't think that the face of the

11     messages bears that out.  I think it's clear from the

12     messages that he wants people to shut the eff up because of

13     general law enforcement scrutiny that the group was

14     receiving at that time.  There were any number of arrests

15     and charges being filed.  And I think that's clear because

16     he says "There's way too many videos and pictures and words

17     being shared."  So this clearly is addressing the totality

18     of discussions and sharing of evidence within the group and

19     not anything that's narrowly focused on whatever may be in

20     this affidavit.

21             So for that reason, I don't think that there's a

22     valid Rule 106 argument for letting that message in, and I

23     do think that there are good reasons to keep it out.  I

24     think that, you know, without the Rule 106 argument, there

25     would be no serious argument to let this in, but I think

1    that even if he's trying to frame it as a 106 issue, under

2    Rule 403 we would argue that there is a substantial

3    likelihood of confusing the issues, misleading the jury, and

4    unfairly prejudicing the Government.  This is a nakedly

5    self-serving statement of one of the defendants here in

6    trial saying the Government's theory of the case is a

7    "steaming pile of dog shit," and that is something that is

8    very likely to be taken by the jury for the truth.  I think

9    that it can be especially confusing because the content of

10   the affidavit is not in these exhibits.  And so it's the

11   defendant arguing against a Government affidavit that is not

12   even necessarily the same case that the Government is

13   putting on here, but the jury's not going to understand any

14   of that.  The Government is just -- I mean, the jury's going

15   to just take this as Zachary Rehl saying, "We didn't do what

16   the Government said we did."

17           And so for those reasons -- and I'm happy to

18   answer any questions Your Honor might have -- but I do think

19   that this is not something that needs to be considered, in

20   fairness; there's no missing context without it; and under

21   Rule 403, we think it ought to be excluded.

22           MR. SMITH:  Your Honor, may I have one word in

23   just after that --

24           THE COURT:  Sure.

25           MR. SMITH:  -- just to point out something

1    factual?

2           So Your Honor can see that right below Captain

3    Trump's blue chat about the "steaming pile of dog shit,"

4    Mr. Nordean says "What the fuck?"  And that is -- that

5    comment is not in the Government's exhibit either.  Now,

6    Mr. Mulroe just said, "Well, it's perfectly clear not just

7    to the Government, but it's -- no reasonable juror,

8    effectively, could find that Mr. Nordean was referring to

9    the specific Biggs affidavit chat that Captain Trump sends."

10   Well, Your Honor, we know that's not true.  At the very

11   least, that -- a reasonable juror could find that because

12   the very first comment Rufio Panman makes is "What the eff."

13   And he's -- "What the eff" is obviously a response to the

14   Biggs affidavit comment.  Then, as Your Honor pointed out,

15   it's less than a minute later that Mr. Nordean says

16   "Everyone needs to shut the eff up."  So at -- so clearly,

17   Mr. Nordean at the -- within moments of saying "Everyone

18   needs to shut the eff up" makes a direct reference to the

19   chat immediately above that.  And Your -- Mr. Mulroe is

20   correct in the sense that the jury can certainly infer

21   Mr. Nordean's talking about law enforcement activities

22   generally, but it could also reasonably infer he's not.  So

23   fairness doesn't require that the proponent of the evidence

24   eliminate all alternative possibilities to the

25   interpretation he's offering.  It's just fairness requires

1    that if a reasonable juror couldn't make an inference either

2    way, they'd be allowed to.  And the Government can argue,

3    "Look, that's just a self-serving statement.  That's Zach

4    Rehl just blowing off steam," and that would be a fair

5    inference, but to eliminate the jury's ability to see the

6    evidence I don't think would be appropriate here if the chat

7    is making direct reference to it, Mr. Nordean's, and it is,

8    Your Honor.  So --

9              THE COURT:  All right.

10             MS. HERNANDEZ:  Your Honor, I join Mr. Smith's --

11             THE COURT:  All right.  We don't need -- I mean,

12    I -- all right.  Very well.

13             MS. HERNANDEZ:  I mean, it's my client's comments

14    that are being considered.  And, again, I wasn't able to

15    open that last night.  It's the height of irony that the

16    Government is suggesting that statements made by people

17    generally can only be interpreted in one way and cannot -- I

18    mean, most of their case involves taking statements and

19    interpreting them in the way the Government wants to

20    interpret them and eliminating, you know, other inferences.

21    So --

22             THE COURT:  All right.  Ms. Hernandez, I think --

23    look, I think the "What the eff" message, as Mr. Smith

24    pointed out, the linkage between those two things does --

25    I'm going to -- I will rule this in on 106; not the later

1    two statements, but the earlier two, the "What the eff" and

2    the prior -- and the affidavit.  I think it is -- I think

3    that is admissible under 106.

4          Now, if the Government wants to -- I mean, it is a

5    weird thing that this is already in evidence.  So I don't

6    know how the -- let me put it this way.  I'm not -- I guess

7    I'm not ruling -- I mean, and when the Government already

8    put it in, the defendant -- I mean, there wasn't a Rule 106

9    request.  So I'm not saying we have to go back and add it

10   now.  If the Government chooses not to use this with this

11   witness, then -- I mean, I'll live for -- we could talk

12   about another day whether there's a retroactive 106

13   application, but at least if it's going to be used with this

14   witness, I do think those prior two statements should --

15   under 106, should be considered in fairness with the latter

16   two.

17         MR. SMITH:  And, Your Honor, thank you.  We can

18   just do this on cross, if Your Honor would like, because the

19   Court has permitted that before with other 106 statements

20   or, you know -- we're not demanding that the Government, you

21   know -- it has a special format it uses for chats.  We're

22   not demanding that it look like that.  So it could either be

23   just a presentation of this during direct or cross.

24         THE COURT:  Or the Government may choose not to

25   use it if they -- if --

```
 1            So I'll just say, Mr. Mulroe, if you're going
 2   to -- let me put it this way.  We're going to have probably
 3   a break between when this comes up.  You can discuss with --
 4   internally whether you want to use it with the 106, and if
 5   you do want to do that, whether you want to proceed as
 6   Mr. Smith said and just let them do it on cross, it -- I'm
 7   agnostic about that.  Does that make sense?
 8            MR. MULROE:  Yes, Your Honor.  I think so.  Just
 9   to clarify, if we elect not -- I mean, as you said, this is
10   already in.  If we elect not to show this through Agent
11   Dubrowski's testimony, are you saying it's an open question,
12   then, whether he would be able to use it on his cross or --
13            THE COURT:  No, he wouldn't be able to use it on
14   his cross if you don't use it.
15            MR. SMITH:  Your --
16            THE COURT:  Correct.
17            MR. MULROE:  Understood.
18            MR. SMITH:  Your Honor, this is -- well,
19   Mr. Mulroe pointed out that this is in evidence.
20            THE COURT:  Right, but you didn't make a -- you --
21   it is in evidence, but you didn't -- let me put it this way.
22   It is an -- it is, at least to me, an open --
23            MR. SMITH:  So the jury's already seen it, is
24   what --
25            THE COURT:  I understand --
```

```
 1                 MR. SMITH:  Yeah.

 2                 THE COURT:  -- but you -- but there was no

 3       motion -- 106 motion at that time.

 4                 MR. SMITH:  Your Honor, can I explain why there

 5       wasn't?  Because when we attempted to cross Mr. Dubrowski

 6       about text messages before -- after January 6th, there was

 7       an objection that that was outside the scope.

 8                 THE COURT:  Right, and --

 9                 MR. SMITH:  So we had planned -- so when we were

10       told it's outside the scope, we planned on crossing

11       Mr. Dubrowski about -- do you -- Your Honor, these are from

12       January 20th.  So we planned on crossing Dubrowski about

13       these messages and we were stopped.  So we -- I think it's

14       reasonable to think that you're allowed to make arguments

15       about text messages after January 6th if it's deemed outside

16       the scope.

17                 THE COURT:  But it didn't come in through him.  It

18       came in through Bertino; right?

19                 MR. SMITH:  Yes, Your Honor, but -- okay.  So

20       there's two -- I -- because there's two witnesses testifying

21       about -- Dubrowski is, kind of, the Telegram man and he

22       really pores through a lot of the Telegrams.  So we expected

23       to be able to cross him on these messages -- we -- on these

24       messages after January 6th in total.  That's the reason we

25       weren't, sort of, pestering the Court with all kinds of
```

1    demands about chats after January 6th.  We just assumed that

2    was fair.  So -- and, Your Honor, since the jury's already

3    seen this and the Court has agreed that the "What the fuck"

4    remark by Mr. Pan- -- by Mr. Nordean links the comments, it

5    just seems fair to be able to show the jury what he's

6    referring to.

7            THE COURT:  I'm not -- let me put it this way.

8    I'm not going to rule on that issue right now.  I'll think

9    about it.  We're not going to get to Dubrowski's cross for a

10   little bit, but that's where I am on it right now.

11           MR. MULROE:  And, Your Honor, if I could just note

12   on -- it sounds likes he's making a reliance argument, but

13   if the only basis of getting this in was under Rule 106,

14   Mr. Smith had no idea whether or not we were going to even

15   attempt to offer this exhibit through Agent Dubrowski.  So

16   the time to do it was when it was offered.  That's what the

17   rule --

18           THE COURT:  Through --

19           MR. MULROE:  -- says.

20           THE COURT:  Through Bertino.  I agree.  So look,

21   I -- we don't need to discuss it any further right now.

22           Mr. Smith, what's the next point -- what's the

23   next thing you want to make sure I hit this morning?

24           MR. SMITH:  Thank you, Your Honor.

25           The next one is in -- this is similar -- in

```
1    515-6 --
2              THE COURT:  Another 106 issue?
3              MR. SMITH:  Yes, Your Honor.  So in this one --
4    this is the OG Pickleback Crew.
5              THE COURT:  Oh, okay.
6              MR. SMITH:  And there's a chat at 2:39 p.m. from
7    Rufio Panman that says, you know, "Eff Trump.  Eff him more
8    than Biden."  Can Your Honor see that one?
9              THE COURT:  Yep.
10             MR. SMITH:  Okay.  That is sent at -- and I'm
11   going to quote UTC-8 time here, so -- but the minutes are
12   what matter.  So that was sent on January 20th, 2021, at
13   11:39:03 a.m. UTC-8.  And then, Your Honor, just a few
14   minutes before that at January -- on January 20th, 2021,
15   11:17 a.m. UTC-8, Mr. Nordean says "This affidavit for
16   Biggs, it's, of course, a steaming pile of dog shit that
17   tries to make it seem like the Capitol shit was planned."
18   So that's his comment right before he sends the "Eff Trump"
19   one.  So to the extent the Government is offering this --
20   I'm not exactly sure why the Government is offering these
21   "Eff Trump" statements for Mr. Nordean.  I'm not really
22   objecting to them, the text ones, but to the extent
23   they're -- the relevance is showing guilt -- a consciousness
24   of guilt or something, I think, in fairness, Mr. Nordean's
25   statement from a few minutes before that -- the suggestion
```

```
 1    that "the Capitol shit was planned is dog shit" is -- should

 2    be considered at the same time if the "Eff Trump" statement

 3    is being used as consciousness of guilt.  I'm not -- I

 4    haven't heard from the Government -- we haven't heard what

 5    the relevance of the "Eff Trump" stuff is, but to the extent

 6    that's what it's being used for, we would say Mr. Nordean's

 7    immediately prior comment from a few minutes before that

 8    "the Capitol shit" wasn't planned should be considered at

 9    the same time.

10              THE COURT:  Okay.  Government?

11              MR. MULROE:  Your Honor, I would just note that

12    the message Mr. Smith seeks to introduce comes before the

13    messages we have in the exhibit and there were approximately

14    10 intervening messages between them.  I'll just say at the

15    front that I think if the first message is going to come in

16    under Rule 106, then we would put the entire exchange in; we

17    wouldn't just isolate the beginning and the end of it.  And

18    the messages that are in between include messages from AJ

19    Fischer -- who Mr. Smith has argued doesn't know Nordean --

20    essentially complaining about Eddie Block; about how Eddie

21    Block was filming them; calling him an effing C-word and

22    saying -- well, then Paul Rae says "We should have left him

23    stuck in the mud."  Clearly, all consciousness of guilt, but

24    not messages that we are, at this time, seeking to

25    introduce.
```

1          Now, with that said, I think that this is a very

2     different situation than the Rule 106 analysis Your Honor

3     just conducted on the previous exhibit because I don't think

4     there's anything on the face of the messages that suggests a

5     conversational linkage between the messages that Mr. Nordean

6     sends about "Eff Donald Trump" and the one that he had sent

7     earlier about the FBI affidavit being "a pile of dog shit."

8     So I really don't see why these ought to be considered

9     together, in fairness, but if Your Honor has questions, I'll

10    be glad to address them.

11          THE COURT:  All right.  On this one, I'm going to

12    side -- I'm going to go the other way.  I don't think 106

13    requires -- that fairness requires this statement to be

14    here.  I mean, we have intervening messages, we have

15    intervening messages about other topics, and I don't think

16    there's a great linkage.  I mean, yes, maybe, there's a --

17    and if you read the message on 515-6, sort of, like, "He led

18    us to believe some great justice was upon us and it never

19    happened and now I've got good friends facing jail time," I

20    don't think the linkage is nearly as strong in terms of the

21    content of each of them and in terms of the fact that there

22    are intervening messages.  So I will not rule this one in on

23    106 grounds.

24          MR. SMITH:  Okay.  Your Honor, the next one is

25    Government Exhibit-512-19.  This is a Rule 403 and relevance

1    argument, not 106.

2              THE COURT:  Mm-hmm.  What -- can you repeat the

3    exhibit number again.

4              MR. SMITH:  Yes, Your Honor.  It's 512-19.

5              THE COURT:  Ah, I've got it.  Yep.  Yep.

6              MR. SMITH:  Okay.  And so the first chat -- this

7    is Boots on the Ground, January 7th.  The first one's from

8    Jersey Templar.  And if Your Honor looks all the way from

9    Jersey Templar down to someone named J.D. Stockton, that's

10   about 8:00 a.m. to 12:56 p.m.; then Your Honor can see

11   there's a jump from 12:56 p.m. to 2:00 p.m.

12             THE COURT:  Give me one second.

13             MR. SMITH:  Okay.

14             (Brief pause.)

15             THE COURT:  Okay.  I'm with you.

16             MR. SMITH:  Okay.  So Your Honor can see that the

17   first chat's from 8:00 a.m. from Jersey Templar.

18             THE COURT:  Mm-hmm.

19             MR. SMITH:  And then it goes -- if Your Honor just

20   follows that thread all the way down --

21             THE COURT:  Yep.

22             MR. SMITH:  -- to, like, 2 -- or excuse me, 12:56,

23   then there's a jump of an hour to the next one with the

24   turtles at 2:12.

25             THE COURT:  Mm-hmm.

1          MR. SMITH:  Okay.  So Your Honor, all -- between

2     8:44 and 12:56, there are no -- there's no defendants in

3     this case.  I don't know if the Government's calling them

4     tools or what, but there are a lot of just salacious

5     comments that don't -- aren't evidence.  Like, the second

6     entry is "Be smart; we are now domestic terrorists" from

7     someone named Jersey Templar.  We don't know who that is.

8     Some -- that's particularly -- that -- we'd argue that's

9     irrelevant and inflammatory.  Then, Your Honor, we're not

10    objecting to the last three.  The last three begin at 2:12

11    p.m. where someone says "Just in: FBI's digital media team

12    is currently hunting down U.S. Capitol protesters."  And

13    then Captain Trump responds "Great news.  Everyone should

14    have held the Capitol."  We're not arguing that's not

15    relevant.  It's just everything above the -- yeah.

16          THE COURT:  I understand your argument.

17          Government?

18          MR. MULROE:  Two responses to that, Your Honor.

19          First, I believe the Court has already ruled on

20    several occasions that the mental state of tools of the

21    conspiracy is a relevant fact.  And this exhibit is from the

22    Boots on Ground chat group.  There's been testimony and

23    evidence that Boots on Ground chat group was created by the

24    leaders of the conspiracy as the most, kind of, direct

25    gathering place of the tools of the conspiracy who were

1    actually present in Washington, D.C. and who were summoned

2    to the Washington Monument.

3         THE COURT:  I'm sorry.  I just need everyone at

4    counsel table to not be speaking when you're not addressing

5    me.

6         Mr. Mulroe, you may proceed.

7         MR. MULROE:  So the Boots on Ground group is the

8    subordinates who were summoned to the Washington Monument

9    for the purpose of marching them to the Capitol and carrying

10   out the attack.  So the mental state of those people is

11   relevant, and it's particularly relevant at the time at

12   which this conversation occurs starting at 8:44 in the

13   morning the day after January 6th.  These messages from the

14   tools do show consciousness of guilt.  They're saying "Don't

15   post any video here or on social media.  The feds are going

16   to be looking everywhere to identify us."  Note the first

17   person plural there, "us."  "We embarrassed the fuck out of

18   them; be smart," and then suggesting that this is going to

19   be enforced.  "Anyone who does needs to be put in line."  So

20   it's relevant to the mental state of the tools, as is the

21   next message from Jersey Templar, "Be smart; we are now

22   domestic terrorists."  So that's an independent probative

23   value on the first point, but then apart from that another

24   basis of admitting this entire exhibit is that the two

25   messages at the bottom are from Zachary Rehl.  They directly

1   follow --

2           THE COURT:  Well, they're not arguing those.  So I

3   mean --

4           MR. MULROE:  Yeah.  So Your Honor, I'm only making

5   the point that the preceding conversation is context to help

6   the jury understand the conversational context in which

7   Zachary Rehl makes those statements.

8           THE COURT:  All right.  I'm going to take -- look,

9   I know we're going to have to get to this quickly, but I'm

10  going to take the -- look, the last three lines of this are

11  in, clearly.  I think this does run up against what I was

12  articulating the other day which is I do think that once

13  we're past January 7th, it's not clear to me that -- in

14  other words, when we're talking about tools or people in

15  these various chats leading up to January 6th, it's not

16  exactly the same analysis, it seems to me, post January 6th.

17  And so I want to look at whether I think the other

18  statements here are admissible and I will let you all know

19  before we get there, but --

20          MR. SMITH:  Your Honor, can I make one comment

21  about the domestic terrorism point?

22          THE COURT:  Yes.

23          MR. SMITH:  Just -- and then I'll leave it there.

24          So as Your Honor knows, there is no designation at

25  law for domestic terrorists.  There's an international one.

1  So we think that this is, kind of -- this is a

2  jury-confusion argument.  When someone uses the phrase

3  "domestic terrorists," in, you know -- in a regular person's

4  mind, they can think that's referring to some sort of legal

5  characterization, and that's just not true; then domestic --

6  Your Honor, on the tools point, in addition to the one Your

7  Honor just made which is a very good one, we haven't seen

8  the necessary linkage here between these tools and the

9  defendants that the Government's been making throughout the

10  case.  The Government has offered a predicate proof of

11  marching.  We don't even know who Jersey Templar is.  I

12  don't think they've appeared in this case.  We haven't seen

13  images of them.  And so, Your Honor, his -- Jersey Templar's

14  remarks about domestic terrorists wouldn't even satisfy the

15  pre-January 6th --

16            THE COURT:  Well --

17            MR. SMITH:  -- linkage.

18            THE COURT:  -- their point would be -- their

19  counterpoint would be I did admit -- and, again, I guess you

20  could argue -- well, I did admit for intent purposes certain

21  statements, right, on the theory of they were hand-picked by

22  this group and they expressed things that -- and -- they

23  expressed things that indicated an intent, and then no

24  one -- we've been calling it the "no one rebuked them"

25  theory.  This is -- that -- a lot of that reasoning doesn't

1    necessarily apply here, although the intent piece of it

2    arguably does.  So I'm just going to just put this one -- I

3    understand your argument.  And I'll just say, I'm not

4    persuaded, sort of -- you're making, kind of, a 403 argument

5    on that.  I don't find that that persuasive, but I may find

6    the other argument persuasive.  So I'll come back to that.

7         MR. SMITH:  Thank you, Your Honor.

8         The next one is 601-41A and 601-41B.

9         THE COURT:  Yeah, let -- I saw how you set this

10   up.

11        What's the Government's --

12        Let me just have them articulate.

13        What's the Government's theory on this -- the 41A,

14   41B -- where is this all headed?

15        MR. MULROE:  Well, Your Honor, there are

16   photographs that are similar to one posted by Ethan Nordean

17   on January 8th to his Parler account.  The photograph that

18   Mr. Nordean posts is an officer spraying --

19        THE COURT:  Right.

20        MR. MULROE:  -- what looks like an older man.

21        THE COURT:  And it looks like it's -- your

22   argument is it's altered in some way --

23        MR. MULROE:  Yeah.

24        THE COURT:  -- to make him look like he's smiling.

25        MR. MULROE:  Right, and he posts a caption saying

1    "The honorable oath-breakers.  If you feel bad for police,

2    you're part of the problem."  We have determined that that

3    photograph he posted is altered.  The original has an

4    officer who is not smiling.  The -- it's altered to make it

5    look like the officer is really enjoying his spraying this

6    older fellow in the photo.  So I think that -- Mr. Smith has

7    voiced the objection that there's no foundation that

8    Mr. Nordean personally --

9            THE COURT:  Right.

10            MR. MULROE:  -- altered the photo.  I think our

11    position would be that it doesn't matter whether he is the

12    one who altered it or not.  What's relevant is that this is

13    an altered photo that he posted.  And I would proffer that I

14    expect the agent will testify that the agent was able to

15    easily find the authentic, original version of this photo,

16    but that the agent couldn't find the altered version

17    anywhere on the public Internet through his reverse Google

18    image search which suggests that this was not something that

19    Mr. Nordean happened across, you know, by accident on a

20    mainstream news story.

21            So I think that the jury can make any reasonable

22    inference from that fact -- from the fact of him posting a

23    doctored photo, but I think even if you put that all to the

24    side, I think that the Government should still be entitled

25    to show that this officer was not grinning while he was

1    doing that.  Even if Mr. Nordean might have thought he was,

2    I think we're entitled to rebut this, you know, fairly

3    prejudicial and inflammatory suggestion that the Capitol

4    Police were just having a ball when they were out there

5    assaulting non-violent protesters.

6            MR. SMITH:  Your Honor, there's no evidence that

7    Mr. Nordean knew that the photograph was altered.  The

8    suggestion that the foundation has been laid because of a

9    Google search that's been conducted -- we don't know how it

10   was conducted; we haven't seen -- the Government hasn't

11   proffered anything showing that that's accurate -- is

12   incredibly inflammatory.  It suggests that Mr. Nordean is

13   doctoring photographs when there's no evidence of that.  We

14   don't -- there's no evidence he knew it had been altered.

15   And the jury confusion here is pretty enormous.  It's, kind

16   of, implying fabrication of things which is -- it's

17   reminiscent of fraud.  So Judge, if the Government is

18   concerned about the jury holding it against the police

19   officer wrongly for smiling, then it doesn't have to use

20   that piece of evidence.  They're suggesting they're being

21   harmed by their own exhibit.  Well, there's an easy solution

22   to that problem.  So Your Honor, it would be different if

23   there was something on Mr. Nordean's devices showing he had

24   any role in this, but there isn't, Your Honor.  So I don't

25   think the Court can just take the Government's word for it

1    that a Google search was run and --

2         THE COURT:  Well, they're not -- in fairness to

3    them, they're not asking me to take their word for it.

4    They're saying that's what the agent would testify to.

5         MR. MULROE:  And, Your Honor --

6         THE COURT:  I -- it's still a weak inference.  I'm

7    just saying.

8         But, Mr. Mulroe?

9         MR. MULROE:  I'll just note that we did produce

10   Jencks material to the defense explaining how that Google

11   search was done.

12        THE COURT:  Where is the exhibit that -- this --

13   as I recall -- or I think I have it here.  Isn't this --

14   it's part of, like, a Parler post; right?

15        MR. MULROE:  It's part of --

16        THE COURT:  What's --

17        MR. MULROE:  -- a Parler --

18        THE COURT:  What's the exhibit number?

19        MR. MULROE:  601-41.

20        MR. SMITH:  Your Honor, I think I might have the

21   solution to this problem.

22        THE COURT:  I know what solution -- I have --

23   suspect I know what solution you're going to ask.

24        MR. SMITH:  If the suggestion is we only need to

25   show these supposedly doctored photographs to avoid the

1    prejudice incurred by the Government --

2              THE COURT:  I know what --

3              MR. SMITH:  -- then there could -- they could put

4    a redaction box over the face of the police officer.  I

5    don't think we heard the Government argue that it positively

6    wants to show Mr. Nordean was manipulating pictures.  It's

7    just to preemptively rebut a suggestion that the police

8    officer was smiling.

9              THE COURT:  Well, the --

10             MR. MULROE:  I think we would -- we would show

11   that Mr. Nordean posted an altered image.  We're not going

12   to say he personally did it, but it's relevant that he

13   posted an altered image.

14             THE COURT:  I mean --

15             MR. SMITH:  But if -- Your Honor, if there's no

16   foundation that he knew it was altered, then that is not

17   showing -- the relevance doesn't -- the preliminary question

18   isn't satisfied.

19             THE COURT:  You know, looking at -- look at -- the

20   reason I wanted to see this in context is it's, sort of,

21   hard -- in other words, the photo and then there's a passage

22   underneath describing what is in the photo:  "The honorable

23   oath-breakers.  If you feel bad for the police," et cetera.

24   The difficulty is that, you know -- so just redacting the

25   photo doesn't -- I mean, you'd still have that text, but it

1    doesn't communicate the same thing as if all the Government

2    had was the text.

3              MR. SMITH:  But, Your Honor, they haven't

4    presented the Court with any evidence that Mr. -- they

5    conducted a search of his home and his devices.  There's

6    no -- they're not presenting you with evidence that there

7    were tools on his computer to manipulate video images in

8    this way.  They're not presenting that the file was -- they

9    had -- there was one file on his computer that was an

10   original; there was another file that was manipulated.

11   There's nothing except the suggestion that a Google search

12   didn't turn up the second image.  That doesn't imply that

13   Mr. Nordean -- that --

14             THE COURT:  Right, but that --

15             MR. SMITH:  -- can't be --

16             THE COURT:  They're saying -- look, it could be

17   that he was duped.  Someone sent him the photo and he

18   forwarded it on.  I take your point.  It doesn't prove that

19   he manipulated it, and they're not even -- they're not going

20   to suggest that he did.

21             MR. SMITH:  But -- no, that is the -- but, Your

22   Honor, this is the innuendo.  When you present evidence

23   without -- and you leave the interstices of the inference to

24   the jury, the jury can only think, "What are you suggesting

25   except that Mr. Nordean manipulated it?"  If he didn't

```
 1        manipulate it and didn't know, then it's not relevant.
 2                THE COURT:  Well, it -- but the photo is relevant
 3        for other reasons.
 4                MR. SMITH:  Which -- the photo that he posted.
 5                THE COURT:  Right.
 6                MR. SMITH:  But why -- but, Your Honor, why is
 7        showing that there's a different version of the photo and
 8        that it was manipulated relevant to Mr. Nordean's case
 9        unless a sufficient predicate has been laid that he did
10        manipulate it or he knew?
11                THE COURT:  Because this is what happened.  I
12        mean, I --
13                MR. SMITH:  But --
14                THE COURT:  -- hear what you're saying, and
15        you're --
16                MR. SMITH:  The jury --
17                THE COURT:  -- free --
18                MR. SMITH:  -- confusion --
19                THE COURT:  You're free to say, "Is there any
20        evidence at all that my client manipulated" --
21                MR. SMITH:  So --
22                THE COURT:  -- "that photo" --
23                MR. SMITH:  So --
24                THE COURT:  -- "or even knew that it was
25        manipulated?"
```

1          MR. SMITH:  Your Honor, I guess this is, kind of,

2     a recurring theme in the case, is, "Well, you can just raise

3     on cross that there might be flaws in the Government's

4     argument," but the problem with that is that -- I think part

5     of the reason 403 exists is because there are certain images

6     and ideas that cannot be removed from someone's mind even

7     through rational argument.  If you show someone an image,

8     they'll remember it and it -- regardless of whether it's

9     rational.  So I think we can't just fall back on, "Well, you

10     can point out that this is innuendo in cross," because the

11     image itself sticks in someone's mind.

12          THE COURT:  But it's not innuendo that your

13     client -- and just to be clear, I agree with you 403 exists

14     for conceptually the reason you're talking about, but of

15     course 403 is a high bar.  Its probative value -- the

16     probative value of the evidence has to be substantially

17     outweighed by unfair prejudice, confusing the issues,

18     misleading the jury, et cetera, blah, blah, blah.

19          MR. SMITH:  So Your Honor, this is -- the only

20     relevance they've articulated for this change is to

21     preemptively rebut a suggestion that the police officer was

22     enjoying himself.  I have not even asked the juror -- the

23     witness a question about whether this is a fair and accurate

24     likeness of the police officer or whether it was fair for

25     Mr. Nordean to post this and suggest police officers were

```
 1    enjoying it.  That has not even been raised yet.  It would
 2    be one thing for the Government to come back and say, "Well,
 3    Mr. Nordean posted this.  But isn't it true that officer was
 4    smiling and enjoying himself?"  That hasn't been done.  So
 5    the -- we haven't heard that there's some sort of relevance
 6    to the face change separate and apart from that preemptive
 7    rebuttal.
 8             THE COURT:  But the photo is relevant -- putting
 9    aside the face issue, the photo is relevant to provide
10    context for --
11             MR. SMITH:  The photo is, Your Honor.  But why is
12    the face?  We see a police officer clearly on January 6th
13    spraying someone.  The suggestion is, "Look at this police
14    officer spraying someone."  The face is only relevant
15    insofar as it purportedly shows the officer enjoying
16    himself.  But if that isn't -- if we don't go into that in
17    direct, what is the relevance of his face?
18             THE COURT:  I -- so you would suggest we redact
19    his face?
20             MR. SMITH:  Yeah, and -- Your Honor, that's
21    actually not that strange to the jury because identities are
22    redacted all of the time for various reasons.  And, Your
23    Honor, if the Government did not even want to go into this
24    whole issue of the smile, then we wouldn't either and there
25    would be no redaction, but if the Court -- if the Government
```

1    is concerned that the jury could see a smiling face and

2    sympathize with Mr. Nordean's post, then we are happy to

3    concede a redaction of the face and that eliminates the

4    Government's need to preemptively rebut the issue.  There is

5    no relevance apart --

6            THE COURT:  Well --

7            MR. SMITH:  -- from that.

8            THE COURT:  -- so I guess this does raise -- I

9    mean, is the Government's -- the Government isn't shying

10   away, then, from -- let me ask this.  Does the Government

11   want to -- does the Government think that has independent

12   value to your case that Mr. Nordean posted a manipulated

13   photo, regardless of whether we know he knew he -- well, let

14   me put it this way -- that he posted a manipulated photo

15   even if you can't prove that he himself did the

16   manipulating?

17           MR. MULROE:  Yes.  Yes.  I mean, it's not a

18   central allegation of the case, but there has been a lot of

19   chatter in all these Telegram groups that the jury has seen

20   about the power of misinformation and that's a weapon that

21   this group has used in furtherance of their political ends.

22   So the fact that he is posting -- he, one of the top

23   national leaders of this group, is posting the photo that

24   has been altered to make the police on January 6th look bad

25   right after this group carried out January 6th and at a time

1    when they have been viciously hostile to the police, I think

2    the jury's entitled to draw that inference.  Whether or not

3    we can demonstrate that he personally did it, I think there

4    is a strong inference that he or one of his fellow Proud Boy

5    leaders created this and created it for a very specific

6    purpose.

7                MR. SMITH:  Your --

8                MR. MULROE:  So that -- we do think that has

9    independent relevance.

10                MR. SMITH:  Your Honor, Mr. Mulroe says that, but

11    there are no facts supporting a bald assertion.  We can

12    raise the inference that one -- that he -- or he said --

13    Your Honor, he said that -- the representation was that we

14    can make an inference that he or one of his colleagues did

15    this.  There is no factual basis whatsoever to indicate that

16    a photo taken off the Internet has not been manipulated by

17    one of billions of people that use the Internet.  We cannot

18    raise that inference.  And if that's sufficient, Your Honor,

19    there's no preliminary question analysis at all.  We can

20    just say because someone picked an image off the Internet,

21    they must have doctored it themselves, but that's just --

22    that can't be.

23                THE COURT:  I'm going to rule it in.  I'm going to

24    rule it in, allow the Government to do this.  I'm going to

25    allow the --

```
1              MS. HERNANDEZ:  On --
2              THE COURT:  -- Government to do it.  They've
3     convinced me.
4              MS. HERNANDEZ:  Your Honor, I object on relevance.
5     What is the issue that that needs to -- what is the -- if
6     they're manipulating after the fact to make themselves
7     whatever -- to make themselves better --
8              THE COURT:  Right.
9              MS. HERNANDEZ:  -- a better people or a more
10    popular group, that has nothing to do with any of the
11    elements of the offenses --
12             THE COURT:  No --
13             MS. HERNANDEZ:  -- that have been charged.
14             THE COURT:  -- it does --
15             MS. HERNANDEZ:  That has nothing --
16             THE COURT:  If -- it's not a question of making
17    themselves look better.  It's a question of making the
18    police -- the -- look --
19             MS. HERNANDEZ:  That's after the fact.
20             THE COURT:  Look, you all -- I know it's after the
21    fact, but clearly it's not a -- it --
22             MS. HERNANDEZ:  I'm sorry.  I get up --
23             THE COURT:  It's --
24             MS. HERNANDEZ:  -- because I have a very difficult
25    time when the Court talks to me to sit --
```

```
 1                THE COURT:  I understand.  I understand.

 2           Look, you all have -- there's a reason you all

 3      have -- some defendants have suggested at various times that

 4      the police -- well, that the police did not do their jobs

 5      properly in different ways.  So I -- look, I think it

 6      does -- I think it is relevant.  The relevance bar is low.

 7      I'm going to allow it.  I understand your argument.  I'm

 8      rejecting it.  I think it's relevant, and I don't think 403

 9      rules it out.

10                MS. HERNANDEZ:  So on -- from Mr. Rehl, relevance

11      is low -- I haven't made that argument -- and prejudice is

12      high.

13                THE COURT:  All right.  Very well.

14                MR. SMITH:  The next one, Your Honor, is 500-97.

15                (Brief pause.)

16                THE COURT:  Okay.  I'm with you.

17                MR. SMITH:  There's -- again, we just -- so what

18      the Government has done with a few of these Rufio Panman

19      chats is just isolate Mr. Nordean's chats without any of the

20      surrounding chats.  So we have no idea what he's referring

21      to.  We have a chat saying "Fucking disgusting.  I'm pissed

22      right now.  What a load of shit this has all been."  What --

23      "Eff Trump.  Eff that C-word."  What is -- Your Honor, what

24      is the relevance of all of these comments to this case?

25                THE COURT:  All right.  Let me hear from the
```

1    Government on this.  I think I know, but I just want to hear

2    it articulated.

3              MR. MULROE:  Your Honor, the group's reactions

4    after January 6th took several forms.  First, there was

5    celebration.  They were thrilled with what they had done.

6    But then as time went on, there was regret, and there was

7    regret of two types.  First, the group regretted that things

8    did not go far enough on January 6th; and then there was

9    regret that they had been hung out to dry, in a sense, by

10   Donald Trump who -- we presented ample motive evidence that

11   they felt like they were acting on his behalf when they did

12   what they did.  So this exhibit and other exhibits show

13   Mr. Nordean expressing that second form of regret.  In terms

14   of the context of this, I would note that the date and time

15   put this on Inauguration Day, I think, very, very shortly

16   after President Biden took the oath of office.  And in

17   another of the exhibits that we are offering, Mr. Nordean

18   makes reference to Donald Trump's pardon power and suggests

19   that Mr. Trump pardoned a bunch of degenerates -- Nordean's

20   words -- but left the Proud Boys just hanging out there

21   facing jail time -- his words -- for actions that they

22   perceive themselves to have taken on his behalf.  So that's

23   the relevance of it.

24             THE COURT:  All right.  Mr. Smith, do you want to

25   respond?

1          MR. SMITH:  Yes, Your Honor.  I just don't think

2     that any -- I think what I hear is that -- effectively, that

3     any argument -- that -- comment Mr. Nordean makes about the

4     election and being upset is relevant in this case, and I

5     just can't see -- that is just opening the door to any

6     political statement --

7          THE COURT:  I don't think -- I mean, look, these

8     things have been intertwined here, and this is sometimes --

9     I -- let me put it this way.  I don't think any comment he

10     would make would meet this threshold, but what -- the

11     Government did present motive evidence and this is,

12     effectively, motive -- it's a similar type of motive

13     evidence because it reflects the fact that they thought they

14     were doing something for President Trump and were motivated

15     in that way and that this shows that motivation was not --

16     well, it shows how they responded to the fact that they felt

17     they weren't supported reciprocally.  So I think it's

18     relevant for that reason.

19          MR. SMITH:  Okay.  Your Honor, the next one's

20     500-92.  This is, kind of, an iteration on the same theme,

21     but this is even more disconnected from this case and the

22     claim -- the charges.  This one is at 4:53 p.m. in Skull and

23     Bones.  Mr. Nordean begins "Heath is sewing tons of doubt

24     into this club" -- we don't know who Heath is -- "at a time

25     when we need to be strong and smart.  If anyone here thinks

1    doing nothing is going to take us off the radar of our

2    enemies, you're fooling ourselves [sic]."  Mr. Nordean, kind

3    of, makes a lot of these elliptical general statements that

4    it's not even clear -- I don't mean to be insulting, but

5    it's not clear what he's referring to or what he's talking

6    about even.  This is another one of them.  This is just a

7    vague statement about the club.  This has no -- he's not

8    referring to being arrested here.  He's talking about the

9    future of, I guess, the Proud Boys.  The Government has told

10   us this case is not about the Proud Boys.

11          THE COURT:  Well, he does say, you know -- he

12   talks about -- I don't -- to me, this is -- reflects his

13   mental state in a way that's relevant.  He's actually

14   saying, "I don't think we need to gear up and go to war,

15   but," and then he talks about how their lives are being

16   destroyed due to inaction and government control.  I think

17   this -- it's -- obviously, it's after January 6th, but in

18   terms of relevant state of mind, I think it meets the

19   threshold.

20          MR. SMITH:  Well, Your Honor, we would just point

21   out that there is no -- we -- there's no reference in here

22   that would lead us to think he's talking about January 6th.

23   Government -- fears of government control is just a staple

24   of, kind of, far-right thought generally.  And I think Your

25   Honor agrees that just any political statement can't come in

```
 1        the door just by virtue of being politics.
 2                THE COURT:  I agree, but he's also talking about,
 3        you know, "at a time when we need to be strong and smart" --
 4        it's six days after January 6th.  I mean, I think it passes
 5        the relevance -- I think it passes relevance.
 6                MR. SMITH:  Okay, Your Honor.  So the next one is
 7        514 --
 8                MS. HERNANDEZ:  I'm sorry.  On behalf of Mr. Rehl,
 9        Your Honor, these Skull and Bones post conspiracy where he's
10        not copied and has no ability to discuss are all hearsay as
11        to him.  The -- I mean, if the Government is -- if the Court
12        is finding that these are -- it's still -- that the
13        conspiracy's still ongoing January 12th, January 20th, my
14        objection is to that.  It's not a co-conspirator statement
15        under the case law.  I know the Court has rejected those
16        arguments at times --
17                THE COURT:  Well, I --
18                MS. HERNANDEZ:  -- in other --
19                THE COURT:  -- don't know --
20                MS. HERNANDEZ:  -- when I've objected to -- the
21        previous set of objections.
22                THE COURT:  I don't know that I've -- I guess, I
23        haven't made any determination -- I don't think the
24        Government has even argued that as of January -- this is
25        January 12th --
```

```
 1              MS. HERNANDEZ:  12th.
 2              THE COURT:  -- I think -- that the conspiracy was
 3    ongoing on January 12th, but it would still come in as a
 4    statement as to Mr. Nordean.  So --
 5              MS. HERNANDEZ:  But it doesn't come in as to
 6    Mr. Rehl, then.
 7              THE COURT:  Right.  And so I think -- I guess --
 8              MS. HERNANDEZ:  Just --
 9              THE COURT:  -- this --
10              MS. HERNANDEZ:  That's fine.
11              THE COURT:  -- this --
12              MS. HERNANDEZ:  Just as long as the Court --
13    that's my objection.
14              THE COURT:  All right.
15              MS. HERNANDEZ:  I understand, but then move to
16    sever.
17              THE COURT:  It, kind of, gets folded into the
18    issue of what an instruction might look like, but I hear
19    what you're saying.
20              Mr. Smith?
21              MR. SMITH:  The next one, Your Honor, is 514-61.
22    We're now, you know, basically, the end of the month in
23    January a couple of weeks later after the event.  We just
24    have more, sort of, general statements about the club from
25    Mr. Nordean.  I, you know -- it's, kind of -- I guess you
```

1    might call it more Nordean speech, just, sort of, general,

2    kind of, comments about what the club should do, what it

3    shouldn't do.

4              THE COURT:  I think it's a similar argument to

5    your prior argument.

6              MR. SMITH:  Yes, Your Honor.

7              THE COURT:  All right.

8              MR. SMITH:  Yeah.

9              THE COURT:  So I'm going to overrule that, as

10   well.

11             MR. SMITH:  Okay.

12             THE COURT:  Let's -- and then the -- you still

13   had, as I recall, objections to some of the exhibits;

14   correct --

15             MR. SMITH:  Yes, Your Honor.

16             THE COURT:  -- I'm sorry, the video.

17             MR. SMITH:  The videos.  I'll get right to the

18   videos --

19             THE COURT:  And I did not -- and if the

20   Government, while you're talking -- I just want the

21   Government to tee this up because I was not able to see

22   these videos when we were -- I don't mean the Government

23   didn't give me the technical ability to see them.  I mean,

24   there was a technical problem on our end.

25             MR. SMITH:  Your Honor, I can just play the one

 1      I'm going to object to right now.

 2                  THE COURT:  Okay.

 3                  MR. SMITH:  It's Government's Exhibit-407A.  And

 4      Your Honor before, pretrial, admitted three drunk videos of

 5      Mr. Nordean in -- there were originally five of them that

 6      the Government wanted to play and the Court said there are

 7      three interrelated ones that are --

 8                  THE COURT:  Where he talked about --

 9                  MR. SMITH:  Except that he doesn't in all three.

10                  THE COURT:  Okay.

11                  MR. SMITH:  So --

12                  THE COURT:  The ones I admitted, I thought, but --

13                  MR. SMITH:  Yeah, I'll play the one for Your Honor

14      that we're objecting to.  So --

15                  THE COURT:  Okay.

16                  MR. SMITH:  -- I -- there's two videos.  In one

17      video, Mr. Nordean is extremely intoxicated.  We would move

18      to exclude on 403 grounds.  This is, you know, arguably

19      being used to humiliate the defendant.  But in two of the

20      videos -- in one, he refers to "storming the Capitol."  That

21      was the basis -- that's the second one.  In the third one,

22      he says "1776, bitch."  I guess that was the basis for the

23      third one.  In the first one, Your Honor, there's no

24      reference to the Capitol at all.  It's just an intoxicated

25      speech.

```
 1              THE COURT:  All right.

 2              MR. SMITH:  And I think that the Government would

 3    say, "Well, it's necessary context.  We need to see what

 4    he's talking about in the next two," but that's not true,

 5    Your Honor.  You can see what he's talking about in the

 6    second two.  So let me just play this -- Your Honor, this is

 7    highly inflammatory.  So I'll just play it so you can see

 8    what they want to show the jury.  This is 407A.

 9              THE COURT:  While you're teeing that up, because

10    there will be a moment here, what is the Government's -- is

11    that the Government's argument that Mr. Smith has previewed

12    that this is -- it doesn't -- he doesn't say anything really

13    relevant directly, but this is context?

14              MR. MULROE:  Your Honor, yes.  I mean, our

15    argument is the argument we made last fall when we litigated

16    this.  And Your Honor specifically -- I can pull the

17    transcript.  Your -- we originally submitted eight videos.

18    We then narrowed that to three.  And Your Honor specifically

19    found that the three that we had identified, which include

20    this one, were admissible and you outlined your reasoning

21    about that.  So this has been litigated and settled, Your

22    Honor.  But just to respond, I think that it is primarily

23    for context.  I'll play -- I'll let Mr. Smith play the video

24    and then we can discuss it.

25              THE COURT:  Okay.
```

1          MR. MULROE:  And it will be easier for me to make

2     reference --

3          MR. SMITH:  I think the sound --

4          MR. MULROE:  -- to the specifics --

5          MR. SMITH:  -- needs to be turned on --

6          MR. MULROE:  -- after the video is played.

7          MR. SMITH:  -- on the -- yeah, the box --

8          MR. MULROE:  But we are reopening an issue that

9     was litigated pretrial.  I want to be --

10         THE COURT:  Well --

11         MR. MULROE:  -- very clear about --

12         THE COURT:  -- I understand, but I don't --

13    I'll -- just for the record, I don't recall admitting

14    something in which the defendant didn't say anything

15    relevant.

16         MR. SMITH:  Okay, Your Honor.

17         MR. MULROE:  And just -- Your Honor, just an

18    additional piece of context.  These are three separate video

19    files, but they are, kind of, back-to-back videos of the

20    same, sort of, monologue that Mr. Nordean --

21         MR. SMITH:  And Your Honor will see that the

22    context of what Mr. Nordean is saying is perfectly evident

23    in the second and third one.  I'll play the first one, Your

24    Honor.

25         THE COURT:  All right.

1           (Video played.)

2           MR. SMITH:  Okay.  So there's nothing in -- about

3      January 6th whatsoever --

4           MR. MULROE:  And, Your Honor, I'd ask that 407B be

5      played so --

6           THE COURT:  Mr. Mulroe, Mr. Smith has the podium.

7      And --

8           MR. SMITH:  Thank you.

9           THE COURT:  -- in fact, he already said he was

10     going to do that.

11          MR. SMITH:  Yeah.  So there's no conversation

12     about January 6th at all.  And then the suggestion that we

13     need that video to show the context in the next one is

14     belied.  I'll play this.  You can see, Your Honor.  This is

15     B.  407B.

16          (Video played.)

17          MR. SMITH:  That's the second one.  So Your Honor

18     can see the entire context from that one.  Yeah.  We would

19     still move to exclude it because we think this is patently

20     shameless evidence.  Mr. Nordean has said he stormed the

21     Capitol in about eight other pieces of exhibits.  The

22     exhibit is designed to humiliate the defendant in front of

23     the jury and that's the purpose, Your Honor.

24          Then the third one -- here's the third one.

25          (Video played.)

1          MR. SMITH:  So I think on that one, Your Honor, we

2    would argue relevance and 403.  Saying "1776" and then

3    saying "bitch," you know, a derogatory word about a woman,

4    yeah, is unnecessary.

5          THE COURT:  I don't want to relitigate what we

6    litigated before, but I -- for the life of me, I don't see

7    how that first video is -- this is, like, a reverse Rule 106

8    request.  I don't see how that first -- I mean, he even

9    talks a little bit about "I was talking to somebody."  I

10    mean, Mr. Mulroe, what does he say in the first video that

11    has anything to do with the second video?

12          MR. MULROE:  Well, respect Your Honor's view of

13    it, of course.  I just -- two things about the first one

14    that I think provide context --

15          THE COURT:  Just tell me.

16          MR. MULROE:  -- and will help the jury understand

17    the others.  The first is Mr. Nordean's statement in the

18    first video that what he's talking about with this woman at

19    the bar is what he puts importance on.  The conversation

20    with the woman begins with her confronting him about what he

21    puts importance on.  So I think it's relevant, then, that he

22    goes on to explain that to him, what's important is the fact

23    that he took part in storming the Capitol of the most

24    powerful country on Earth.  And along similar lines, he

25    makes the remark in the first video -- he says "It's so

1    crazy, our reality versus everybody else's."  I think that

2    raises the inference that he had sent these videos to other

3    Proud Boys members or other people that he took part in the

4    event with.  And I think that drawing this distinction as he

5    does between "our reality," the reality of the people who

6    took part in this attempt to effectuate a violent

7    revolution, versus everyone else's reality like this --

8         THE COURT:  I need everyone else to be quiet while

9    Mr. Mulroe is speaking.  I admonished Mr. Mulroe to give

10    Mr. Smith the opportunity to finish what he was saying, and

11    now he needs the same respect from everyone else on this

12    side of the bar.

13         You may proceed.

14         MR. MULROE:  Thank you, Your Honor.

15         So "our reality versus theirs," this drawing a

16    stark distinction between "us" and "them," particularly in

17    the context of other things we've heard in this case about

18    "You have to choose sides" and "You're either with us or

19    against us," I think, does provide relevant context to the

20    other clips, but if Your Honor --

21         THE COURT:  All right.

22         MR. MULROE:  -- doesn't share that view or --

23         THE COURT:  I understand the argument.  It's a

24    stretch, but it's out, that first video.

25         MS. HERNANDEZ:  On behalf of Mr. Rehl, 401, 403,

1    post --

2              THE COURT:  I've -- we've already -- I've -- the

3    one video that I don't -- I mean, it may have been

4    technically covered by my prior ruling, but I did not

5    realize the full context.  That's out.  I'm not going to --

6    we're not going to relitigate the other two which I already

7    decided.

8              MR. SMITH:  Okay.  Your Honor, the last one --

9    and -- is one I'm going to put up right now.  It's 407D.

10              THE COURT:  It's video; correct?

11              MR. SMITH:  Yes, 407D is a video, and it's another

12    video of Mr. Nordean -- play it right now.  Can Your Honor

13    see that on the screen?

14              THE COURT:  Yes.

15              MR. SMITH:  Okay.

16              (Video played.)

17              MR. SMITH:  Okay.  He says "We're a nation of

18    laws, blah."  So he appears to be alluding to a statement

19    that the former president made after January 6th.  I think

20    what this is is character evidence, Your Honor.  So if

21    someone is a scofflaw or someone is making fun of law

22    generally, that's -- to suggest that they didn't act in

23    accordance with law on a specific occasion because of an

24    opinion about the law generally is character evidence, Your

25    Honor.  So I don't see the 404(b) exceptions here and I

1    don't know what they would be.

2              THE COURT:  I think you, sort of, answered, you

3    know -- I think you, sort of, explained why it's admissible

4    in the first part of what you said which is:  He's

5    responding to -- again, it links back in with the fact that

6    they feel abandoned by the former president because he says,

7    "We're a nation of laws.  We -- I'm -- I condemn what

8    happened at the Capitol," and he's reacting against that.

9    So I, you know --

10             MR. SMITH:  But, Your Honor --

11             THE COURT:  It's not a --

12             MR. SMITH:  -- conspiracy --

13             THE COURT:  -- free-floating -- it's not a

14   free-floating --

15             MR. SMITH:  Yeah.

16             THE COURT:  -- you know, "I hate law"; right?  I

17   mean, it's something that is tethered to what the former

18   president said -- at that time, maybe, president; I'm not

19   sure what day it was -- isn't it, in a way that is -- it's

20   not, kind of, free-floating character evidence --

21             MR. SMITH:  Well, Your Honor, I guess I just don't

22   understand how it goes to show any of the charges in the

23   case.  So we've got conspiracy charges, a post-January 6th

24   statement about -- scoffing at a statement about law.  That

25   doesn't prove -- that doesn't even go to conspiracy.  Then I

1    guess they could argue for the substantive counts it might

2    shed light retroactively on someone's intent to disrupt an

3    official proceeding, but if he's just talking about laws

4    generally -- making fun of a statement about laws?  Your

5    Honor, you could be -- I'm not saying it's tasteful, but you

6    can be scoffing at someone's statement about laws because

7    you think it's weak or it's not defensive enough or he's

8    not -- which has nothing to do with criminal intent.  It

9    might be bad politics or taste, but it's not -- and so we

10   don't understand what this is about and --

11           THE COURT:  I understand why you're arguing the

12   opposite, but I'm going to admit it because, as I said, I

13   think it links in with the kind of motive evidence and

14   state-of-mind evidence that the Government has offered

15   already.

16           MR. SMITH:  Okay.  Your Honor, I think that's

17   everything for Nordean.

18           THE COURT:  Okay.  So that does knock off all the

19   106 stuff, all the videos.  Mr. Smith, your objections.

20           Let me raise -- as I said, Ms. Hernandez, I picked

21   out some things that you had raised that I wanted to go

22   through because I had questions about them and, as I said,

23   if we get to the point where -- if we get to -- if there's

24   anything you want to be heard on in particular, maybe, we

25   can do it at the next -- my hope is we can do it at the next

1    break.

2              Mr. Hassan, I saw your hand up, so while I'm

3    trying to find what I want to discuss with regard to

4    Ms. Hernandez's objections, I'll hear from you.

5              MR. HASSAN:  Judge, I just want to bring one thing

6    to the attention -- and Hassan on behalf of Tarrio, Judge.

7    On Exhibit 500-35 -- it just came to our attention this

8    morning, Judge; that's why I didn't make the Government

9    aware last night -- but in the exhibits that are provided in

10   Dubrowski, this is an exhibit from November 7th which would

11   predate pretty much all the exhibits that the Government is

12   presenting in their --

13             THE COURT:  This is one of the ones we're about to

14   get to.

15             MR. HASSAN:  I don't know if they're -- I

16   should -- and if Dubrowski gets up on the stand, it's a

17   possibility that he may testify -- this is on -- I mean, if

18   I'm looking at the list here, it's Exhibit No. 42 out of 50.

19   So I don't know if they're going in chronological order or I

20   don't know if they're bouncing around, but yet this is an

21   exhibit that predates pretty much the January 6th issues

22   that arose.  As the Court's well aware, Dubrowski already

23   testified to whatever transpired prior to January 6th.

24   So --

25             THE COURT:  Let me shortcut you on this.  I

1    think -- this is one of the few I picked out, again, that

2    Ms. Hernandez had objected to.  I think I excluded this

3    exhibit already.

4              MR. MULROE:  Yes, Your Honor.  I was going to flag

5    this one.

6              THE COURT:  Okay.  So that's why I'm cutting to

7    the chase, Mr. Hassan.  I think --

8              MR. HASSAN:  Thank you, Judge.

9              MS. HERNANDEZ:  Two bites at the apple?  Is the

10   Government trying to --

11             THE COURT:  Well, that's why I'm raising it.  So

12   tell me why we're here with this -- so let me just -- yeah.

13   We may as well take it up.  Why are -- why is the Government

14   seeking to admit it?  Again, I don't -- I didn't go back and

15   look at what the argument was, but -- other than to think

16   that I had excluded it already.

17             MR. MULROE:  Yes, Your Honor.  So when we sought

18   to offer this during Mr. Dubrowski's -- Agent Dubrowski's

19   first testimony, we were offering it for a specific purpose,

20   I think primarily to show the mental state of Nick Ochs, one

21   of the Proud Boys elders, who we were arguing would be a

22   co-conspirator.  So on that first point, I do think that, at

23   this stage of the trial, having seen the totality of the

24   Telegram evidence and, in particular, having seen Agent

25   Miller's testimony that included video of Mr. Ochs and video

1    of him celebrating in the Rotunda with Mr. Nordean and

2    others, I think we made a stronger showing that Mr. Ochs was

3    a co-conspirator.  But put that to the side for the moment.

4          The reason that this is specifically relevant in

5    the context we are now offering it -- and so this would be

6    the response to any scope objection -- is that it's offered

7    to provide important evidence about Mr. Tarrio's

8    understanding of Nick Ochs and Nick Ochs's role in what

9    transpired on January 6th.  So the messages that precede it

10   include Parler posts by Tarrio sharing a fundraiser,

11   GiveSendGo.com/freeNick, to pay Nick Ochs's legal bills and

12   then, following that, a post on January 9th saying "Our

13   friend Nick is a veteran, a former employee for Fox, and an

14   outstanding journalist.  He was arrested for covering the

15   Stop the Steal rally.  Please help out any way that you can.

16   #FreeNick."

17         So Mr. Tarrio, in seeking to assist what we allege

18   is one of his co-conspirators, but who at least is one of

19   his fellow elders at the top of the Proud Boy hierarchy, is

20   holding Mr. Ochs out as a bona fide journalist who is being

21   unfairly prosecuted for trying to cover the events of

22   January 6th.  I think that we are entitled to rebut that and

23   to show that Mr. Tarrio was being deceptive of his Parler

24   followers by showing that Mr. Tarrio well knew that Mr. Ochs

25   was there to commit crimes, to obstruct the certification of

1    the election, not to conduct any kind of legitimate

2    journalism.  And the way that we can show that is by now

3    reaching back to show this exchange from directly following

4    the election in which Ochs is saying that "If" --

5    summarizing -- "If the legal challenges don't work out, it's

6    time for violence."  He says 'The odds are with us" -- now

7    in November -- "because of the Supreme Court.  I'm

8    pro-violence, but don't blow your load too soon.  Not to be

9    an anti-murder buzzkill, but I really think this isn't

10    fucked.  Once it is, let's go wild."

11            The video evidence, through Ms. Miller -- Agent

12    Miller -- has now shown that that is what he did.  He did it

13    along with other Proud Boys and celebrated with other Proud

14    Boys.  Tarrio was part of this exchange.  Tarrio knows Nick

15    Ochs.  Tarrio knows Nick Ochs was not there as a journalist.

16    And so we should be able to show that he knew that.

17            THE COURT:  All right.  Look, I --

18            MR. MULROE:  And this is -- I would just note this

19    is also the same Skull and Bones chat where Tarrio reported

20    back to them "Make no mistake.  We did this.  Are we a

21    militia now?  Yeah."

22            THE COURT:  Look, I'm going to take this under

23    advisement.  The whole thing with Ochs -- your whole theory

24    here is a -- I mean, I haven't given, because I haven't had

25    to, one ounce of thought to whether Nick Ochs is a

1    co-conspirator, but -- and so put -- I guess, again, like

2    you said, put that aside for the moment.  The other, kind

3    of -- this is a, kind of, roundabout way -- I mean -- to

4    say, "Well, we need to prove that" -- I mean, you're

5    suggesting that this would come in solely to prove some sort

6    of connection between Mr. Tarrio and Mr. Ochs such that

7    you're setting up this later argument that he knew that Ochs

8    wasn't a legitimate journalist.  I mean, it's a real bank

9    shot for relevance for this.  And you're using it to get in

10   something that's, you know -- this pro-violence statement

11   that's pretty prejudicial.  So I don't want to -- I hear

12   you.  I'll -- I'll consider it, but I'm not going to rule on

13   it right now because this is a little more complicated than

14   I -- I hadn't heard this argument before.

15             MR. MULROE:  And, Your Honor, if I might, I

16   just -- I think it, kind of, boils down to an "effect on the

17   listener" argument.  It's the effect on Tarrio as the

18   listener.  And for that reason, the fact that it's

19   pro-violence, the somewhat inflammatory nature of it, is

20   precisely what makes it relevant.

21             THE COURT:  I understand.  All I'm saying is that

22   the -- it's -- I hear what you are saying, but when you

23   look, you know, effect on the listener, he's not

24   commenting -- and I remember going through this when you

25   offered it the first time.  His -- he was -- the -- what we

1    have for Mr. Tarrio is "He was declared the winner at one

2    point."  We don't -- it -- he's not responding to, you know,

3    this early part about civil war or whatnot.  So I'll take it

4    under advisement.  I'll take it under advisement.  I hear

5    you.

6              The other -- we don't have an objection there.

7              I think on 510 -- Ms. Hernandez objected to 510-48

8    which I think I -- it's a series of, I think, things that --

9    almost all of which I have no quarrel with.  It's statements

10   by Stewart and by Bertino.  There is a, sort of -- the very

11   last statement by Fonticoba is -- I'm -- seems to me to have

12   a double hearsay embedded in it.  I don't really think

13   you -- I'm not sure whether you care about that statement or

14   not, but I do think there may be an issue with the last --

15   him saying "I'm with Enrique and he said that's not a good

16   idea and I agree," I think that double -- you all should

17   think about whether -- I don't know -- do you intend that

18   statement to come in?

19             MR. MULROE:  We do intend, and I can explain the

20   relevance --

21             THE COURT:  Okay.

22             MR. MULROE:  -- if you wish.  So we're not

23   offering it for either of the layers of hearsay that I think

24   that Your Honor has identified.  What is relevant about this

25   message is that it circumstantially shows the position of

1    authority and influence that Mr. Tarrio has in the group, on

2    the one hand, because Gilbert is conveying this message as

3    if it has import and authoritative weight, but then also

4    what this is responding to is Mr. Bertino saying "hey, I'm

5    going to do a podcast.  If any of you guys who are on the

6    ground want to join me, you can hide your faces and your

7    names, but come on to my podcast."  After Gilbert conveys

8    this message that at least purportedly is from Tarrio saying

9    "That's not a good idea," I expect the testimony will be

10   that, in fact, nobody from "on the ground" did, then, appear

11   on Bertino's podcast.  So it shows that the group deferred

12   to Tarrio's wishes on that point.

13             THE COURT:  I don't know whether -- I mean, it may

14   be something that nobody -- I mean, is there -- if that's

15   what it's offered for and, you know, he's not -- this isn't

16   a situation where he's saying, Enrique said it was a good

17   idea to go storm the Capitol -- it may be that it's not

18   something anybody on the defense side, frankly, objects to,

19   if that's what -- I mean, now that I look at the content,

20   I'm not sure anyone would really -- would object to it along

21   those lines.  But you all can -- it -- I mean, all the other

22   statements in the -- in the exhibit, I think, have come --

23   come in under my prior rulings clearly, and there's no issue

24   there.  Does any defendant object to that last statement for

25   any reason?

1      MS. HERNANDEZ:  I object to the whole thing.  I

2  already objected to the whole thing.

3      THE COURT:  Right.  I know.  But -- okay.  So you

4  do object to this --

5      MS. HERNANDEZ:  It -- the whole -- this is

6  Bertino and --

7      THE COURT:  Just focus on --

8      MS. HERNANDEZ:  Yes, Your Honor.  Just on the last

9  statement?

10      THE COURT:  Yes.

11      MS. HERNANDEZ:  I don't -- again, I don't see that

12  it adds -- it's relevant to the issues in the case.  There's

13  no question that Mr. Tarrio is the president, or whatever

14  title he has with the Proud Boys.  There's been overwhelming

15  evidence of that.  This is just a statement.  He doesn't

16  think it's a good idea.  He's not saying do not do it

17  because he's the president.  He's saying it's not a good

18  idea.  I -- again, and the overflow into Mr. Rehl is my

19  concern, primarily; right?  These people are -- none of them

20  were there on January 6th; not a one of these people were

21  there on January 6th.  Bertino, we've already heard from

22  him.  His podcast.  Whatever -- he was taking drugs or --

23      THE COURT:  All right.

24      MS. HERNANDEZ:  -- he was high.  I just don't see

25  how this is relevant.  I think it's highly prejudicial to my

1    client, and it's hearsay upon hearsay.

2         MR. HASSAN:  Judge, to piggy-back what the Court

3    already said -- and Hassan on behalf of Tarrio, Judge --

4    it's a double layer of hearsay, Judge, and we have cause for

5    concern regarding what Tarrio was -- I mean, there's no

6    adoption by Tarrio.  There's nothing whatsoever here in this

7    statement of itself or further on in this chat reflecting

8    any adoption by Tarrio.

9         THE COURT:  All right.  So I'll take that under

10   advisement.  Again, I only think it's that last line on that

11   that is at issue.

12        So that's all I had with regard to, Ms. Hernandez,

13   your objections.  Again, I think at the next break we have,

14   I just suggest that you see if there's anything else you

15   want to be heard on before we go into the next witness.

16   It -- or if you -- I mean, because, again, so many of your

17   objections were just things that I've already ruled on, and

18   I understand you putting them in a document, but --

19        MS. HERNANDEZ:  Right.

20        THE COURT:  -- they're not, you know -- they

21   were -- they're mostly things I've, frankly, ruled on

22   already.

23        MS. HERNANDEZ:  So one of the arguments I also

24   made is a -- there are several of them that are the --

25   repeat messages being introduced which, I believe, that is

1     the definition of overview, a summary evidence.  It's

2     already come in.  They're just trying to bring it in again

3     through this agent to do blah, blah, blah.  So I object on

4     that ground.  Most of the objections are just hearsay -- I

5     understand -- the question is, were these co-conspirator

6     statements?  If they're not -- if they don't fit the

7     co-conspirator statements, then they're all hearsay as to my

8     client.  These other exceptions perhaps come in, but then I

9     want a limiting instruction.  That's generally the

10     objections to --

11          THE COURT:  Okay.

12          MS. HERNANDEZ:  That's the summary of the

13     objections.

14          THE COURT:  All right.  So again, because almost

15     all those statements, I think, come in one way or the other,

16     I don't think it's worth hanging up on now, but, again, when

17     we go to -- for a limiting instruction, we can all talk

18     about whether there's -- something's appropriate.

19          MS. HERNANDEZ:  And I'm not sure -- we've just

20     been talking about the Telegram exhibits, but there's -- to

21     the -- I think the -- the podcast or whatever those videos

22     are both, from Mr. Biggs and Mr. Nordean, again, I object.

23     Hearsay.  They're -- most of them, I believe, are long after

24     the January 6th events.

25          THE COURT:  Right.  They're afterward, but, again,

1    it can be relevant to their intent and, as long as it fits

2    within my prior rulings, you know, I'm going to allow it --

3              MS. HERNANDEZ:  Again --

4              THE COURT:  -- to be played.

5              MS. HERNANDEZ:  -- I think the Court indicated

6    that it comes into the particular person's motive, not -- it

7    doesn't spill over to co-defendants' motives.

8              THE COURT:  Well --

9              MS. HERNANDEZ:  I believe that was the Court's

10   ruling --

11             THE COURT:  But -- no, no, no, it --

12             MS. HERNANDEZ:  -- under Anderson.

13             THE COURT:  No.  Actually, that's incorrect.  What

14   I said under Anderson was that it can be related to a given

15   individual's intent but that -- or state of mind or motive

16   or whatever it is.  And then the jury can, under Anderson,

17   use -- the jury can use the evidence to decide whether a

18   conspiracy existed.  They can.

19             MS. HERNANDEZ:  I don't think that's what Anderson

20   says --

21             THE COURT:  It --

22             MR. HERNANDEZ:  -- but I --

23             THE COURT:  It --

24             MR. HERNANDEZ:  -- understand the Court --

25             THE COURT:  I have --

```
1            MS. HERNANDEZ:  The Court is ruling.
2            THE COURT:  I've -- I have --
3            MS. HERNANDEZ:  But the -- I mean, these --
4            THE COURT:  I've -- Ms. Hernandez, I have, like,
5       literally articulated this straight from Anderson, I don't
6       know --
7            MS. HERNANDEZ:  I don't --
8            THE COURT:  -- 10 times --
9            MS. HERNANDEZ:  Again --
10           THE COURT:  -- before in this case.
11           MS. HERNANDEZ:  I understand, but I don't believe
12      that's what Anderson says.  Anderson is limited on its
13      facts, Your Honor.  Anderson is -- it --
14           THE COURT:  All right.
15           MS. HERNANDEZ:  The facts of Anderson do not, in
16      any way, shape, or form, address a podcast weeks -- I mean,
17      and when I -- the reason I emphasize podcast is because we
18      know the nature of podcasts is you're out there -- I don't,
19      you know -- broadcasting either for personal ego or for
20      financial gain.  So it adds a different -- an additional
21      layer of -- when you're -- when you're trying to use a
22      person's podcast to consider whether intent, you know -- I
23      think there's a disconnect.  A lot of the posts that the
24      Court admitted as, you know, motive and stuff, I still
25      object to them, but I think they're closer to this notion of
```

1    somebody expressing their intent.  But once you're out in

2    the media talking -- and I call the podcast the media --

3    once you're out there projecting information weeks or months

4    after the event, I think the motive angle loses some of its

5    logical grounding.

6            THE COURT:  All right.  Look, I -- the benefit of

7    having your chart here is if -- as these come in, if you

8    want to lodge an objection, I at least have something that

9    lays out what it is so I can rule on it as we go.

10            All right.  I think we're ready, then, for -- to

11    resume with the witness.  So let's bring in the jury --

12            MS. HERNANDEZ:  I'm sorry, Your Honor.  One other

13    question as to the Court's ruling.  So my understanding is

14    these things that are coming in for the motive, or whatever,

15    that means they don't come in for the truth of the matter

16    asserted, as I understand the case law --

17            THE COURT:  That is --

18            MS. HERNANDEZ:  -- but yet that's -- if they don't

19    come in for the truth of the matter asserted, then its

20    relevance is very limited.

21            THE COURT:  Well, it is true that if I admitted

22    something for state of mind, intent, motive, it doesn't come

23    in for the truth of the matter asserted.  That's correct.

24            MS. HERNANDEZ:  But I --

25            THE COURT:  I --

1    MS. HERNANDEZ:  But my concern -- and I think the

2    Government has done this throughout, particularly with

3    Bertino -- and I think they're going to do it again -- it's

4    coming in for these limited purposes, but that's not how

5    it's being presented or restricted when it's being

6    introduced.  And I will be filing a motion on that, because

7    I do think they've -- and particularly for closing, it's a

8    big problem, because these are all admissions for purposes

9    not for the truth of the matter asserted, but that's not how

10   the Government is using them.

11   THE COURT:  Well, the other pieces, though, if

12   it's a statement of a -- if it comes in, though, as a

13   statement of party opponent, it can be used for the truth of

14   the matter asserted.  Right?  I'm -- I'm trying to make --

15   so look, yes, we're going to have to --

16   MS. HERNANDEZ:  It's complicated.

17   THE COURT:  Listen, this witness is just admitting

18   the statements.  How they can be used, again, as long as

19   they're admitted for a particular purpose, yes, we're going

20   to have to talk about an instruction and to make sure that

21   none of the statements are misused in closing.

22   MS. HERNANDEZ:  But I think -- if I'm -- at least

23   this is how I have seen it with the previous witnesses when

24   the Court has -- is when they elicit the evidence, they are

25   implicitly, if not explicitly, arguing to the jury that it's

1    coming -- that it's coming in for the truth of the matter

2    asserted.  And as I've -- as I've told the Court, the whole

3    concept of whether it's truth of the matter asserted or not,

4    I think, is a complicated concept for a jury to consider or

5    to understand.  That's a, you know -- that's a lawyer stuff.

6         THE COURT:  I agree with you it's nuanced.  I

7    don't agree with you that, in eliciting the statements, the

8    Government is arguing something one way or the other.

9         MR. SMITH:  Your Honor, we have an update on one

10    argument we were just making.  The Government represented

11    that it couldn't -- we're talking about the images now --

12    the altered images of the police officer.  It represented

13    that it did a Google search and could not find the altered

14    image anywhere online.  So the inference is that it's

15    Mr. Nordean.  We'd like to make a proffer right now.  We

16    just conducted that search using an application called

17    TinEye.  There are actually other -- there's another version

18    of the smiling police officer which actually is turned into

19    a meme where someone wrote "Any job that makes you happy.

20    Any job that makes you" -- and Your Honor knows what a meme

21    is where, you know, a photograph is placed online next to a

22    statement.  So the person who altered this video created a

23    meme -- this image -- that says "Any job that" -- "Get a job

24    that makes you happy."  You can find it on the TinEye

25    website.  We would ask for at least the opportunity to

1    present this evidence to chambers before the Government

2    makes the suggestion that Mr. Nordean created this because,

3    Your Honor, I think the factual predicate was the

4    representation that they had searched online and could not

5    find another version.  So we would have -- at least ask the

6    opportunity to present the evidence to the Court before

7    the -- its suggestion is made.

8             THE COURT:  I don't know why this isn't just

9    something -- again, I know you don't like to hear this and

10   I've -- as you know, I understand Rule 403 because I've

11   excluded all sorts of things in this trial under Rule 403,

12   but I don't think we're in Rule 403 territory here and

13   there's no reason why you can't --

14            MR. SMITH:  Your Honor, there is, because I can't

15   go to the witness online and say, "Here is a webpage I

16   found."  The Government would stand up and object on

17   foundation, on a preliminary question issue.  "Where did you

18   find this?  We haven't seen this yet."  So if we can't

19   cross-examine the witness with the evidence showing that

20   this is probably a false insinuation --

21            THE COURT:  You don't have a good-faith basis to

22   ask a question?

23            MR. SMITH:  Your Honor, if Your Honor's saying to

24   me right now I can plug my computer in --

25            THE COURT:  No.

```
 1              MR. SMITH:  -- pull up the TinEye's website, and

 2    show the jury that this was created by someone else, then

 3    yes, Your Honor, I will -- I -- then we would have --

 4              THE COURT:  I'm saying you have a good-faith basis

 5    to ask -- if you just did a search, you have a good-faith

 6    basis to ask a question:  "Isn't it true that if you do a

 7    Google search, you can find all sorts of things right now?"

 8              MR. SMITH:  And then, Your Honor, if I can't show

 9    the screen, the jury will just think I'm making that up.

10              THE COURT:  Until you get to your case and you can

11    put on evidence suggesting something else.

12              MR. SMITH:  Your Honor --

13              THE COURT:  Mr. Smith, I'm not going to -- look,

14    I'm not going to burn any more time on this.  I've heard you

15    and the -- I think this is fair game.  Your client

16    forwarded -- posted this photo, and whatever -- the jury

17    will make what of it -- whatever they -- what they will of

18    it, but I -- it's -- I've already ruled and no -- the

19    proffers you're talking about, I think, are appropriate for

20    cross-examination.

21              We have to take -- we're going to take a break for

22    the court reporter so that he can rest before we come back

23    with the jury.

24              Is there anything else we need to address before

25    we bring back the jury with this witness?
```

1          All right.  We'll come back in 10 minutes.

2          Ms. Harris, if you would bring -- put the jury in

3   the box when we come back and we'll have the witness here,

4   as well.

5          THE DEPUTY CLERK:  All rise.  This Honorable Court

6   stands in recess for 10 minutes.

7          (Brief recess taken.)

8          (Nicole Miller resumed the witness stand.)

9          (Brief pause.)

10         THE DEPUTY CLERK:  Jury panel.

11         (Jury returned to jury box.)

12         (Brief pause.)

13         THE DEPUTY CLERK:  We are back on the record in

14  Criminal Matter 21-175, United States of America v. Ethan

15  Nordean, et al.

16         THE COURT:  All right.  Counsel, you may proceed.

17         MR. JAUREGUI:  Thank you very much, Your Honor.

18                     CROSS-EXAMINATION

19  BY MR. JAUREGUI:

20  Q.  Good morning, Agent.

21  A.  Good morning.

22  Q.  I'd like to just tie up some loose ends from yesterday,

23  if it's all right with you.

24  A.  Sure.

25  Q.  Thank you.

1          MR. JAUREGUI:  If we could please, Ms. Harris, put

2     up what's already in evidence, 509-25.

3     BY MR. JAUREGUI:

4     Q.  Do you see this exhibit, Agent?

5     A.  I do.

6     Q.  Okay.  At 12:01:55, there's a blank message from

7     Enrique; correct?

8     A.  Correct.

9     Q.  Okay.  You don't know what that message was about, do

10    you?

11    A.  So the FBI never recovered this message from any phones.

12    Q.  Understood.  This isn't when he's added to the chat?

13    A.  I don't believe so.

14    Q.  Okay.  And do you know or do you have personal knowledge

15    about whether or not he's actually in this New MOSD chat?

16    A.  What do you mean by "in"?

17    Q.  Is he actually participating, reviewing, or reading

18    these messages that were introduced through you by the

19    Government?

20    A.  So there's an entry here.  Again, what's made it, we

21    don't know --

22    Q.  Okay.

23    A.  -- but there's another one, I think, at, maybe, 8:30,

24    9:30 --

25    Q.  Okay.

1   A.  -- in the morning from Mr. Tarrio, as well.

2   Q.  Okay.

3   A.  I don't -- I can't recall if there was a response in

4   that one or not.

5   Q.  Okay.  Let me go to the next exhibit.  It's 509-26,

6   which is also in evidence.  And I'm just going to zoom in so

7   it's easier to read.  At 7:18:03, YutYut Cowabunga says "Are

8   you here"; is that correct?

9   A.  That's correct.

10  Q.  And he's, I guess, trying to find out if Enrique's

11  really in the chat or not; correct?

12  A.  I'm not sure what he's referring to.

13  Q.  Okay.  And there's multiple other exhibits that you saw

14  where there were blank messages from Enrique; correct?

15          MR. KENERSON:  Can we --

16          THE COURT:  Madam --

17          MR. JAUREGUI:  Oh.

18          THE COURT:  If -- thank you.

19          MR. JAUREGUI:  I got it.  Took care of it.

20  BY MR. JAUREGUI:

21  Q.  There were other exhibits where there were blank

22  messages from Enrique; correct?

23  A.  Yes.

24  Q.  Okay.  And as you sit here today, you have no idea why

25  those messages are blank; correct?

1    A.  They were not recovered from any FBI phone -- or phone

2    extracted by the FBI.  Correct.

3    Q.  Understood.  And what the FBI did is they got the phones

4    of the different co-defendants in this case; correct?

5    A.  Yes.

6    Q.  For example, you got the phone from Enrique, from some

7    of the other gentlemen here in court today; correct?

8    A.  Yes.

9    Q.  And from some other Proud Boys from other states.  Would

10   that be fair?

11   A.  Yes.

12   Q.  Okay.  And one of the phones that you were able to

13   impound was a phone of Nick Ochs.  Would that be fair?

14   A.  I myself didn't do it, but the FBI, yes.

15   Q.  Somebody did?

16   A.  Yes.

17   Q.  He's the Proud Boy from Hawaii?

18   A.  Correct.

19   Q.  And his phone was also very complete; correct?

20   A.  I didn't review Mr. Ochs's phone.

21   Q.  Okay.

22   A.  That was not my role.

23   Q.  Okay.  And do you know who did the extraction for Nick

24   Ochs's phone?

25   A.  I would think it would be somebody out of FBI Miami, but

1    I don't know for certain -- or not Miami, excuse me, Hawaii,

2    but --

3    Q.  Hawaii.

4    A.  -- I don't know for certain.

5    Q.  Okay.  And the reason you were getting all these phones

6    together was so you can piece together these chats.  Would

7    that be fair?

8    A.  So each phone was obtained at a different point of the

9    investigation --

10   Q.  Okay.

11   A.  -- and they were extracted for information.  Correct.

12   Q.  Okay.  And your layman's understanding of Telegram is

13   that each message would have to be deleted in each phone for

14   the message to be unrecoverable; correct?

15   A.  So I don't have an in-depth knowledge of Telegram.

16   Q.  Okay.

17   A.  I know that if the user deletes it, I believe it deletes

18   throughout the other phone, unless the phone has already

19   been in, like, airplane mode.

20   Q.  Okay.  The best person that would testify as to that

21   would be Kate Cain.  Would that be fair?

22   A.  She has more knowledge than I do.  Yes.

23   Q.  Okay.  But as you sit here today, you have no personal

24   knowledge why some messages show up and why some messages do

25   not?

1    A.  Correct.

2    Q.  Thank you.

3          Yesterday, I think you testified that the reason

4    you thought Enrique had some part in either the editing or

5    the creation of that 1776 document was because you saw some

6    kind of Google search for, you know -- that he conducted;

7    correct?

8    A.  It was a variety of things, not just that one thing.

9    Correct.

10   Q.  Okay.  But that was one of the things.  Would --

11   A.  Correct.

12   Q.  -- that be fair?

13         Okay.  And when I asked you yesterday, you weren't

14   sure when he conducted the Google search; right?

15   A.  I believe it was January 1st.

16   Q.  January 1st?  Okay.  Great.

17         And how did you acquire that information that he

18   did that Google search on January 1st?

19   A.  From the extraction of his cell phone.

20   Q.  Okay.  And the extraction of his cell phone -- you don't

21   know who conducted that extraction.  Would that be fair?

22   A.  Correct.

23   Q.  Okay.  You were just handed a document that said, you

24   know, "This is a Cellebrite report of Enrique's phone"?

25   A.  It's not exactly a document.  It's, kind of -- it's

1    provided on -- so once a phone's extracted, it's put into an

2    FBI system where people can access it --

3    Q.   Okay.

4    A.   -- and that's the system that I went into to view.

5    Q.   Okay.  If I showed you a report, would that refresh your

6    recollection -- and you can tell me either way -- is that

7    what you saw or you didn't see?

8    A.   Sure.

9               MR. JAUREGUI:  Okay.  Judge, may I approach --

10   actually, I can do it digitally.  This is just for the

11   witness, Your Honor, just for the purposes of refreshing her

12   recollection.

13   BY MR. JAUREGUI:

14   Q.   Do you see that extraction report?

15   A.   I do.

16   Q.   Is this the report that you saw on the FBI system?

17   A.   So this is not what I looked at, but this -- if you

18   scroll up just a little bit.

19   Q.   Sure.

20   A.   I believe this is the same date and time, though.  I

21   actually looked at it in Cellebrite, so in the actual

22   program.

23   Q.   In the actual program?

24   A.   Correct.

25   Q.   Got it.

1              And the way this Cellebrite works is first the

2    phone is hooked up to a machine and it's extracted; correct?

3    A.   So I don't know -- again, I don't know --

4    Q.   You don't know how --

5    A.   -- the process of it.   Correct.

6    Q.   None of that stuff; right?

7    A.   Correct.

8    Q.   You just know that you had this report that you looked

9    at?

10   A.   Not this report, but --

11   Q.   Not this report?

12   A.   -- the Cellebrite extraction.   Correct.

13   Q.   Got it.   And in that report that you looked at, there

14   was one search for "the Winter Palace" on January 1st?

15   A.   That I recall, yes.

16   Q.   Okay.   And would it be fair to say that "Winter Palace,"

17   like "1776," is, like, a call to freedom from a lot of these

18   right-wing groups?   They were chanting "1776" while we're --

19   while they were at the Capitol; correct?

20   A.   They did chant --

21              MR. KENERSON:   Objection.   Compound.

22              THE COURT:   Sustained as to compound.

23   BY MR. JAUREGUI:

24   Q.   Okay.   Were they screaming "1776" while they were at the

25   Capitol?

1   A.  They were.

2   Q.  Okay.  And that statement, "1776," is used in other

3   rallies and other protests besides those at the Capitol as a

4   call to freedom.  Would that be fair?

5   A.  I don't know -- I can't speak for other rallies, but I

6   can speak for January 6th.

7   Q.  Okay.

8   A.  And it was used on January 6th.

9   Q.  Okay.  And are you aware that "the Winter Palace" was

10  also a common term that was used leading up to the events of

11  January 6th?

12  A.  I had not seen that term before.

13  Q.  Okay.  And in your investigation after the fact, did you

14  ever discover that there were podcasts; that there were

15  websites that use "the Winter Palace"?

16  A.  Not that I've seen.

17  Q.  Okay.  Yesterday, when I asked you if you used the gun

18  charges on Bertino as leverage to flip him, you said you

19  didn't know; correct?

20  A.  I said people cooperate for different reasons --

21  Q.  Right.

22  A.  -- yes.

23  Q.  And you didn't know specifically why Bertino decided to

24  cooperate?

25  A.  Correct.

1    Q.  Okay.  And you testified that you did not pressure him

2    with the gun charges to get him to cooperate and to flip;

3    correct?

4    A.  No.

5    Q.  Isn't it true, Agent, that before you interviewed

6    Bertino, you had access to Tarrio and Rehl's phone?

7    A.  Rehl, yes.  Tarrio's had just been recently accessed in,

8    I believe, January of 2022.

9    Q.  Okay.  So are you saying that you did not have access to

10   Tarrio's phone before you interviewed Bertino?

11   A.  So -- no -- again, I interviewed Bertino, I believe it

12   was, March of 2022 and Tarrio's phone had been accessed

13   January.  So it was briefly accessed, yes.  Rehl's had been

14   accessed before that.

15   Q.  Understood.  And how many times did you personally meet

16   with Bertino?

17   A.  I'd have to look at my reports to give you a specific

18   number, but, maybe, three or four.

19   Q.  Okay.  And would it be fair to say that the first times

20   you met with him, he did not cooperate with you?

21   A.  Yes.

22   Q.  And actually, you hoped that once you conducted a search

23   warrant of his home, you'd get him to cooperate; correct?

24            MR. KENERSON:  Objection.  Relevance to her

25   subjective hope.

```
 1                THE COURT:  Overruled.
 2   BY MR. JAUREGUI:
 3   Q.  Did you hope to get him to cooperate once you conducted
 4   a search warrant of his home?
 5   A.  We hoped he would cooperate, yes, but it had nothing to
 6   do with the search.  Just hoped he would cooperate at some
 7   point, yes.
 8   Q.  Okay.  You weren't using the search warrant as a means
 9   of getting him to cooperate?
10   A.  No.
11   Q.  Did you want him real badly?  Bertino.
12                MR. KENERSON:  Objection.  Relevance.
13                THE COURT:  Overruled.
14                THE WITNESS:  Did I want Bertino to cooperate?
15   Yes, as I'd want many people in this investigation to
16   cooperate.  Yes.
17   BY MR. JAUREGUI:
18   Q.  No, but I mean the -- did you ever use the words "I want
19   him badly," exclamation point?
20   A.  Possibly.
21   Q.  "I really want him arrested," exclamation point?
22   A.  Possibly.
23   Q.  Okay.  "Hopefully, we can get there"?  Was that your
24   feelings before the search warrant?
25   A.  Possibly, yes.
```

1   Q.  Would it be fair to say that when you couldn't get him

2   to cooperate the first time, you thought, "You know what?

3   We didn't push him hard enough"?

4   A.  I don't think that was my thought.  I'm pretty sure he

5   sought out a lawyer after that.  So it would be up to him to

6   reach out at that point.

7   Q.  Did you ever write "We didn't push him hard enough"?

8   A.  Possibly, but I don't know.

9   Q.  Did you ever think, as part of the strategy to get him

10  to flip, "If we get nothing else, we'll get him on those gun

11  charges"?

12  A.  Possibly, yes.

13  Q.  And those gun charges were going to get you another shot

14  at him?

15  A.  It would get him arrested, not necessarily another shot

16  at him.

17  Q.  Did you ever say "We'll use the gun charges to get

18  another shot at him, to flip him to cooperate"?

19  A.  I'm not sure if those were my exact words, but I'm --

20  possibly.

21  Q.  Okay.  Do you want me to read you the exact words?

22  A.  If you want to.

23          MR. KENERSON:  Are we refreshing?  What are we

24  doing?

25          MR. JAUREGUI:  I was going to impeach her, but --

```
 1            THE COURT:  Well, proceed as you will.
 2            MR. JAUREGUI:  Thank you, Your Honor.
 3            (Brief pause.)
 4  BY MR. JAUREGUI:
 5  Q.  Agent, tell me if I'm wrong:  "I was hoping to come
 6  join/participate in the search warrant execution next week,
 7  as well.  Would you guys have a problem with that?  I know
 8  you have spoken to Bertino before and hoping, if he has a
 9  change of mind and decides he wants to talk, you and I can
10  interview him."
11  A.  That's my statement, yes.
12  Q.  Okay.  Did you also say "Great.  Thank you for the
13  heads-up.  Sounds good.  Fingers crossed.  I want to get
14  this guy so badly," exclamation point.  "This has been the
15  longest year and a month of my life with this stuff and I
16  really want him arrested," exclamation point?
17            MR. KENERSON:  Objection as not inconsistent.
18            THE COURT:  Well --
19            MR. JAUREGUI:  Hopefully, we can get there.
20            THE COURT:  Sustained.  Sustained.
21            MR. JAUREGUI:  Okay.
22  BY MR. JAUREGUI:
23  Q.  And was Bertino's phone extremely helpful to you once
24  you were able to recover it at the search warrant?
25  A.  It was.
```

1    Q.  And it was full of the chats and everything else that

2    we've been talking about?

3    A.  So it didn't have the chats necessarily on it, but it

4    had individual SMS messages, yes --

5    Q.  Thank you.

6    A.  -- and photographs.

7    Q.  Okay.  Did you ever say "We weren't pushing too hard

8    last time since he came to us last time, but next time we

9    have so much to show and ask"?  Did you say --

10   A.  Possible.  Yes.

11   Q.  -- that?

12   A.  Possible.  Yes.

13   Q.  "I really hope to move forward with charging Bertino,

14   Wolkind, and Stewart with J6 stuff.  If nothing, let's get

15   him on these gun charges"?

16              MR. KENERSON:  Objection.

17              THE COURT:  Sustained.

18   BY MR. JAUREGUI:

19   Q.  Did -- is that accurate?

20              MR. KENERSON:  Objection.

21              THE COURT:  The question -- the objection is

22   sustained.

23              MR. JAUREGUI:  Understood.

24   BY MR. JAUREGUI:

25   Q.  Did you try and get a third shot at Bertino?

1    A.   What do you mean by "third shot"?  Because --

2    Q.   A third shot of interviewing him.

3    A.   Well, the first time, he didn't want to speak with us;

4    second time, he did; and then third time, he did with his

5    lawyer.

6    Q.   Okay.  And you had even more ammunition to flip him and

7    turn him on that third time; correct?

8    A.   I don't know what I had at that time.  I'm sure I had

9    additional evidence because, as the investigation goes on,

10   we get more evidence.

11   Q.   Okay.  And at that point, you had been pushing the DNA

12   reports for the guns; correct?

13   A.   So I don't know that I had been pushing the DNA for the

14   guns.  As the case was actually ultimately out of Charlotte,

15   we were working with Charlotte on the case.

16   Q.   Okay.  The guns are processed through FBI?

17   A.   So I don't know who she sent them to, the agent who had

18   the Bertino case.  She facilitated all of that.

19   Q.   Okay.  Did you put specifically a priority on the gun

20   analysis?

21           MR. KENERSON:  Your Honor, I'm going to make a

22   scope objection at this point.

23           MR. JAUREGUI:  It's how she flipped Bertino,

24   Judge.

25           THE COURT:  Let me hear you at sidebar.

```
 1                    (Bench conference:)
 2              MR. KENERSON:  Your Honor, the Court allowed
 3     inquiry into her dealings with Mr. Bertino on the theory
 4     that it went to her credibility because of the accusation
 5     that she provided him with false information.  We're well
 6     beyond that at this point.
 7              THE COURT:  I think we are, but -- I'll hear you
 8     in response, but I think we are.
 9              MR. JAUREGUI:  Sure, Your Honor.
10              THE COURT:  And that is exactly why I allowed some
11     of that testimony yesterday.
12              MR. JAUREGUI:  I appreciate that, Your Honor.
13              Judge, in her Lync messages --
14              THE COURT:  Right.
15              MR. JAUREGUI:  -- she says that she put -- she
16     asked the lab to put a priority on the analysis.  They did
17     it and it helped since it was a Capitol case.  Those are her
18     own statements.
19              THE COURT:  Right, but that's not the issue that
20     went to her credibility, and this is beyond the scope now.
21     So I'm going to sustain a beyond-the-scope objection.
22              MR. JAUREGUI:  Understood, Your Honor.
23              THE COURT:  All right.
24              (Return from bench conference.)
25     BY MR. JAUREGUI:
```

```
 1    Q.  Were you able to acquire a video of Bertino shooting a

 2    gun?

 3    A.  Yes.

 4    Q.  That was more ammunition to get him to flip?

 5               MR. KENERSON:  Same objection.

 6               THE COURT:  Sustained.

 7               (Brief pause.)

 8    BY MR. JAUREGUI:

 9    Q.  Now, are there some voice notes by Enrique that you're

10    aware of on January 6th?

11    A.  Not specifically January 6th that I can think of at this

12    moment.

13    Q.  Okay.  Is there anything in the universe of the

14    Government's evidence that could refresh your recollection?

15    A.  If you have something.

16    Q.  I don't have it, no, unfortunately.

17    A.  Not that I'm aware of.

18    Q.  Okay.  At what time approximately -- I'm not going to

19    hold you to seconds or minutes or anything.  At what time

20    approximately did the defendants in this case enter the

21    Capitol allegedly?

22    A.  I missed half of that.  I'm sorry.

23    Q.  Sure.

24    A.  What's --

25    Q.  What time did they enter the Capitol approximately?
```

1    MR. KENERSON:  Objection.  Vague.  Which
2  defendant?
3              MR. JAUREGUI:  Okay.
4              MR. KENERSON:  Or compound.
5              THE COURT:  The --
6              MR. JAUREGUI:  I'll rephrase.
7              THE COURT:  I guess sustained as to compound.
8  BY MR. JAUREGUI:
9  Q.  At what time did the first defendant in this case enter
10  the Capitol, Agent?
11  A.  2:13.
12  Q.  Okay.  And at what time was the last Proud Boy out of
13  the Capitol?
14  A.  I don't know the last Proud Boy out of the Capitol, but
15  I know the last Proud Boy off the Capitol grounds.
16  Q.  Okay.  Let me make it even more specific.  Of the people
17  accused in this case, what's the last time that they were at
18  the Capitol?
19  A.  So the last -- the time they exited -- the last person
20  who exited the building would have been about 3:13.
21  Q.  Okay.  Thank you, Agent.
22              Now, I'd like to ask you just some short questions
23  on Kenny Lizardo that we established yesterday was a CHS;
24  correct?
25  A.  Correct.

1    Q.  Now, Kenny Lizardo was part of the MOSD Main chat; is

2    that correct?

3    A.  He was.

4    Q.  Okay.  Kenny Lizardo was also part of the Boots on the

5    Ground chat; correct?

6    A.  I'm unsure on that one, but I know he was MOSD.

7    Q.  Okay.  If I showed you a chart from the Government,

8    would that refresh your recollection?

9    A.  Yes.

10              MR. JAUREGUI:  May I approach, Your Honor?

11              THE COURT:  You may.

12              MR. JAUREGUI:  Thank you, Your Honor.

13   BY MR. JAUREGUI

14   Q.  (Indicating.)

15   A.  Yes, he was.

16   Q.  Okay.  And was Kenny Lizardo also part of the MOSD Ops

17   chat?

18   A.  Yes.

19   Q.  Was he part of the Noble MOSD Vetting chat?

20   A.  Yes.

21   Q.  Was he part of the Operation Street Sweepers chat?

22   A.  Yes.

23   Q.  And actually, Kenny even had direct text messages with

24   Enrique; correct?

25   A.  I'm unsure, but likely.

```
 1    Q.  Okay.  And you met personally with Kenny Lizardo and so

 2    did attorneys for the Government; correct?

 3    A.  Yes.

 4    Q.  And Kenny Lizardo told you what the plan for January 6th

 5    was; right?

 6              MR. KENERSON:  Objection.

 7              THE COURT:  Sustained.

 8    BY MR. JAUREGUI:

 9    Q.  Okay.  Did you have an understanding what was supposed

10    to happen on January 6th?

11              MR. KENERSON:  Objection to her understanding.

12              THE COURT:  Sustained.

13    BY MR. JAUREGUI:

14    Q.  Now, Kenny Lizardo had been an informant for the FBI

15    before January 6th; is that fair?

16    A.  Yes.

17    Q.  He was in the rally in December?

18    A.  He was.

19    Q.  Was he in the rally in November?

20    A.  He was.

21    Q.  And he was providing information to the FBI; correct?

22    A.  Yes.

23    Q.  And Kenny Lizardo was not able to give you any evidence

24    whatsoever against Enrique, was he?

25              MR. KENERSON:  Objection.
```

1           THE COURT:  Sustained.

2    BY MR. JAUREGUI:

3    Q.  Agent, would it be fair to say that you've just pieced

4    together Parler and Telegram messages against my client?

5           MR. KENERSON:  Objection.

6           THE COURT:  Overruled.

7           THE WITNESS:  This investigation has been a

8    two-year-long investigation.  Multiple evidence has been

9    pulled from tons of search warrant executions for people not

10   only charged here but other people from January 6th and

11   that's how all of our evidence was collected.

12   BY MR. JAUREGUI:

13   Q.  Understood.  You know that Enrique was picked up by a

14   film crew at the jail; correct?

15   A.  I do.

16   Q.  Okay.  And you also know that Kenny Lizardo picked up

17   Enrique from the jail?

18   A.  He did.

19   Q.  And he was driving Enrique all day on January 5th with

20   that film crew recording everything; correct?

21   A.  He was.

22   Q.  And you've reviewed all those videos?  You have;

23   correct?

24   A.  I have.

25   Q.  Okay.  And you've listened to all the interviews, you've

1    listened to all the conversations; correct?

2    A.  From -- the videos from the 5th?

3    Q.  Yes.

4    A.  Yes.

5    Q.  Okay.  And you know that he conducted multiple

6    interviews in his hotel room on the 5th that were recorded;

7    correct?

8    A.  I know he conducted --

9              MR. KENERSON:  Objection.  Vague.  Who's "he"?

10             MR. JAUREGUI:  He's right.

11   BY MR. JAUREGUI:

12   Q.  You're aware that Enrique gave multiple interviews to

13   the media -- to the film crew that was with him on the 5th?

14   A.  I know he gave --

15             MR. KENERSON:  Objection to scope.

16             THE COURT:  Sustained.

17   BY MR. JAUREGUI:

18   Q.  Okay.  You also know that Enrique had media with him in

19   his hotel room on the 6th?

20   A.  I do -- I don't know about the 6th.  I don't know for

21   certain.

22   Q.  Okay.

23   A.  But the 5th, yes.

24   Q.  Okay.  Well, you do know that, again, there were

25   recorded interviews in real time of Enrique while the events

1    on January 6th were happening; isn't that right?

2    A.   There possibly could have been, but I don't recall

3    watching those.

4    Q.   Okay.  You haven't seen any videos of him on the 6th?

5    A.   Not that I can think of at this moment.  It's possible,

6    but --

7    Q.   Okay.

8    A.   -- there -- I've watched so much video.

9    Q.   Okay.

10   A.   I can't think of a --

11   Q.   Do you remember the --

12   A.   -- specific one.

13   Q.   -- this guy, Nick --

14           THE COURT REPORTER:  I'm sorry.  What?

15           MR. JAUREGUI:  I'm sorry.

16   BY MR. JAUREGUI:

17   Q.   Do you remember Nicholas Quested and Amy Harris?  The

18   two journalists.

19   A.   I do, who were on the ground on January 6th, yes.

20   Q.   Right.  Okay.  Do you know that they went to his hotel

21   room and interviewed him about his thoughts about what

22   happened on January 6th?

23   A.   So I know an interview was done after.  I don't know if

24   it was the same -- the evening of January 6th or the 7th.

25   Q.   Right.  It's beyond your knowledge?  You don't know?

```
 1    A.  I don't know.  Correct.
 2             MR. JAUREGUI:  Okay.  Thank you very much, Agent.
 3             THE WITNESS:  Do you want this back?
 4             MR. JAUREGUI:  May I approach, Your Honor?
 5             THE COURT:  You may, sir.
 6             THE WITNESS:  (Indicating.)
 7             MR. JAUREGUI:  Thank you.
 8             MR. METCALF:  Your Honor, if I may?
 9             THE COURT:  Yes, you may proceed, sir.
10             MR. METCALF:  Thank you.
11                        CROSS-EXAMINATION
12    BY MR. METCALF:
13    Q.  Good morning, Special Agent Miller.
14    A.  Good morning.
15    Q.  How are you today?
16    A.  I'm sorry?
17    Q.  How are you today?
18    A.  I'm good.  How are you?
19    Q.  I'm doing well.  I'm going to do everything I can to try
20    to get you off the stand today.  All right?  How about that?
21    A.  I like that.
22    Q.  Sound good?
23    A.  Yes, it does.
24    Q.  All right.  So let's get into it.  You know that I
25    represent Dominic Pezzola; correct?
```

1   A.  I do.

2   Q.  And you've been investigating Mr. Pezzola basically

3   since the beginning; is that fair to say?

4   A.  Fair to say, yes.

5   Q.  So you started investigating this case on January 6th;

6   right?

7   A.  Not the Proud Boys-specific piece.  I was involved in

8   the initial January 6th investigation as far as the, like,

9   administrative things, kind of, as information came in,

10  getting it, kind of, out to the people it needed to go to so

11  they could follow up on it.  I became specifically involved

12  in this particular investigation in, I want to say, March --

13  Q.  When did you --

14  A.  -- of 2021.

15  Q.  Okay.  And that -- so that's when your investigation

16  with regards to Mr. Pezzola began, as well?

17  A.  That's when I joined this investigation.

18  Q.  When did you first start knowing and investigating

19  Mr. Pezzola?

20  A.  So the field -- a field office is the one who initially

21  had Mr. Pezzola's case which would have been, I think,

22  Buffalo or Albany -- one of the -- an office in New York.

23  As our investigation, we obtained information; we figured

24  out what was going on; Mr. Pezzola, his case became aware to

25  us; and we got caught up on the details of his case,

1   basically.  That may have been -- I can't give you a

2   specific time frame, but sometime after March of 2021.

3   Q.  So a good aspect of your investigation included the New

4   York chapters; is that fair to say?

5   A.  The New York chapters -- some individuals from those

6   chapters played into this investigation, yes.

7   Q.  Okay.  So was one of those individuals Matthew Greene?

8   A.  It was.

9   Q.  Okay.  So you became familiar with Matthew Greene; is

10  that fair to say?

11  A.  Yes.

12  Q.  And you conducted -- or your investigation included

13  investigating Matthew Greene individually, as well?

14  A.  Again, not me specifically.  So Matthew Greene's case

15  was out of -- that one was out of Albany.  So there was an

16  agent assigned to his case, and I would just work with that

17  agent in finding out whatever information it was that agent

18  obtained.

19  Q.  Same thing, then, with Mr. Pezzola?

20  A.  Yes.

21  Q.  Okay.  Do you remember the agent that you worked with

22  with regards to Mr. Pezzola and the agent for Mr. Greene?

23  So, kind of, a two-pound question.  If you want me to break

24  it up, I will.

25  A.  No, that's fine.  Matthew Greene would have been -- case

```
1    agent was -- last name was Wren [ph]; and then Pezzola, name
2    was Butter -- started with a B.
3    Q.   Butter?
4    A.   Kevin.   Kevin was the first name.
5    Q.   Kevin Butter?
6    A.   Well, it's, like, Butter -- it's a long last name.
7    Q.   Butterscotch?
8    A.   No --
9    Q.   No, that was --
10   A.   -- but --
11   Q.   -- a joke.
12   A.   -- but yeah, something.
13   Q.   Okay.  So the five other agents that you spoke about
14   that worked on this case with you, that does not include the
15   case agents for individuals such as Mr. Greene or
16   Mr. Pezzola; is that correct?
17   A.   Correct.
18   Q.   All right.  So the five other agents that you
19   specifically worked with, each of you would have other
20   people and other agents in different areas that you would
21   communicate with as well; right?
22   A.   Yes.
23   Q.   So how -- during this time -- so I'm just trying to get
24   an understanding.  March of 2021 -- let's just say
25   throughout the year of 2021, were you investigating anything
```

1    else other than the Proud Boys or was your role and

2    responsibilities Proud Boy-related?

3    A.  So our investigation, again, to clarify, is not into the

4    Proud Boys.  Our investigation is into the activity that

5    occurred on January 6th and some of the Proud Boys just

6    happened to have been involved in that activity.

7    Q.  Okay.  So let me ask you this, then, Agent.  Who did you

8    look into that was not a Proud Boy?

9    A.  So some of the individuals on the ground from

10   January 6th, such as Shannon Rusch, Trevor McDonald, those

11   individuals are not Proud Boys, but they were with them the

12   day of.

13   Q.  With who?  Mr. Pezzola?

14   A.  With the group on the day of.  They were in -- they

15   ended up on the Capitol grounds with the group.

16   Q.  Okay.  But there -- were they on Capitol grounds or part

17   of the marching group?

18   A.  So they were not part of the marching group.  They ended

19   up meeting them at the food trucks and then they went to

20   Capitol grounds.  Trevor McDonald was one we saw

21   pepper-spraying officers.

22   Q.  Okay.  So let's -- let's think about this.  You're

23   investigating specific people, and there's a big difference

24   between a witness -- there's a big difference between a

25   target of that investigation; correct?

13672

1    A.  Sure.  Yes.

2    Q.  Okay.  How many -- just approximately, how many targets

3    did you have that were not Proud Boys during the entire year

4    of 2021?

5    A.  Explain to me what you mean by target again.

6    Q.  Okay.  So you -- when you conduct an investigation, you

7    break down an individual and what they are to that

8    investigation; is that correct?

9    A.  So I would investigate as to what crime was committed

10   and see the individuals associated with that crime.

11   Correct.

12   Q.  Okay.  And you would label -- or you could label people

13   as a witness, as someone who has information, or someone who

14   was a target of that investigation or someone who's a target

15   of committing that crime; correct?

16   A.  I don't use the word "target."

17   Q.  But that's a commonly-used name or word or phrase in the

18   FBI; is that fair to say?

19   A.  Not that I've come across.  Granted, I've only been

20   there a little over three years, but not something I've come

21   across.

22   Q.  So you never had anybody ask you, "Who's the target of

23   the investigation?"

24   A.  No.

25   Q.  Or if someone is a target of an investigation?

```
1    A.  Not that I can think of, no.

2    Q.  Okay.  All right.  So in your investigations, you're

3    working with five specific people out of the Washington

4    Field Office?  Are they all in your office or no?  Actually,

5    withdrawn.

6                Dubrowski's from New York; correct?

7    A.  Yes.

8    Q.  So these agents would come to D.C. or would you just

9    work with them more closely because they were part of your

10   team, so to speak?

11   A.  So all of the agents assigned, with the exception of

12   Dubrowski, are Washington Field Office agents.

13   Q.  Okay.  And you guys would communicate with various -- by

14   various different means; fair to say?

15   A.  Yes.

16   Q.  You'd have meetings in person?

17   A.  So with the case agents?

18   Q.  Yeah.

19   A.  Yes.

20   Q.  And then you guys would send emails back and forth to

21   each other?

22   A.  Yes.

23   Q.  And I was reading some of the emails, and in the emails

24   they would have a designation of classification in the

25   email.  Are -- do you know what I'm referring to?
```

1    A.   Yes.

2    Q.   Okay.   So that would mean that that would be on a

3    classified email system if it has a classification in the

4    email; is that fair to say?

5    A.   Yes, it is.

6                MR. KENERSON:   Object to the relevance of this

7    line.

8                THE COURT:   Overruled for now.

9    BY MR. METCALF:

10   Q.   And in those emails, you would -- there's three -- in

11   those emails, you would classify if it's classified or

12   unclassified when the email gets sent out; is that fair to

13   say?

14   A.   Yes.

15   Q.   And the -- from my understanding, there's three

16   different types of classifications; correct?

17   A.   There's more than three, but for the emails, yes,

18   there's three.

19   Q.   Okay.   What would those three be?

20   A.   So it's classified, unclassified, and then I think it's

21   FOUO.

22   Q.   And that's for -- what -- police purposes?   Or what's

23   F- -- can you say that to me one more time?

24   A.   I think it's FOUO, and it might be foreign -- I don't

25   know the exact terminology.

1    Q.  For official use only?

2    A.  Yes.

3    Q.  Okay.  And then what about secret?  Is -- secret doesn't

4    come in there?

5    A.  So again, there's different classifications.  You can

6    add it to your email if it's a secret email.

7    Q.  Okay.  Interesting.  All right.  So now -- then you have

8    the Lync system.  Was that on your phone or was that on your

9    email?

10   A.  Neither.  It's on our, like, secret side, basically.

11   It's, kind of, like, an IMing -- if you remember AOL Instant

12   Messenger back in the day, something similar to that.

13   Q.  So like an instant messaging system?

14   A.  Yes.

15   Q.  But where would you have access to that?

16   A.  When I'm in the office.

17   Q.  Okay.  2021, COVID's going on.  How often were you in

18   the office?

19   A.  A lot, actually.  I don't think I left very much,

20   especially in the beginning phases of January 6th.

21   Q.  Okay.  And there's an unclassified side and a classified

22   side to this Lync system.  Is that fair to say?

23   A.  So there's only one -- the Lync system only exists on

24   our, basically, classified network, so what we call our red

25   side.  The green side, it does not exist there.

1    Q.  You just answered a beautiful question for me, because I

2    was trying to figure out when you were on the -- when you

3    were spending a lot of time on the green side what that

4    meant.  So that's the unclassified side?

5    A.  Correct.

6    Q.  And then if you're spending a lot of time on the red

7    side, you're in the classified side?

8    A.  Yes.

9    Q.  All right.  There's a lot of different -- other acronyms

10   that you use.  I mean, I think you use more acronyms than

11   attorneys these days.  What's SOS?

12   A.  It could be staff operation --

13                  MR. KENERSON:  Objection to relevance --

14                  THE WITNESS:  -- specialist.

15                  MR. KENERSON:  -- and scope --

16                  THE COURT:  All right.  Let me --

17                  MR. KENERSON:  -- and this entire line.

18                  THE COURT:  Let me have you -- let me have counsel

19   at sidebar.

20                  (Bench conference:)

21                  THE COURT:  Mr. Metcalf, what are we doing here?

22                  MR. METCALF:  I'm just talking to her about the

23   messages that she sent with regards to Mr. Pezzola

24   specifically.  I'm not going to spend much more time on

25   this.  I just wanted to get into her investigation into

1    Mr. Pezzola and how it lasted and then how it ultimately led

2    to Mr. Pezzola, from a separate indictment, getting involved

3    in this indictment. So it's just more of, like, a time

4    frame that I'm going to go through, and then I'm going to go

5    straight to January 6th.

6        THE COURT: What does the fact -- okay, then.

7    I -- what does the fact that he was -- the question of

8    whether he was indicted and enjoined with Person A or Person

9    B, what -- how is that relevant?

10        MR. METCALF: So it's extremely relevant, Your

11    Honor. One thing that I have to do now specifically is I

12    have to separate Mr. Pezzola from these other individuals.

13    This is part of my way of doing so.

14        THE COURT: Right. You can do that through facts,

15    right, through the facts of the case, the facts that she's

16    testified to one way or the other. But the fact that

17    somebody was arrested and -- at this time or arrested

18    with -- that time or joined with this person or joined with

19    that person, how is that relevant to what the jury has to

20    decide here?

21        MR. METCALF: I'm going to go into specifically --

22    just an overall question about how long she was

23    investigating him which is relevant if it's from March -- I

24    didn't know it was from March; I thought it was from

25    January -- and then I'm going to go into how in 2022 is when

```
 1    people like Tarrio and everybody else actually started

 2    getting their phones seized and getting arrested, and that

 3    should be relevant to show that Mr. Pezzola was initially

 4    part of a different investigation and then ultimately joined

 5    here and then it's going to go towards messages, what

 6    Mr. Pezzola was not a part of.  So it's all about separation

 7    with regards to Mr. Pezzola in setting that up.  And I'm

 8    going to bring it back with a time frame, as I always do.

 9              THE COURT:  Let me hear from the Government in --

10              I mean, that has nothing to do with all this high

11    side -- I mean, green and red email.

12              But, Mr. Kenerson?

13              MR. KENERSON:  Right.  Number one, it has nothing

14    to do with that which is -- I mean, there's no relevance and

15    that's way beyond the scope as, frankly, no relevance to --

16    we litigated pretrial that the Government's charging

17    decisions are not relevant.  The Court sided with the

18    Government on that, and I think the Court rightly sided with

19    the Government on that.  There is absolutely no relevance to

20    when or how Mr. Pezzola was joined in this particular

21    indictment which, in any event, is a separate question from

22    investigation, number one.

23              Number two, even if there was some sort of minimal

24    relevance -- which we think it's not even close -- it's

25    massively outweighed under 403 by the risk of jury
```

1   confusion.  It has -- it really has nothing to do -- the

2   question before the jury is factually, based on the facts

3   and the evidence, did the Government prove that Mr. Pezzola

4   joined this conspiracy and/or committed the crimes, that

5   he's been charged with, on January 6th?  That's it.  When

6   the Government decided to charge him or when it decided to

7   charge anyone else has absolutely no bearing on that.

8                MR. METCALF:  Your Honor, this jury is completely

9   confused with timelines, 100 percent.  They're confused with

10  January 6th, what happened, and they're confused with the

11  time of events of everything that this witness has done.  If

12  I didn't know -- okay.  Your Honor is looking a little odd.

13  They've heard evidence about Tarrio's phone getting taken --

14               THE COURT:  You didn't mean I -- Mr. Metcalf, let

15  me just say, you didn't mean I look odd.  You just meant I

16  looked a little confused at what you were saying; right?

17               MR. METCALF:  Absolutely, Your Honor.

18               THE COURT:  I'm trying to bail you out here.

19               MR. METCALF:  Yes.  Okay.

20               THE COURT:  All right.

21               MR. METCALF:  So --

22               (Laughter.)

23               I apologize.  You were looking at me in a way of

24  disbelief and concern.  Yes.  Absolutely.

25               So if I didn't know the time of events the way I

1   do, then I never would be able to figure out some of this

2   stuff.  It's literally -- what I'm going to do is just go

3   through the most basic facts for a timeline.  It's -- and

4   I'm talking, like, three points here.  Like, I'm going to

5   move on --

6        THE COURT:  Mr. Metcalf, you can do timeline about

7   the relevant facts of the case and, maybe, within some --

8   maybe, I could be convinced that -- some pieces of the

9   investigation, but not charging decisions and things like

10  that that --

11       MR. METCALF:  And --

12       THE COURT:  Well, that's what you just said you

13  were going to do.  So let's just stick to what the witness

14  testified to on direct and the scope of that and things that

15  are relevant.  You may proceed.

16       MR. METCALF:  Your Honor, just so --

17       THE COURT:  Yes.

18       MR. METCALF:  -- we're clear, I never wanted to

19  get into charging facts.  I wanted to just go through a

20  timeline --

21       THE COURT:  Right.

22       MR. METCALF:  -- as to when she was investigating

23  him and to somewhat show that it was a different time frame

24  than when everyone else was involved.

25       THE COURT:  But it doesn't matter.  The question

```
1     is, what is the evidence?  What is the evidence?  The

2     time -- the relevant timeline is whatever happened before

3     and after January 6th.  I don't -- I just don't see the

4     relevant of -- the relevance of this -- of these other

5     things.  So I'm just warning you, if we're going to go into

6     when was one person charged or when was another person

7     charged, I'm going to sustain objections to that.

8               MR. METCALF:  That's fine.

9               THE COURT:  All right.

10              MS. HERNANDEZ:  I'm sorry.  Your Honor --

11              THE COURT:  No, I'm sorry, Ms. Hernandez.  I

12     haven't recognized you, because it's Mr. Metcalf that is

13     proceeding with his cross-examination.

14              MS. HERNANDEZ:  Correct, but the issue is relevant

15     to my client.

16              THE COURT:  Ms. Hernandez, you had the opportunity

17     to conduct a cross-examination.  I'm not going to hear from

18     every other attorney on this.

19              MS. HERNANDEZ:  So I'd just cite Kyles v.

20     Whitley --

21              THE COURT:  All right.  Mr. --

22              MS. HERNANDEZ:  -- Supreme Court case.

23              THE COURT:  All right.  Mr. Metcalf, you may

24     proceed, and I'm going to, you know -- as I said, I'm going

25     to just -- I'm going to police the bounds of relevance and
```

1    the bounds of scope.

2            MR. METCALF:  Understood.  Thank you.

3            (Return from bench conference.)

4    BY MR. METCALF:

5    Q.  Okay.  Sorry about that.

6            So throughout the course of this time, 2021 into

7    2022, you testified that you were constantly finding out new

8    information, or the investigation would lead to new

9    information at times; is that correct?

10   A.  Correct.

11   Q.  And then you became associated or familiarized yourself

12   with some of these group chats; right?

13   A.  Yes.

14   Q.  And you'd send out emails to the other members of the

15   team for there to be discussions about these group chats;

16   right?

17   A.  I don't know about "because there was discussions," but

18   I would send the information in emails, yes.

19   Q.  And you would talk about the MOSD chats with everyone in

20   your team; right?

21   A.  Yes.

22   Q.  Okay.  So now, going through that with your team, you

23   knew that Mr. Pezzola was not a part of a lot of these

24   chats; is that fair to say?

25   A.  Yes.

1    Q.  So for example, the Ministry of Self-Defense, the one

2    that says "Main" after it, Mr. Pezzola was not a part of

3    that chat; is that correct?

4    A.  I'd have to double-check.  I know Mr. Pezzola was in the

5    MOSD and the Boots on Ground, but I'm not sure which

6    specific -- it may have been MOSD Main -- or the New MOSD he

7    was part of.

8    Q.  Okay.  That's fair to say.

9            MR. METCALF:  Can we go to -- Ms. Rohde, can you

10   help me out here for one second, please?  Can we go to

11   Government Exhibit-509-32.

12           (Brief pause.)

13           Ms. Harris, this should already be in evidence.

14           THE DEPUTY CLERK:  It is.

15   BY MR. METCALF:

16   Q.  This is the New MOSD chat; correct?

17   A.  Correct, and Mr. --

18   Q.  And Mr. --

19   A.  -- Pezzola is not there.

20   Q.  Exactly.

21   A.  Correct.

22   Q.  Why did you choose green for Mr. Pezzola?

23           MR. KENERSON:  Objection.  Relevance.

24           THE COURT:  Sustained.

25           MR. METCALF:  All right.  Can we go to

1    Exhibit 501-1?

2    BY MR. METCALF:

3    Q.  And while we're pulling that up, there's leadership

4    chats as well; correct?

5    A.  Correct.

6    Q.  And Mr. Pezzola was not in any leadership chat; is that

7    correct?

8    A.  Correct.

9    Q.  Now, I have in front of you 501-1.  That's the

10   original -- or that's a leadership chat of MOSD; is that

11   correct?

12   A.  Correct.

13   Q.  Do you see Greene in there?

14   A.  I do not.

15   Q.  Not Mr. Greene or Pezzola surrounded in green; correct?

16   A.  Correct.

17   Q.  Thank you.

18              MR. METCALF:  Can we go to -- we went to 509.  Can

19   we go to 503-1, please.

20   BY MR. METCALF:

21   Q.  Now, this is the MOSD Main chat.  Mr. Pezzola is not in

22   the MOSD Main chat either; is that correct?

23   A.  Correct.

24   Q.  So if I told you that Mr. Pezzola did not join any of

25   these chats, or the earliest that he joined these chats was

1    January 4th, would you agree or disagree with that

2    statement?

3    A.  So I can't comment, because I don't know, but that could

4    make sense.

5    Q.  It sounds accurate; right?

6    A.  It sounds accurate.

7            MR. METCALF:  Okay.  At this time, I ask to be

8    able to show Agent Miller what I would like to have

9    premarked for identification as Pezzola's Exhibit-264.  I'm

10   going to skip over to 264.  And I ask for permission to be

11   able to approach the witness, Your Honor.

12           THE COURT:  All right.  Does the Government have a

13   copy of that?

14           MR. METCALF:  Yes, they do, Your Honor.

15           THE COURT:  All right.  Permission's granted.

16           MR. KENERSON:  Yeah, we do.  Just if I may have a

17   moment to confer with Mr. Metcalf?

18           THE COURT:  Yes.

19           THE DEPUTY CLERK:  Mr. Metcalf --

20           MR. METCALF:  Yes?

21           THE DEPUTY CLERK:  -- 264 or 254?  Because 254 was

22   your next number.  2 -- yeah, 254 was your next number.  So

23   that's why I'm just double-checking.

24           MR. METCALF:  Yeah, 254 --

25           THE DEPUTY CLERK:  That's fine.

1          MR. METCALF:  -- then.

2          THE DEPUTY CLERK:  Thank you.

3          MR. METCALF:  Thank you.  So that means the other

4    one that we spoke about yesterday is going to be 253.  I

5    wrote that down wrong.

6          THE DEPUTY CLERK:  So 253 was the Greene photo?

7          MR. METCALF:  Yes.  Thank you.

8          THE DEPUTY CLERK:  253.

9          (Brief pause.)

10         MR. METCALF:  Your Honor, may I approach?

11         THE COURT:  Yes, you may.

12         MR. METCALF:  Thank you.

13   BY MR. METCALF:

14   Q.  Special Agent Miller, I'm showing you what has been

15   marked for identification as Pezzola's Exhibit-254.  Are --

16   is that your handwriting?

17   A.  It is.

18   Q.  Okay.  And that -- the documents that I gave you consist

19   of four pages; is that accurate?

20   A.  Yes.

21   Q.  And these are your notes, basically, about your -- what

22   you have testified to in front of this jury; is that fair to

23   say?

24   A.  Yes.

25         MR. METCALF:  Your Honor, at this time, I ask that

```
 1      Pezzola's Exhibit-254 be admitted into evidence.
 2                  MR. KENERSON:  I object to that.
 3                  THE COURT:  Overruled -- I mean, sustained.
 4      BY MR. METCALF:
 5      Q.  Okay.  So can you describe what's on the first page.
 6                  MR. KENERSON:  Can we be heard?
 7                  THE COURT:  Yes.
 8                  THE WITNESS:  Describe it?
 9                  THE COURT:  Yes.
10                  MR. KENERSON:  Can we --
11                  THE WITNESS:  Oh, yeah.  Sure.
12                  THE COURT:  Yes, let's go to sidebar.
13                  (Bench conference:)
14                  THE COURT:  So I gave you all time to confer.  I
15      didn't expect to have things veer off in this direction.
16      What -- Mr. Metcalf, what are we doing here?
17                  MR. METCALF:  It's a timeline --
18                  THE COURT:  All right.
19                  MR. METCALF:  -- and I want to be able to put it
20      on the screen over here for the jury to see -- I think it
21      would actually help them out -- and, at the same time, be
22      able to discuss Exhibit-1000 which is the video montage of
23      the entire walk.  So I think it's a --
24                  THE COURT:  Why can't she -- what I don't
25      understand is why can't you just -- she hasn't said anything
```

1    inconsistent with what's in these notes; correct?

2              MR. METCALF:  No, not at all.

3              THE COURT:  Okay.

4              MR. METCALF:  I'm not --

5              THE COURT:  So -- but that's the -- all right.

6    But that's the point.  If it is inconsistent, then you have

7    a basis to admit this.  This is a prior statement of the

8    witness.  So it's actually, at this point, hearsay of the

9    witness.  So you can elicit -- I mean, unless the Government

10   doesn't object and we're just, kind of -- I don't have -- I

11   don't -- can't see what the document looks like in front of

12   me, but the point is how -- if we're not talking about a

13   demonstrative, why don't you just ask her the questions and

14   she'll give you the answers you want on the timeline?

15             MR. KENERSON:  And --

16             THE COURT:  Go ahead, Mr. Kenerson --

17             MR. KENERSON:  I just want to --

18             THE COURT:  -- because we don't have Mr. Metcalf.

19             MR. KENERSON:  He's -- it sounds like --

20             THE COURT:  Go ahead --

21             MR. KENERSON:  -- he's listening.

22             THE COURT:  -- Mr. Kenerson.

23             MR. KENERSON:  So he's -- what the Government has

24   no objection to -- and this is what I told Mr. Metcalf -- is

25   the agent being permitted to refer to her notes during the

1    course of her testimony.  So --

2                THE COURT:  Right.

3                MR. KENERSON:  -- we have no problem with that.

4    That's why we didn't object to them --

5                THE COURT:  And --

6                MR. KENERSON:  -- being up there.

7                THE COURT:  All right.  And that's what I'm

8    saying.  She can just testify to -- whatever you want her to

9    testify to, she'll testify to.  Let's just -- you can

10   have -- you could even have the other exhibit -- you can't

11   have both exhibits up anyway at the same time.  It would be

12   hard.  But we could put up the video you were talking about

13   and she can just testify, relying on her notes.

14               MR. METCALF:  Understood.  But I think that this

15   could be admitted because, again, it can help the jury.  It

16   can help visually break down what she has testified to thus

17   far.  And it can be admitted as a past recollection recorded

18   and not being something that's used for impeachment purposes

19   and just to be able to aid in everything that -- all the

20   testimony that's now about to take place, because I'm going

21   to go through step by step with her each one of those points

22   from a different side than what the Government did.

23               THE COURT:  I guess I just don't have the document

24   in front of me and I can't tell whether it's a past -- I

25   mean, a past recollection recorded has to be recorded close

1    in time -- are these -- I don't even know -- what is this

2    document?

3         MR. METCALF:  It's her handwritten notes where she

4    literally goes through piece by piece -- she goes

5    "10:00 a.m., meeting at the at the Monument; 10" -- what's

6    the next one -- can I see this real quick -- next one,

7    "10:39; 10:48."  She goes through specific detailed points

8    as to certain things that describe that entire montage.

9         THE COURT:  Right.

10         MR. METCALF:  And the -- and then Pezzola's

11    mentioned at 12:57.  I'm literally going to stop there

12    because that's the time frame that I want to speak about, is

13    10:00 a.m. to literally 12:57.

14         THE COURT:  But literally, it's still hearsay.

15    It's not past recollection recorded.  I don't have the --

16    tell me why you think it's -- I mean, I don't have that

17    provision in front of me.  I'm actually looking for it as we

18    sit here, but --

19         MR. KENERSON:  If I can, my understanding of past

20    recollection recorded is that there needs to be a foundation

21    from the witness that they once knew this information; no

22    longer can recall it; recorded it, you know -- recorded it

23    close in time; and that, therefore, they believe it's

24    accurate, and then even at that point, it's not displayed;

25    they can read from it which, again, we're not referring to

1    her -- we're not objecting to her being able to reference

2    it.

3            THE COURT:  Right.  And so it's not past

4    recollection, because it has to be close in time and we're

5    not talking about that.  So it's not a past recollection

6    recorded.  You can -- she's -- she'll testify as she's -- if

7    you'd like to ask her questions and she will answer your

8    questions directly without referring to it and you could

9    even have the exhibit you want up at the same time, but -- I

10   don't know what to say.  It's not admissible right now, but

11   you're getting the benefit of being able to -- her testify

12   with the aid of it in front of her because the Government's

13   not objecting.  You may proceed along those lines.  I don't

14   know of any other way you can proceed.

15           MR. METCALF:  Thank you, Your Honor.

16           (Return from bench conference.)

17   BY MR. METCALF:

18   Q.   Okay.  So Agent Miller, each one of these pages that I

19   just showed you, those are all your handwriting.  Is that

20   fair to say.

21   A.   Yes.

22   Q.   And they're all your notes?

23   A.   Yes.

24   Q.   And when did you create this document?

25   A.   As I started studying for my testimony.

13692

1    Q.  Say again?

2    A.  So as I started going through all of the videos and

3    figuring out the timeline, that's when I started creating

4    these.

5    Q.  Okay.  And so is that something -- is that -- fair to

6    say that this is something that you worked on for quite some

7    time?

8    A.  The timeline?

9    Q.  That --

10   A.  So I've watched videos through the investigation and

11   done a bunch of things, yes, but as far as actually putting

12   pen to paper in note format, this is the --

13   Q.  Yes.

14   A.  -- this is the only time I've done this.

15   Q.  Okay.  And when did you do this?  A couple of months --

16   A.  Yes.

17   Q.  -- ago?

18   A.  Well, this would have been over a series of probably a

19   few months, yes.

20   Q.  Okay.  And do you remember when you've completed this

21   document?

22   A.  I don't remember when I completed it.

23   Q.  Okay.  But it's fair to say that you completed this

24   document at least a couple of months ago or just a couple of

25   months ago?

1    A.  Fairly recent.

2    Q.  Okay.  So look at the first page.  First page has -- it

3    starts with a note at 10:00 a.m.  Do you see what I'm

4    referring to?

5    A.  I do.

6    Q.  Okay.  And then you go down through a series of events

7    or a series of different times.  And I want you to look at

8    what is noted in there at 12:57.  Do you see that note that

9    I'm referring to?

10   A.  Yes.

11   Q.  And that's the first time on that page that you refer to

12   Pezzola specifically; is that accurate?

13           MR. KENERSON:  Objection.  Relevance to when she

14   first mentions it.  Also, hearsay.

15           THE COURT:  Sustained.

16   BY MR. METCALF:

17   Q.  Okay.  Your first line.  This -- well, withdrawn.

18           What I just described to you, that's your --

19   that's a timeline that you put together from 10:00 a.m.

20   until 12:57 p.m. on the morning of January 6th; is that

21   correct?

22   A.  It's a general timeline, yes.

23   Q.  Okay.  But it's a timeline from that morning; right?

24   A.  Yes.

25   Q.  And each one of these points were significant enough for

1    you to mention that; is that correct?

2    A.  Yes, because it's based off the montage that we watched.

3    Q.  Exactly.

4        MR. METCALF:  Can we show the witness Government's

5    Exhibit-1000, please.

6        (Brief pause.)

7        Just one second.  Can we start at 10:06 and go to

8    10:21.  I ask that 10:06 to 10:21 be played for the witness.

9        (Video played.)

10       MR. METCALF:  And if we could pause right there.

11   That actually went to 10:28.

12   BY MR. METCALF:

13   Q.  Now, what we just -- what was just shown, that was at

14   11:15 to 11:21 approximately; correct?

15   A.  Correct.

16   Q.  And you have it done on the screen exactly where, along

17   this walk, everybody was; is that correct?

18   A.  Correct.

19   Q.  And those two clips in particular, 11:15, 11:21, you do

20   not see Mr. Pezzola in those clips; is that correct?

21   A.  Correct.

22   Q.  And in all the other videos that you watched,

23   investigated, reviewed, around this specific time frame,

24   11:15 to 11:21, did you ever see Mr. Pezzola still in the

25   march at that point in time?

```
1    A.  I'm not sure.  Not that I can recall.

2    Q.  Okay.  So this is what I've been trying to figure out.

3    When did Mr. Pezzola leave the march?  You're aware that

4    Mr. Pezzola left the march that morning; is that correct?

5    A.  At some point, yes.

6    Q.  Okay.  But do you know which point that he actually

7    left?

8    A.  I do not.

9    Q.  Is it fair to say that he could have left -- actually,

10   let's go back, then.  So I want to go back to --

11              MR. METCALF:  Can we go to 9 minutes in this video

12   and play from 9 minutes to 9:10.

13              (Video played.)

14   BY MR. METCALF:

15   Q.  Okay.  You see where we are right now; correct?

16   A.  I do.

17   Q.  I'm going to have 9 minutes to 9:10 played.

18              (Video played.)

19              MR. METCALF:  You can actually even stop right

20   there.  So that was 9 minutes and 9:04.

21   BY MR. METCALF:

22   Q.  You see Mr. Pezzola still right there; correct?

23   A.  I do.

24   Q.  All right.  Is this the last video that you know of

25   where Mr. Pezzola is seen in the march?
```

13696

1    A.  So I can't answer that 100 percent, but I'm going to say

2    I believe so.

3              MR. METCALF:  Okay.  Can we go back to 10:06.

4    10:06 -- how do I clear?

5              THE DEPUTY CLERK:  Hit the green arrow up top.

6              MR. KENERSON:  That, (indicating.)

7              MR. METCALF:  This has to be open.  There we go.

8    Thank you.

9              THE DEPUTY CLERK:  Mm-hmm.

10   BY MR. METCALF:

11   Q.  10:06 in this montage reflects 11:15 a.m.; correct?

12   A.  Correct.

13   Q.  And at this time, there's no other videos that show that

14   Mr. Pezzola is there at that time; is that fair to say?

15   A.  Not that I'm aware of.

16             MR. METCALF:  Okay.  And then can we go to 10:15,

17   please.  Can we just play it for a couple of seconds

18   starting at 10:15.

19             (Video played.)

20             MR. METCALF:  Can we stop right there.  Let the

21   record reflect I just stopped at 10:19.

22   BY MR. METCALF:

23   Q.  Do you see 10:19 of this montage reflects 11:21 a.m.; is

24   that correct?

25   A.  Correct.

1  Q.  And you see exactly where the arrow is as to where they

2  were traveling at this point in time; is that correct?

3  A.  Correct.

4  Q.  And there's nothing -- or there's no other videos that

5  exist out there that you know of that show Mr. Pezzola still

6  marching with the crowd at this point in time; is that fair

7  to say?

8  A.  Yes.

9  Q.  Now, you're -- throughout the course of your

10  investigation, did you find out that Mr. Greene and

11  Mr. Pezzola, among other people, actually left the march?

12  A.  Yes.

13  Q.  Now, remember there was a picture of everyone by the

14  reflecting pool?

15  A.  I do.

16  Q.  You don't remember Mr. Pezzola in that picture; correct?

17  A.  I do not.

18  Q.  Okay.  So now we're establishing somewhat of a timeline

19  or a time frame as to when Mr. Pezzola left; correct?

20  A.  Correct.

21  Q.  Now, I want you to look at your notes.  12:57.  Correct?

22  A.  Correct.

23  Q.  It has a reference to Pezzola?

24  A.  It does.

25  Q.  That's right after the first breach where Ryan Samsel

1    basically took down the first barrier; is that fair to say?

2    A.  Yes.

3    Q.  That's when Mr. Pezzola comes back into the equation; is

4    that correct?

5    A.  I believe he marches over from the food trucks with them

6    to --

7    Q.  Okay.  So let's go through that.

8              MR. METCALF:  Can we pull up -- actually, wait.

9    Before we do that, can we go to 16:03 on this video, and I'd

10   ask that 16:03 to 16:33 be played.

11             (Video played.)

12   BY MR. METCALF:

13   Q.  You remember this part of the montage; correct?

14   A.  I do, and Mr. Pezzola's not here --

15   Q.  He's not in that entire scenario?

16   A.  Correct.

17             MR. METCALF:  Just ask that this be played until

18   6:33.

19             (Brief pause.)

20             THE COURT:  16:33, for the record.

21             MR. METCALF:  Thank you, Your Honor.  Sorry about

22   that.

23             (Video played.)

24   BY MR. METCALF:

25   Q.  So no Pezzola; no Matthew Greene; right?

1    A.  Correct.

2    Q.  Okay.  Just stopped at 6:33 [sic].

3            So follow me here.  Pezzola is not seen here,

4    (indicating); he's not seen here, (indicating); he's not

5    seen here, (indicating.)  Correct me at any point if I'm

6    off.  Here, (indicating); here, (indicating); here,

7    (indicating); here, (indicating.)  And this is where we are

8    right now; right?  (Indicating.)

9    A.  Correct.

10            MR. METCALF:  Can we show the witness Exhibit-176,

11    please.  Government-176.  And can we show the -- can we

12    start at 2:01 of 176.

13            (Video played.)

14    BY MR. METCALF:

15    Q.  Okay.  So -- same video that we just watched; correct?

16    A.  Yes.

17    Q.  Except this is from the actual camera and it's the

18    entire -- it -- the entire video; is that fair to say?

19    A.  Yes.

20    Q.  And the time that we're talking about right now, we're

21    talking about 11:54 a.m., is that correct?

22    A.  Correct.

23    Q.  Now, the march continues on at least until 3:30, from my

24    notes.  No Mr. Pezzola, no Mr. Greene in this video; is that

25    correct?

1    A.  Correct.

2    Q.  And now, you see a group over here with the orange hats;

3    correct?  (Indicating.)

4    A.  Yes.

5    Q.  Where are they from?  Are they from Arizona?  Is that

6    the Arizona group?

7    A.  I believe so.

8    Q.  So you have the orange hats.  It's fair to say that the

9    orange hats -- or those wearing the orange hats are more at

10   the end of the march?  Is that accurate?

11   A.  Yes.

12   Q.  All right.  So --

13   A.  In this video, yes.

14   Q.  Well, on that -- on January 6th in particular as well;

15   right?

16   A.  When they're marching up the National Mall, I believe

17   some of them are, kind of, more towards the front, but as

18   the march continues, they -- they diffuse out.

19   Q.  I understand what you are saying.  So in this video,

20   they're in the back, not -- and they're all from -- or

21   they're mostly from Arizona; right?

22   A.  Yes.

23   Q.  But at other parts in the morning, they were at

24   different parts of the march?

25   A.  Yes.

1    Q.  Okay.  So now, the video is at -- we could stop it here.

2    The video is at 3:52.  And we're talking what time?

3    A.  11:55 a.m.

4    Q.  All right.  So how much later from here is the march?

5                MR. METCALF:  Can we go back to Exhibit-1002 --

6    1000 is -- can we go back to that exhibit.

7    BY MR. METCALF:

8    Q.  How much later from here is the food trucks?

9    A.  So they get to the food trucks around 12:07 p.m.

10   Q.  Okay.

11   A.  So 12 minutes or 14 minutes.

12   Q.  So that would be around -- so they come up here; right?

13   Would the food trucks be around this area that I'm circling

14   now?  (Indicating.)

15   A.  No, keep going.  This is the food trucks, (indicating.)

16   Q.  Okay.  Can we go to -- I don't have a specific time

17   frame for it.  But let's go to 18 minutes on this video.  So

18   this is 12:07.

19   A.  It is.

20   Q.  Mr. Pezzola is not in this video in this montage, is he?

21   A.  No.

22                MR. METCALF:  Let's go to 18:30 on this video,

23   please.

24   BY MR. METCALF:

25   Q.  Now we're at 12:23.  Mr. Pezzola is not in this video

1   either, is he?

2   A.  Correct.

3   Q.  Okay.  Do you remember -- okay.  I'm going to go back

4   now.

5          MR. METCALF:  You could actually take this off the

6   screen.

7   BY MR. METCALF:

8   Q.  During your investigation, you looked into -- we'll just

9   talk about Mr. Pezzola and Mr. Greene.  You went through

10  bank accounts -- or your team went through bank accounts?

11  A.  The case agent likely who had the case went through bank

12  accounts.

13  Q.  Phone records?

14  A.  The case agent likely, yes.

15  Q.  Mm-hmm.  And in going -- well, I'll keep going.  You

16  found receipts that Mr. Pezzola had in -- staying at hotels;

17  right?

18          MR KENERSON:  Objection.  Scope.

19          THE COURT:  Sustained.

20  BY MR. METCALF:

21  Q.  Okay.  The case agent, if they had phone records, they

22  would put them into a program that you use called

23  Cellebrite; is that correct?

24  A.  So I can't speak for the case agent, but there's

25  different programs you can put the cell phone records into,

1    and I don't know that Cellebrite is one of those programs.

2    Q.  Okay.  Do you ever -- do you recall reviewing any

3    details in Mr. Greene's phone?

4    A.  What do you mean by details?

5    Q.  Pictures would help out with your investigation; right?

6    A.  Yes.

7    Q.  A lot of people had pictures this day; right?

8    A.  Yes.

9    Q.  And if you got access to someone's phone who ultimately

10   was with Mr. Pezzola that day, you'd want to see what

11   pictures were on that phone; right?

12   A.  Correct.

13   Q.  All right.  So what I'm going to ask is that I'm able to

14   show you a picture from Mr. Greene's phone to see if you

15   actually saw this picture.

16              MR. METCALF:  Your Honor, can I step back for one

17   second and just grab my computer?

18              THE COURT:  Yes.

19              MR. METCALF:  Thank you.

20   BY MR. METCALF:

21   Q.  This is the only computer I'm able to open this up on,

22   and I'm not able to print it.  So I apologize about having

23   to show it to you this way.

24              MR. METCALF:  I'm going to ask that this just be

25   published just for the witness.

1    BY MR. METCALF:

2    Q.  Ms. Miller, do you see what's in front of you?

3    A.  I do.

4    Q.  Based on your knowledge, based on how much extensive

5    work you've put into knowing what Mr. Pezzola looked like

6    that day, is this Mr. Pezzola right here?

7    A.  It is.

8    Q.  Okay.  Is this someone who you have come to have known

9    who was with Mr. Pezzola that day?

10   A.  It is.

11   Q.  Do you know this area that's in -- that they're walking

12   towards?

13   A.  I do.

14   Q.  Okay.  And that's right by essentially where the first

15   breach happened; is that correct?

16   A.  Yes.

17   Q.  Okay.  Now, take a look at this time scenario.  Do you

18   see the time right there?

19   A.  I do.

20   Q.  And what is that time?

21   A.  It says "12:50 p.m."

22   Q.  Okay.  And it would appear that they were heading

23   towards that scenario where the first breach just happened;

24   is that fair to say in looking at this photo?

25         MR. KENERSON:  Objection to "just happened."

```
 1                    MR. METCALF:  I could rephrase.
 2                    THE COURT:  All right.
 3     BY MR. METCALF:
 4     Q.  Is it fair to say that it looks like Pezzola's traveling
 5     right -- towards where the first breach happened?
 6     A.  He's traveling towards the direction of the Peace
 7     Monument.
 8     Q.  And that's where the first breach happened; right?
 9     A.  Yes.
10     Q.  And the time frame matches up with when the first breach
11     happened; correct?
12     A.  No, the first breach is after this.
13     Q.  How much later --
14     A.  12:53.
15     Q.  Okay.  So this is three minutes before?
16     A.  Yes.
17     Q.  And then your notes indicate Pezzola at 12:57?
18     A.  Yes.
19     Q.  Have you ever seen this photograph?
20     A.  I believe I have, but it's been some time.
21                    MR. METCALF:  Your Honor, at this time, I ask that
22     this be marked as Pezzola's Exhibit-253 into evidence.
23                    MR. KENERSON:  We have no objection to the
24     photograph.  I just note that what's on the screen is not
25     just this photograph.
```

```
 1                    THE COURT:  All right, then.  The photograph will
 2         be admitted.
 3                    MR. METCALF:  Okay.
 4                    THE COURT:  The photograph will be admitted, but
 5         the --
 6                    MR. METCALF:  So then I'd ask for permission to
 7         publish, and I don't know how to do so under these
 8         circumstances.
 9                    THE COURT:  If you can manipulate this so that we
10         only have the photograph on the screen.
11                    MR. KENERSON:  And for the record, we don't object
12         to the metadata either on the right side.
13                    MR. METCALF:  So then, Your Honor, I ask that the
14         photograph and the right-side column be admitted as the --
15         as a piece of evidence.
16                    THE COURT:  Well, I -- that -- very well.  It's
17         just, how do we display this for the jury?  Again, I don't
18         know how to --
19                    MR. METCALF:  I could bring --
20                    THE COURT:  You'll just have to bring it up on
21         your computer with --
22                    MR. METCALF:  I could bring it down --
23                    (Brief pause.)
24                    MR. MCCULLOUGH:  Court's indulgence.
25                    THE COURT:  Yep.  Yep.
```

```
 1                   (Brief pause.)
 2                   It appears to have gallery view and then thumbnail
 3      view.  I bet if you change the view at the top -- do you see
 4      the -- Mr. Metcalf, do you see gallery view?  If you change
 5      that to thumbnail view or -- maybe that will -- yeah.  And
 6      then just click on what you're -- click on the photo we're
 7      talking about.  Yep.
 8                   MR. METCALF:  So this is it right here.
 9                   THE WITNESS:  Try double-clicking on --
10                   THE COURT:  Double-clicking on that.
11                   MR. METCALF:  It's the -- it still shows
12      everything at the bottom.  And it's not allowing me to bring
13      it down to -- does Your Honor see that?
14                   MR. MCCULLOUGH:  Can I just try it?
15                   MR. METCALF:  Please.
16                   (Brief pause.)
17                   Usually, my staff helps me on computer stuff.
18                   MR. MCCULLOUGH:  I'm your staff today.
19                   MR. METCALF:  There we go.
20                   (Brief pause.)
21                   THE COURT:  All right.  Thank you, Mr. McCullough.
22                   This is -- what exhibit number?  This is --
23                   MR. METCALF:  It still doesn't have the metadata,
24      though.  Pezzola-253.  Is that accurate, Ms. Harris?
25                   THE DEPUTY CLERK:  Yes.
```

1      THE COURT:  All right.  Permission to publish is

2   granted.

3      MR. METCALF:  Thank you.

4   BY MR. METCALF:

5   Q.  Just -- sorry, Agent Miller.  Got to go through this one

6   more time.  This individual with the hat, Mr. Pezzola?

7   A.  Yes.

8   Q.  This individual right here, (indicating) you've come to

9   know him as someone who was with Mr. Pezzola that day?

10  A.  Yes.

11  Q.  Do you know his name?

12  A.  I do.

13  Q.  What's his name?

14  A.  Art Lashome [ph].

15  Q.  Was he ever arrested?

16      MR. KENERSON:  Objection.

17      THE COURT:  Sustained.

18  BY MR. METCALF:

19  Q.  Now, which direction does Mr. Pezzola look to be

20  heading?

21  A.  Towards the Peace Circle which is here.  (Indicating.)

22  Q.  Okay.  And when we went over the megadata [sic], it

23  reflected that this picture was taken at 12:50; is that fair

24  to say?

25  A.  Yes.

1    Q.  And the first breach -- can you draw where the first

2    breached barriers happened.

3    A.  It's going to be this way, (indicating.)  You can't see

4    it on this photo.

5    Q.  But it's in that vicinity right there?  (Indicating.)

6    A.  Yes.

7    Q.  And your first notes have mention of Pezzola at 12:57;

8    is that correct?

9    A.  Technically, 12:56, but yes.

10   Q.  Okay.  Can you read that for me, then.

11   A.  It says -- well, it's in parentheses next to it.  It

12   says "12:57:30, see Rehl and Pezzola, same shot, 12:42."

13   Q.  So just to recap, in that montage -- well, actually,

14   before I get to the montage, in your -- during the course of

15   your investigation, you learned that Mr. Pezzola did leave

16   the march that day?

17   A.  I did.

18   Q.  And you learned that he left the march for over an hour?

19   A.  I learned from another individual that they had left.  I

20   don't know how long they were gone, but that they had left,

21   yes.

22   Q.  Okay.  Matthew Greene indicated that it was least an

23   hour, hour-and-a-half; is that right?

24          MR. KENERSON:  Objection.  Hearsay.

25          THE COURT:  Sustained.

1    BY MR. METCALF:

2    Q.  Did you -- who's the other individual that you learned

3    that they left from?

4    A.  Matthew Greene.

5    Q.  Okay.  And in saying -- in learning that from Matthew

6    Greene, you learned that he was -- both of them were gone

7    from the march for anywhere from an hour to an hour- --

8                MR. KENERSON:  Same objection.

9                MR. METCALF:  -- -and-a-half?

10               THE COURT:  Sustained again.

11   BY MR. METCALF:

12   Q.  Okay.  And going back to the montage, there's no videos

13   that show Mr. Pezzola or Mr. Greene from 11:15 until at

14   least 12:55; is that accurate?

15   A.  Not that I can think of.  Yes.

16   Q.  Okay.  Thank you.

17               (Brief pause.)

18               Now, in those notes that you have in front of you,

19   you also give -- you also break down each defendant; is that

20   correct?

21   A.  I do.

22   Q.  And in breaking down Mr. Pezzola, there's a specific

23   section for him; is that correct?

24   A.  Yes.

25   Q.  And how long was Mr. Pezzola in the building for?

1    A.   24 minutes.

2    Q.   So do you have him entering at 2:12 or 2:13?

3    A.   2:13.

4    Q.   Which would mean that he was leaving -- or he left at

5    2:37; right?

6    A.   2:36:56.  Yes.  2:37, if we round up.

7    Q.   Okay.  So wouldn't that be 23 minutes?  Or is it more

8    closer to 24 minutes?

9    A.   It's closer to 24.

10           MR. METCALF:  All right.  Can we go to Exhibit --

11   Government's Exhibit-115, please.  I ask that this be played

12   from the beginning.

13           (Video played.)

14   BY MR. METCALF:

15   Q.   You're familiar with this exhibit; correct?

16   A.   Yes.

17   Q.   In fact, you testified about this exhibit --

18   A.   Yes.

19   Q.   -- correct?

20           And this is the --

21           MR. METCALF:  Actually, can we just stop it there.

22   Let the record reflect I stopped at 15 seconds into

23   Government Exhibit-115.

24   BY MR. METCALF:

25   Q.   This is where Mr. Pezzola left from; is that correct?

1    A.  It is.

2    Q.  And he left at 2:37?

3    A.  Yes.

4    Q.  Okay.  And this video now is at 2:53; is that correct?

5    A.  Correct.

6    Q.  So Mr. Pezzola had nothing to do and no interaction with

7    all of these people at this time; is that correct?

8    A.  He had already exited the building.

9    Q.  And there's nothing to show that, in his exit, he

10   communicated with any of these people; is that fair to say?

11   A.  So he has conversations or talks to people while he's

12   inside.  I don't know if those people are still remaining in

13   or if they've left, but I can say Pezzola has already exited

14   the building at this point in this clip.

15   Q.  And when Mr. Pezzola exits, he exits with a group of

16   other individuals.  Is that correct?

17   A.  I'd have to look at the footage again, but I know he

18   exits through the same window he came in through.

19   Q.  Okay.  We'll go back to that.

20           MR. METCALF:  Can we go to Government's

21   Exhibit-113X, please.

22           (Video played.)

23   BY MR. METCALF:

24   Q.  Now, that circle, Mr. Pezzola, no hat?

25   A.  Correct.

1    Q.  He's not talking to anybody during this time; right?

2    Look at him.  Kind of looks like a little lost puppy; right?

3    A.  He appears to be talking to this individual briefly.

4    Q.  When is that?  Look at him here.

5    A.  You can back it up a little bit.  Not, like, a long

6    conversation, but --

7    Q.  All right.  Let's start it from the beginning again,

8    actually.  This is Government's Exhibit-113X.

9            (Video played.)

10   BY MR. METCALF:

11   Q.  Pezzola over here.  Not talking to anybody; right?

12   A.  Correct.

13   Q.  He doesn't actually even look like he knows where he's

14   going; is that correct?

15            MR. KENERSON:  Objection to speculation as to

16   whether he knows where he's going.

17            MR. METCALF:  I'll rephrase.

18   BY MR. METCALF:

19   Q.  Does Mr. Pezzola look like he's going to a specific

20   place at this point in time?

21   A.  He does not.

22   Q.  He actually looks like he's lost, right, or looking for

23   somebody, maybe?

24   A.  Potentially.

25   Q.  But he's not talking to anybody; right?

1    A.   Well, he did speak with this man.  (Indicating.)

2    Q.   When was that, though?

3    A.   You just missed it.  Back it up.

4    Q.   Right here?

5    A.   No, keep going.  Right here.

6    Q.   Okay.  So this guy right here, (indicating)?  They

7    exchange what?  A hello?

8    A.   I don't know what they exchange.  I'm not privy to this

9    conversation, but they stop.  It appears as if they're

10   potentially exchanging a conversation.

11   Q.   All right.  So then let's look at this.  There's nothing

12   to show that Mr. Pezzola knew any of these people, right, or

13   interacted with these people?

14   A.   Not based on this video footage, correct.

15   Q.   Nothing to show that he interacted with any of these

16   people over here?  (Indicating.)

17   A.   Not in this video footage.  Correct.

18   Q.   Nothing to show him -- or any video footage that you've

19   seen -- you've spent how many hours, would you say,

20   approximately you have reviewed video footage for this case?

21   If you had to approximate, what would you say?  Hundreds?

22   A.   Yes.

23   Q.   If not thousands?

24   A.   I don't -- I've had a team with me, because that's a lot

25   of video --

```
 1    Q.  All right.  Well --

 2    A.  -- but yes.

 3    Q.  -- you.  Specifically you.

 4    A.  Hundreds.  Yes.

 5    Q.  Okay.  You've never seen him talk to any of these

 6    people; right?  (Indicating.)

 7    A.  Again, he talks with people.  I can't be -- I'm not

 8    comfortable testifying to those exact individuals.

 9    Q.  Okay.  Nothing to show him communicating with any of

10    these people?  (Indicating.)

11    A.  On this video, correct.

12              MR. METCALF:  Keep playing.

13              (Video played.)

14    BY MR. METCALF:

15    Q.  And this is right after he got in, right?

16    A.  No.  This is, like, 13 minutes or 12 minutes after he

17    entered.

18    Q.  Okay.  And he's still in the same spot.  He entered

19    right here, (indicating.)  Right?

20    A.  He did, but he left this spot and he's coming back to it

21    now.

22    Q.  So he's like a hermit crab.  He's going right back to

23    where he started; right?

24    A.  I don't know what he's doing, if he -- I don't know what

25    he's doing.
```

1    Q.  Exactly.  He's not really planned anything out here; is

2    that fair to say?

3          MR. KENERSON:  Objection to characterization of

4    whether he's planned anything.

5          THE COURT:  Sustained.

6          MR. KENERSON:  Speculation.

7          THE COURT:  Sustained.

8    BY MR. METCALF:

9    Q.  Has he -- is he maneuvering around at this point in time

10   as if he knows where he's going or has any sort of idea of

11   what he's going to do next?

12   A.  He's maneuvering around as if he's looking for somebody

13   and he appears to, moments before, have been talking on --

14   or doing something with his ear, which -- I know there's an

15   earpiece there, so potentially, maybe, seeing where the rest

16   of the group is.  I don't know what Pezzola's doing.

17   Q.  Okay.  But there's no one else in the rest of the group

18   that's in the building at that point in time; is that fair

19   to say?

20   A.  Yes.  The male he was just talking to was in the

21   marching group.  That's William Chrestman, Kansas City Proud

22   Boy.

23   Q.  Okay.  But that -- the guy with the backpack and the

24   Army scenario?

25   A.  Correct.

1    Q.   Okay.  But you have no video or no information that he

2    dealt with Mr. Chrestman before that interaction, do you?

3    A.   Outside of the marching group, correct.

4    Q.   Yeah, but he wasn't -- Mr. Pezzola and Mr. Chrestman

5    were communicating with each other during the marching

6    group?

7    A.   No, they were both in the marching group, though.

8    Q.   Okay.  But there was a whole bunch of other people in

9    the marching group; right?

10   A.   That's correct.

11   Q.   And Mr. Pezzola wasn't communicating with Mr. Chrestman

12   during the -- that marching group; right?

13   A.   So there's different angles of different video footage.

14   I don't have every specific angle of that march.  So I don't

15   know if, at any point, they communicated or not.

16   Q.   Okay.  But the angles that you do have and that you have

17   seen, you have not seen Mr. Pezzola and Mr. Chrestman

18   communicating with each other during the march; is that fair

19   to say?

20   A.   That is.

21              MR. METCALF:  Can we go to Government Exhibit-114,

22   please.

23   BY MR. METCALF:

24   Q.   So after we got the lost puppy dog wandering around the

25   hallways -- you're familiar with this video?

1    A.   Yes.

2    Q.   What time is this?

3    A.   This is 2:35:50 p.m.

4    Q.   Same window; right?

5    A.   Correct.

6    Q.   All right.  Let's play this video.

7              (Video played.)

8    BY MR. METCALF:

9    Q.   Is this Mr. Pezzola over here?

10             MR. METCALF:  Can we pause.

11             THE WITNESS:  He's here, (indicating) but yes.

12             MR. METCALF:  There we go.  Actually, you know

13   what?  114 also has a -- let's do this.  Let's go to 114X,

14   please.  Government Exhibit-114X.

15   BY MR. METCALF:

16   Q.   And this one has -- we've got excellent technology;

17   right?  Boom.  We get the circle of Pezzola; right?

18   A.   Correct.

19             MR. METCALF:  Let's keep going.

20             (Video played.)

21   BY MR. METCALF:

22   Q.   Now, he has a communication with the officers here,

23   (indicating); right?

24             MR. METCALF:  Can we pause.

25   BY MR. METCALF:

1    Q.  All Capitol Police; correct?

2    A.  Yes.

3    Q.  Mr. Pezzola gives the shield back to the police and then

4    exits just where he came out of; is that correct?

5    A.  I wouldn't characterize it that way, but the shield --

6    Q.  Okay.

7    A.  -- the shield --

8    Q.  Let's --

9    A.  -- does go back to the --

10   Q.  Okay.

11   A.  -- police officers.

12            MR. METCALF:  Your Honor, I ask that -- that's

13   non-responsive and that the answer be stricken.

14            THE COURT:  I'm going to overrule that objection,

15   but for the moment -- but -- well, I'll sustain the

16   objection and strike --

17            MR. METCALF:  Thank you, Your Honor.

18            THE COURT:  -- and strike the answer.

19            But let me just also say this.  Can I just have

20   both the attorney and witness wait for the other to complete

21   their sentence before answering.

22            MR. METCALF:  I'm trying really hard this time,

23   Your Honor.

24            THE COURT:  Well, let's -- I -- here's what I'm --

25   I'm asking for not just trying but success.

1    MR. METCALF:  I'm going to aim just for that and

2    achieve it.

3            THE COURT:  All right.

4            MR. METCALF:  All right.  Can we play the video

5    starting at 12 seconds, please.

6            (Video played.)

7    BY MR. METCALF:

8    Q.  Circle's still on Pezzola; correct?

9    A.  It is.

10           (Brief pause.)

11           MR. METCALF:  Now, let's pause it right there.

12   BY MR. METCALF:

13   Q.  At that point in time, Pezzola does not have the shield

14   in his hands; right?

15   A.  Correct.

16           MR. METCALF:  Can we go back to the beginning of

17   this video at one second, please.

18           (Brief pause.)

19           Let's go frame by frame.

20           (Video played.)

21   BY MR. METCALF:

22   Q.  There's Pezzola when we first see him in the video;

23   right?

24   A.  Yes.

25           MR. METCALF:  Let's keep going.

```
 1                    (Brief pause.)

 2                    Excellent work, must say.

 3                    (Brief pause.)

 4      BY MR. METCALF:

 5      Q.  All right.  At this time, are you disputing that he has

 6      the shield in his hand?

 7      A.  No.

 8      Q.  Okay.  So let's find it.

 9                    (Brief pause.)

10                    There's a little reflection.

11                    (Brief pause.)

12                    I didn't mean for it to be this slow.  We're going

13      to get there and then we're going to have lunch.

14                    (Brief pause.)

15                    Any second now.

16                    (Brief pause.)

17                    That's the 14 -- keep playing.

18                    (Brief pause.)

19                    Okay.  So let's just play it, then, instead of

20      going frame by frame.

21                    (Video played.)

22                    MR. METCALF:  Okay.  Right there -- let's pause

23      it.

24      BY MR. METCALF:

25      Q.  Did you just see the shield?
```

1    A.  I did.

2              MR. METCALF:  All right.  Let's keep playing.

3              (Video played.)

4    BY MR. METCALF:

5    Q.  Now, there's still Mr. Pezzola.  And it looks like he's

6    giving the shield right to the police officers -- or the

7    Capitol Police; correct?  Because now, he doesn't have it in

8    his hand anymore.  Is that accurate?

9    A.  The shield is now in the possession of Capitol Police,

10   yes.

11   Q.  And it was handed over from Mr. Pezzola to them because

12   it was in his hands before it was in the officers' hands; is

13   that fair to say?

14   A.  The shield was provided back to the Capitol Police, yes.

15   Q.  By Mr. Pezzola?

16   A.  By Mr. Pezzola.

17   Q.  Thank you.

18             All right.  And then he exits the same way that he

19   entered from; is that fair to say?

20   A.  Yes.

21   Q.  And this is 24 minutes, according to your calculation,

22   from when he entered from the same exact spot; is that fair

23   to say?

24   A.  Yes.

25             (Brief pause.)

1          MR. METCALF:  Can we go back to Government

2    Exhibit-113X, please, unless, Your Honor, you think that

3    this is a good time to break.

4          THE COURT:  I think it is a good time to break.

5          Ladies and gentlemen, we'll see you after the

6    lunch hour.

7          (Jury returned to jury room.)

8          THE COURT:  All right.  Everyone may be seated.

9          Agent, you may step down.

10         (Witness steps down.)

11         THE COURT:  And we'll see everyone at 1:30.

12         THE DEPUTY CLERK:  All rise.  This Honorable Court

13   stands in recess until the return of Court at 1:30.

14         (Luncheon recess taken at 12:31 p.m.)

15              *  *  *  *  *  *  *  *  *  *  *

16         **CERTIFICATE OF OFFICIAL COURT REPORTER**

17   **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

18   **that the above and foregoing constitutes a true and accurate**

19   **transcript of my stenographic notes and is a full, true and**

20   **complete transcript of the proceedings to the best of my**

21   **ability, dated this 15th day of March 2023.**

22                        **/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
                         **Official Court Reporter**
23                       **United States Courthouse**
                         **Room 6722**
24                       **333 Constitution Avenue, NW**
                         **Washington, DC 20001**

25

**'**

**'The** [1] - 13630:6

**/**

**/s/Timothy** [1] - 13723:22

**0**

**06511** [1] - 13572:22

**1**

**1** [3] - 13575:3, 13575:9, 13575:13
**1-ETHAN** [1] - 13572:4
**10** [5] - 13592:14, 13638:8, 13644:1, 13644:6, 13690:5
**100** [2] - 13679:9, 13696:1
**1000** [1] - 13701:6
**10003** [1] - 13572:18
**10016** [1] - 13573:13
**1014** [1] - 13573:9
**106** [29] - 13575:20, 13575:23, 13576:2, 13577:6, 13578:7, 13578:8, 13580:18, 13582:11, 13582:20, 13583:22, 13583:24, 13584:1, 13586:25, 13587:3, 13587:8, 13587:12, 13587:15, 13587:19, 13588:4, 13589:3, 13590:13, 13591:2, 13592:16, 13593:2, 13593:12, 13593:23, 13594:1, 13622:7, 13626:19
**10:00** [4] - 13690:5, 13690:13, 13693:3, 13693:19
**10:06** [5] - 13694:7, 13694:8, 13696:3, 13696:4, 13696:11
**10:15** [2] - 13696:16, 13696:18
**10:19** [2] - 13696:21, 13696:23
**10:21** [2] - 13694:8
**10:28** [1] - 13694:11
**10:37** [1] - 13581:23
**10:39** [1] - 13690:7
**10:48** [1] - 13690:7
**113** [1] - 13573:15
**114** [1] - 13718:13
**114X** [1] - 13718:13

**11:13** [1] - 13581:24
**11:15** [5] - 13694:14, 13694:19, 13694:24, 13696:11, 13710:13
**11:17** [1] - 13591:15
**11:21** [4] - 13694:14, 13694:19, 13694:24, 13696:23
**11:39:03** [1] - 13591:13
**11:54** [1] - 13699:21
**11:55** [1] - 13701:3
**12** [3] - 13701:11, 13715:16, 13720:5
**12:01:55** [1] - 13645:6
**12:07** [2] - 13701:9, 13701:18
**12:23** [1] - 13701:25
**12:31** [1] - 13723:14
**12:42** [1] - 13709:12
**12:50** [2] - 13704:21, 13708:23
**12:53** [1] - 13705:14
**12:55** [1] - 13710:14
**12:56** [3] - 13594:10, 13594:11, 13594:22, 13595:2, 13709:9
**12:57** [7] - 13690:11, 13690:13, 13693:8, 13693:20, 13697:21, 13705:17, 13709:7
**12:57:30** [1] - 13709:12
**12th** [4] - 13615:13, 13615:25, 13616:1, 13616:3
**13** [1] - 13715:16
**14** [2] - 13701:11, 13721:17
**1420** [1] - 13572:24
**15** [2] - 13572:6, 13711:22
**153** [1] - 13573:5
**15th** [3] - 13581:9, 13581:10, 13723:21
**16:03** [2] - 13698:9, 13698:10
**16:33** [2] - 13698:10, 13698:20
**176** [1] - 13699:12
**1776** [7] - 13618:22, 13622:2, 13649:5, 13651:17, 13651:18, 13651:24, 13652:2
**17th** [1] - 13581:10
**18** [1] - 13701:17
**18:30** [1] - 13701:22
**1:21-cr-00175-TJK-1** [1] - 13572:2
**1:21-cr-00175-TJK-2**

**11:13** [1] - 13572:3
**1:21-cr-00175-TJK-3** [1] - 13572:3
**1:21-cr-00175-TJK-5** [1] - 13572:4
**1:21-cr-00175-TJK-6** [1] - 13572:4
**1:30** [2] - 13723:11, 13723:13
**1st** [5] - 13572:21, 13649:15, 13649:16, 13649:18, 13651:14

**2**

**2** [6] - 13575:4, 13575:9, 13575:14, 13578:6, 13594:22, 13685:22
**2-JOSEPH** [1] - 13572:5
**20001** [2] - 13573:19, 13723:24
**20005** [1] - 13572:25
**202** [3] - 13572:15, 13572:25, 13573:20
**2021** [9] - 13591:12, 13591:14, 13668:14, 13669:2, 13670:24, 13670:25, 13672:4, 13675:17, 13682:6
**2022** [4] - 13653:8, 13653:12, 13677:25, 13682:7
**2023** [2] - 13572:6, 13723:21
**203** [1] - 13572:22
**20530** [1] - 13572:15
**20777** [1] - 13573:3
**209** [1] - 13573:6
**20th** [6] - 13572:17, 13581:23, 13589:12, 13591:12, 13591:14, 13615:13
**21-175** [2] - 13575:2, 13644:14
**23** [1] - 13711:7
**24** [1] - 13711:1, 13711:8, 13711:9, 13722:21
**240** [1] - 13573:3
**252-7233** [1] - 13572:15
**253** [3] - 13686:4, 13686:6, 13686:8
**253-0514** [1] - 13573:13
**254** [4] - 13685:21, 13685:22, 13685:24
**264** [2] - 13685:10,

13685:21
**2:00** [1] - 13594:11
**2:01** [1] - 13699:12
**2:12** [3] - 13594:24, 13595:10, 13711:2
**2:13** [3] - 13661:11, 13711:2, 13711:3
**2:14:02** [1] - 13578:18
**2:35:50** [1] - 13718:3
**2:36:56** [1] - 13711:6
**2:37** [3] - 13711:5, 13711:6, 13712:2
**2:39** [1] - 13591:6
**2:53** [1] - 13712:4

**3**

**3** [3] - 13575:4, 13575:10, 13575:14
**3-ZACHARY** [1] - 13572:5
**305** [2] - 13573:7, 13573:10
**33012** [1] - 13573:9
**33014** [1] - 13573:6
**333** [2] - 13573:19, 13723:24
**354-3111** [1] - 13573:20
**383** [1] - 13572:21
**393-3017** [1] - 13572:22
**3:13** [1] - 13661:20
**3:30** [1] - 13699:23
**3:52** [1] - 13701:2

**4**

**401** [1] - 13623:25
**403** [15] - 13584:2, 13584:21, 13593:25, 13599:4, 13606:5, 13606:13, 13606:10, 13611:8, 13618:18, 13622:2, 13623:25, 13642:10, 13642:11, 13642:12, 13678:25
**403-7323** [1] - 13573:7
**404(b** [1] - 13624:25
**407A** [1] - 13619:8
**407B** [2] - 13621:4, 13621:15
**407D** [2] - 13624:9, 13624:11
**41A** [1] - 13599:13
**41B** [1] - 13599:14
**42** [1] - 13627:18
**429-6520** [1] - 13572:25
**472-3391** [1] - 13573:3

13685:21
**48** [1] - 13572:8
**49** [1] - 13573:9
**4:53** [1] - 13613:22
**4r** [1] - 13572:18
**4th** [2] - 13572:14, 13685:1

**5**

**5** [3] - 13575:5, 13575:11, 13575:15
**5-ENRIQUE** [1] - 13572:6
**50** [1] - 13627:18
**500-35** [1] - 13627:7
**500-92** [1] - 13613:20
**500-97** [1] - 13611:14
**501-1** [2] - 13684:1, 13684:9
**503-1** [1] - 13684:19
**509** [1] - 13684:18
**509-25** [1] - 13645:2
**509-26** [1] - 13646:5
**510** [1] - 13632:7
**510-48** [1] - 13632:7
**512-19** [1] - 13594:4
**514** [1] - 13615:7
**514-61** [1] - 13596:21
**515-6** [2] - 13591:1, 13593:17
**516-1** [4] - 13578:12, 13578:23, 13581:15, 13581:17
**555** [1] - 13572:14
**59047** [1] - 13573:16
**5th** [19] - 13664:19, 13665:2, 13665:6, 13665:13, 13665:23

**6**

**6** [3] - 13575:5, 13575:12, 13575:15
**6-DOMINIC** [1] - 13572:6
**601-41** [1] - 13602:19
**601-41A** [1] - 13599:8
**601-41B** [1] - 13599:8
**6175** [1] - 13573:5
**646** [1] - 13573:13
**6722** [2] - 13573:18, 13723:23
**6:33** [2] - 13698:18, 13699:2
**6th** [55] - 13573:12, 13589:6, 13589:15, 13589:24, 13590:1, 13596:13, 13597:15, 13597:16, 13598:15, 13607:12, 13608:24,

13608:25, 13612:4, 13612:8, 13614:17, 13614:22, 13615:4, 13621:3, 13621:12, 13624:19, 13625:23, 13627:21, 13627:23, 13629:9, 13629:22, 13634:20, 13634:21, 13636:24, 13652:6, 13652:8, 13652:11, 13660:10, 13660:11, 13663:4, 13663:10, 13663:15, 13664:10, 13665:19, 13665:20, 13666:1, 13666:4, 13666:19, 13666:22, 13666:24, 13668:5, 13668:8, 13671:5, 13671:10, 13675:20, 13677:5, 13679:5, 13679:10, 13681:3, 13693:20, 13700:14

**7**

**7** [1] - 13572:17
**7166** [1] - 13573:2
**764-9347** [1] - 13573:16
**775** [1] - 13573:16
**7:18:03** [1] - 13646:7
**7th** [4] - 13594:7, 13597:13, 13627:10, 13666:24

**8**

**822-2901** [1] - 13573:10
**8:00** [2] - 13594:10, 13594:17
**8:30** [1] - 13645:23
**8:44** [2] - 13595:2, 13596:12
**8th** [1] - 13599:17

**9**

**9** [4] - 13695:11, 13695:12, 13695:17, 13695:20
**902-3869** [1] - 13572:19
**917** [1] - 13572:19
**99** [1] - 13573:12
**9:00** [1] - 13572:6
**9:04** [1] - 13695:20
**9:10** [2] - 13695:12, 13695:17
**9:30** [1] - 13645:24

**9th** [2] - 13578:16, 13629:12

**A**

**a.m** [13] - 13572:6, 13591:13, 13591:15, 13594:10, 13594:17, 13690:5, 13690:13, 13693:3, 13693:19, 13696:11, 13696:23, 13699:21, 13701:3
**abandoned** [1] - 13625:6
**ability** [4] - 13586:5, 13615:10, 13617:23, 13723:21
**able** [26] - 13575:24, 13575:25, 13577:7, 13586:14, 13588:12, 13588:13, 13589:23, 13590:5, 13600:14, 13617:21, 13630:16, 13647:12, 13656:24, 13660:1, 13663:23, 13680:1, 13685:8, 13685:11, 13687:19, 13687:22, 13689:19, 13691:1, 13691:11, 13703:13, 13703:21, 13703:22
**absolutely** [4] - 13678:19, 13679:7, 13679:17, 13679:24
**academic** [1] - 13580:8
**access** [5] - 13650:2, 13653:6, 13653:9, 13675:15, 13703:9
**accessed** [4] - 13653:7, 13653:12, 13653:13, 13653:14
**accident** [1] - 13600:19
**accordance** [1] - 13624:23
**according** [1] - 13722:21
**account** [1] - 13599:17
**accounts** [3] - 13702:10, 13702:12
**accurate** [2] - 13601:11, 13606:23, 13657:19, 13685:5, 13685:6, 13686:19, 13690:24, 13693:12, 13700:10, 13707:24, 13710:14, 13722:8, 13723:18

**accusation** [1] - 13659:4
**accused** [1] - 13661:17
**achieve** [1] - 13720:2
**acquire** [2] - 13649:17, 13660:1
**acronyms** [2] - 13676:9, 13676:10
**act** [1] - 13624:22
**acting** [1] - 13612:11
**actions** [1] - 13612:21
**activities** [1] - 13585:21
**activity** [2] - 13671:4, 13671:6
**actual** [4] - 13582:22, 13650:21, 13650:23, 13699:17
**add** [2] - 13587:9, 13675:6
**added** [1] - 13645:12
**addition** [1] - 13598:6
**additional** [3] - 13620:18, 13638:20, 13658:9
**address** [3] - 13593:10, 13638:16, 13643:24
**addressing** [2] - 13583:17, 13596:4
**adds** [3] - 13580:10, 13634:12, 13638:20
**administrative** [1] - 13668:9
**admissible** [5] - 13587:3, 13597:18, 13619:20, 13625:3, 13691:10
**admissions** [1] - 13574:20
**admit** [5] - 13598:19, 13598:20, 13626:12, 13628:14, 13688:7
**admitted** [11] - 13618:4, 13618:12, 13638:24, 13639:21, 13640:19, 13687:1, 13689:15, 13689:17, 13706:2, 13706:4, 13706:14
**admitting** [3] - 13596:24, 13620:13, 13640:17
**admonished** [1] - 13623:9
**adoption** [2] - 13635:6, 13635:8
**advisement** [4] - 13630:23, 13632:4,

13635:10
**affidavit** [12] - 13579:20, 13583:8, 13583:9, 13583:10, 13583:20, 13584:10, 13584:11, 13585:9, 13585:14, 13587:2, 13591:15, 13593:7
**Agent** [21] - 13582:25, 13588:10, 13590:15, 13628:18, 13628:24, 13630:11, 13644:20, 13645:4, 13653:5, 13656:5, 13661:10, 13661:21, 13664:3, 13667:2, 13667:13, 13671:7, 13685:8, 13686:14, 13691:18, 13708:5, 13723:9
**agent** [17] - 13600:14, 13600:16, 13602:4, 13636:3, 13658:17, 13669:16, 13669:17, 13669:21, 13669:22, 13670:1, 13688:25, 13702:11, 13702:14, 13702:21, 13702:24
**agents** [8] - 13670:13, 13670:15, 13670:18, 13670:20, 13673:8, 13673:11, 13673:12, 13673:17
**agnostic** [1] - 13588:7
**ago** [3] - 13692:17, 13692:24, 13692:25
**agree** [9] - 13578:10, 13581:15, 13590:20, 13606:13, 13615:2, 13632:16, 13641:6, 13641:7, 13685:1
**agreed** [1] - 13590:3
**agrees** [1] - 13614:25
**ahead** [2] - 13688:16, 13688:20
**aid** [2] - 13689:19, 13691:12
**aided** [1] - 13573:21
**aim** [1] - 13720:1
**airplane** [1] - 13648:19
**AJ** [1] - 13592:18
**al** [2] - 13580:14, 13644:15
**Albany** [2] - 13668:22, 13669:15
**allegation** [1] - 13608:18
**allege** [1] - 13629:17
**allegedly** [1] - 13660:21

**allow** [4] - 13609:24, 13609:25, 13611:7, 13637:2
**allowed** [4] - 13586:2, 13589:14, 13659:2, 13659:10
**allowing** [1] - 13707:12
**alluding** [1] - 13624:18
**almost** [2] - 13632:9, 13636:14
**alongside** [1] - 13582:24
**altered** [16] - 13599:22, 13600:3, 13600:4, 13600:10, 13600:12, 13600:13, 13600:16, 13601:7, 13601:14, 13603:11, 13603:13, 13603:16, 13608:24, 13641:12, 13641:13, 13641:22
**alternative** [1] - 13585:24
**Amendment** [1] - 13576:9
**AMERICA** [1] - 13572:2
**America** [2] - 13575:3, 13644:14
**ammunition** [2] - 13658:6, 13660:4
**ample** [1] - 13612:10
**Amy** [1] - 13666:17
**analysis** [5] - 13593:2, 13597:16, 13609:19, 13658:20, 13659:16
**and-a-half** [1] - 13710:9
**Anderson** [9] - 13637:12, 13637:14, 13637:16, 13637:19, 13638:5, 13638:12, 13638:13, 13638:15
**angle** [2] - 13639:4, 13717:14
**angles** [2] - 13717:13, 13717:16
**answer** [5] - 13584:18, 13691:7, 13696:1, 13719:13, 13719:18
**answered** [2] - 13625:2, 13676:1
**answering** [1] - 13719:21
**answers** [1] - 13688:14
**antecedent** [1] - 13580:4

**anti** [1] - 13630:9
**anti-murder** [1] -
  13630:9
**anyway** [1] - 13689:11
**AOL** [1] - 13675:11
**apart** [3] - 13596:23,
  13607:6, 13608:5
**apologize** [2] -
  13679:23, 13703:22
**appear** [2] - 13633:10,
  13704:22
**APPEARANCES** [2] -
  13572:11, 13573:1
**appeared** [1] -
  13598:12
**apple** [1] - 13628:9
**application** [2] -
  13587:13, 13641:16
**apply** [1] - 13599:1
**appreciate** [1] -
  13659:12
**approach** [5] -
  13650:9, 13662:10,
  13667:4, 13685:11,
  13686:10
**appropriate** [4] -
  13582:18, 13586:6,
  13636:18, 13643:19
**approximate** [1] -
  13714:21
**area** [2] - 13701:13,
  13704:11
**areas** [1] - 13670:20
**arguably** [2] -
  13599:2, 13618:18
**argue** [7] - 13584:2,
  13586:2, 13595:8,
  13598:20, 13603:5,
  13622:2, 13626:1
**argued** [3] - 13583:6,
  13592:19, 13615:24
**arguing** [7] -
  13584:11, 13595:14,
  13597:2, 13626:11,
  13628:21, 13640:25,
  13641:8
**argument** [29] -
  13580:19, 13582:17,
  13583:22, 13583:24,
  13583:25, 13590:12,
  13594:1, 13595:16,
  13598:2, 13599:3,
  13599:4, 13599:6,
  13599:22, 13606:4,
  13606:7, 13611:7,
  13611:11, 13613:3,
  13617:4, 13617:5,
  13619:11, 13619:15,
  13623:23, 13628:15,
  13631:7, 13631:14,

**arguments** [5] -
  13578:10, 13581:4,
  13589:14, 13615:16,
  13635:23
**Arizona** [3] - 13700:5,
  13700:6, 13700:21
**Army** [1] - 13716:24
**arose** [1] - 13627:22
**arrested** [9] - 13614:8,
  13629:14, 13654:21,
  13655:15, 13656:16,
  13677:17, 13678:2,
  13708:15
**arrests** [1] - 13583:14
**arrow** [2] - 13696:5,
  13697:1
**art** [1] - 13708:14
**articulate** [1] -
  13599:12
**articulated** [3] -
  13606:20, 13612:2,
  13638:5
**articulating** [1] -
  13597:12
**aside** [3] - 13581:21,
  13607:9, 13631:2
**aspect** [1] - 13669:3
**assaulting** [1] -
  13601:5
**asserted** [7] -
  13639:16, 13639:19,
  13639:23, 13640:9,
  13640:14, 13641:2,
  13641:3
**assertion** [1] -
  13609:11
**assigned** [2] -
  13669:16, 13673:11
**assist** [1] - 13629:17
**associated** [2] -
  13672:10, 13682:11
**assumed** [1] - 13590:1
**AT** [1] - 13573:15
**attack** [4] - 13580:8,
  13580:14, 13580:24,
  13596:10
**attempt** [2] -
  13590:15, 13623:6
**attempted** [1] -
  13589:5
**attention** [2] -
  13627:6, 13627:7
**attorney** [2] -
  13681:18, 13719:20
**ATTORNEY** [1] -
  13573:15
**ATTORNEY'S** [1] -
  13572:14
**attorneys** [2] -

**13663:2, 13676:11
**authentic** [1] -
  13600:15
**authoritative** [1] -
  13633:3
**authority** [1] - 13633:1
**Avenue** [3] -
  13573:12, 13573:19,
  13723:24
**avoid** [1] - 13602:25
**aware** [9] - 13627:9,
  13627:22, 13652:9,
  13660:10, 13660:17,
  13665:12, 13668:24,
  13695:3, 13696:15

# B

**B.A** [1] - 13572:12
**back-to-back** [1] -
  13620:19
**backpack** [1] -
  13716:23
**bad** [4] - 13600:1,
  13603:23, 13608:24,
  13626:9
**badly** [3] - 13654:11,
  13654:19, 13656:14
**bail** [1] - 13679:18
**bald** [1] - 13609:11
**ball** [1] - 13601:4
**bank** [4] - 13631:8,
  13702:10, 13702:11
**bar** [4] - 13606:15,
  13611:6, 13622:19,
  13623:12
**barrier** [1] - 13698:1
**barriers** [1] - 13709:2
**based** [5] - 13679:2,
  13694:2, 13704:4,
  13714:14
**basic** [1] - 13680:3
**basis** [9] - 13590:13,
  13596:24, 13609:15,
  13618:21, 13618:22,
  13642:21, 13643:4,
  13643:6, 13688:7
**Beard** [1] - 13579:8
**bearing** [1] - 13679:7
**bears** [1] - 13583:11
**beautiful** [1] - 13676:1
**became** [4] -
  13668:11, 13668:24,
  13669:9, 13682:11
**BEFORE** [1] - 13572:9
**beforehand** [1] -
  13577:9
**began** [1] - 13668:16
**begin** [1] - 13595:10
**beginning** [6] -

**13592:17, 13668:3,
  13675:20, 13711:12,
  13713:7, 13720:16
**begins** [2] - 13613:23,
  13622:20
**behalf** [6] - 13612:11,
  13612:22, 13615:8,
  13623:25, 13627:6,
  13635:3
**belied** [1] - 13621:14
**below** [2] - 13581:1,
  13585:2
**Bench** [3] - 13659:1,
  13676:20, 13687:13
**bench** [3] - 13659:24,
  13682:3, 13691:16
**benefit** [2] - 13639:6,
  13691:11
**Bertino** [24] -
  13582:10, 13582:13,
  13589:18, 13590:20,
  13632:10, 13633:4,
  13634:6, 13634:21,
  13640:3, 13652:18,
  13652:23, 13653:6,
  13653:10, 13653:11,
  13653:16, 13654:11,
  13654:14, 13656:8,
  13657:13, 13657:25,
  13658:18, 13658:23,
  13659:3, 13660:1
**Bertino's** [2] -
  13633:11, 13656:23
**best** [3] - 13648:20,
  13723:20
**bet** [1] - 13707:3
**better** [3] - 13610:7,
  13610:9, 13610:17
**between** [12] -
  13586:24, 13588:3,
  13592:14, 13592:18,
  13593:5, 13595:1,
  13598:8, 13623:5,
  13623:16, 13631:6,
  13671:24
**beyond** [5] - 13659:6,
  13659:20, 13659:21,
  13666:25, 13678:15
**beyond-the-scope** [1]
  - 13659:21
**Biden** [2] - 13591:8,
  13612:16
**big** [3] - 13640:8,
  13671:23, 13671:24
**BIGGS** [1] - 13572:5
**Biggs** [7] - 13575:4,
  13575:14, 13579:20,
  13585:9, 13585:14,
  13591:16, 13636:22
**billions** [1] - 13609:17

**bills** [1] - 13629:11
**bit** [5] - 13581:25,
  13590:10, 13622:9,
  13650:18, 13713:5
**bitch** [2] - 13618:22,
  13622:3
**bites** [1] - 13628:9
**blah** [2] - 13606:18,
  13624:18, 13636:3
**blank** [4] - 13645:6,
  13646:14, 13646:21,
  13646:25
**Block** [2] - 13592:20,
  13592:21
**blow** [1] - 13630:8
**blowing** [1] - 13586:4
**blue** [1] - 13585:3
**boils** [1] - 13631:16
**bona** [1] - 13629:20
**Bones** [3] - 13613:23,
  13615:9, 13630:19
**boom** [1] - 13718:17
**Boots** [6] - 13594:7,
  13595:22, 13595:23,
  13596:7, 13662:4,
  13683:5
**bottom** [2] - 13596:25,
  13707:12
**bouncing** [1] -
  13627:20
**bounds** [2] -
  13681:25, 13682:1
**box** [4] - 13603:4,
  13620:7, 13644:3,
  13644:11
**Boy** [9] - 13609:4,
  13629:19, 13647:17,
  13661:12, 13661:14,
  13661:15, 13671:2,
  13671:8, 13716:22
**Boy-related** [1] -
  13671:2
**Boys** [15] - 13612:20,
  13614:9, 13614:10,
  13623:3, 13628:21,
  13630:13, 13630:14,
  13634:14, 13647:9,
  13668:7, 13671:1,
  13671:4, 13671:5,
  13671:11, 13672:3
**Boys-specific** [1] -
  13668:7
**breach** [8] - 13697:25,
  13704:15, 13704:23,
  13705:5, 13705:8,
  13705:10, 13705:12,
  13709:1
**breached** [1] -
  13709:2
**break** [12] - 13576:18,

13577:9, 13588:3, 13627:1, 13635:13, 13643:21, 13669:23, 13672:7, 13689:16, 13710:19, 13723:3, 13723:4

**breakers** [2] - 13600:1, 13603:23

**breaking** [1] - 13710:22

**brief** [6] - 13611:15, 13720:10, 13720:18, 13721:1, 13721:9, 13721:11

**Brief** [20] - 13594:14, 13644:7, 13644:9, 13644:12, 13656:3, 13660:7, 13683:12, 13686:9, 13694:6, 13698:19, 13706:23, 13707:1, 13707:16, 13707:20, 13710:17, 13721:3, 13721:14, 13721:16, 13721:18, 13722:25

**briefly** [3] - 13575:22, 13653:13, 13713:3

**bring** [10] - 13627:5, 13636:2, 13639:11, 13643:25, 13644:2, 13678:8, 13706:19, 13706:20, 13706:22, 13707:12

**broadcasting** [1] - 13638:19

**Buffalo** [1] - 13668:22

**building** [5] - 13661:20, 13710:25, 13712:8, 13712:14, 13716:18

**bunch** [3] - 13612:19, 13692:11, 13717:8

**burn** [1] - 13643:14

**Butter** [3] - 13670:2, 13670:5, 13670:6

**butter** [1] - 13670:3

**butterscotch** [1] - 13670:7

**buzzkill** [1] - 13630:9

**BY** [69] - 13644:19, 13645:3, 13646:20, 13650:13, 13651:23, 13654:2, 13654:17, 13656:4, 13656:22, 13657:18, 13657:24, 13659:25, 13660:8, 13661:8, 13662:13, 13663:8, 13663:13, 13664:2, 13664:12, 13665:11, 13665:17,

13666:16, 13667:12, 13674:9, 13682:4, 13683:15, 13684:2, 13684:20, 13686:13, 13687:4, 13691:17, 13693:16, 13694:12, 13695:14, 13695:21, 13696:10, 13696:22, 13698:12, 13698:24, 13699:14, 13701:7, 13701:24, 13702:7, 13702:20, 13703:20, 13704:1, 13705:3, 13708:4, 13708:18, 13710:1, 13710:11, 13711:14, 13711:24, 13712:23, 13713:10, 13713:18, 13715:14, 13716:8, 13717:23, 13718:8, 13718:15, 13718:21, 13718:25, 13720:7, 13720:12, 13720:21, 13721:4, 13721:24, 13722:4

---

# C

**C-word** [2] - 13592:21, 13611:23

**Cain** [1] - 13648:21

**calculation** [1] - 13722:21

**camera** [1] - 13699:17

**cannot** [3] - 13586:17, 13606:6, 13609:17

**Capitol** [37] - 13579:21, 13580:8, 13580:14, 13580:24, 13581:8, 13581:13, 13591:17, 13592:1, 13592:8, 13595:12, 13595:14, 13596:9, 13601:3, 13618:20, 13618:24, 13621:21, 13622:23, 13625:8, 13633:17, 13651:19, 13651:25, 13652:3, 13659:17, 13660:21, 13660:25, 13661:10, 13661:13, 13661:14, 13661:15, 13661:18, 13671:15, 13671:16, 13671:20, 13719:1, 13722:7, 13722:9, 13722:14

**Captain** [15] - 13578:20, 13579:5, 13579:13, 13579:14, 13579:18, 13579:19, 13580:6, 13580:21, 13581:5, 13581:11,

13581:23, 13585:2, 13585:9, 13595:13

**caption** [1] - 13599:25

**care** [2] - 13632:13, 13646:19

**Carmen** [2] - 13573:2, 13575:11

**carried** [1] - 13608:25

**carrying** [1] - 13596:9

**case** [48] - 13584:6, 13584:12, 13586:18, 13595:3, 13598:10, 13598:12, 13605:8, 13606:2, 13608:12, 13608:18, 13611:24, 13613:4, 13613:21, 13614:10, 13615:15, 13623:17, 13625:23, 13634:12, 13638:10, 13639:16, 13643:10, 13647:4, 13658:14, 13658:15, 13658:18, 13659:17, 13660:20, 13661:9, 13661:17, 13668:5, 13668:21, 13668:24, 13668:25, 13669:14, 13669:16, 13669:25, 13670:14, 13670:15, 13673:17, 13677:15, 13680:7, 13681:22, 13702:11, 13702:14, 13702:21, 13702:24, 13714:20

**caught** [1] - 13668:25

**CCR** [3] - 13573:17, 13723:17, 13723:22

**celebrated** [1] - 13630:13

**celebrating** [1] - 13629:1

**celebration** [1] - 13612:5

**cell** [3] - 13649:19, 13649:20, 13702:25

**Cellebrite** [6] - 13649:24, 13650:21, 13651:1, 13651:12, 13702:23, 13703:1

**central** [1] - 13608:18

**certain** [6] - 13598:20, 13606:5, 13648:1, 13648:4, 13665:21, 13690:8

**certainly** [1] - 13585:20

**CERTIFICATE** [1] - 13723:16

**certification** [1] - 13629:25

**certify** [1] - 13723:17

**cetera** [2] - 13603:23, 13606:18

**challenges** [1] - 13630:5

**chambers** [1] - 13642:1

**change** [5] - 13606:20, 13607:6, 13656:9, 13707:3, 13707:4

**chant** [1] - 13651:20

**chanting** [1] - 13651:18

**chapters** [3] - 13669:4, 13669:5, 13669:6

**character** [3] - 13624:20, 13624:24, 13625:20

**characterization** [2] - 13598:5, 13716:12

**characterize** [1] - 13719:5

**charge** [2] - 13679:6, 13679:7

**charged** [5] - 13610:13, 13664:10, 13679:5, 13681:6, 13681:7

**charges** [10] - 13583:15, 13613:22, 13625:22, 13625:23, 13652:18, 13653:2, 13655:11, 13655:13, 13655:17, 13657:15

**charging** [4] - 13657:13, 13678:16, 13680:9, 13680:19

**Charlotte** [2] - 13658:14, 13658:15

**chart** [2] - 13639:7, 13662:7

**chase** [1] - 13628:7

**chat** [31] - 13576:12, 13578:16, 13578:17, 13579:17, 13581:10, 13582:14, 13585:3, 13585:9, 13585:19, 13586:6, 13591:6, 13594:6, 13595:22, 13595:23, 13611:21, 13630:19, 13635:7, 13645:12, 13645:15, 13646:11, 13662:1, 13662:5, 13662:17, 13662:19, 13662:21, 13683:3, 13683:16, 13684:6, 13684:10, 13684:21, 13684:22

**chat's** [1] - 13594:17

**chats** [17] - 13579:12, 13587:21, 13590:1, 13597:15, 13611:19, 13611:20, 13648:6, 13657:1, 13657:3, 13682:12, 13682:15, 13682:19, 13682:24, 13684:4, 13684:25

**chatter** [1] - 13608:19

**check** [1] - 13683:4

**checking** [1] - 13685:23

**choose** [3] - 13587:24, 13623:18, 13683:22

**chooses** [1] - 13587:10

**Chrestman** [5] - 13716:21, 13717:2, 13717:4, 13717:11, 13717:17

**chronological** [1] - 13627:19

**CHS** [1] - 13661:23

**Circle** [1] - 13708:21

**circle** [2] - 13712:24, 13718:17

**circle's** [1] - 13720:8

**circling** [1] - 13701:13

**circumstances** [1] - 13706:8

**circumstantially** [1] - 13632:25

**cite** [1] - 13681:19

**City** [1] - 13716:21

**civil** [1] - 13632:3

**claim** [1] - 13613:22

**clarify** [2] - 13588:9, 13671:3

**classification** [2] - 13673:24, 13674:3

**classifications** [2] - 13674:16, 13675:5

**classified** [6] - 13674:3, 13674:11, 13674:20, 13675:21, 13675:24, 13676:7

**classify** [1] - 13674:11

**clear** [10] - 13583:11, 13583:15, 13585:6, 13597:13, 13606:13, 13614:4, 13614:5, 13620:11, 13680:18, 13696:4

**clearly** [8] - 13576:8, 13583:17, 13585:16, 13592:23, 13597:11, 13607:12, 13610:21, 13633:23

**CLERK** [15] - 13575:2,

13644:5, 13644:10,
13644:13, 13683:14,
13685:19, 13685:21,
13685:25, 13686:2,
13686:6, 13686:8,
13696:5, 13696:9,
13707:25, 13723:12
**click** [2] - 13707:6
**clicking** [2] - 13707:9,
13707:10
**client** [9] - 13576:12,
13581:20, 13605:20,
13606:13, 13635:1,
13636:8, 13643:15,
13664:4, 13681:15
**client's** [1] - 13586:13
**clip** [1] - 13712:14
**clips** [3] - 13623:20,
13694:19, 13694:20
**close** [4] - 13678:24,
13689:25, 13690:23,
13691:4
**closely** [1] - 13673:9
**closer** [3] - 13638:25,
13711:8, 13711:9
**closing** [2] - 13640:7,
13640:21
**club** [4] - 13613:24,
13614:7, 13616:24,
13617:2
**co** [9] - 13615:14,
13628:22, 13629:3,
13629:18, 13631:1,
13636:5, 13636:7,
13637:7, 13647:4
**co-conspirator** [6] -
13615:14, 13628:22,
13629:3, 13631:1,
13636:5, 13636:7
**co-conspirators** [1] -
13629:18
**co-defendants** [1] -
13647:4
**co-defendants'** [1] -
13637:7
**cognizable** [1] -
13576:23
**colleagues** [1] -
13609:14
**collected** [1] -
13664:11
**COLUMBIA** [1] -
13572:1
**column** [1] - 13706:14
**comfortable** [1] -
13715:8
**coming** [5] -
13639:14, 13640:4,
13641:1, 13715:20
**comment** [12] -

13580:14, 13580:19,
13581:1, 13585:5,
13585:12, 13585:14,
13591:18, 13592:7,
13597:20, 13613:3,
13613:9, 13685:3
**commenting** [1] -
13631:24
**comments** [6] -
13581:14, 13586:13,
13590:4, 13595:5,
13611:24, 13617:2
**commit** [1] - 13629:25
**committed** [2] -
13672:9, 13679:4
**committing** [1] -
13672:15
**common** [1] -
13652:10
**commonly** [1] -
13672:17
**commonly-used** [1] -
13672:17
**communicate** [3] -
13604:1, 13670:21,
13673:13
**communicated** [2] -
13712:10, 13717:15
**communicating** [4] -
13715:9, 13717:5,
13717:11, 13717:18
**communication** [1] -
13718:22
**communications** [1] -
13582:22
**complaining** [1] -
13592:20
**complete** [3] -
13647:19, 13719:20,
13723:20
**completed** [3] -
13692:20, 13692:22,
13692:23
**completely** [1] -
13679:8
**complicated** [3] -
13631:13, 13640:16,
13641:4
**compound** [4] -
13651:21, 13651:22,
13661:4, 13661:7
**computer** [8] -
13573:21, 13604:7,
13604:9, 13642:24,
13703:17, 13703:21,
13706:21, 13707:17
**computer-aided** [1] -
13573:21
**concede** [1] - 13608:3
**concept** [2] - 13641:3,

13641:4
**conceptually** [1] -
13606:14
**concern** [4] -
13634:19, 13635:5,
13640:1, 13679:24
**concerned** [2] -
13601:18, 13608:1
**condemn** [1] -
13625:7
**conduct** [3] - 13630:1,
13672:6, 13681:17
**conducted** [13] -
13593:3, 13601:9,
13601:10, 13604:5,
13641:16, 13649:6,
13649:14, 13649:21,
13653:22, 13654:3,
13665:5, 13665:8,
13669:12
**confer** [2] - 13685:17,
13687:14
**conference** [6] -
13659:1, 13659:24,
13676:20, 13682:3,
13687:13, 13691:16
**confronting** [1] -
13622:20
**confused** [4] -
13679:9, 13679:10,
13679:16
**confusing** [3] -
13584:3, 13584:9,
13606:17
**confusion** [4] -
13598:2, 13601:15,
13605:18, 13679:1
**connection** [1] -
13631:6
**Conor** [3] - 13572:13,
13575:8
**consciousness** [4] -
13591:23, 13592:3,
13592:23, 13596:14
**consider** [3] -
13631:12, 13638:22,
13641:4
**considered** [7] -
13582:24, 13584:19,
13586:14, 13587:15,
13592:2, 13592:8,
13593:8
**consist** [1] - 13686:18
**conspiracy** [10] -
13595:21, 13595:24,
13595:25, 13615:9,
13616:2, 13625:12,
13625:23, 13625:25,
13637:18, 13679:4
**conspiracy's** [1] -

13615:13
**conspirator** [6] -
13615:14, 13628:22,
13629:3, 13631:1,
13636:5, 13636:7
**conspirators** [1] -
13629:18
**constantly** [1] -
13682:7
**constitutes** [1] -
13723:18
**Constitution** [1] -
13573:19, 13723:24
**contemplates** [1] -
13582:20
**content** [4] - 13583:9,
13584:9, 13593:21,
13633:19
**context** [23] - 13580:1,
13580:10, 13580:25,
13583:2, 13584:20,
13597:5, 13597:6,
13603:20, 13607:10,
13612:14, 13619:3,
13619:13, 13619:23,
13620:18, 13620:22,
13621:13, 13621:18,
13622:14, 13623:17,
13623:19, 13624:5,
13629:5
**CONTINUED** [1] -
13573:1
**continues** [2] -
13699:23, 13700:18
**control** [2] - 13614:16,
13614:23
**conversation** [8] -
13579:14, 13596:12,
13597:5, 13621:11,
13622:19, 13713:6,
13714:9, 13714:10
**conversational** [2] -
13593:5, 13597:6
**conversations** [2] -
13665:1, 13712:11
**conveying** [1] -
13633:2
**conveys** [1] - 13633:7
**convinced** [2] -
13610:3, 13680:8
**cooperate** [13] -
13652:20, 13652:24,
13653:2, 13653:20,
13653:23, 13654:3,
13654:5, 13654:6,
13654:9, 13654:14,
13654:16, 13655:2,
13655:18
**copied** [1] - 13615:10
**copy** [1] - 13685:13

**correct** [144] -
13583:1, 13585:20,
13588:16, 13617:14,
13624:10, 13639:23,
13645:7, 13645:8,
13646:8, 13646:9,
13646:11, 13646:14,
13646:22, 13646:25,
13647:2, 13647:4,
13647:7, 13647:18,
13647:19, 13648:11,
13648:14, 13649:1,
13649:7, 13649:9,
13649:11, 13649:22,
13650:24, 13651:2,
13651:5, 13651:7,
13651:12, 13651:19,
13652:19, 13652:25,
13653:3, 13653:23,
13658:7, 13658:12,
13661:24, 13661:25,
13662:2, 13662:5,
13662:24, 13663:2,
13663:21, 13664:14,
13664:20, 13664:23,
13665:1, 13665:7,
13667:1, 13667:25,
13670:16, 13670:17,
13671:25, 13672:8,
13672:11, 13672:15,
13673:6, 13674:16,
13676:5, 13681:14,
13682:9, 13682:10,
13683:3, 13683:16,
13683:17, 13683:21,
13684:4, 13684:5,
13684:7, 13684:8,
13684:11, 13684:12,
13684:15, 13684:16,
13684:22, 13684:23,
13688:1, 13693:21,
13694:1, 13694:14,
13694:15, 13694:17,
13694:18, 13694:20,
13694:21, 13695:4,
13695:15, 13695:22,
13696:11, 13696:12,
13696:24, 13696:25,
13697:2, 13697:3,
13697:16, 13697:19,
13697:20, 13697:21,
13697:22, 13698:4,
13698:13, 13698:16,
13699:1, 13699:5,
13699:9, 13699:15,
13699:21, 13699:22,
13699:25, 13700:1,
13700:3, 13702:2,
13702:23, 13703:12,
13704:15, 13705:11,
13709:8, 13710:20,

13729

13710:23, 13711:15,
13711:19, 13711:25,
13712:4, 13712:5,
13712:7, 13712:16,
13712:25, 13713:12,
13713:14, 13714:14,
13714:17, 13715:11,
13716:25, 13717:3,
13717:10, 13718:5,
13718:18, 13719:1,
13719:4, 13720:8,
13720:15, 13722:7
**counsel** [3] - 13596:4,
13644:16, 13676:18
**counterpoint** [1] -
13598:19
**country** [1] - 13622:24
**counts** [1] - 13626:1
**couple** [8] - 13578:9,
13581:3, 13581:6,
13616:23, 13692:15,
13692:24, 13696:17
**course** [8] - 13579:20,
13591:16, 13606:15,
13622:13, 13682:6,
13689:1, 13697:9,
13709:14
**COURT** [282] -
13572:1, 13575:16,
13577:3, 13577:8,
13577:15, 13577:17,
13578:2, 13578:7,
13578:13, 13578:22,
13578:24, 13579:2,
13579:6, 13579:10,
13581:19, 13582:4,
13584:24, 13586:9,
13586:11, 13586:22,
13587:24, 13588:13,
13588:16, 13588:20,
13588:25, 13589:2,
13589:8, 13589:17,
13590:7, 13590:18,
13590:20, 13591:2,
13591:5, 13591:9,
13592:10, 13593:11,
13594:2, 13594:5,
13594:12, 13594:15,
13594:18, 13594:21,
13594:25, 13595:16,
13596:3, 13597:2,
13597:8, 13597:22,
13598:16, 13598:18,
13599:9, 13599:19,
13599:21, 13599:24,
13600:9, 13602:2,
13602:6, 13602:12,
13602:16, 13602:18,
13602:22, 13603:2,
13603:9, 13603:14,

13603:19, 13604:14,
13604:16, 13605:2,
13605:5, 13605:11,
13605:14, 13605:17,
13605:19, 13605:22,
13605:24, 13606:12,
13607:8, 13607:18,
13608:6, 13608:8,
13609:23, 13610:2,
13610:8, 13610:12,
13610:14, 13610:16,
13610:20, 13610:23,
13611:1, 13611:13,
13611:16, 13611:25,
13612:24, 13613:7,
13614:11, 13615:2,
13615:17, 13615:19,
13615:22, 13616:2,
13616:7, 13616:9,
13616:11, 13616:14,
13616:17, 13617:4,
13617:7, 13617:9,
13617:12, 13617:16,
13617:19, 13618:2,
13618:8, 13618:10,
13618:12, 13618:15,
13619:1, 13619:9,
13619:25, 13620:10,
13620:12, 13620:25,
13621:6, 13621:9,
13622:5, 13622:15,
13623:8, 13623:21,
13623:23, 13624:2,
13624:10, 13624:14,
13625:2, 13625:11,
13625:13, 13625:16,
13626:11, 13626:18,
13627:13, 13627:25,
13628:6, 13628:11,
13630:17, 13630:22,
13631:21, 13632:21,
13633:13, 13634:3,
13634:7, 13634:10,
13634:23, 13635:9,
13635:20, 13636:11,
13636:14, 13636:25,
13637:4, 13637:8,
13637:11, 13637:13,
13637:21, 13637:23,
13637:25, 13638:2,
13638:4, 13638:8,
13638:10, 13638:14,
13639:6, 13639:17,
13639:21, 13639:25,
13640:11, 13640:17,
13641:6, 13642:8,
13642:21, 13642:25,
13643:4, 13643:10,
13643:13, 13644:16,
13646:16, 13646:18,
13651:22, 13654:1,

13654:13, 13656:1,
13656:18, 13656:20,
13657:17, 13657:21,
13658:25, 13659:7,
13659:10, 13659:14,
13659:19, 13659:23,
13660:6, 13661:5,
13661:7, 13662:11,
13663:7, 13663:12,
13664:1, 13664:6,
13665:16, 13666:14,
13667:5, 13667:9,
13674:8, 13676:16,
13676:18, 13676:21,
13677:6, 13677:14,
13678:9, 13679:14,
13679:18, 13679:20,
13680:6, 13680:12,
13680:17, 13680:21,
13680:25, 13681:9,
13681:11, 13681:16,
13681:21, 13681:23,
13683:24, 13685:12,
13685:15, 13685:18,
13686:11, 13687:3,
13687:7, 13687:9,
13687:12, 13687:14,
13687:18, 13687:24,
13688:3, 13688:5,
13688:16, 13688:18,
13688:20, 13688:22,
13689:2, 13689:5,
13689:7, 13689:23,
13690:9, 13690:14,
13691:3, 13693:15,
13698:20, 13702:19,
13703:18, 13705:2,
13706:1, 13706:4,
13706:9, 13706:16,
13706:20, 13706:25,
13707:10, 13707:21,
13708:1, 13708:17,
13709:25, 13710:10,
13716:5, 13716:7,
13719:14, 13719:18,
13719:24, 13720:3,
13723:4, 13723:8,
13723:11, 13723:16
**court** [25] - 13577:4,
13577:13, 13587:19,
13589:25, 13590:3,
13601:25, 13604:3,
13607:25, 13610:25,
13615:11, 13615:15,
13616:12, 13618:6,
13637:5, 13637:24,
13638:1, 13638:24,
13640:24, 13641:2,
13642:6, 13643:22,
13647:7, 13659:2,
13678:17, 13678:18

**Court** [10] - 13573:17,
13573:18, 13595:19,
13630:7, 13635:2,
13644:5, 13681:22,
13723:12, 13723:13,
13723:22
**Court's** [3] - 13627:22,
13639:13, 13706:24
**court's** [2] - 13577:14,
13637:9
**Courthouse** [2] -
13573:18, 13723:23
**cover** [1] - 13629:21
**covered** [1] - 13624:4
**covering** [1] -
13629:14
**COVID's** [1] -
13675:17
**Cowabunga** [1] -
13646:7
**CR** [1] - 13572:2
**crab** [1] - 13715:22
**crazy** [1] - 13681:9
**create** [1] - 13691:24
**created** [6] -
13595:23, 13609:5,
13641:22, 13642:2,
13643:2
**creating** [1] - 13692:3
**creation** [1] - 13649:5
**credibility** [2] -
13659:4, 13659:20
**Crew** [1] - 13591:4
**crew** [3] - 13664:14,
13664:20, 13665:13
**crime** [3] - 13672:9,
13672:10, 13672:15
**crimes** [2] - 13629:25,
13679:4
**Criminal** [2] - 13575:2,
13644:14
**criminal** [1] - 13626:8
**Cross** [2] - 13574:3,
13574:4
**CROSS** [2] -
13644:18, 13667:11
**cross** [15] - 13582:15,
13587:18, 13587:23,
13588:6, 13588:12,
13588:14, 13589:5,
13589:23, 13590:9,
13606:3, 13606:10,
13642:19, 13643:20,
13681:13, 13681:17
**Cross-Examination**
[2] - 13574:3,
13574:4
**CROSS-**
**EXAMINATION** [2] -
13644:18, 13667:11

**cross-examination** [4]
- 13582:15,
13643:20, 13681:13,
13681:17
**cross-examine** [1] -
13642:19
**crossed** [1] -
13656:13
**crossing** [2] -
13589:10, 13589:12
**crowd** [1] - 13697:6
**CRR** [3] - 13573:17,
13723:17, 13723:22
**CT** [1] - 13572:22
**cutting** [1] - 13628:6

# D

**D.C** [3] - 13572:5,
13596:1, 13673:8
**date** [2] - 13612:14,
13650:20
**dated** [1] - 13723:21
**DAVID** [1] - 13572:17
**DAY** [1] - 13572:8
**days** [4] - 13581:6,
13581:15, 13615:4,
13676:11
**DC** [4] - 13572:15,
13572:25, 13573:19,
13723:24
**deal** [1] - 13578:1
**dealings** [1] - 13659:3
**dealt** [2] - 13577:23,
13717:2
**December** [1] -
13663:17
**deceptive** [1] -
13629:23
**decide** [2] - 13637:17,
13677:20
**decided** [4] - 13624:7,
13652:23, 13676:9
**decides** [1] - 13656:9
**decisions** [2] -
13678:17, 13680:9
**declared** [1] - 13632:1
**deemed** [1] - 13589:15
**defendant** [10] -
13582:11, 13584:11,
13587:8, 13618:19,
13620:14, 13621:22,
13633:24, 13661:2,
13661:9, 13710:19
**Defendant** [15] -
13575:3, 13575:4,
13575:5, 13575:9,
13575:10, 13575:11,
13575:12, 13575:13,
13575:14, 13575:15

**defendant's** [1] - 13580:9
**Defendants** [3] - 13572:7, 13572:16, 13573:2
**defendants** [7] - 13576:9, 13584:5, 13595:2, 13598:9, 13611:3, 13647:4, 13660:20
**defendants'** [1] - 13637:7
**defense** [3] - 13580:9, 13602:10, 13633:18
**Defense** [1] - 13683:1
**defensive** [1] - 13626:7
**deferred** [1] - 13633:11
**definition** [1] - 13636:1
**degenerates** [1] - 13612:19
**deleted** [1] - 13648:13
**deletes** [2] - 13648:17
**demanding** [2] - 13587:20, 13587:22
**demands** [1] - 13590:1
**demonstrate** [1] - 13609:3
**demonstrative** [1] - 13688:13
**depth** [1] - 13648:15
**DEPUTY** [15] - 13575:2, 13644:5, 13644:10, 13644:13, 13683:14, 13685:19, 13685:21, 13685:25, 13686:2, 13686:6, 13686:8, 13696:5, 13696:9, 13707:25, 13723:12
**derogatory** [1] - 13622:3
**describe** [3] - 13687:5, 13687:8, 13690:8
**described** [2] - 13583:8, 13693:18
**describing** [1] - 13603:22
**designation** [2] - 13597:24, 13673:24
**designed** [1] - 13621:22
**destroyed** [1] - 13614:16
**detailed** [1] - 13690:7
**details** [3] - 13668:25,

13703:3, 13703:4
**determination** [1] - 13615:23
**determined** [1] - 13600:2
**devices** [2] - 13601:23, 13604:5
**difference** [2] - 13671:23, 13671:24
**different** [22] - 13580:16, 13593:2, 13601:22, 13605:7, 13611:5, 13638:20, 13647:4, 13648:8, 13652:20, 13670:20, 13673:14, 13674:16, 13675:5, 13676:9, 13678:4, 13680:23, 13689:22, 13693:7, 13700:24, 13702:25, 13717:13
**difficult** [1] - 13610:24
**difficulty** [1] - 13603:24
**diffuse** [1] - 13700:18
**digital** [1] - 13595:11
**digitally** [1] - 13650:10
**direct** [7] - 13585:18, 13586:7, 13587:23, 13595:24, 13607:17, 13662:23, 13680:14
**direction** [3] - 13687:15, 13705:6, 13708:19
**directly** [4] - 13596:25, 13619:13, 13630:3, 13691:8
**disagree** [1] - 13685:1
**disbelief** [1] - 13679:24
**disconnect** [1] - 13638:23
**disconnected** [1] - 13613:21
**discover** [1] - 13652:14
**discuss** [6] - 13588:3, 13590:21, 13615:10, 13619:24, 13627:3, 13687:22
**discussions** [3] - 13583:18, 13682:15, 13682:17
**disgusting** [1] - 13611:21
**display** [1] - 13706:17
**displayed** [1] - 13690:24
**disputing** [1] - 13721:5

**disrupt** [1] - 13626:2
**distinction** [2] - 13623:4, 13623:16
**DISTRICT** [3] - 13572:1, 13572:1, 13572:10
**DNA** [2] - 13658:11, 13658:13
**doctored** [3] - 13600:23, 13602:25, 13609:21
**doctoring** [1] - 13601:13
**document** [10] - 13635:18, 13649:5, 13649:23, 13649:25, 13688:11, 13689:23, 13690:2, 13691:24, 13692:21, 13692:24
**documents** [1] - 13686:18
**dog** [7] - 13579:20, 13584:7, 13585:3, 13591:16, 13592:1, 13593:7, 13717:24
**domestic** [7] - 13595:6, 13596:22, 13597:21, 13597:25, 13598:3, 13598:5, 13598:14
**Dominic** [2] - 13575:5, 13667:25
**Donald** [3] - 13593:6, 13612:10, 13612:18
**done** [10] - 13602:11, 13607:4, 13611:18, 13612:5, 13640:2, 13666:23, 13679:11, 13692:11, 13692:14, 13694:16
**door** [2] - 13613:5, 13615:1
**double** [7] - 13632:12, 13632:16, 13635:4, 13683:4, 13685:23, 13707:9, 13707:10
**double-check** [1] - 13683:4
**double-checking** [1] - 13685:23
**double-clicking** [2] - 13707:9, 13707:10
**doubt** [1] - 13613:23
**down** [15] - 13594:9, 13594:20, 13595:12, 13631:16, 13672:7, 13686:5, 13689:16, 13693:6, 13698:1, 13706:22, 13707:13, 13710:19, 13710:22,

13723:9, 13723:10
**draw** [2] - 13609:2, 13709:1
**drawing** [2] - 13623:4, 13623:15
**Drive** [1] - 13573:15
**driving** [1] - 13664:19
**drugs** [1] - 13634:22
**drunk** [1] - 13618:4
**dry** [1] - 13612:9
**Dubrowski** [10] - 13578:5, 13589:5, 13589:11, 13589:12, 13589:21, 13590:15, 13627:10, 13627:16, 13627:22, 13673:12
**Dubrowski's** [6] - 13582:25, 13588:11, 13590:9, 13628:18, 13673:6
**due** [2] - 13575:25, 13614:16
**duped** [1] - 13604:17
**during** [13] - 13582:10, 13582:25, 13587:23, 13628:18, 13670:23, 13672:3, 13688:25, 13702:8, 13709:14, 13713:1, 13717:5, 13717:12, 13717:18

**E**

**ear** [1] - 13716:14
**earliest** [1] - 13684:25
**early** [1] - 13632:3
**earpiece** [1] - 13716:15
**Earth** [1] - 13622:24
**easier** [2] - 13620:1, 13646:7
**easily** [1] - 13600:15
**East** [2] - 13572:17, 13573:15
**easy** [2] - 13577:25, 13601:21
**Eddie** [2] - 13592:20
**editing** [1] - 13649:4
**Eff** [7] - 13591:7, 13591:18, 13591:21, 13592:2, 13592:5, 13593:6, 13611:23
**eff** [13] - 13579:2, 13581:24, 13582:1, 13583:4, 13583:12, 13585:12, 13585:13, 13585:16, 13585:18, 13586:23, 13587:1, 13591:7, 13611:23

**effect** [3] - 13631:16, 13631:17, 13631:23
**effectively** [3] - 13585:8, 13613:2, 13613:12
**effectuate** [1] - 13623:6
**effing** [1] - 13592:21
**ego** [1] - 13638:19
**eight** [2] - 13619:17, 13621:21
**either** [12] - 13585:5, 13586:1, 13587:22, 13607:24, 13623:18, 13632:23, 13638:19, 13649:4, 13650:6, 13684:22, 13702:1, 13706:12
**elders** [2] - 13628:21, 13629:19
**elect** [2] - 13588:9, 13588:10
**election** [3] - 13613:4, 13630:1, 13630:4
**elements** [1] - 13610:11
**elicit** [2] - 13640:24, 13688:9
**eliciting** [1] - 13641:7
**eliminate** [2] - 13585:24, 13586:5
**eliminates** [1] - 13608:3
**eliminating** [1] - 13586:20
**elliptical** [1] - 13614:3
**email** [8] - 13673:25, 13674:3, 13674:4, 13674:12, 13675:6, 13675:9, 13678:11
**emails** [8] - 13673:20, 13673:23, 13674:10, 13674:11, 13674:17, 13682:14, 13682:18
**embarrassed** [1] - 13596:17
**embedded** [1] - 13632:12
**emphasize** [1] - 13638:17
**employee** [1] - 13629:13
**end** [5] - 13579:8, 13592:17, 13616:22, 13617:24, 13700:10
**ended** [2] - 13671:15, 13671:18
**ends** [2] - 13608:21, 13644:22
**enemies** [1] - 13614:2

**enforced** [1] - 13596:19
**enforcement** [2] - 13583:13, 13585:21
**enjoined** [1] - 13677:8
**enjoying** [5] - 13600:5, 13606:22, 13607:1, 13607:4, 13607:15
**enormous** [1] - 13601:15
**Enrique** [17] - 13575:5, 13632:15, 13633:16, 13645:7, 13646:14, 13646:22, 13647:6, 13649:4, 13660:9, 13662:24, 13663:24, 13664:13, 13664:17, 13664:19, 13665:12, 13665:18, 13665:25
**Enrique's** [2] - 13646:10, 13649:24
**enter** [3] - 13660:20, 13660:25, 13661:9
**entered** [4] - 13715:17, 13715:18, 13722:19, 13722:22
**entering** [1] - 13711:2
**entire** [10] - 13592:16, 13596:24, 13621:18, 13672:3, 13676:17, 13687:23, 13690:8, 13698:15, 13699:18
**entirely** [1] - 13580:15
**entitled** [4] - 13600:24, 13601:2, 13609:2, 13629:2
**entry** [2] - 13595:6, 13645:20
**equation** [1] - 13698:3
**Erik** [2] - 13572:12, 13575:8
**especially** [2] - 13584:9, 13675:20
**Esq** [12] - 13572:12, 13572:12, 13572:13, 13572:13, 13572:16, 13572:20, 13572:23, 13573:2, 13573:4, 13573:8, 13573:11, 13573:14
**essential** [1] - 13580:1
**essentially** [3] - 13582:2, 13592:20, 13704:14
**established** [1] - 13661:23
**establishing** [1] - 13697:18

**et** [4] - 13580:14, 13603:23, 13606:18, 13644:15
**Ethan** [3] - 13575:3, 13599:16, 13644:14
**evening** [1] - 13666:24
**event** [4] - 13616:23, 13623:4, 13639:4, 13678:21
**events** [7] - 13629:21, 13636:24, 13652:10, 13665:25, 13679:11, 13679:25, 13693:6
**everywhere** [1] - 13596:16
**evidence** [54] - 13582:9, 13583:18, 13585:23, 13586:6, 13587:5, 13588:19, 13588:21, 13595:5, 13595:23, 13601:6, 13601:13, 13601:14, 13601:20, 13604:4, 13604:6, 13604:22, 13605:20, 13606:16, 13612:10, 13613:11, 13613:13, 13621:20, 13624:20, 13624:24, 13625:20, 13626:13, 13626:14, 13628:24, 13629:7, 13630:11, 13634:15, 13636:1, 13637:17, 13640:24, 13642:1, 13642:6, 13642:19, 13643:11, 13645:2, 13646:6, 13658:9, 13658:10, 13660:14, 13663:23, 13664:8, 13664:11, 13679:3, 13679:13, 13681:1, 13683:13, 13687:1, 13705:22, 13706:15
**evident** [1] - 13620:22
**exact** [5] - 13655:19, 13655:21, 13674:25, 13715:8, 13722:22
**exactly** [12] - 13578:21, 13578:25, 13579:4, 13591:20, 13597:16, 13649:25, 13659:10, 13683:20, 13694:3, 13694:16, 13697:1, 13716:1
**examination** [4] - 13582:15, 13643:20, 13681:13, 13681:17
**EXAMINATION** [2] - 13644:18, 13667:11
**Examination** [2] -

13574:3, 13574:4
**examine** [1] - 13642:19
**example** [3] - 13576:13, 13647:6, 13683:1
**excellent** [2] - 13718:16, 13721:2
**except** [4] - 13604:11, 13604:25, 13618:9, 13699:17
**exception** [1] - 13673:11
**exceptions** [2] - 13624:25, 13636:8
**exchange** [6] - 13582:14, 13592:16, 13630:3, 13630:14, 13714:7, 13714:8
**exchanging** [1] - 13714:10
**exclamation** [4] - 13654:19, 13654:21, 13656:14, 13656:16
**exclude** [2] - 13618:18, 13621:19
**excluded** [4] - 13584:21, 13628:2, 13628:16, 13642:11
**excuse** [2] - 13594:22, 13648:1
**execution** [1] - 13656:6
**executions** [1] - 13664:9
**Exhibit** [4] - 13627:7, 13627:18, 13684:1, 13711:10
**exhibit** [28] - 13578:11, 13580:2, 13582:9, 13582:19, 13585:5, 13590:15, 13592:13, 13593:3, 13594:3, 13595:21, 13596:24, 13601:21, 13602:12, 13602:18, 13612:12, 13621:22, 13627:10, 13627:21, 13628:3, 13633:22, 13645:4, 13646:5, 13689:10, 13691:9, 13701:6, 13707:22, 13711:15, 13711:17
**Exhibit-1000** [1] - 13687:22, 13694:5
**Exhibit-1002** [1] - 13701:5
**Exhibit-113X** [3] - 13712:21, 13713:8, 13723:2

**Exhibit-114** [1] - 13717:21
**Exhibit-114X** [1] - 13718:14
**Exhibit-115** [2] - 13711:11, 13711:23
**Exhibit-176** [1] - 13699:10
**Exhibit-253** [1] - 13705:22
**Exhibit-254** [2] - 13686:15, 13687:1
**exhibit-264** [1] - 13685:9
**Exhibit-407A** [1] - 13618:3
**Exhibit-509-32** [1] - 13683:11
**Exhibit-512-19** [1] - 13593:25
**Exhibit-516-1** [1] - 13578:4
**exhibits** [11] - 13584:10, 13612:12, 13612:17, 13617:13, 13621:21, 13627:9, 13627:11, 13636:20, 13646:13, 13646:21, 13689:11
**exist** [2] - 13675:25, 13697:5
**existed** [1] - 13637:18
**exists** [3] - 13606:5, 13606:13, 13675:23
**exit** [1] - 13712:9
**exited** [4] - 13661:19, 13661:20, 13712:8, 13712:13
**exits** [5] - 13712:15, 13712:18, 13719:4, 13722:18
**expansive** [2] - 13578:10, 13581:16
**expect** [3] - 13600:14, 13633:9, 13687:15
**expected** [1] - 13589:22
**explain** [5] - 13577:2, 13589:4, 13622:22, 13632:19, 13672:5
**explained** [1] - 13625:3
**explaining** [1] - 13602:10
**explicitly** [1] - 13640:25
**expressed** [2] - 13598:22, 13598:23
**expressing** [2] - 13612:13, 13639:1

**extensive** [1] - 13704:4
**extent** [3] - 13591:19, 13591:22, 13592:5
**extracted** [4] - 13647:2, 13648:11, 13650:1, 13651:2
**extraction** [6] - 13647:23, 13649:19, 13649:20, 13649:21, 13650:14, 13651:12
**extremely** [3] - 13618:17, 13656:23, 13677:10
**extremism** [1] - 13579:18

**F**

**fabrication** [1] - 13601:16
**face** [11] - 13583:10, 13593:4, 13603:4, 13607:6, 13607:9, 13607:12, 13607:14, 13607:17, 13607:19, 13608:1, 13608:3
**faces** [1] - 13633:6
**facilitated** [1] - 13658:18
**facing** [2] - 13593:19, 13612:21
**fact** [21] - 13582:12, 13593:21, 13595:21, 13600:22, 13608:22, 13610:6, 13610:19, 13610:21, 13613:13, 13613:16, 13621:9, 13622:22, 13625:5, 13631:18, 13633:10, 13652:13, 13677:6, 13677:7, 13677:16, 13711:17
**facts** [11] - 13583:8, 13609:11, 13638:13, 13638:15, 13677:14, 13677:15, 13679:2, 13680:3, 13680:7, 13680:19
**factual** [3] - 13585:1, 13609:15, 13642:3
**factually** [1] - 13679:2
**fair** [50] - 13578:2, 13586:4, 13590:2, 13590:5, 13606:23, 13606:24, 13643:15, 13647:10, 13647:13, 13648:7, 13648:21, 13649:12, 13649:21, 13651:16, 13652:4,

13653:19, 13655:1,
13663:15, 13664:3,
13668:3, 13668:4,
13669:4, 13669:10,
13672:18, 13673:14,
13674:4, 13674:12,
13675:22, 13682:24,
13683:8, 13686:22,
13691:20, 13692:5,
13692:23, 13695:9,
13696:14, 13697:6,
13698:1, 13699:18,
13700:8, 13704:24,
13705:4, 13708:23,
13712:10, 13716:2,
13716:18, 13717:18,
13722:13, 13722:19,
13722:22
**fairly** [2] - 13601:2,
13693:1
**fairness** [11] -
13580:25, 13581:18,
13582:23, 13584:20,
13585:23, 13585:25,
13587:15, 13591:24,
13593:9, 13593:13,
13602:2
**faith** [3] - 13642:21,
13643:4, 13643:5
**fall** [2] - 13606:9,
13619:15
**false** [3] - 13580:17,
13642:20, 13659:5
**familiar** [3] - 13669:9,
13711:15, 13717:25
**familiarized** [1] -
13682:11
**far** [5] - 13612:8,
13614:24, 13668:8,
13689:17, 13692:11
**far-right** [1] -
13614:24
**fashion** [1] - 13580:16
**FBI** [15] - 13579:19,
13583:8, 13593:7,
13645:11, 13647:1,
13647:2, 13647:3,
13647:14, 13647:25,
13650:2, 13650:16,
13658:16, 13663:14,
13663:21, 13672:18
**FBI's** [1] - 13595:11
**fears** [1] - 13614:23
**feds** [1] - 13596:15
**feelings** [1] -
13654:24
**fellow** [3] - 13600:6,
13609:4, 13629:19
**felt** [2] - 13612:11,
13613:16

**few** [7] - 13576:4,
13591:13, 13591:25,
13592:7, 13611:18,
13628:1, 13692:19
**fide** [1] - 13629:20
**Field** [2] - 13673:4,
13673:12
**field** [2] - 13668:20
**figure** [3] - 13676:2,
13680:1, 13695:2
**figured** [1] - 13668:23
**figuring** [1] - 13692:3
**file** [3] - 13604:8,
13604:9, 13604:10
**filed** [1] - 13583:15
**files** [1] - 13620:19
**filing** [1] - 13640:6
**film** [3] - 13664:14,
13664:20, 13665:13
**filming** [1] - 13592:21
**financial** [1] -
13638:20
**fine** [5] - 13576:24,
13616:10, 13669:25,
13681:8, 13685:25
**fingers** [1] - 13656:13
**finish** [2] - 13576:17,
13623:10
**first** [51] - 13578:17,
13582:8, 13585:12,
13592:15, 13594:6,
13594:7, 13594:17,
13595:19, 13596:16,
13596:23, 13612:4,
13612:7, 13618:23,
13620:23, 13622:7,
13622:8, 13622:10,
13622:13, 13622:17,
13622:18, 13622:25,
13623:24, 13625:4,
13628:19, 13628:22,
13631:25, 13651:1,
13653:19, 13655:2,
13658:3, 13661:9,
13668:18, 13670:4,
13687:5, 13693:2,
13693:11, 13693:14,
13693:17, 13697:25,
13698:1, 13704:14,
13704:23, 13705:5,
13705:8, 13705:10,
13705:12, 13709:1,
13709:7, 13720:22
**First** [1] - 13576:9
**Fischer** [1] - 13592:19
**fit** [1] - 13636:6
**fits** [1] - 13637:1
**five** [4] - 13618:5,
13670:13, 13670:18,
13673:3

**FL** [2] - 13573:6,
13573:9
**flag** [1] - 13628:4
**flaws** [1] - 13606:3
**flip** [6] - 13652:18,
13653:2, 13655:10,
13655:18, 13658:6,
13660:4
**flipped** [1] - 13658:23
**floating** [3] -
13625:13, 13625:14,
13625:20
**Floor** [2] - 13572:21,
13573:12
**focus** [1] - 13634:7
**focused** [1] -
13583:19
**folded** [1] - 13616:17
**follow** [3] - 13597:1,
13668:11, 13699:3
**followers** [1] -
13629:24
**following** [2] -
13629:12, 13630:3
**follows** [1] - 13594:20
**Fonticoba** [1] -
13632:11
**food** [6] - 13671:19,
13698:5, 13701:8,
13701:9, 13701:13,
13701:15
**fooling** [1] - 13614:2
**footage** [6] -
13712:17, 13714:14,
13714:17, 13714:18,
13714:20, 13717:13
**FOR** [1] - 13572:1
**foregoing** [1] -
13723:18
**foreign** [1] - 13674:24
**form** [2] - 13612:13,
13638:16
**format** [2] - 13587:21,
13692:12
**former** [4] - 13624:19,
13625:6, 13625:17,
13629:13
**forms** [1] - 13612:4
**forth** [1] - 13673:20
**forward** [1] - 13657:13
**forwarded** [2] -
13604:18, 13643:16
**foundation** [5] -
13600:7, 13601:8,
13603:16, 13642:17,
13690:20
**FOUO** [2] - 13674:21,
13674:24
**four** [2] - 13653:18,
13686:19

**Fox** [1] - 13629:13
**frame** [14] - 13584:1,
13669:2, 13677:4,
13678:8, 13680:23,
13690:12, 13694:23,
13697:19, 13701:17,
13705:10, 13720:19,
13721:20
**frankly** [3] - 13633:18,
13635:21, 13678:15
**fraud** [1] - 13601:17
**free** [5] - 13605:17,
13605:19, 13625:13,
13625:14, 13625:20
**free-floating** [3] -
13625:13, 13625:14,
13625:20
**freedom** [2] -
13651:17, 13652:4
**FreeNick** [1] -
13629:16
**friend** [1] - 13629:13
**friends** [1] - 13593:19
**front** [11] - 13592:15,
13621:22, 13684:9,
13686:22, 13688:11,
13689:24, 13690:17,
13691:12, 13700:17,
13704:2, 13710:18
**fuck** [10] - 13578:19,
13579:23, 13580:3,
13580:10, 13580:12,
13580:17, 13585:4,
13590:3, 13596:17
**fucked** [1] - 13630:10
**Fucking** [1] -
13611:21
**full** [3] - 13624:5,
13657:1, 13723:19
**fun** [2] - 13624:21,
13626:4
**fundraiser** [1] -
13629:10
**furtherance** [1] -
13608:21
**future** [1] - 13614:9

## G

**gain** [1] - 13638:20
**gallery** [2] - 13707:2,
13707:4
**game** [1] - 13643:15
**gap** [1] - 13581:25
**gathering** [1] -
13595:25
**gear** [1] - 13614:14
**general** [5] -
13583:13, 13614:3,
13616:24, 13617:1,

13693:22
**generally** [7] -
13585:22, 13586:17,
13614:24, 13624:22,
13624:24, 13626:4,
13636:9
**gentlemen** [2] -
13647:7, 13723:5
**Gilbert** [2] - 13633:2,
13633:7
**given** [3] - 13582:13,
13630:24, 13637:14
**GiveSendGo.com/
freeNick** [1] -
13629:11
**glad** [1] - 13593:10
**good-faith** [3] -
13642:21, 13643:4,
13643:5
**Google** [10] -
13600:17, 13601:9,
13602:1, 13602:10,
13604:11, 13641:13,
13643:7, 13649:6,
13649:14, 13649:18
**GOP** [1] - 13581:11
**government** [73] -
13575:7, 13576:4,
13577:10, 13578:11,
13580:21, 13582:5,
13584:4, 13584:11,
13584:12, 13584:14,
13584:16, 13585:7,
13586:2, 13586:16,
13586:19, 13587:4,
13587:7, 13587:10,
13587:24, 13591:19,
13591:20, 13592:4,
13592:10, 13595:17,
13598:10, 13600:24,
13601:10, 13601:17,
13603:1, 13603:5,
13604:1, 13607:2,
13607:25, 13608:9,
13608:10, 13608:11,
13609:24, 13611:18,
13612:1, 13613:11,
13614:9, 13614:16,
13614:23, 13615:11,
13615:24, 13617:20,
13617:21, 13617:22,
13618:6, 13619:2,
13626:14, 13627:8,
13627:11, 13628:10,
13628:13, 13640:2,
13640:10, 13641:8,
13641:10, 13642:1,
13642:16, 13645:19,
13662:7, 13678:9,
13678:18, 13678:19,

13733

13679:3, 13679:6, 13685:12, 13688:9, 13688:23, 13689:22
**Government** [1] - 13578:4, 13587:20, 13593:25, 13607:23, 13610:2, 13663:2, 13683:11, 13711:23, 13717:21, 13718:14, 13723:1
**Government's** [6] - 13618:3, 13678:16, 13694:4, 13711:11, 13712:20, 13713:8
**government's** [16] - 13580:2, 13581:14, 13584:6, 13585:5, 13595:3, 13598:9, 13599:11, 13599:13, 13601:25, 13606:3, 13608:4, 13608:9, 13619:10, 13619:11, 13660:14, 13691:12
**government-176** [1] - 13699:11
**grab** [1] - 13703:17
**granted** [3] - 13672:19, 13685:15, 13708:2
**Great** [2] - 13595:13, 13656:12
**great** [3] - 13593:16, 13593:18, 13649:16
**green** [6] - 13675:25, 13676:3, 13678:11, 13683:22, 13684:15, 13696:5
**Greene** [17] - 13669:7, 13669:9, 13669:13, 13669:22, 13669:25, 13670:15, 13684:13, 13684:15, 13686:6, 13697:10, 13698:25, 13699:24, 13702:9, 13709:22, 13710:4, 13710:6, 13710:13
**Greene's** [3] - 13669:14, 13703:3, 13703:14
**grind** [1] - 13576:21
**grinning** [1] - 13600:25
**Ground** [6] - 13594:7, 13595:22, 13595:23, 13596:7, 13662:5, 13683:5
**ground** [5] - 13633:6, 13633:10, 13636:4, 13666:19, 13671:9
**grounding** [1] -

13639:5
**grounds** [6] - 13593:23, 13618:18, 13661:15, 13671:15, 13671:16, 13671:20
**group** [31] - 13582:14, 13583:13, 13583:18, 13595:22, 13595:23, 13596:7, 13598:22, 13608:21, 13608:23, 13608:25, 13610:10, 13612:7, 13633:1, 13633:11, 13671:14, 13671:15, 13671:17, 13671:18, 13682:12, 13682:15, 13700:2, 13700:6, 13712:15, 13716:16, 13716:17, 13716:21, 13717:3, 13717:6, 13717:7, 13717:9, 13717:12
**group's** [1] - 13612:3
**groups** [2] - 13608:19, 13651:18
**guess** [15] - 13587:6, 13598:19, 13606:1, 13608:8, 13614:9, 13615:22, 13616:7, 13616:25, 13618:22, 13625:21, 13626:1, 13631:1, 13646:10, 13661:7, 13689:23
**guilt** [5] - 13591:23, 13591:24, 13592:3, 13592:23, 13596:14
**gun** [8] - 13652:17, 13653:2, 13655:10, 13655:13, 13655:17, 13657:15, 13658:19, 13660:2
**guns** [3] - 13658:12, 13658:14, 13658:16
**guy** [4] - 13656:14, 13666:13, 13714:6, 13716:23
**guys** [4] - 13633:5, 13656:7, 13673:13, 13673:20
**GW** [1] - 13579:19

# H

**half** [3] - 13660:22, 13709:23, 13710:9
**hallways** [1] - 13717:25
**hand** [5] - 13598:21, 13627:2, 13633:2, 13721:6, 13722:8
**hand-picked** [1] -

13598:21
**handed** [2] - 13649:23, 13722:11
**handful** [1] - 13576:15
**hands** [3] - 13720:14, 13722:12
**handwriting** [2] - 13686:16, 13691:19
**handwritten** [1] - 13690:3
**hanging** [2] - 13612:20, 13636:16
**happy** [5] - 13576:20, 13584:17, 13608:2, 13641:19, 13641:24
**hard** [7] - 13581:21, 13603:21, 13655:3, 13655:7, 13657:17, 13689:12, 13719:22
**harmed** [1] - 13601:21
**Harris** [5] - 13644:2, 13645:1, 13666:17, 13683:13, 13707:24
**Hassan** [6] - 13573:4, 13575:11, 13627:2, 13627:6, 13628:7, 13635:3
**HASSAN** [5] - 13573:5, 13627:5, 13627:15, 13628:8, 13635:2
**hat** [2] - 13708:6, 13712:24
**hate** [1] - 13625:16
**hats** [4] - 13700:2, 13700:8, 13700:9
**Haven** [1] - 13572:22
**Hawaii** [3] - 13647:17, 13648:1, 13648:3
**headed** [1] - 13599:14
**heading** [2] - 13704:22, 13708:20
**heads** [1] - 13656:13
**heads-up** [1] - 13656:13
**hear** [18] - 13575:22, 13576:4, 13576:13, 13582:5, 13605:14, 13611:25, 13612:1, 13613:2, 13616:18, 13627:4, 13631:11, 13631:22, 13632:4, 13642:9, 13658:25, 13659:7, 13678:9, 13681:17
**heard** [1] - 13576:19, 13592:4, 13603:5, 13607:5, 13622:13, 13626:24, 13631:14, 13634:21, 13635:15,

13643:14, 13679:13, 13687:6
**hearsay** [14] - 13576:8, 13615:10, 13632:12, 13632:23, 13635:1, 13635:4, 13636:4, 13636:7, 13636:23, 13688:8, 13690:14, 13693:14, 13709:24
**Heath** [2] - 13613:23, 13613:24
**height** [1] - 13586:15
**held** [1] - 13595:14
**HELD** [1] - 13572:9
**hello** [1] - 13714:7
**help** [8] - 13597:5, 13622:16, 13629:15, 13683:10, 13687:21, 13689:15, 13689:16, 13703:5
**helped** [1] - 13659:17
**helpful** [2] - 13583:2, 13656:23
**helps** [1] - 13707:17
**hereby** [1] - 13723:17
**hermit** [1] - 13715:22
**HERNANDEZ** [58] - 13576:24, 13577:4, 13577:11, 13577:16, 13586:10, 13586:13, 13610:1, 13610:4, 13610:9, 13610:13, 13610:15, 13610:19, 13610:22, 13610:24, 13611:10, 13615:8, 13615:18, 13615:20, 13616:1, 13616:5, 13616:8, 13616:10, 13616:12, 13616:15, 13623:25, 13628:9, 13634:1, 13634:5, 13634:8, 13634:11, 13634:24, 13635:19, 13635:23, 13636:12, 13636:19, 13637:3, 13637:5, 13637:9, 13637:12, 13637:19, 13637:22, 13637:24, 13638:1, 13638:3, 13638:7, 13638:9, 13638:11, 13638:15, 13639:12, 13639:18, 13639:24, 13640:1, 13640:16, 13640:22, 13681:10, 13681:14, 13681:19, 13681:22
**Hernandez** [13] - 13573:2, 13575:11, 13575:20, 13576:5,

13576:6, 13586:22, 13626:20, 13628:2, 13632:7, 13635:12, 13638:4, 13681:11, 13681:16
**Hernandez's** [2] - 13576:3, 13627:4
**Hialeah** [1] - 13573:9
**hide** [1] - 13633:6
**hierarchy** [1] - 13629:19
**high** [4] - 13606:15, 13611:12, 13634:24, 13678:10
**Highland** [1] - 13573:3
**highly** [2] - 13619:7, 13634:25
**himself** [4] - 13606:22, 13607:4, 13607:16, 13608:15
**hit** [4] - 13576:18, 13577:8, 13590:23, 13696:5
**hmm** [5] - 13594:2, 13594:18, 13594:25, 13696:9, 13702:15
**hold** [1] - 13660:19
**holding** [2] - 13601:18, 13629:20
**Hollow** [1] - 13573:2
**home** [4] - 13577:5, 13604:5, 13653:23, 13654:4
**Honor** [162] - 13576:24, 13577:21, 13577:22, 13578:3, 13578:4, 13578:15, 13578:16, 13578:21, 13579:7, 13579:11, 13580:1, 13580:20, 13580:23, 13581:2, 13581:3, 13582:7, 13584:18, 13584:22, 13585:2, 13585:10, 13585:14, 13586:8, 13586:10, 13587:17, 13587:18, 13588:8, 13588:18, 13589:4, 13589:11, 13589:19, 13590:2, 13590:11, 13590:24, 13591:3, 13591:8, 13591:13, 13592:11, 13593:2, 13593:9, 13593:24, 13594:4, 13594:8, 13594:10, 13594:16, 13594:19, 13595:1, 13595:9, 13595:18, 13597:4, 13597:20, 13597:24, 13598:6,

13598:7, 13598:13, 13599:7, 13599:15, 13601:6, 13601:22, 13601:24, 13602:5, 13602:20, 13603:15, 13604:3, 13604:22, 13605:6, 13606:1, 13606:19, 13607:11, 13607:20, 13607:23, 13609:10, 13609:13, 13609:18, 13610:4, 13611:14, 13611:23, 13612:3, 13613:1, 13613:19, 13614:20, 13614:25, 13615:6, 13615:9, 13616:21, 13617:6, 13617:15, 13617:25, 13618:4, 13618:13, 13618:23, 13619:5, 13619:6, 13619:14, 13619:16, 13619:18, 13619:22, 13620:16, 13620:17, 13620:21, 13620:24, 13621:4, 13621:14, 13621:17, 13621:23, 13622:1, 13623:14, 13623:20, 13624:8, 13624:12, 13624:20, 13624:25, 13625:10, 13625:21, 13626:5, 13626:16, 13628:4, 13628:17, 13631:15, 13632:24, 13634:8, 13638:13, 13639:12, 13641:9, 13641:20, 13642:3, 13642:14, 13642:23, 13643:3, 13643:8, 13643:12, 13644:17, 13650:11, 13656:2, 13658:21, 13659:2, 13659:9, 13659:12, 13659:22, 13662:10, 13662:12, 13667:4, 13667:8, 13677:11, 13679:8, 13679:12, 13679:17, 13680:16, 13681:10, 13685:11, 13685:14, 13686:10, 13686:25, 13691:15, 13698:21, 13703:16, 13705:21, 13706:13, 13707:13, 13719:12, 13719:17, 13719:23, 13723:2
**Honor's** [2] - 13622:12, 13642:23
**Honorable** [2] - 13644:5, 13723:12
**honorable** [2] - 13600:1, 13603:22

**HONORABLE** [1] - 13572:9
**hooked** [1] - 13651:2
**hope** [4] - 13626:25, 13653:25, 13654:3, 13657:13
**hoped** [3] - 13653:22, 13654:5, 13654:6
**hopefully** [2] - 13654:23, 13656:19
**hoping** [2] - 13656:5, 13656:8
**hostile** [1] - 13665:1
**hotel** [3] - 13665:6, 13665:19, 13666:20
**hotels** [1] - 13702:16
**hour** [7] - 13594:23, 13709:18, 13709:23, 13710:7, 13723:6
**hour-and-a-half** [1] - 13709:23
**hours** [1] - 13714:19
**Hull** [2] - 13572:23, 13575:10
**HULL** [1] - 13572:24
**humiliate** [2] - 13618:19, 13621:22
**hundreds** [2] - 13714:21, 13715:4
**hung** [1] - 13612:9
**hunting** [1] - 13595:12

## I

**idea** [9] - 13590:14, 13611:20, 13632:16, 13633:9, 13633:17, 13634:16, 13634:18, 13646:24, 13716:10
**ideas** [1] - 13606:6
**identification** [2] - 13685:9, 13686:15
**identified** [3] - 13577:19, 13619:19, 13632:24
**identify** [1] - 13596:16
**identities** [1] - 13607:21
**II** [1] - 13573:11
**image** [9] - 13600:18, 13603:11, 13603:13, 13604:12, 13606:7, 13606:11, 13609:20, 13641:14, 13641:23
**images** [5] - 13598:13, 13604:7, 13606:5, 13641:11, 13641:12
**IMing** [1] - 13675:11
**immediately** [6] - 13579:12, 13579:13,

13579:17, 13580:15, 13585:19, 13592:7
**impeach** [1] - 13655:25
**impeachment** [1] - 13689:18
**implicitly** [1] - 13640:25
**imply** [1] - 13604:12
**implying** [1] - 13601:16
**import** [1] - 13633:3
**importance** [2] - 13622:19, 13622:21
**important** [2] - 13622:22, 13629:7
**impound** [1] - 13647:13
**IN** [1] - 13572:1
**in-depth** [1] - 13648:15
**inaction** [1] - 13614:16
**Inauguration** [1] - 13612:15
**include** [3] - 13592:18, 13619:19, 13629:10, 13670:14
**included** [4] - 13581:17, 13628:25, 13669:3, 13669:12
**including** [1] - 13576:2
**inconsistent** [3] - 13656:17, 13688:1, 13688:6
**incorrect** [1] - 13637:13
**incredibly** [1] - 13601:12
**incurred** [1] - 13603:1
**independent** [3] - 13596:22, 13608:11, 13609:9
**indicate** [2] - 13609:15, 13705:17
**indicated** [3] - 13598:23, 13637:5, 13709:22
**indicating** [26] - 13662:14, 13667:6, 13696:6, 13699:4, 13699:5, 13699:6, 13699:7, 13699:8, 13700:3, 13701:14, 13701:15, 13708:8, 13708:21, 13709:3, 13709:5, 13714:1, 13714:6, 13714:16, 13715:6, 13715:10,

13715:19, 13718:11, 13718:23
**indicted** [1] - 13677:8
**indictment** [3] - 13677:2, 13677:3, 13678:21
**individual** [7] - 13657:4, 13672:7, 13708:6, 13708:8, 13709:19, 13710:2, 13713:3
**individual's** [1] - 13637:15
**individually** [1] - 13669:13
**individuals** [9] - 13669:5, 13669:7, 13670:15, 13671:9, 13671:11, 13672:10, 13677:12, 13712:16, 13715:8
**indulgence** [1] - 13706:24
**infer** [3] - 13580:13, 13585:20, 13585:22
**inference** [12] - 13586:1, 13586:5, 13600:22, 13602:6, 13604:23, 13609:2, 13609:4, 13609:12, 13609:14, 13609:18, 13623:2, 13641:14
**inferences** [1] - 13586:20
**inflammatory** [5] - 13595:9, 13601:3, 13601:12, 13619:7, 13631:19
**influence** [1] - 13633:1
**informant** [1] - 13663:14
**information** [14] - 13639:3, 13648:11, 13649:17, 13659:5, 13663:21, 13668:9, 13668:23, 13669:17, 13672:13, 13682:8, 13682:9, 13682:18, 13690:21, 13717:1
**initial** [1] - 13668:8
**innuendo** [3] - 13604:22, 13606:10, 13606:12
**inquiry** [1] - 13659:3
**inside** [1] - 13712:12
**insinuation** [1] - 13642:20
**insofar** [1] - 13607:15
**Instant** [1] - 13675:11

**instant** [1] - 13675:13
**instead** [1] - 13721:19
**instruction** [5] - 13583:6, 13616:18, 13636:9, 13636:17, 13640:20
**insulting** [1] - 13614:4
**intend** [2] - 13632:17, 13632:19
**intent** [10] - 13598:20, 13598:23, 13599:1, 13626:2, 13626:8, 13637:1, 13637:15, 13638:22, 13639:1, 13639:22
**interacted** [2] - 13714:13, 13714:15
**interaction** [2] - 13712:6, 13717:2
**interest** [1] - 13577:24
**interesting** [1] - 13675:7
**internally** [1] - 13588:4
**international** [1] - 13597:25
**Internet** [4] - 13600:17, 13609:16, 13609:17, 13609:20
**interpret** [2] - 13580:15, 13586:20
**interpretation** [2] - 13581:1, 13585:25
**interpreted** [1] - 13586:17
**interpreting** [1] - 13586:19
**interrelated** [1] - 13618:7
**interstices** [1] - 13604:23
**intertwined** [1] - 13613:8
**intervening** [4] - 13592:14, 13593:14, 13593:15, 13593:22
**interview** [2] - 13656:10, 13666:23
**interviewed** [4] - 13653:5, 13653:10, 13653:11, 13666:21
**interviewing** [1] - 13658:2
**interviews** [4] - 13664:25, 13665:6, 13665:12, 13665:25
**intoxicated** [2] - 13618:17, 13618:24
**introduce** [2] - 13592:12, 13592:25

**introduced** [3] - 13635:25, 13640:6, 13645:18
**invading** [2] - 13581:11, 13581:13
**investigate** [1] - 13672:9
**investigated** [1] - 13694:23
**investigating** [8] - 13668:2, 13668:5, 13668:18, 13669:13, 13670:25, 13671:23, 13677:23, 13680:22
**investigation** [32] - 13648:9, 13652:13, 13654:15, 13658:9, 13664:7, 13664:8, 13668:8, 13668:12, 13668:15, 13668:17, 13668:23, 13669:3, 13669:6, 13669:12, 13671:3, 13671:4, 13671:25, 13672:6, 13672:8, 13672:14, 13672:23, 13672:25, 13676:25, 13678:4, 13678:22, 13680:9, 13682:8, 13692:10, 13697:10, 13702:8, 13703:5, 13709:15
**investigations** [1] - 13673:2
**involve** [1] - 13575:24
**involved** [6] - 13576:12, 13668:7, 13668:11, 13671:6, 13677:2, 13680:24
**involves** [1] - 13586:18
**irony** [1] - 13586:15
**irrelevant** [1] - 13595:9
**isolate** [2] - 13592:17, 13611:19
**isolation** [1] - 13580:12
**issue** [17] - 13578:7, 13578:8, 13584:1, 13590:8, 13591:2, 13607:9, 13607:24, 13608:4, 13610:5, 13616:18, 13620:8, 13632:14, 13633:23, 13635:11, 13642:17, 13659:19, 13681:14
**issues** [5] - 13575:20, 13584:3, 13606:17, 13627:21, 13634:12
**iteration** [1] -

13613:20
**itself** [2] - 13606:11, 13635:7
**IV** [1] - 13572:23

## J

**J.D** [1] - 13594:9
**J6** [1] - 13657:14
**jail** [4] - 13593:19, 13612:21, 13664:14, 13664:17
**January** [78] - 13578:16, 13581:9, 13581:10, 13589:6, 13589:12, 13589:15, 13589:24, 13590:1, 13591:12, 13591:14, 13594:7, 13596:13, 13597:13, 13597:15, 13597:16, 13598:15, 13599:17, 13607:12, 13608:24, 13608:25, 13612:4, 13612:8, 13614:17, 13614:22, 13615:4, 13615:13, 13615:24, 13615:25, 13616:3, 13616:23, 13621:3, 13621:12, 13624:19, 13625:23, 13627:21, 13627:23, 13629:9, 13629:12, 13629:22, 13634:20, 13634:21, 13636:24, 13649:15, 13649:16, 13649:18, 13651:14, 13652:6, 13652:8, 13652:11, 13653:8, 13653:13, 13660:10, 13660:11, 13663:4, 13663:10, 13663:15, 13664:10, 13664:19, 13666:1, 13666:19, 13666:22, 13666:24, 13668:5, 13668:8, 13671:5, 13671:10, 13675:20, 13677:5, 13677:25, 13679:5, 13679:10, 13681:3, 13685:1, 13693:20, 13700:14
**Jason** [2] - 13572:12, 13575:7
**Jauregui** [2] - 13573:8, 13575:12
**JAUREGUI** [47] - 13573:8, 13644:17, 13644:19, 13645:1, 13645:3, 13646:17, 13646:19, 13646:20,

13650:9, 13650:13, 13651:23, 13654:2, 13654:17, 13655:25, 13656:2, 13656:4, 13656:19, 13656:21, 13656:22, 13657:18, 13657:23, 13657:24, 13658:23, 13659:9, 13659:12, 13659:15, 13659:22, 13659:25, 13660:8, 13661:3, 13661:6, 13661:8, 13662:10, 13662:12, 13662:13, 13663:8, 13663:13, 13664:2, 13664:12, 13665:10, 13665:11, 13665:17, 13666:15, 13666:16, 13667:2, 13667:4, 13667:7
**Jauregui................ 13644** [1] - 13574:3
**Jencks** [1] - 13602:10
**Jeremy** [2] - 13579:8, 13582:10
**Jersey** [7] - 13594:8, 13594:9, 13594:17, 13595:7, 13596:21, 13598:11, 13598:13
**job** [4] - 13641:19, 13641:20, 13641:23
**jobs** [1] - 13611:4
**John** [2] - 13572:23, 13575:10
**join** [3] - 13586:10, 13633:6, 13684:24
**join/participate** [1] - 13656:6
**joined** [7] - 13668:17, 13677:18, 13678:4, 13678:20, 13679:4, 13684:25
**joke** [1] - 13670:11
**Joseph** [1] - 13575:4
**journalism** [1] - 13630:2
**journalist** [4] - 13629:14, 13629:20, 13630:15, 13631:8
**journalists** [1] - 13666:18
**judge** [3] - 13627:5, 13635:2, 13650:9
**Judge** [8] - 13601:17, 13627:6, 13627:8, 13628:8, 13635:3, 13635:4, 13658:24, 13659:13
**JUDGE** [1] - 13572:10
**jump** [3] - 13577:24,

13594:11, 13594:23
**juror** [4] - 13585:7, 13585:11, 13586:1, 13606:22
**Jury** [2] - 13644:11, 13723:7
**JURY** [1] - 13572:8
**jury** [41] - 13584:3, 13584:8, 13585:20, 13590:5, 13597:6, 13598:2, 13600:21, 13601:15, 13601:18, 13604:24, 13605:16, 13606:18, 13607:21, 13608:1, 13608:19, 13619:8, 13621:23, 13622:16, 13637:16, 13637:17, 13639:11, 13640:25, 13641:4, 13643:2, 13643:9, 13643:16, 13643:23, 13643:25, 13644:2, 13644:10, 13644:11, 13677:19, 13678:25, 13679:2, 13679:8, 13686:22, 13687:20, 13689:15, 13706:17, 13723:7
**jury's** [6] - 13584:13, 13584:14, 13586:5, 13588:23, 13590:2, 13609:2
**jury-confusion** [1] - 13598:2
**justice** [1] - 13593:18

## K

**Kansas** [1] - 13716:21
**Kate** [1] - 13648:21
**keep** [9] - 13583:23, 13701:15, 13702:15, 13714:5, 13715:12, 13718:19, 13720:25, 13721:17, 13722:2
**KELLY** [1] - 13572:9
**KENERSON** [49] - 13646:15, 13651:21, 13653:24, 13654:12, 13655:23, 13656:17, 13657:16, 13657:20, 13658:21, 13659:2, 13660:5, 13661:1, 13661:4, 13663:6, 13663:11, 13663:25, 13664:5, 13665:9, 13665:15, 13674:6, 13676:13, 13676:15, 13676:17, 13678:13, 13683:23, 13685:16,

13687:2, 13687:6, 13687:10, 13688:15, 13688:17, 13688:19, 13688:21, 13688:23, 13689:3, 13689:6, 13690:19, 13693:13, 13696:6, 13702:18, 13704:25, 13705:23, 13706:11, 13708:16, 13709:24, 13710:8, 13713:15, 13716:3, 13716:6
**Kenerson** [5] - 13572:12, 13575:8, 13678:12, 13688:16, 13688:22
**Kenny** [10] - 13661:23, 13662:1, 13662:4, 13662:16, 13662:23, 13663:1, 13663:4, 13663:16, 13663:23, 13664:16
**Kevin** [3] - 13670:4, 13670:5
**kind** [29] - 13580:7, 13589:21, 13595:24, 13598:1, 13599:4, 13601:15, 13606:1, 13613:20, 13614:2, 13614:24, 13616:17, 13616:25, 13617:2, 13620:19, 13625:20, 13626:13, 13630:1, 13631:2, 13631:3, 13631:16, 13649:6, 13649:25, 13668:9, 13668:10, 13669:23, 13675:11, 13688:10, 13700:17, 13713:2
**kinds** [1] - 13589:25
**knock** [1] - 13626:18
**knowing** [2] - 13668:18, 13704:5
**knowledge** [6] - 13645:14, 13648:15, 13648:22, 13648:24, 13666:25, 13704:4
**known** [1] - 13704:8
**knows** [7] - 13597:24, 13630:14, 13630:15, 13641:20, 13713:13, 13713:16, 13716:10
**Kyles** [1] - 13681:19

## L

**lab** [1] - 13659:16
**label** [2] - 13672:12
**ladies** [1] - 13723:5
**laid** [2] - 13601:8,

13605:9
**Lake** [1] - 13573:15
**Lakes** [1] - 13573:6
**Lashome** [1] -
13708:14
**last** [24] - 13577:6,
13586:15, 13595:10,
13597:10, 13619:15,
13624:8, 13627:9,
13632:11, 13632:14,
13633:24, 13634:8,
13635:10, 13657:8,
13661:12, 13661:14,
13661:15, 13661:17,
13661:19, 13670:1,
13670:6, 13695:24
**lasted** [1] - 13677:1
**latter** [1] - 13587:15
**laughter** [1] -
13679:22
**LAW** [3] - 13573:5,
13573:8, 13573:15
**law** [10] - 13583:13,
13585:21, 13597:25,
13615:15, 13624:21,
13624:23, 13624:24,
13625:16, 13625:24,
13639:16
**laws** [5] - 13624:18,
13625:7, 13626:3,
13626:4, 13626:6
**lawyer** [3] - 13641:5,
13655:5, 13658:13
**layer** [2] - 13635:4,
13638:21
**layers** [1] - 13632:23
**layman's** [1] -
13648:12
**lays** [1] - 13639:9
**lead** [2] - 13614:22,
13682:8
**leaders** [3] - 13595:24,
13608:23, 13609:5
**Leaders** [1] -
13578:16
**leadership** [3] -
13684:3, 13684:6,
13684:10
**leading** [2] -
13597:15, 13652:10
**learned** [5] -
13709:15, 13709:18,
13709:19, 13710:2,
13710:6
**learning** [1] - 13710:5
**least** [14] - 13581:16,
13585:11, 13587:13,
13588:22, 13629:18,
13633:8, 13639:8,
13640:22, 13641:25,

13642:5, 13692:24,
13699:23, 13709:22,
13710:14
**leave** [4] - 13597:23,
13604:23, 13695:3,
13709:15
**leaving** [1] - 13711:4
**led** [3] - 13581:7,
13593:17, 13677:1
**left** [17] - 13592:22,
13612:20, 13675:19,
13695:4, 13695:7,
13695:9, 13697:11,
13697:19, 13709:18,
13709:19, 13709:20,
13710:3, 13711:4,
13711:25, 13712:2,
13712:13, 13715:20
**legal** [3] - 13598:4,
13629:11, 13630:5
**legitimate** [2] -
13630:1, 13631:8
**lends** [1] - 13583:1
**less** [2] - 13582:2,
13585:15
**letting** [1] - 13583:22
**leverage** [1] -
13652:18
**life** [2] - 13622:6,
13656:15
**light** [1] - 13626:2
**likelihood** [1] -
13584:3
**likely** [4] - 13584:8,
13662:25, 13702:11,
13702:14
**likeness** [1] -
13606:24
**limited** [3] - 13638:12,
13639:20, 13640:4
**limiting** [2] - 13636:9,
13636:17
**line** [5] - 13593:19,
13635:10, 13674:7,
13676:17, 13693:17
**lines** [4] - 13597:10,
13622:24, 13633:21,
13691:13
**link** [1] - 13583:5
**linkage** [6] - 13586:24,
13593:5, 13593:16,
13593:20, 13598:8,
13599:17
**linking** [1] - 13579:18
**links** [3] - 13590:4,
13625:5, 13626:13
**list** [1] - 13627:18
**listen** [1] - 13640:17
**listened** [2] -
13664:25, 13665:1

**listener** [3] -
13631:17, 13631:18,
13631:23
**listening** [1] -
13688:21
**literally** [6] - 13638:5,
13680:2, 13690:4,
13690:11, 13690:13,
13690:14
**litigated** [5] -
13619:15, 13619:21,
13620:9, 13622:6,
13678:16
**live** [1] - 13587:11
**lives** [1] - 13614:15
**Livingston** [1] -
13573:16
**Lizardo** [9] -
13661:23, 13662:1,
13662:4, 13662:16,
13663:1, 13663:4,
13663:14, 13663:23,
13664:16
**LLC** [1] - 13572:20
**load** [2] - 13611:22,
13630:8
**lodge** [1] - 13639:8
**logical** [1] - 13639:5
**longest** [1] - 13656:15
**Look** [1] - 13607:13
**look** [42] - 13580:2,
13586:3, 13586:23,
13587:22, 13590:20,
13597:8, 13597:10,
13597:17, 13599:24,
13600:5, 13603:19,
13604:16, 13608:24,
13610:17, 13610:18,
13610:20, 13611:2,
13611:5, 13613:7,
13616:18, 13628:15,
13630:17, 13630:22,
13631:23, 13633:19,
13639:6, 13640:15,
13643:13, 13653:17,
13671:8, 13679:15,
13693:2, 13693:7,
13697:21, 13704:17,
13708:19, 13712:17,
13713:2, 13713:4,
13713:13, 13713:19,
13714:11
**looked** [7] - 13650:17,
13650:21, 13651:8,
13651:13, 13679:16,
13702:8, 13704:5
**looking** [9] -
13596:16, 13603:19,
13627:18, 13679:12,
13679:23, 13690:17,

13704:24, 13713:22,
13716:12
**looks** [8] - 13594:8,
13599:20, 13599:21,
13688:11, 13705:4,
13713:2, 13713:22,
13722:5
**loose** [1] - 13644:22
**loses** [1] - 13639:4
**lost** [3] - 13713:2,
13713:22, 13717:24
**low** [2] - 13611:6,
13611:11
**lunch** [3] - 13576:18,
13721:13, 13723:6
**Luncheon** [1] -
13723:14
**Lync** [4] - 13659:13,
13675:8, 13675:22,
13675:23

**M**

**machine** [2] -
13573:21, 13651:2
**madam** [1] - 13646:16
**Main** [5] - 13662:1,
13683:2, 13683:6,
13684:21, 13684:22
**mainstream** [1] -
13600:20
**male** [1] - 13716:20
**Mall** [1] - 13700:16
**man** [3] - 13589:21,
13599:20, 13714:1
**maneuvering** [2] -
13716:9, 13716:12
**manipulate** [4] -
13604:7, 13605:1,
13605:10, 13706:9
**manipulated** [9] -
13604:10, 13604:19,
13604:25, 13605:8,
13605:20, 13605:25,
13608:12, 13608:14,
13609:16
**manipulating** [3] -
13603:6, 13608:16,
13610:6
**March** [8] - 13572:6,
13613:12, 13668:12,
13669:2, 13670:24,
13677:23, 13677:24,
13723:21
**march** [15] - 13694:25,
13695:3, 13695:4,
13695:25, 13697:11,
13699:23, 13700:10,
13700:18, 13700:24,
13701:4, 13709:16,

13709:18, 13710:7,
13717:14, 13717:18
**marches** [1] - 13698:5
**marching** [12] -
13596:9, 13598:11,
13671:17, 13671:18,
13697:6, 13700:16,
13716:21, 13717:3,
13717:5, 13717:7,
13717:9, 13717:12
**marked** [2] -
13686:15, 13705:22
**massively** [1] -
13678:25
**matches** [1] -
13705:10
**material** [1] -
13602:10
**matter** [10] - 13591:12,
13600:11, 13639:15,
13639:19, 13639:23,
13640:9, 13640:14,
13641:1, 13641:3,
13680:25
**Matter** [2] - 13575:2,
13644:14
**matters** [1] - 13576:2
**Matthew** [9] - 13669:7,
13669:9, 13669:13,
13669:14, 13669:25,
13698:25, 13709:22,
13710:4, 13710:5
**MCCULLOUGH** [3] -
13706:24, 13707:14,
13707:18
**McCullough** [3] -
13572:12, 13575:7,
13707:21
**McDonald** [2] -
13671:10, 13671:20
**MCGUIRE** [1] -
13572:24
**MD** [1] - 13573:3
**mean** [64] - 13576:16,
13579:12, 13580:7,
13581:5, 13582:4,
13584:14, 13586:11,
13586:13, 13586:18,
13587:4, 13587:7,
13587:8, 13587:11,
13588:9, 13593:14,
13593:16, 13597:3,
13603:14, 13603:25,
13605:12, 13608:9,
13608:17, 13613:7,
13614:4, 13615:4,
13615:11, 13617:22,
13617:23, 13619:14,
13622:8, 13622:10,
13624:3, 13625:17,

13627:17, 13630:24,
13631:3, 13631:4,
13631:8, 13633:13,
13633:14, 13633:19,
13633:21, 13635:5,
13635:16, 13638:3,
13638:16, 13645:16,
13654:18, 13658:1,
13672:5, 13674:2,
13676:10, 13678:10,
13678:11, 13678:14,
13679:14, 13679:15,
13687:3, 13688:9,
13689:25, 13690:16,
13703:4, 13711:4,
13721:12
**means** [4] - 13639:15,
13654:8, 13673:14,
13686:3
**meant** [2] - 13676:4,
13679:15
**media** [11] - 13580:7,
13580:16, 13581:4,
13581:11, 13583:9,
13595:11, 13596:15,
13639:2, 13665:13,
13665:18
**meet** [2] - 13613:10,
13653:15
**meeting** [2] -
13671:19, 13690:5
**meetings** [1] -
13673:16
**meets** [1] - 13614:18
**megadata** [1] -
13708:22
**member** [1] -
13582:13
**members** [2] -
13623:3, 13682:14
**meme** [3] - 13641:19,
13641:20, 13641:23
**mental** [5] - 13595:20,
13596:10, 13596:20,
13614:13, 13628:20
**mention** [2] - 13694:1,
13709:7
**mentioned** [1] -
13690:11
**mentions** [1] -
13693:14
**message** [16] -
13579:11, 13582:23,
13583:22, 13586:23,
13592:12, 13592:15,
13593:17, 13596:21,
13632:25, 13633:2,
13633:8, 13645:6,
13645:9, 13645:11,
13648:13, 13648:14

**messages** [34] -
13582:24, 13583:11,
13583:12, 13589:6,
13589:13, 13589:15,
13589:23, 13589:24,
13592:13, 13592:14,
13592:18, 13592:24,
13593:4, 13593:5,
13593:14, 13593:15,
13593:22, 13596:13,
13596:25, 13629:9,
13635:25, 13645:18,
13646:14, 13646:22,
13646:25, 13648:24,
13657:4, 13659:13,
13662:23, 13664:4,
13676:23, 13678:5
**messaging** [1] -
13675:13
**Messenger** [1] -
13675:12
**met** [2] - 13653:20,
13663:1
**metadata** [2] -
13706:12, 13707:23
**Metcalf** [13] -
13573:11, 13575:13,
13676:21, 13679:14,
13680:6, 13681:12,
13681:23, 13685:17,
13685:19, 13687:16,
13688:18, 13688:24,
13707:4
**METCALF** [138] -
13573:11, 13667:8,
13667:10, 13667:12,
13674:9, 13676:22,
13677:10, 13677:21,
13679:8, 13679:17,
13679:19, 13679:21,
13680:11, 13680:16,
13680:18, 13680:22,
13681:8, 13682:2,
13682:4, 13683:9,
13683:15, 13683:25,
13684:2, 13684:18,
13684:20, 13685:7,
13685:14, 13685:20,
13685:24, 13686:1,
13686:3, 13686:7,
13686:10, 13686:12,
13686:13, 13686:25,
13687:4, 13687:17,
13687:19, 13688:2,
13688:4, 13689:14,
13690:3, 13690:10,
13691:15, 13691:17,
13693:16, 13694:4,
13694:10, 13694:12,
13695:11, 13695:14,

13695:19, 13695:21,
13696:3, 13696:7,
13696:10, 13696:16,
13696:20, 13696:22,
13698:8, 13698:12,
13698:17, 13698:21,
13698:24, 13699:10,
13699:14, 13701:5,
13701:7, 13701:22,
13701:24, 13702:5,
13702:7, 13702:20,
13703:16, 13703:19,
13703:20, 13703:24,
13704:1, 13705:1,
13705:3, 13705:21,
13706:3, 13706:6,
13706:13, 13706:19,
13706:22, 13707:8,
13707:11, 13707:15,
13707:19, 13707:23,
13708:3, 13708:4,
13708:18, 13710:1,
13710:9, 13710:11,
13711:10, 13711:14,
13711:21, 13711:24,
13712:20, 13712:23,
13713:10, 13713:17,
13713:18, 13715:12,
13715:14, 13716:8,
13717:21, 13717:23,
13718:8, 13718:10,
13718:12, 13718:15,
13718:19, 13718:21,
13718:24, 13718:25,
13719:12, 13719:17,
13719:22, 13720:1,
13720:4, 13720:7,
13720:11, 13720:12,
13720:16, 13720:21,
13720:25, 13721:4,
13721:22, 13721:24,
13722:2, 13722:4,
13723:1
**Metcalf.................
13667** [1] - 13574:4
**Miami** [3] - 13573:6,
13647:25, 13648:1
**midnight** [1] - 13577:6
**might** [12] - 13577:22,
13580:21, 13584:18,
13601:1, 13602:20,
13606:3, 13616:18,
13617:1, 13626:1,
13626:9, 13631:15,
13674:24
**militia** [1] - 13630:21
**Miller** [11] - 13573:17,
13630:11, 13630:12,
13644:8, 13667:13,
13685:8, 13686:14,

13691:18, 13704:2,
13708:5, 13723:22
**MILLER** [2] - 13574:3,
13723:17
**Miller's** [1] - 13628:25
**mind** [8] - 13598:4,
13606:6, 13606:11,
13614:18, 13626:14,
13637:15, 13639:22,
13656:9
**minimal** [1] -
13678:23
**Ministry** [1] - 13683:1
**Mink** [1] - 13573:2
**minute** [3] - 13582:2,
13585:15
**minutes** [21] -
13591:11, 13591:14,
13591:25, 13592:7,
13644:1, 13644:6,
13660:19, 13695:11,
13695:12, 13695:17,
13695:20, 13701:11,
13701:17, 13705:15,
13711:1, 13711:7,
13711:8, 13715:16,
13722:21
**misinformation** [1] -
13608:20
**misleading** [2] -
13584:3, 13606:18
**missed** [2] - 13660:22,
13714:3
**missing** [1] -
13584:20
**mistake** [1] - 13630:20
**mistaken** [1] - 13582:9
**misused** [1] -
13640:21
**mode** [1] - 13648:19
**moment** [8] -
13581:22, 13619:10,
13629:3, 13631:2,
13660:12, 13666:5,
13685:17, 13719:15
**moments** [2] -
13585:17, 13716:13
**monologue** [1] -
13620:20
**montage** [10] -
13687:22, 13690:8,
13694:2, 13696:11,
13696:23, 13698:13,
13701:20, 13709:13,
13709:14, 13710:12
**month** [2] - 13616:22,
13656:15
**months** [5] - 13639:3,
13692:15, 13692:19,
13692:24, 13692:25

**Monument** [4] -
13596:2, 13596:8,
13690:5, 13705:7
**Moore** [2] - 13572:13,
13575:8
**morning** [14] -
13575:16, 13582:7,
13590:23, 13596:13,
13627:8, 13644:20,
13644:21, 13646:1,
13667:13, 13664:14,
13693:20, 13693:23,
13695:4, 13700:23
**MORNING** [1] -
13572:9
**MOSD** [14] - 13578:16,
13645:15, 13662:1,
13662:6, 13662:16,
13662:19, 13682:19,
13683:5, 13683:6,
13683:16, 13684:10,
13684:21, 13684:22
**most** [9] - 13577:25,
13578:9, 13586:18,
13595:24, 13622:23,
13636:4, 13636:23,
13680:3
**mostly** [2] - 13635:21,
13700:21
**motion** [3] - 13589:3,
13640:6
**motivated** [1] -
13613:14
**motivation** [1] -
13613:15
**motive** [11] -
13612:10, 13613:11,
13613:12, 13626:13,
13637:6, 13637:15,
13638:24, 13639:14,
13639:14, 13639:22
**motives** [1] - 13637:7
**move** [5] - 13616:15,
13618:17, 13621:19,
13657:13, 13680:5
**MR** [383] - 13577:21,
13578:3, 13578:8,
13578:15, 13578:23,
13579:1, 13579:5,
13579:7, 13579:11,
13582:3, 13582:7,
13584:22, 13584:25,
13587:17, 13588:8,
13588:15, 13588:17,
13588:18, 13588:23,
13589:1, 13589:4,
13589:9, 13589:19,
13590:11, 13590:19,
13590:24, 13591:3,
13591:6, 13591:10,

13592:11, 13593:24, 13594:4, 13594:6, 13594:13, 13594:16, 13594:19, 13594:22, 13595:1, 13595:18, 13596:7, 13597:4, 13597:20, 13597:23, 13598:17, 13599:7, 13599:15, 13599:20, 13599:23, 13599:25, 13600:10, 13601:6, 13602:5, 13602:9, 13602:15, 13602:17, 13602:19, 13602:20, 13602:24, 13603:3, 13603:10, 13603:15, 13604:3, 13604:15, 13604:21, 13605:4, 13605:6, 13605:13, 13605:16, 13605:18, 13605:21, 13605:23, 13606:1, 13606:19, 13607:11, 13607:20, 13608:7, 13608:17, 13609:7, 13609:8, 13609:10, 13611:14, 13611:17, 13612:3, 13613:1, 13613:19, 13614:20, 13615:6, 13616:21, 13617:6, 13617:8, 13617:11, 13617:15, 13617:17, 13617:25, 13618:3, 13618:9, 13618:11, 13618:13, 13618:16, 13619:2, 13619:14, 13620:1, 13620:3, 13620:4, 13620:5, 13620:6, 13620:7, 13620:8, 13620:11, 13620:16, 13620:17, 13620:21, 13621:2, 13621:4, 13621:8, 13621:11, 13621:17, 13622:1, 13622:12, 13622:16, 13623:14, 13623:22, 13624:8, 13624:11, 13624:15, 13624:17, 13625:10, 13625:12, 13625:15, 13625:21, 13626:16, 13627:5, 13627:15, 13628:4, 13628:8, 13628:17, 13630:18, 13631:15, 13632:19, 13632:22, 13635:2, 13637:22, 13637:24, 13641:9, 13642:14, 13642:23, 13643:1, 13643:8, 13643:12, 13644:17, 13644:19,

13645:1, 13645:3, 13646:15, 13646:17, 13646:19, 13646:20, 13650:9, 13650:13, 13651:21, 13651:23, 13653:24, 13654:2, 13654:12, 13654:17, 13655:23, 13655:25, 13656:2, 13656:4, 13656:17, 13656:19, 13656:21, 13656:22, 13657:16, 13657:18, 13657:20, 13657:23, 13657:24, 13658:21, 13658:23, 13659:2, 13659:9, 13659:12, 13659:15, 13659:22, 13659:25, 13660:5, 13660:8, 13661:1, 13661:3, 13661:4, 13661:6, 13661:8, 13662:10, 13662:12, 13662:13, 13663:6, 13663:8, 13663:11, 13663:13, 13663:25, 13664:2, 13664:5, 13664:12, 13665:9, 13665:10, 13665:11, 13665:15, 13665:17, 13666:15, 13666:16, 13667:2, 13667:4, 13667:7, 13667:8, 13667:10, 13667:12, 13674:6, 13674:9, 13676:13, 13676:15, 13676:17, 13676:22, 13677:10, 13677:21, 13678:13, 13679:8, 13679:17, 13679:19, 13679:21, 13680:11, 13680:16, 13680:18, 13680:22, 13681:8, 13682:2, 13682:4, 13683:9, 13683:15, 13683:23, 13683:25, 13684:2, 13684:18, 13684:20, 13685:7, 13685:14, 13685:16, 13685:20, 13685:24, 13686:1, 13686:3, 13686:7, 13686:10, 13686:12, 13686:13, 13686:25, 13687:2, 13687:4, 13687:6, 13687:10, 13687:17, 13687:19, 13688:2, 13688:4, 13688:15, 13688:17, 13688:19, 13688:21, 13688:23, 13689:3, 13689:6, 13689:14, 13690:3,

13690:10, 13690:19, 13691:15, 13691:17, 13693:13, 13693:16, 13694:4, 13694:10, 13694:12, 13695:11, 13695:14, 13695:19, 13695:21, 13696:3, 13696:6, 13696:7, 13696:10, 13696:16, 13696:20, 13696:22, 13698:8, 13698:12, 13698:17, 13698:21, 13698:24, 13699:10, 13699:14, 13701:5, 13701:7, 13701:22, 13701:24, 13702:5, 13702:7, 13702:18, 13702:20, 13703:16, 13703:19, 13703:20, 13703:24, 13704:1, 13704:25, 13705:1, 13705:3, 13705:21, 13705:23, 13706:3, 13706:6, 13706:11, 13706:13, 13706:19, 13706:22, 13706:24, 13707:8, 13707:11, 13707:14, 13707:15, 13707:18, 13707:19, 13707:23, 13708:3, 13708:4, 13708:16, 13708:18, 13709:24, 13710:1, 13710:8, 13710:9, 13710:11, 13711:10, 13711:14, 13711:21, 13711:24, 13712:20, 13712:23, 13713:10, 13713:15, 13713:17, 13713:18, 13715:12, 13715:14, 13716:3, 13716:6, 13716:8, 13717:21, 13717:23, 13718:8, 13718:10, 13718:12, 13718:15, 13718:19, 13718:21, 13718:24, 13718:25, 13719:12, 13719:17, 13719:22, 13720:1, 13720:4, 13720:7, 13720:11, 13720:12, 13720:16, 13720:21, 13720:25, 13721:4, 13721:22, 13721:24, 13722:2, 13722:4, 13723:1

MS [56] - 13576:24, 13577:4, 13577:11, 13577:16, 13586:10, 13586:13, 13610:1, 13610:4, 13610:9, 13610:13, 13610:15,

13610:19, 13610:22, 13610:24, 13611:10, 13615:8, 13615:18, 13615:20, 13616:1, 13616:5, 13616:8, 13616:10, 13616:12, 13616:15, 13623:25, 13628:9, 13634:1, 13634:5, 13634:8, 13634:11, 13634:24, 13635:19, 13635:23, 13636:12, 13636:19, 13637:3, 13637:5, 13637:9, 13637:12, 13637:19, 13638:1, 13638:3, 13638:7, 13638:9, 13638:11, 13638:15, 13639:12, 13639:18, 13639:24, 13640:1, 13640:16, 13640:22, 13681:10, 13681:14, 13681:19, 13681:22

**MT** [1] - 13573:16
**mud** [1] - 13592:23
**Mulroe** [14] - 13572:13, 13575:8, 13578:5, 13585:6, 13585:19, 13588:1, 13588:19, 13596:6, 13602:8, 13609:10, 13621:6, 13622:10, 13623:9
**MULROE** [41] - 13582:7, 13588:8, 13588:17, 13590:11, 13590:19, 13592:11, 13595:18, 13596:7, 13597:4, 13599:15, 13599:20, 13599:23, 13599:25, 13600:10, 13602:5, 13602:9, 13602:15, 13602:17, 13602:19, 13603:10, 13608:17, 13609:8, 13612:3, 13619:14, 13620:1, 13620:4, 13620:6, 13620:8, 13620:11, 13620:17, 13621:4, 13622:12, 13622:16, 13623:14, 13623:22, 13628:4, 13628:17, 13630:18, 13631:15, 13632:19, 13632:22
**multiple** [4] - 13646:13, 13664:8, 13665:5, 13665:12
**murder** [1] - 13630:9
**must** [2] - 13609:21,

13721:2

# N

**Nadia** [2] - 13572:13, 13575:8
**nakedly** [1] - 13584:4
**name** [7] - 13670:1, 13670:4, 13670:6, 13672:17, 13708:11, 13708:13
**named** [2] - 13594:9, 13595:7
**names** [1] - 13633:7
**narrowed** [1] - 13619:18
**narrowly** [1] - 13583:19
**nation** [2] - 13624:17, 13625:7
**National** [1] - 13700:16
**national** [1] - 13608:23
**nature** [2] - 13631:19, 13638:18
**Nayib** [2] - 13573:4, 13575:11
**NAYIB** [1] - 13573:5
**nearly** [1] - 13593:20
**necessarily** [5] - 13582:17, 13584:12, 13599:1, 13655:15, 13657:3
**necessary** [3] - 13583:2, 13598:8, 13619:3
**need** [16] - 13576:13, 13580:17, 13586:11, 13590:21, 13596:3, 13602:24, 13608:4, 13613:25, 13614:14, 13615:3, 13619:3, 13621:13, 13623:8, 13631:4, 13643:24
**needed** [1] - 13668:10
**needs** [17] - 13578:18, 13579:2, 13579:23, 13580:3, 13580:9, 13580:12, 13582:1, 13583:3, 13583:7, 13584:19, 13585:16, 13585:18, 13596:19, 13610:5, 13620:5, 13623:11, 13690:20
**network** [1] - 13675:24
**never** [6] - 13593:18, 13645:11, 13672:22, 13680:1, 13680:18,

13715:5
**new** [2] - 13682:7, 13682:8
**New** [10] - 13572:18, 13572:22, 13573:13, 13645:15, 13668:22, 13669:3, 13669:5, 13673:6, 13683:6, 13683:16
**newest** [1] - 13577:25
**news** [3] - 13580:7, 13595:13, 13600:20
**next** [28] - 13581:25, 13590:22, 13590:23, 13590:25, 13593:24, 13594:23, 13596:21, 13599:8, 13611:14, 13613:19, 13615:6, 13616:21, 13619:4, 13621:13, 13626:25, 13635:13, 13635:15, 13641:21, 13646:5, 13656:6, 13657:8, 13685:22, 13690:6, 13709:11, 13716:11
**Nicholas** [3] - 13572:16, 13575:9, 13666:17
**Nick** [11] - 13628:20, 13629:8, 13629:11, 13629:13, 13630:14, 13630:15, 13630:25, 13647:13, 13647:23, 13666:13
**NICOLE** [1] - 13574:3
**Nicole** [1] - 13644:8
**night** [3] - 13577:6, 13586:15, 13627:9
**NJ** [3] - 13573:17, 13723:17, 13723:22
**NJ-CCR** [3] - 13573:17, 13723:17, 13723:22
**Noble** [2] - 13579:8, 13662:19
**nobody** [2] - 13633:10, 13633:14
**non** [2] - 13601:5, 13719:13
**non-responsive** [1] - 13719:13
**non-violent** [1] - 13601:5
**none** [3] - 13634:19, 13640:21, 13651:6
**NORDEAN** [1] - 13572:4
**Nordean** [47] - 13575:3, 13575:14, 13578:18, 13579:22,

13585:4, 13585:8, 13585:15, 13585:17, 13590:4, 13591:15, 13591:21, 13592:19, 13593:5, 13599:16, 13599:18, 13600:8, 13600:19, 13601:1, 13601:7, 13601:12, 13603:6, 13603:11, 13604:13, 13604:25, 13606:25, 13607:3, 13608:12, 13612:13, 13612:17, 13613:3, 13613:23, 13614:2, 13616:4, 13616:25, 13617:1, 13618:5, 13618:17, 13620:20, 13620:22, 13621:20, 13624:12, 13626:17, 13629:1, 13636:22, 13641:15, 13642:2, 13644:15
**Nordean's** [15] - 13580:13, 13581:1, 13581:17, 13583:3, 13583:6, 13585:21, 13586:7, 13591:24, 13592:6, 13601:23, 13605:8, 13608:2, 13611:19, 13612:19, 13622:17
**Norman** [2] - 13572:20, 13575:10
**Nos** [1] - 13572:2
**note** [11] - 13582:8, 13590:11, 13592:11, 13596:16, 13602:9, 13612:14, 13630:18, 13692:12, 13693:3, 13693:8, 13705:24
**noted** [1] - 13693:8
**notes** [13] - 13660:9, 13686:21, 13688:1, 13688:25, 13689:13, 13690:3, 13691:22, 13697:21, 13699:24, 13705:17, 13709:7, 13710:18, 13723:19
**nothing** [20] - 13604:11, 13610:10, 13610:15, 13614:1, 13621:2, 13626:8, 13635:6, 13654:5, 13655:10, 13657:14, 13678:10, 13678:13, 13679:1, 13697:4, 13712:6, 13712:9, 13714:11, 13714:15, 13714:18, 13715:9
**notion** [1] - 13638:25

**November** [3] - 13627:10, 13630:7, 13663:19
**nuanced** [1] - 13641:6
**number** [11] - 13576:10, 13583:14, 13594:3, 13602:18, 13653:18, 13678:13, 13678:22, 13678:23, 13685:22, 13707:22
**NW** [5] - 13572:14, 13572:24, 13573:5, 13573:19, 13723:24
**NY** [2] - 13572:18, 13573:13

## O

**oath** [3] - 13600:1, 13603:23, 13612:16
**oath-breakers** [2] - 13600:1, 13603:23
**object** [15] - 13610:4, 13618:1, 13633:20, 13633:24, 13634:1, 13634:4, 13636:3, 13636:22, 13638:25, 13642:16, 13674:6, 13687:2, 13688:10, 13689:4, 13706:11
**objected** [5] - 13576:6, 13615:20, 13628:2, 13632:7, 13634:2
**objecting** [6] - 13577:1, 13591:22, 13595:10, 13618:14, 13691:1, 13691:13
**objection** [41] - 13576:10, 13576:11, 13577:12, 13589:7, 13600:7, 13615:14, 13616:13, 13629:6, 13632:6, 13639:8, 13651:21, 13653:24, 13654:12, 13656:17, 13657:16, 13657:20, 13657:21, 13658:22, 13659:21, 13660:5, 13661:1, 13663:6, 13663:11, 13663:25, 13664:5, 13665:9, 13665:15, 13676:13, 13683:23, 13688:24, 13693:13, 13702:18, 13704:25, 13705:23, 13708:16, 13709:24, 13710:8, 13713:15, 13716:3, 13719:14, 13719:16

**objections** [16] - 13575:19, 13575:23, 13575:24, 13576:23, 13577:22, 13582:12, 13615:21, 13617:13, 13626:19, 13627:4, 13635:13, 13635:17, 13636:4, 13636:10, 13636:13, 13681:7
**objects** [1] - 13633:18
**obstruct** [1] - 13629:25
**obtained** [3] - 13648:8, 13668:23, 13669:18
**obviously** [3] - 13581:8, 13585:13, 13614:17
**occasion** [1] - 13624:23
**occasions** [1] - 13595:20
**occurred** [1] - 13671:5
**occurs** [1] - 13596:12
**Ochs** [14] - 13628:20, 13628:25, 13629:2, 13629:8, 13629:20, 13629:24, 13630:4, 13630:15, 13630:23, 13630:25, 13631:6, 13631:7, 13647:13
**Ochs's** [4] - 13629:8, 13629:11, 13647:20, 13647:24
**odd** [2] - 13679:12, 13679:15
**odds** [1] - 13630:6
**OF** [5] - 13572:1, 13572:2, 13572:8, 13573:5, 13723:16
**offenses** [1] - 13610:11
**offer** [2] - 13590:15, 13628:18
**offered** [10] - 13580:23, 13582:10, 13582:12, 13582:19, 13590:16, 13598:10, 13626:14, 13629:6, 13631:25, 13633:15
**offering** [7] - 13585:25, 13591:19, 13591:20, 13612:17, 13628:19, 13629:5, 13632:23
**Office** [2] - 13673:4, 13673:12
**office** [6] - 13612:16, 13668:20, 13668:22, 13673:4, 13675:16,

13675:18
**OFFICE** [1] - 13572:14
**officer** [15] - 13599:18, 13600:4, 13600:5, 13600:25, 13601:19, 13603:4, 13603:8, 13606:21, 13606:24, 13607:3, 13607:12, 13607:14, 13607:15, 13641:12, 13641:18
**officers** [5] - 13606:25, 13671:21, 13718:22, 13719:11, 13722:6
**officers'** [1] - 13722:12
**OFFICES** [1] - 13573:5
**official** [2] - 13626:3, 13675:1
**Official** [2] - 13573:18, 13723:22
**OFFICIAL** [1] - 13723:16
**often** [1] - 13675:17
**OG** [1] - 13591:4
**older** [2] - 13599:20, 13600:6
**once** [9] - 13597:12, 13630:10, 13639:1, 13639:3, 13650:1, 13653:22, 13654:3, 13656:23, 13690:24
**one** [112] - 13576:9, 13576:21, 13578:11, 13578:13, 13578:17, 13584:5, 13584:22, 13586:17, 13590:25, 13591:3, 13591:8, 13591:19, 13593:6, 13593:11, 13593:22, 13593:24, 13594:12, 13594:23, 13597:20, 13597:25, 13598:6, 13598:7, 13598:24, 13599:2, 13599:8, 13599:16, 13600:12, 13604:9, 13607:2, 13608:22, 13609:4, 13609:12, 13609:14, 13609:17, 13611:14, 13613:22, 13614:6, 13615:6, 13616:21, 13617:25, 13618:13, 13618:16, 13618:20, 13618:21, 13618:23, 13619:20, 13620:23, 13621:13, 13621:17, 13621:18, 13621:24, 13622:1, 13622:13,

13624:3, 13624:8, 13624:9, 13627:5, 13627:13, 13628:1, 13628:5, 13628:20, 13629:18, 13630:25, 13632:1, 13633:2, 13634:20, 13635:23, 13636:15, 13639:12, 13641:8, 13641:9, 13645:23, 13646:4, 13647:12, 13649:8, 13649:10, 13651:14, 13662:6, 13666:12, 13668:20, 13668:22, 13669:7, 13669:15, 13671:20, 13674:23, 13675:23, 13677:11, 13677:16, 13678:13, 13678:22, 13681:6, 13683:1, 13683:10, 13686:4, 13689:21, 13690:6, 13691:18, 13693:25, 13694:7, 13703:1, 13703:16, 13708:5, 13716:17, 13718:16, 13720:17

**one's** [2] - 13594:7, 13613:19

**ones** [5] - 13577:25, 13591:22, 13618:7, 13618:12, 13627:13

**ongoing** [2] - 13615:13, 13616:3

**online** [4] - 13641:14, 13641:21, 13642:4, 13642:15

**open** [6] - 13582:15, 13586:15, 13588:11, 13588:22, 13696:7, 13703:21

**opening** [1] - 13613:5

**Operation** [1] - 13662:21

**operation** [1] - 13676:12

**opinion** [1] - 13624:24

**opponent** [1] - 13640:13

**opportunity** [4] - 13623:10, 13641:25, 13642:6, 13681:16

**opposite** [1] - 13626:12

**Ops** [1] - 13662:16

**orange** [4] - 13700:2, 13700:8, 13700:9

**Orange** [1] - 13572:21

**order** [1] - 13627:19

**original** [4] - 13600:3, 13600:15, 13604:10,

---

13684:10

**originally** [2] - 13618:5, 13619:17

**ought** [2] - 13584:21, 13593:8

**ounce** [1] - 13630:25

**ourselves** [1] - 13614:2

**outlined** [1] - 13619:20

**outside** [4] - 13589:7, 13589:10, 13589:15, 13717:3

**outstanding** [1] - 13629:14

**outweighed** [2] - 13606:17, 13678:25

**overall** [1] - 13677:22

**overflow** [1] - 13634:18

**overrule** [2] - 13617:9, 13719:14

**overruled** [5] - 13654:1, 13654:13, 13664:6, 13674:8, 13687:3

**overview** [1] - 13636:1

**overwhelming** [1] - 13634:14

**own** [2] - 13601:21, 13659:18

---

# P

**P.A** [2] - 13573:5, 13573:8

**P.C** [1] - 13573:11

**p.m** [12] - 13578:18, 13591:6, 13594:10, 13594:11, 13595:11, 13613:22, 13693:20, 13701:9, 13704:21, 13718:3, 13723:14

**PAGE** [1] - 13574:2

**page** [4] - 13687:5, 13693:2, 13693:11

**pages** [2] - 13686:19, 13691:18

**Palace** [4] - 13651:14, 13651:16, 13652:9, 13652:15

**pan** [1] - 13590:4

**panel** [1] - 13644:10

**Panman** [5] - 13579:15, 13580:3, 13585:12, 13591:7, 13611:18

**Panman's** [2] - 13579:13, 13579:16

**paper** [1] - 13692:12

---

**pardon** [1] - 13612:18

**pardoned** [1] - 13612:19

**parentheses** [1] - 13709:11

**Park** [1] - 13573:12

**Parler** [6] - 13599:17, 13602:14, 13602:17, 13629:10, 13629:23, 13664:4

**Part** [1] - 13578:6

**part** [28] - 13575:23, 13600:2, 13602:14, 13602:15, 13606:4, 13622:23, 13623:3, 13623:6, 13625:4, 13630:14, 13632:3, 13649:4, 13655:9, 13662:1, 13662:4, 13662:16, 13662:19, 13662:21, 13671:16, 13671:18, 13673:9, 13677:13, 13678:4, 13678:6, 13682:23, 13683:2, 13683:7, 13698:13

**participating** [1] - 13645:17

**particular** [10] - 13576:12, 13576:19, 13626:24, 13628:24, 13637:6, 13640:19, 13668:12, 13678:20, 13694:19, 13700:14

**particularly** [5] - 13595:8, 13596:11, 13623:16, 13640:2, 13640:7

**parts** [2] - 13700:23, 13700:24

**party** [1] - 13640:13

**passage** [1] - 13603:21

**passes** [2] - 13615:4, 13615:5

**past** [8] - 13597:13, 13689:17, 13689:24, 13689:25, 13690:15, 13690:19, 13691:3, 13691:5

**patently** [1] - 13621:19

**Pattis** [2] - 13572:20, 13575:10

**PATTIS** [1] - 13572:20

**Paul** [1] - 13592:22

**pause** [30] - 13594:14, 13611:15, 13644:9, 13644:12, 13656:3, 13660:7, 13683:12,

---

13686:9, 13694:6, 13694:10, 13698:19, 13706:23, 13707:1, 13707:16, 13707:20, 13710:17, 13718:10, 13718:24, 13720:10, 13720:11, 13720:18, 13721:1, 13721:3, 13721:9, 13721:11, 13721:14, 13721:16, 13721:18, 13721:22, 13722:25

**pay** [1] - 13629:11

**PC** [1] - 13572:24

**PDF** [1] - 13578:5

**Peace** [2] - 13705:6, 13708:21

**pen** [1] - 13692:12

**people** [37] - 13580:17, 13583:7, 13583:12, 13586:16, 13596:10, 13597:14, 13609:17, 13610:9, 13623:3, 13623:5, 13634:19, 13634:20, 13650:2, 13652:20, 13654:15, 13661:16, 13664:9, 13664:10, 13668:10, 13670:20, 13671:23, 13672:12, 13673:3, 13678:1, 13697:11, 13703:7, 13712:7, 13712:10, 13712:11, 13712:12, 13714:12, 13714:13, 13714:16, 13715:6, 13715:7, 13715:10, 13717:8

**pepper** [1] - 13671:21

**pepper-spraying** [1] - 13671:21

**perceive** [1] - 13612:22

**percent** [2] - 13679:9, 13696:1

**perfectly** [2] - 13585:6, 13620:22

**perhaps** [2] - 13576:18, 13636:8

**permission** [3] - 13685:10, 13706:6, 13708:1

**permission's** [1] - 13685:15

**permitted** [2] - 13587:19, 13688:25

**Person** [2] - 13677:8

**person** [9] - 13596:17, 13641:22, 13648:20, 13661:19, 13673:16,

---

13677:18, 13677:19, 13681:6

**person's** [3] - 13598:3, 13637:6, 13638:22

**personal** [3] - 13638:19, 13645:14, 13648:23

**personally** [5] - 13600:8, 13603:12, 13609:3, 13653:15, 13663:1

**perspective** [2] - 13582:15, 13582:16

**persuaded** [1] - 13599:4

**persuasive** [2] - 13599:5, 13599:6

**pertains** [1] - 13583:7

**pestering** [1] - 13589:25

**Pezzola** [86] - 13575:6, 13575:15, 13667:25, 13668:2, 13668:16, 13668:19, 13668:24, 13669:19, 13669:22, 13670:1, 13670:16, 13671:13, 13676:23, 13677:1, 13677:2, 13677:12, 13678:3, 13678:6, 13678:7, 13678:20, 13679:3, 13682:23, 13683:2, 13683:4, 13683:19, 13683:22, 13684:6, 13684:15, 13684:21, 13684:24, 13693:12, 13694:20, 13694:24, 13695:3, 13695:4, 13695:22, 13695:25, 13696:14, 13697:5, 13697:11, 13697:16, 13697:19, 13697:23, 13698:3, 13698:25, 13699:3, 13699:24, 13701:20, 13701:25, 13702:9, 13702:16, 13703:10, 13704:5, 13704:6, 13704:9, 13705:17, 13708:6, 13708:9, 13708:19, 13709:7, 13709:12, 13709:15, 13710:13, 13710:22, 13710:25, 13711:25, 13712:6, 13712:13, 13712:15, 13712:24, 13713:11, 13713:19, 13714:12, 13717:4, 13717:11, 13717:17,

13718:9, 13718:17, 13719:3, 13720:8, 13720:13, 13720:22, 13722:5, 13722:11, 13722:15, 13722:16

**PEZZOLA** [1] - 13572:6

**Pezzola's** [9] - 13668:21, 13685:9, 13686:15, 13687:1, 13690:10, 13698:14, 13705:4, 13705:22, 13716:16

**Pezzola-253** [1] - 13707:24

**ph** [1] - 13670:1

**ph]** [1] - 13708:14

**phases** [1] - 13675:20

**phone** [28] - 13647:1, 13647:6, 13647:13, 13647:19, 13647:20, 13647:24, 13648:8, 13648:13, 13648:18, 13649:19, 13649:20, 13649:24, 13651:2, 13653:6, 13653:10, 13653:12, 13656:23, 13675:8, 13679:13, 13702:13, 13702:21, 13702:25, 13703:3, 13703:9, 13703:11, 13703:14

**phone's** [1] - 13650:1

**phones** [5] - 13645:11, 13647:3, 13647:12, 13648:5, 13678:2

**photo** [25] - 13600:6, 13600:10, 13600:13, 13600:15, 13600:23, 13603:21, 13603:22, 13603:25, 13604:17, 13605:2, 13605:4, 13605:7, 13605:22, 13607:8, 13607:9, 13607:11, 13608:13, 13608:14, 13608:23, 13609:16, 13643:16, 13686:6, 13704:24, 13707:6, 13709:4

**photograph** [11] - 13599:17, 13600:3, 13601:7, 13641:21, 13705:19, 13705:24, 13705:25, 13706:1, 13706:4, 13706:10, 13706:14

**photographs** [4] - 13599:16, 13601:13, 13602:25, 13657:6

**phrase** [2] - 13598:2, 13672:17

**picked** [7] - 13576:3, 13598:21, 13609:20, 13626:20, 13628:1, 13664:13, 13664:16

**Pickleback** [1] - 13591:4

**picture** [5] - 13697:13, 13697:16, 13703:14, 13703:15, 13708:23

**pictures** [9] - 13578:20, 13579:17, 13579:24, 13583:4, 13583:16, 13603:6, 13703:5, 13703:7, 13703:11

**piece** [8] - 13599:1, 13601:20, 13620:18, 13648:6, 13668:7, 13690:4, 13706:15

**pieced** [1] - 13664:3

**pieces** [3] - 13621:21, 13640:11, 13680:8

**piggy** [1] - 13635:2

**piggy-back** [1] - 13635:2

**pile** [5] - 13579:20, 13584:7, 13585:3, 13591:16, 13593:7

**pissed** [1] - 13611:21

**place** [3] - 13595:25, 13689:20, 13713:20

**placed** [1] - 13641:21

**plan** [1] - 13663:4

**planned** [11] - 13579:22, 13580:8, 13580:24, 13589:9, 13589:10, 13589:12, 13591:17, 13592:1, 13592:8, 13716:1, 13716:4

**planning** [1] - 13581:12

**play** [15] - 13617:25, 13618:6, 13618:13, 13619:6, 13619:7, 13619:23, 13620:23, 13621:14, 13624:12, 13695:12, 13696:17, 13718:6, 13720:4, 13721:19

**played** [30] - 13620:6, 13621:1, 13621:5, 13621:16, 13621:25, 13624:16, 13637:4, 13669:6, 13694:8, 13694:9, 13695:13, 13695:17, 13695:18, 13696:19, 13698:10,

13698:11, 13698:17, 13698:23, 13699:13, 13711:11, 13711:13, 13712:22, 13713:9, 13715:13, 13718:7, 13718:20, 13720:20, 13720:20, 13721:21, 13722:3

**playing** [3] - 13715:12, 13721:17, 13722:2

**PLLC** [1] - 13572:17

**plug** [1] - 13642:24

**plural** [1] - 13596:17

**podcast** [9] - 13633:5, 13633:7, 13633:11, 13634:22, 13636:21, 13638:16, 13638:17, 13638:22, 13639:2

**podcasts** [2] - 13638:18, 13652:14

**podium** [1] - 13621:6

**point** [43] - 13577:22, 13580:23, 13582:6, 13584:25, 13590:22, 13596:23, 13597:5, 13597:21, 13598:6, 13598:18, 13604:18, 13606:10, 13614:20, 13626:23, 13628:22, 13632:2, 13633:12, 13648:8, 13654:7, 13654:19, 13654:21, 13655:6, 13656:14, 13656:16, 13658:11, 13658:22, 13659:6, 13688:6, 13688:8, 13688:12, 13690:24, 13694:25, 13695:5, 13695:6, 13697:2, 13697:6, 13699:5, 13712:14, 13713:20, 13716:9, 13716:18, 13717:15, 13720:13

**pointed** [3] - 13585:14, 13586:24, 13588:19

**points** [4] - 13680:4, 13689:21, 13690:7, 13693:25

**police** [22] - 13600:1, 13601:18, 13603:4, 13603:7, 13603:23, 13606:21, 13606:24, 13606:25, 13607:12, 13607:13, 13608:24, 13609:1, 13610:18, 13611:4, 13641:12, 13641:18, 13674:22, 13681:25, 13719:3, 13719:11, 13722:6

**Police** [5] - 13601:4, 13719:1, 13722:7, 13722:9, 13722:14

**political** [3] - 13608:21, 13613:6, 13614:25

**politics** [2] - 13615:1, 13626:9

**pool** [1] - 13697:14

**popular** [1] - 13610:10

**pores** [1] - 13589:22

**position** [2] - 13600:11, 13632:25

**positively** [1] - 13603:5

**possession** [1] - 13722:9

**possibilities** [1] - 13585:24

**possibility** [1] - 13627:17

**possible** [3] - 13657:10, 13657:12, 13666:5

**possibly** [7] - 13654:20, 13654:22, 13654:25, 13655:8, 13655:12, 13655:20, 13666:2

**post** [12] - 13581:23, 13581:24, 13581:25, 13596:15, 13597:16, 13602:14, 13606:25, 13608:2, 13615:9, 13624:1, 13625:23, 13629:12

**post-January** [1] - 13625:23

**posted** [10] - 13599:16, 13600:3, 13600:13, 13603:11, 13603:13, 13605:4, 13607:3, 13608:12, 13608:14, 13643:16

**posting** [3] - 13600:22, 13608:22, 13608:23

**posts** [7] - 13580:6, 13581:22, 13581:23, 13599:18, 13599:25, 13629:10, 13638:23

**potentially** [3] - 13713:24, 13714:10, 13716:15

**pound** [1] - 13669:23

**power** [4] - 13577:5, 13577:6, 13608:20, 13612:18

**powerful** [1] - 13622:24

**pre** [1] - 13598:15

**pre-January** [1] - 13598:15

**precede** [1] - 13629:9

**preceding** [1] - 13597:5

**precisely** [1] - 13631:20

**predate** [1] - 13627:11

**predates** [1] - 13627:21

**predicate** [3] - 13598:10, 13605:9, 13642:3

**preemptive** [1] - 13607:6

**preemptively** [3] - 13603:7, 13606:21, 13608:4

**prejudice** [3] - 13603:1, 13606:17, 13611:11

**prejudicial** [3] - 13601:3, 13631:11, 13634:25

**prejudicing** [1] - 13584:4

**preliminary** [3] - 13603:17, 13609:19, 13642:17

**premarked** [1] - 13685:9

**present** [12] - 13575:7, 13575:8, 13575:9, 13575:10, 13575:11, 13575:12, 13575:13, 13596:1, 13604:22, 13613:11, 13642:1, 13642:6

**presentation** [1] - 13587:23

**presented** [3] - 13604:4, 13612:10, 13640:5

**presenting** [3] - 13604:6, 13604:8, 13627:12

**president** [6] - 13624:19, 13625:6, 13625:18, 13634:13, 13634:17

**President** [2] - 13612:16, 13613:14

**pressure** [1] - 13653:1

**pretrial** [4] - 13577:23, 13618:4, 13620:9, 13678:16

**pretty** [6] - 13578:11, 13601:15, 13627:11, 13627:21, 13631:11,

13655:4
**previewed** [1] - 13619:11
**previous** [3] - 13593:3, 13615:21, 13640:23
**primarily** [3] - 13619:22, 13628:20, 13634:19
**print** [1] - 13703:22
**priority** [2] - 13658:19, 13659:16
**privy** [1] - 13714:8
**pro** [3] - 13630:8, 13631:10, 13631:19
**pro-violence** [3] - 13630:8, 13631:10, 13631:19
**probative** [4] - 13583:2, 13596:22, 13606:15, 13606:16
**problem** [8] - 13600:2, 13601:22, 13602:21, 13606:4, 13617:24, 13640:8, 13656:7, 13689:3
**problems** [1] - 13575:25
**proceed** [11] - 13575:18, 13588:5, 13596:6, 13623:13, 13644:16, 13656:1, 13667:9, 13680:15, 13681:24, 13691:13, 13691:14
**proceeding** [2] - 13626:3, 13681:13
**Proceedings** [1] - 13573:21
**proceedings** [1] - 13723:20
**process** [1] - 13651:5
**processed** [1] - 13658:16
**produce** [1] - 13602:9
**produced** [1] - 13573:21
**proffer** [2] - 13600:13, 13641:15
**proffered** [1] - 13601:11
**proffers** [1] - 13643:19
**program** [2] - 13650:22, 13650:23, 13702:22
**programs** [2] - 13702:25, 13703:1
**projecting** [1] - 13639:3
**proof** [1] - 13598:10

**properly** [1] - 13611:5
**proponent** [1] - 13585:23
**proposals** [1] - 13577:7
**propose** [1] - 13582:25
**prosecuted** [1] - 13629:21
**protesters** [2] - 13595:12, 13601:5
**protests** [1] - 13652:3
**Proud** [24] - 13609:4, 13612:20, 13614:9, 13614:10, 13623:3, 13628:21, 13629:19, 13630:13, 13634:14, 13647:9, 13647:17, 13661:12, 13661:14, 13661:15, 13668:7, 13671:1, 13671:2, 13671:4, 13671:5, 13671:8, 13671:11, 13672:3, 13716:21
**prove** [3] - 13604:18, 13608:15, 13625:25, 13631:4, 13631:5, 13679:3
**provide** [4] - 13607:9, 13622:14, 13623:19, 13629:7
**provided** [5] - 13578:5, 13627:9, 13650:1, 13659:5, 13722:14
**providing** [1] - 13663:21
**provision** [1] - 13690:17
**public** [1] - 13600:17
**publish** [2] - 13706:7, 13708:1
**published** [1] - 13703:25
**pull** [4] - 13575:25, 13619:16, 13643:1, 13698:8
**pulled** [2] - 13576:15, 13664:9
**pulling** [1] - 13684:3
**puppy** [2] - 13713:2, 13717:24
**purportedly** [2] - 13607:15, 13633:8
**purpose** [5] - 13596:9, 13609:6, 13621:23, 13628:19, 13640:19
**purposes** [6] - 13598:20, 13640:4, 13640:8, 13650:11,

13674:22, 13689:18
**push** [2] - 13655:3, 13655:7
**pushing** [3] - 13657:7, 13658:11, 13658:13
**put** [31] - 13576:13, 13587:6, 13587:8, 13588:2, 13588:21, 13590:7, 13592:16, 13596:19, 13599:2, 13600:23, 13603:3, 13608:14, 13612:15, 13613:9, 13624:9, 13629:3, 13631:1, 13631:2, 13643:11, 13644:2, 13645:1, 13650:1, 13658:19, 13659:15, 13659:16, 13687:19, 13689:12, 13693:19, 13702:22, 13702:25, 13704:5
**puts** [2] - 13622:19, 13622:21
**putting** [6] - 13581:21, 13582:21, 13584:13, 13607:8, 13635:18, 13692:11

## Q

**quarrel** [1] - 13632:9
**Quested** [1] - 13666:17
**questions** [7] - 13584:18, 13593:9, 13626:22, 13661:22, 13688:13, 13691:7, 13691:8
**quick** [1] - 13690:6
**quickly** [1] - 13597:9
**quiet** [1] - 13623:8
**quite** [2] - 13576:7, 13692:6
**quote** [1] - 13591:11

## R

**radar** [1] - 13614:1
**Rae** [1] - 13592:22
**raise** [5] - 13606:2, 13608:8, 13609:12, 13609:18, 13626:20
**raised** [4] - 13576:20, 13582:11, 13607:1, 13626:21
**raises** [1] - 13623:2
**raising** [1] - 13628:11
**rallies** [2] - 13652:3, 13652:5
**rally** [4] - 13581:7,

13629:15, 13663:17, 13663:19
**rational** [2] - 13606:7, 13606:9
**reach** [1] - 13655:6
**reaching** [1] - 13630:3
**reacting** [1] - 13625:8
**reactions** [1] - 13612:3
**read** [5] - 13593:17, 13646:7, 13655:21, 13690:25, 13709:10
**reading** [2] - 13645:17, 13673:23
**ready** [1] - 13639:10
**real** [4] - 13631:8, 13654:11, 13665:25, 13690:6
**reality** [5] - 13623:1, 13623:5, 13623:7, 13623:15
**realize** [1] - 13624:5
**really** [14] - 13576:23, 13589:22, 13591:21, 13593:8, 13600:5, 13619:12, 13630:9, 13632:12, 13633:20, 13646:11, 13654:21, 13656:16, 13657:13, 13679:1, 13716:1, 13719:22
**reason** [14] - 13583:21, 13589:24, 13603:20, 13606:5, 13606:14, 13611:2, 13613:18, 13629:4, 13631:18, 13633:25, 13638:17, 13642:13, 13648:5, 13649:3
**reasonable** [5] - 13585:7, 13585:11, 13586:1, 13589:14, 13600:21
**reasonably** [1] - 13585:22
**reasoning** [2] - 13598:25, 13619:20
**reasons** [5] - 13583:23, 13584:17, 13605:3, 13607:22, 13652:20
**rebuked** [1] - 13598:24
**rebut** [5] - 13601:2, 13603:7, 13606:21, 13608:4, 13629:22
**rebuttal** [1] - 13607:7
**recap** [1] - 13709:13
**receipts** [1] - 13702:16

**receive** [1] - 13575:19
**receiving** [1] - 13583:14
**recent** [1] - 13693:1
**recently** [1] - 13653:7
**recess** [4] - 13644:6, 13644:7, 13723:13, 13723:14
**reciprocally** [1] - 13613:17
**recognized** [1] - 13681:12
**recollection** [10] - 13650:6, 13650:12, 13660:14, 13662:8, 13689:17, 13689:25, 13690:15, 13690:20, 13691:4, 13691:5
**record** [7] - 13577:1, 13620:13, 13644:13, 13696:21, 13698:20, 13706:11, 13711:22
**recorded** [11] - 13573:21, 13665:6, 13665:25, 13689:17, 13689:25, 13690:15, 13690:20, 13690:22, 13691:6
**recording** [1] - 13664:20
**records** [3] - 13702:13, 13702:21, 13702:25
**recover** [1] - 13656:24
**recovered** [2] - 13645:11, 13647:1
**recurring** [1] - 13606:2
**red** [3] - 13675:24, 13676:6, 13678:11
**redact** [1] - 13607:18
**redacted** [1] - 13607:22
**redacting** [1] - 13603:24
**redaction** [3] - 13603:4, 13607:25, 13608:3
**refer** [2] - 13688:25, 13693:11
**reference** [8] - 13585:18, 13586:7, 13612:18, 13614:21, 13618:24, 13620:2, 13691:1, 13697:23
**referring** [16] - 13580:5, 13580:11, 13580:13, 13585:8, 13590:6, 13598:4, 13611:20, 13614:5,

13614:8, 13646:12, 13673:25, 13690:25, 13691:8, 13693:4, 13693:9
**refers** [1] - 13618:20
**reflect** [2] - 13696:21, 13711:22
**reflected** [1] - 13708:23
**reflecting** [2] - 13635:7, 13697:14
**reflection** [1] - 13721:10
**reflects** [4] - 13613:13, 13614:12, 13696:11, 13696:23
**refresh** [3] - 13650:5, 13660:14, 13662:8
**refreshing** [2] - 13650:11, 13655:23
**regard** [3] - 13576:3, 13627:3, 13635:12
**regarding** [1] - 13635:5
**regardless** [2] - 13606:8, 13608:13
**regards** [4] - 13668:16, 13669:22, 13676:23, 13678:7
**regret** [4] - 13612:6, 13612:7, 13612:9, 13612:13
**regretted** [1] - 13612:7
**regular** [1] - 13598:3
**Rehl** [13] - 13575:4, 13575:14, 13584:15, 13586:4, 13596:25, 13597:7, 13611:10, 13615:8, 13616:6, 13623:25, 13634:18, 13653:7, 13709:12
**REHL** [1] - 13572:5
**Rehl's** [2] - 13653:6, 13653:13
**rejected** [1] - 13615:15
**rejecting** [1] - 13611:8
**related** [2] - 13637:14, 13671:2
**relevance** [32] - 13591:23, 13592:5, 13593:25, 13603:17, 13606:20, 13607:5, 13607:17, 13608:5, 13609:9, 13610:4, 13611:6, 13611:10, 13611:24, 13612:23, 13615:5, 13622:2, 13631:9, 13632:20, 13639:20, 13653:24,

13654:12, 13674:6, 13676:13, 13678:14, 13678:15, 13678:19, 13678:24, 13681:4, 13681:25, 13683:23, 13693:13
**relevant** [40] - 13595:15, 13595:21, 13596:11, 13596:20, 13600:12, 13603:12, 13605:1, 13605:2, 13605:8, 13607:8, 13607:9, 13607:14, 13611:6, 13611:8, 13613:4, 13613:18, 13614:13, 13614:18, 13619:13, 13620:15, 13622:21, 13623:19, 13629:4, 13631:20, 13632:24, 13634:12, 13634:25, 13637:1, 13677:9, 13677:10, 13677:19, 13677:23, 13678:3, 13678:17, 13680:7, 13680:15, 13681:2, 13681:4, 13681:14
**reliance** [1] - 13590:12
**relitigate** [2] - 13622:5, 13624:6
**relying** [1] - 13689:13
**remaining** [1] - 13712:12
**remark** [2] - 13590:4, 13622:25
**remarks** [1] - 13598:14
**remember** [12] - 13606:8, 13631:24, 13666:11, 13666:17, 13669:21, 13675:11, 13692:20, 13692:22, 13697:13, 13697:16, 13698:13, 13702:3
**reminiscent** [1] - 13601:17
**removed** [1] - 13606:6
**reopen** [1] - 13577:12
**reopening** [1] - 13620:8
**repeat** [2] - 13594:2, 13635:25
**rephrase** [3] - 13661:6, 13705:1, 13713:17
**report** [12] - 13579:18, 13580:5, 13580:7, 13580:8, 13649:24, 13650:5, 13650:14, 13650:16, 13651:8,

13651:10, 13651:11, 13651:13
**reported** [1] - 13630:19
**reporter** [1] - 13643:22
**REPORTER** [2] - 13666:14, 13723:16
**Reporter** [3] - 13573:17, 13573:18, 13723:22
**reporting** [3] - 13580:16, 13580:18, 13583:9
**reports** [2] - 13653:17, 13658:12
**represent** [1] - 13667:25
**representation** [2] - 13609:13, 13642:4
**represented** [2] - 13641:10, 13641:12
**request** [3] - 13582:18, 13587:9, 13622:8
**requests** [1] - 13582:11
**require** [1] - 13585:23
**requires** [4] - 13582:24, 13585:25, 13593:13
**respect** [3] - 13577:12, 13622:12, 13623:11
**respond** [2] - 13612:25, 13619:22
**responded** [1] - 13613:16
**responding** [3] - 13625:5, 13632:2, 13633:4
**responds** [3] - 13579:15, 13581:20, 13595:13
**response** [6] - 13579:22, 13580:9, 13585:13, 13629:6, 13646:3, 13659:8
**responses** [1] - 13595:18
**responsibilities** [1] - 13671:2
**responsive** [1] - 13719:13
**rest** [3] - 13643:22, 13716:15, 13716:17
**restricted** [1] - 13640:5
**resume** [1] - 13639:11
**resumed** [1] - 13644:8

**retroactive** [1] - 13587:12
**retroactively** [1] - 13626:2
**Return** [3] - 13659:24, 13682:3, 13691:16
**return** [1] - 13723:13
**returned** [2] - 13644:11, 13723:7
**reverse** [2] - 13600:17, 13622:7
**review** [1] - 13647:20
**reviewed** [3] - 13664:22, 13694:23, 13714:20
**reviewing** [2] - 13645:17, 13703:2
**revolution** [1] - 13623:7
**right-side** [1] - 13706:14
**right-wing** [1] - 13651:18
**rightly** [1] - 13678:18
**rise** [2] - 13644:5, 13723:12
**risk** [1] - 13678:25
**Road** [1] - 13573:2
**Roger** [2] - 13573:14, 13575:13
**ROGER** [1] - 13573:15
**Rohde** [1] - 13683:9
**role** [4] - 13601:24, 13629:8, 13647:22, 13671:1
**rolling** [1] - 13576:16
**room** [4] - 13665:6, 13665:19, 13666:21, 13723:7
**Room** [2] - 13573:18, 13723:23
**Roots** [1] - 13573:14, 13575:13
**ROOTS** [1] - 13573:15
**Rotunda** [1] - 13629:1
**round** [1] - 13711:6
**roundabout** [1] - 13631:3
**RPR** [3] - 13573:17, 13723:17, 13723:22
**Rufio** [7] - 13579:13, 13579:15, 13579:16, 13580:2, 13585:12, 13591:7, 13611:18
**rule** [9] - 13582:23, 13586:25, 13590:8, 13590:17, 13593:22, 13609:23, 13609:24, 13631:12, 13639:9
**Rule** [17] - 13575:20,

13575:23, 13582:11, 13582:20, 13583:22, 13583:24, 13584:2, 13584:21, 13587:8, 13590:13, 13592:16, 13593:2, 13593:25, 13622:7, 13642:10, 13642:11, 13642:12
**ruled** [7] - 13576:11, 13576:22, 13576:25, 13595:19, 13635:17, 13635:21, 13643:18
**rules** [1] - 13611:9
**ruling** [5] - 13587:7, 13624:4, 13637:10, 13638:1, 13639:13
**rulings** [2] - 13633:23, 13637:2
**run** [2] - 13597:11, 13602:1
**Rusch** [1] - 13671:10
**Ryan** [1] - 13697:25**

---

**S**

---

**SA** [1] - 13578:5
**Sabino** [2] - 13573:8, 13575:12
**salacious** [1] - 13595:4
**Samsel** [1] - 13697:25
**satisfied** [1] - 13603:18
**satisfy** [1] - 13598:14
**saving** [1] - 13577:24
**saw** [8] - 13599:9, 13627:2, 13646:13, 13649:5, 13650:7, 13650:16, 13671:20, 13703:15
**scenario** [4] - 13698:15, 13704:17, 13704:23, 13716:24
**scoffing** [2] - 13625:24, 13626:6
**scofflaw** [1] - 13624:21
**scope** [13] - 13589:7, 13589:10, 13589:16, 13629:6, 13658:22, 13659:20, 13659:21, 13665:15, 13676:15, 13678:15, 13680:14, 13682:1, 13702:18
**screaming** [1] - 13651:24
**screen** [7] - 13624:13, 13643:9, 13687:20, 13694:16, 13702:6, 13705:24, 13706:10

13744

**scroll** [1] - 13650:18
**scrutiny** [1] -
  13583:13
**search** [22] -
  13600:18, 13601:9,
  13602:1, 13602:11,
  13604:5, 13604:11,
  13641:13, 13641:16,
  13643:5, 13643:7,
  13649:6, 13649:14,
  13649:18, 13651:14,
  13653:22, 13654:4,
  13654:6, 13654:8,
  13654:24, 13656:6,
  13656:24, 13664:9
**searched** [1] -
  13642:4
**seated** [1] - 13723:8
**second** [15] -
  13594:12, 13595:5,
  13604:12, 13612:13,
  13618:21, 13619:6,
  13620:23, 13621:17,
  13622:11, 13658:4,
  13683:10, 13694:7,
  13703:17, 13720:17,
  13721:15
**seconds** [4] -
  13660:19, 13696:17,
  13711:22, 13720:5
**secret** [4] - 13675:3,
  13675:6, 13675:10
**section** [1] - 13710:23
**see** [63] - 13578:15,
  13578:17, 13578:21,
  13578:24, 13579:7,
  13579:16, 13580:14,
  13585:2, 13586:5,
  13591:8, 13593:8,
  13594:10, 13594:16,
  13603:20, 13607:12,
  13608:1, 13613:5,
  13617:21, 13617:23,
  13619:3, 13619:5,
  13619:7, 13620:21,
  13621:14, 13621:18,
  13622:6, 13622:8,
  13624:13, 13624:25,
  13634:11, 13634:24,
  13635:14, 13645:4,
  13650:7, 13650:14,
  13672:10, 13681:3,
  13684:13, 13687:20,
  13688:11, 13690:6,
  13693:3, 13693:8,
  13694:20, 13694:24,
  13695:15, 13695:22,
  13696:23, 13697:1,
  13700:2, 13703:10,
  13703:14, 13704:2,

13704:18, 13707:3,
  13707:4, 13707:13,
  13709:3, 13709:12,
  13720:22, 13721:25,
  13723:5, 13723:11
**seeing** [2] - 13580:11,
  13716:15
**seeking** [3] -
  13592:24, 13628:14,
  13629:17
**seeks** [1] - 13592:12
**seem** [2] - 13579:21,
  13591:17
**seized** [1] - 13678:2
**Self** [1] - 13683:1
**self** [3] - 13580:22,
  13584:5, 13586:3
**Self-Defense** [1] -
  13683:1
**self-serving** [3] -
  13580:22, 13584:5,
  13586:3
**send** [3] - 13673:20,
  13682:14, 13682:18
**sends** [3] - 13585:9,
  13591:18, 13593:6
**sense** [7] - 13576:1,
  13576:7, 13576:21,
  13585:20, 13588:7,
  13612:9, 13685:4
**sent** [8] - 13591:10,
  13591:12, 13593:6,
  13604:17, 13623:2,
  13658:17, 13674:12,
  13676:23
**sentence** [1] -
  13719:21
**separate** [3] -
  13607:6, 13620:18,
  13677:2, 13677:12,
  13678:21
**separation** [1] -
  13678:6
**series** [4] - 13632:8,
  13692:18, 13693:6,
  13693:7
**serious** [1] - 13583:25
**serving** [3] -
  13580:22, 13584:5,
  13586:3
**SESSION** [1] -
  13572:9
**set** [2] - 13599:9,
  13615:21
**setting** [2] - 13631:7,
  13678:7
**settled** [1] - 13619:21
**sever** [1] - 13616:16
**several** [5] - 13579:12,
  13581:15, 13595:20,

13612:4, 13635:24
**sewing** [1] - 13613:23
**shameless** [1] -
  13621:20
**Shannon** [1] -
  13671:10
**shape** [1] - 13638:16
**share** [1] - 13623:22
**shared** [5] - 13578:20,
  13579:17, 13579:25,
  13583:5, 13583:17
**sharing** [2] -
  13583:18, 13629:10
**shed** [1] - 13626:2
**shield** [9] - 13719:3,
  13719:5, 13719:7,
  13720:13, 13721:6,
  13721:25, 13722:6,
  13722:9, 13722:14
**shit** [11] - 13579:21,
  13584:7, 13585:3,
  13591:16, 13591:17,
  13592:1, 13592:8,
  13593:7, 13611:22
**shooting** [1] - 13660:1
**short** [1] - 13661:22
**shortcut** [1] -
  13627:25
**shorthand** [2] -
  13573:21, 13577:2
**shortly** [1] - 13612:15
**shot** [8] - 13631:9,
  13655:13, 13655:15,
  13655:18, 13657:25,
  13658:1, 13658:2,
  13709:12
**show** [39] - 13580:23,
  13582:25, 13588:10,
  13590:5, 13596:14,
  13600:25, 13602:25,
  13603:6, 13603:10,
  13606:7, 13612:12,
  13619:8, 13621:13,
  13625:22, 13628:20,
  13629:23, 13630:2,
  13630:3, 13630:16,
  13643:2, 13643:8,
  13648:24, 13657:9,
  13678:3, 13680:23,
  13685:8, 13694:4,
  13696:13, 13697:5,
  13699:10, 13699:11,
  13703:14, 13703:23,
  13710:13, 13712:9,
  13714:12, 13714:15,
  13714:18, 13715:9
**showed** [3] - 13650:5,
  13662:7, 13691:19
**showing** [9] -
  13591:23, 13601:11,

13601:23, 13603:17,
  13605:7, 13629:2,
  13629:24, 13642:19,
  13686:14
**shown** [2] - 13630:12,
  13694:13
**shows** [7] - 13580:24,
  13607:15, 13613:15,
  13613:16, 13632:25,
  13633:11, 13707:11
**shut** [14] - 13578:18,
  13579:2, 13579:23,
  13580:3, 13580:10,
  13580:12, 13580:17,
  13582:1, 13583:3,
  13583:7, 13583:12,
  13585:16, 13585:18
**shutting** [1] - 13583:7
**shying** [1] - 13608:9
**sic** [1] - 13708:22
**sic]** [2] - 13614:2,
  13699:2
**side** [19] - 13582:21,
  13593:12, 13600:24,
  13623:12, 13629:3,
  13633:18, 13675:10,
  13675:21, 13675:22,
  13675:25, 13676:3,
  13676:4, 13676:7,
  13678:11, 13689:22,
  13706:12, 13706:14
**sidebar** [3] -
  13658:25, 13676:19,
  13687:12
**sided** [2] - 13678:17,
  13678:18
**sides** [1] - 13623:18
**significant** [1] -
  13693:25
**similar** [6] - 13590:25,
  13599:16, 13613:12,
  13617:4, 13622:24,
  13675:12
**sit** [4] - 13610:25,
  13646:24, 13648:23,
  13690:18
**situation** [2] -
  13593:2, 13633:16
**six** [1] - 13615:4
**skip** [1] - 13685:10
**Skull** [3] - 13613:22,
  13615:9, 13630:19
**slow** [1] - 13721:12
**smart** [5] - 13595:6,
  13596:18, 13596:21,
  13613:25, 13615:3
**smile** [1] - 13607:24
**smiling** [7] -
  13599:24, 13600:4,
  13601:19, 13603:8,

13607:4, 13608:1,
  13641:18
**Smith** [23] - 13572:16,
  13575:9, 13575:20,
  13575:21, 13575:22,
  13577:19, 13583:1,
  13583:5, 13586:23,
  13588:6, 13590:14,
  13590:22, 13592:12,
  13592:19, 13600:6,
  13612:24, 13616:20,
  13619:11, 13619:23,
  13626:9, 13623:10,
  13626:19, 13643:13
**SMITH** [104] -
  13572:17, 13572:20,
  13577:21, 13578:3,
  13578:8, 13578:15,
  13578:23, 13579:1,
  13579:5, 13579:7,
  13579:11, 13582:3,
  13584:22, 13584:25,
  13587:17, 13588:15,
  13588:18, 13588:23,
  13589:1, 13589:4,
  13589:9, 13589:19,
  13590:24, 13591:3,
  13591:6, 13591:10,
  13593:24, 13594:4,
  13594:6, 13594:13,
  13594:16, 13594:19,
  13594:22, 13595:1,
  13597:20, 13597:23,
  13598:17, 13599:7,
  13601:6, 13602:20,
  13602:24, 13603:3,
  13603:15, 13604:3,
  13604:15, 13604:21,
  13605:4, 13605:6,
  13605:13, 13605:16,
  13605:18, 13605:21,
  13605:23, 13606:1,
  13606:19, 13607:11,
  13607:20, 13608:7,
  13609:7, 13609:10,
  13611:14, 13611:17,
  13613:1, 13613:19,
  13614:20, 13615:6,
  13616:21, 13617:6,
  13617:8, 13617:11,
  13617:15, 13617:17,
  13617:25, 13618:3,
  13618:9, 13618:11,
  13618:13, 13618:16,
  13619:2, 13620:3,
  13620:5, 13620:7,
  13620:16, 13620:21,
  13621:2, 13621:8,
  13621:11, 13621:17,
  13622:1, 13624:8,
  13624:11, 13624:15,

13624:17, 13625:10, 13625:12, 13625:15, 13625:21, 13626:16, 13641:9, 13642:14, 13642:23, 13643:1, 13643:8, 13643:12

**Smith's** [4] - 13575:24, 13576:14, 13577:18, 13586:10

**SMS** [1] - 13657:4

**social** [1] - 13596:15

**solely** [1] - 13631:5

**solution** [4] - 13601:21, 13602:21, 13602:22, 13602:23

**someone** [19] - 13594:9, 13595:7, 13595:11, 13598:2, 13604:17, 13606:7, 13607:13, 13607:14, 13609:20, 13624:21, 13641:19, 13643:2, 13672:13, 13672:14, 13672:25, 13704:8, 13708:9

**something's** [1] - 13636:18

**sometime** [1] - 13669:2

**sometimes** [1] - 13613:8

**somewhat** [3] - 13631:19, 13680:23, 13697:18

**soon** [1] - 13630:8

**sorry** [14] - 13596:3, 13610:22, 13615:8, 13617:16, 13639:12, 13660:22, 13666:14, 13666:15, 13667:16, 13681:10, 13681:11, 13682:5, 13698:21, 13708:5

**sort** [15] - 13589:25, 13593:17, 13598:4, 13599:4, 13603:20, 13607:5, 13616:24, 13617:1, 13620:20, 13625:2, 13625:3, 13631:5, 13632:10, 13678:23, 13716:10

**sorts** [2] - 13642:11, 13643:7

**SOS** [1] - 13676:11

**sought** [2] - 13628:17, 13655:5

**sound** [2] - 13620:3, 13667:22

**sounds** [5] - 13590:12, 13656:13,

13685:5, 13685:6, 13688:19

**speaking** [2] - 13596:4, 13623:9

**special** [1] - 13587:21

**Special** [2] - 13667:13, 13686:14

**specialist** [1] - 13676:14

**specific** [18] - 13585:9, 13609:5, 13624:23, 13628:19, 13653:17, 13661:16, 13666:12, 13668:7, 13669:2, 13671:23, 13673:3, 13683:6, 13690:7, 13694:23, 13701:16, 13710:22, 13713:19, 13717:14

**specifically** [15] - 13583:7, 13619:16, 13619:18, 13629:4, 13652:23, 13658:19, 13660:11, 13668:11, 13669:14, 13670:19, 13676:24, 13677:11, 13677:21, 13693:12, 13715:3

**specifics** [1] - 13620:4

**speculation** [2] - 13713:15, 13716:6

**speech** [2] - 13617:1, 13618:25

**spend** [1] - 13676:24

**spending** [2] - 13676:3, 13676:6

**spent** [1] - 13714:19

**spill** [1] - 13637:7

**spoken** [1] - 13656:8

**spot** [3] - 13715:18, 13715:20, 13722:22

**spraying** [5] - 13599:18, 13600:5, 13607:13, 13607:14, 13671:21

**staff** [3] - 13676:12, 13707:17, 13707:18

**stage** [1] - 13628:23

**stand** [3] - 13627:16, 13642:16, 13644:8, 13667:20

**stands** [2] - 13644:6, 13723:13

**staple** [1] - 13614:23

**stark** [1] - 13623:16

**start** [5] - 13577:19, 13668:18, 13694:7, 13699:12, 13713:7

**started** [8] - 13576:16, 13668:5, 13670:2,

13678:1, 13691:25, 13692:2, 13692:3, 13715:23

**starting** [3] - 13596:12, 13696:18, 13720:5

**starts** [2] - 13579:14, 13693:3

**state** [9] - 13595:20, 13596:10, 13596:20, 13614:13, 13614:18, 13626:14, 13628:20, 13637:15, 13639:22

**state-of-mind** [1] - 13626:14

**statement** [34] - 13576:9, 13580:21, 13580:22, 13584:5, 13586:3, 13591:25, 13592:2, 13593:13, 13613:6, 13614:7, 13614:25, 13615:14, 13616:4, 13622:17, 13624:18, 13625:24, 13626:4, 13626:6, 13631:10, 13632:11, 13632:13, 13632:18, 13633:24, 13634:9, 13634:15, 13635:7, 13640:12, 13640:13, 13641:22, 13652:2, 13656:11, 13685:2, 13688:7

**statements** [22] - 13577:2, 13583:3, 13586:16, 13586:18, 13587:1, 13587:14, 13587:19, 13591:21, 13597:7, 13597:18, 13598:21, 13614:3, 13616:24, 13632:9, 13633:22, 13636:6, 13636:7, 13636:16, 13640:18, 13640:21, 13641:7, 13659:18

**STATES** [3] - 13572:1, 13572:2, 13572:10

**states** [1] - 13647:9

**States** [4] - 13572:12, 13575:3, 13644:14, 13723:23

**staying** [1] - 13702:16

**Steal** [1] - 13629:15

**steam** [1] - 13586:4

**steaming** [4] - 13579:20, 13584:7, 13585:3, 13591:16

**stenographic** [1] - 13723:19

**step** [4] - 13689:21,

13703:16, 13723:9

**steps** [1] - 13723:10

**Steven** [2] - 13573:11, 13575:12

**Stewart** [2] - 13632:10, 13657:14

**stick** [1] - 13680:13

**sticks** [1] - 13606:11

**still** [19] - 13600:24, 13602:6, 13603:25, 13615:12, 13615:13, 13616:3, 13617:12, 13621:19, 13638:24, 13690:14, 13694:24, 13695:22, 13697:5, 13707:11, 13707:23, 13712:12, 13715:18, 13720:8, 13722:5

**Stockton** [1] - 13594:9

**Stop** [1] - 13629:15

**stop** [6] - 13690:11, 13695:19, 13696:20, 13701:1, 13711:21, 13714:9

**stopped** [4] - 13589:13, 13696:21, 13699:2, 13711:22

**storm** [1] - 13633:17

**stormed** [1] - 13621:20

**storming** [2] - 13618:20, 13622:23

**story** [1] - 13600:20

**straight** [2] - 13638:5, 13677:5

**straightforward** [1] - 13578:9

**strange** [1] - 13607:21

**strategy** [1] - 13655:9

**Street** [7] - 13572:14, 13572:17, 13572:21, 13572:24, 13573:5, 13573:9, 13662:21

**stretch** [2] - 13580:18, 13623:24

**stricken** [1] - 13719:13

**strike** [2] - 13719:16, 13719:18

**strong** [4] - 13593:20, 13609:4, 13613:25, 13615:3

**stronger** [1] - 13629:2

**stuck** [1] - 13592:23

**studying** [1] - 13691:25

**stuff** [11] - 13576:15, 13577:16, 13592:5, 13626:19, 13638:24, 13641:5, 13651:6,

13656:15, 13657:14, 13680:2, 13707:17

**subjective** [1] - 13653:25

**submitted** [1] - 13619:17

**subordinates** [1] - 13596:8

**substance** [1] - 13582:22

**substantial** [1] - 13584:2

**substantially** [1] - 13606:16

**substantive** [1] - 13626:1

**success** [1] - 13719:25

**sufficient** [2] - 13605:9, 13609:18

**suggest** [6] - 13575:18, 13604:20, 13606:25, 13607:18, 13624:22, 13635:14

**suggested** [1] - 13611:3

**suggesting** [7] - 13580:6, 13586:16, 13596:18, 13601:20, 13604:24, 13631:5, 13643:11

**suggestion** [11] - 13591:25, 13601:3, 13601:8, 13602:24, 13603:7, 13604:11, 13606:21, 13607:13, 13621:12, 13642:2, 13642:7

**suggests** [4] - 13593:4, 13600:18, 13601:12, 13612:18

**Suite** [2] - 13572:18, 13573:6

**summarizing** [1] - 13630:5

**summary** [2] - 13636:1, 13636:12

**summoned** [2] - 13596:1, 13596:8

**supported** [1] - 13613:17

**supporting** [1] - 13609:11

**suppose** [1] - 13582:4

**supposed** [1] - 13663:9

**supposedly** [1] - 13602:25

**Supreme** [2] - 13630:7, 13681:22

**surrounded** [1] -
13684:15
**surrounding** [1] -
13611:20
**suspect** [1] - 13602:23
**sustain** [3] -
13659:21, 13681:7,
13719:15
**sustained** [20] -
13651:22, 13656:20,
13657:17, 13657:22,
13660:6, 13661:7,
13663:7, 13663:12,
13664:1, 13665:16,
13683:24, 13687:3,
13693:15, 13702:19,
13708:17, 13709:25,
13710:10, 13716:5,
13716:7
**Sweepers** [1] -
13662:21
**sympathize** [1] -
13608:2
**system** [8] - 13650:2,
13650:4, 13650:16,
13674:3, 13675:8,
13675:13, 13675:22,
13675:23

# T

**table** [1] - 13596:4
**talks** [6] - 13610:25,
13614:12, 13614:15,
13622:9, 13712:11,
13715:7
**target** [7] - 13671:25,
13672:5, 13672:14,
13672:16, 13672:22,
13672:25
**targets** [1] - 13672:2
**TARRIO** [1] - 13572:6
**Tarrio** [24] - 13575:5,
13575:15, 13627:6,
13629:10, 13629:17,
13629:23, 13629:24,
13630:14, 13630:15,
13630:19, 13631:6,
13631:17, 13632:1,
13633:1, 13633:8,
13634:13, 13635:3,
13635:5, 13635:6,
13635:8, 13646:1,
13653:6, 13678:1
**Tarrio's** [6] - 13629:7,
13633:12, 13653:7,
13653:10, 13653:12,
13679:13
**taste** [1] - 13626:9
**tasteful** [1] - 13626:5

**team** [7] - 13595:11,
13673:10, 13682:15,
13682:20, 13682:22,
13702:10, 13714:24
**technical** [3] -
13575:25, 13617:23,
13617:24
**technically** [2] -
13624:4, 13709:9
**technology** [1] -
13718:16
**tee** [1] - 13617:21
**teeing** [1] - 13619:9
**Telegram** [7] -
13589:21, 13608:19,
13628:24, 13636:20,
13648:12, 13648:15,
13664:4
**Telegrams** [1] -
13589:22
**Templar** [6] - 13594:8,
13594:9, 13594:17,
13595:7, 13596:21,
13598:11
**Templar's** [1] -
13598:13
**term** [2] - 13652:10,
13652:12
**terminology** [1] -
13674:25
**terms** [4] - 13593:20,
13593:21, 13612:13,
13614:18
**territory** [1] -
13642:12
**terrorism** [1] -
13597:21
**terrorists** [5] -
13595:6, 13596:22,
13597:25, 13598:3,
13598:14
**testified** [11] -
13582:13, 13582:14,
13627:23, 13649:3,
13653:1, 13677:16,
13680:14, 13682:7,
13686:22, 13689:16,
13711:17
**testify** [10] - 13600:14,
13602:4, 13627:17,
13648:20, 13689:8,
13689:9, 13689:13,
13691:6, 13691:11
**testifying** [2] -
13589:20, 13715:8
**testimony** [11] -
13582:10, 13582:25,
13588:11, 13595:22,
13628:19, 13628:25,
13633:9, 13659:11,

13689:1, 13689:20,
13691:25
**tethered** [1] -
13625:17
**text** [8] - 13580:19,
13581:16, 13589:6,
13589:15, 13591:22,
13603:25, 13604:2,
13662:23
**THE** [307] - 13572:1,
13572:1, 13572:9,
13575:2, 13575:16,
13577:3, 13577:8,
13577:15, 13577:17,
13578:2, 13578:7,
13578:13, 13578:22,
13578:24, 13579:2,
13579:6, 13579:10,
13581:19, 13582:4,
13584:24, 13586:9,
13586:11, 13586:22,
13587:24, 13588:13,
13588:16, 13588:20,
13588:25, 13589:2,
13589:8, 13589:17,
13590:7, 13590:18,
13590:20, 13591:2,
13591:5, 13591:9,
13592:10, 13593:11,
13594:2, 13594:5,
13594:12, 13594:15,
13594:18, 13594:21,
13594:25, 13595:16,
13596:3, 13597:2,
13597:8, 13597:22,
13598:16, 13598:18,
13599:9, 13599:19,
13599:21, 13599:24,
13600:9, 13602:2,
13602:6, 13602:12,
13602:16, 13602:18,
13602:22, 13603:2,
13603:9, 13603:14,
13603:19, 13604:14,
13604:16, 13605:2,
13605:5, 13605:11,
13605:14, 13605:17,
13605:19, 13605:22,
13605:24, 13606:12,
13607:8, 13607:18,
13608:6, 13608:8,
13609:23, 13610:2,
13610:8, 13610:12,
13610:14, 13610:16,
13610:20, 13610:23,
13611:1, 13611:13,
13611:16, 13611:25,
13612:24, 13613:7,
13614:11, 13615:2,
13615:17, 13615:19,
13615:22, 13616:2,

13616:7, 13616:9,
13616:11, 13616:14,
13616:17, 13617:4,
13617:7, 13617:9,
13617:12, 13617:16,
13617:19, 13618:2,
13618:8, 13618:10,
13618:12, 13618:15,
13619:1, 13619:9,
13619:25, 13620:10,
13620:12, 13620:25,
13621:6, 13621:9,
13622:5, 13622:15,
13623:8, 13623:21,
13623:23, 13624:2,
13624:10, 13624:14,
13625:2, 13625:11,
13625:13, 13625:16,
13626:11, 13626:18,
13627:13, 13627:25,
13628:6, 13628:11,
13630:17, 13630:22,
13631:21, 13632:21,
13633:13, 13634:3,
13634:7, 13634:10,
13634:23, 13635:9,
13635:20, 13636:11,
13636:14, 13636:25,
13637:4, 13637:8,
13637:11, 13637:13,
13637:21, 13637:23,
13637:25, 13638:2,
13638:4, 13638:8,
13638:10, 13638:14,
13639:6, 13639:17,
13639:21, 13639:25,
13640:11, 13640:17,
13641:6, 13642:8,
13642:21, 13642:25,
13643:4, 13643:10,
13643:13, 13644:5,
13644:10, 13644:13,
13644:16, 13646:16,
13646:18, 13651:22,
13654:1, 13654:13,
13654:14, 13656:1,
13656:18, 13656:20,
13657:17, 13657:21,
13658:25, 13659:7,
13659:10, 13659:14,
13659:19, 13659:23,
13660:6, 13661:5,
13661:7, 13662:11,
13663:7, 13663:12,
13664:1, 13664:6,
13664:7, 13665:16,
13666:14, 13667:3,
13667:5, 13667:6,
13667:9, 13674:8,
13676:14, 13676:16,
13676:18, 13676:21,

13677:6, 13677:14,
13678:9, 13679:14,
13679:18, 13679:20,
13680:6, 13680:12,
13680:17, 13680:21,
13680:25, 13681:9,
13681:11, 13681:16,
13681:21, 13681:23,
13683:14, 13683:24,
13685:12, 13685:15,
13685:18, 13685:19,
13685:21, 13685:25,
13686:2, 13686:6,
13686:8, 13686:11,
13687:3, 13687:7,
13687:8, 13687:9,
13687:11, 13687:12,
13687:14, 13687:18,
13687:24, 13688:3,
13688:5, 13688:16,
13688:18, 13688:20,
13688:22, 13689:2,
13689:5, 13689:7,
13689:23, 13690:9,
13690:14, 13691:3,
13693:15, 13696:5,
13696:9, 13698:20,
13702:19, 13703:18,
13705:2, 13706:1,
13706:4, 13706:9,
13706:16, 13706:20,
13706:25, 13707:9,
13707:10, 13707:21,
13707:25, 13708:1,
13708:17, 13709:25,
13710:10, 13716:5,
13716:7, 13718:11,
13719:14, 13719:18,
13719:24, 13720:3,
13723:4, 13723:8,
13723:11, 13723:12
**theirs** [1] - 13623:15
**theme** [2] - 13606:2,
13613:20
**themselves** [5] -
13609:21, 13610:6,
13610:7, 13610:17,
13612:22
**theory** [6] - 13584:6,
13598:21, 13598:25,
13599:13, 13630:23,
13659:3
**therefore** [1] -
13690:23
**they've** [5] - 13598:12,
13606:20, 13610:2,
13640:7, 13679:13,
13712:13
**thinks** [1] - 13613:25
**third** [10] - 13618:21,

13618:23, 13620:23, 13621:24, 13657:25, 13658:1, 13658:2, 13658:4, 13658:7

**thoughts** [1] - 13666:21

**thousands** [1] - 13714:23

**thread** [3] - 13581:6, 13581:10, 13594:20

**three** [18] - 13595:10, 13597:10, 13618:4, 13618:7, 13618:9, 13619:18, 13619:19, 13620:18, 13653:18, 13672:20, 13674:10, 13674:15, 13674:17, 13674:18, 13674:19, 13680:4, 13705:15

**threshold** [2] - 13613:10, 13614:19

**thrilled** [1] - 13612:5

**throughout** [6] - 13598:9, 13640:2, 13648:18, 13670:25, 13682:6, 13697:9

**thumbnail** [2] - 13707:2, 13707:5

**tie** [1] - 13644:22

**tight** [1] - 13578:11

**timeline** [12] - 13680:3, 13680:6, 13680:20, 13681:2, 13687:17, 13688:14, 13692:3, 13692:8, 13693:19, 13693:22, 13693:23, 13697:18

**timelines** [1] - 13679:9

**timing** [1] - 13577:16

**Timothy** [1] - 13573:17

**TIMOTHY** [2] - 13572:9, 13723:17

**TinEye** [2] - 13641:17, 13641:24

**TinEye's** [1] - 13643:1

**title** [1] - 13634:14

**today** [7] - 13646:24, 13647:7, 13648:23, 13667:15, 13667:17, 13667:20, 13707:18

**together** [5] - 13593:9, 13648:6, 13664:4, 13693:19

**tons** [2] - 13613:23, 13664:9

**took** [8] - 13581:12, 13612:4, 13612:16, 13622:23, 13623:3,

13623:6, 13646:19, 13698:1

**tools** [9] - 13595:4, 13595:20, 13595:25, 13596:14, 13596:20, 13597:14, 13598:6, 13598:8, 13604:7

**top** [4] - 13608:22, 13629:19, 13696:5, 13707:3

**topics** [1] - 13593:15

**total** [1] - 13589:24

**totality** [2] - 13583:17, 13628:23

**towards** [7] - 13678:5, 13700:17, 13704:12, 13704:23, 13705:5, 13705:6, 13708:21

**transcript** [4] - 13573:21, 13619:17, 13723:19, 13723:20

**TRANSCRIPT** [1] - 13572:8

**transcription** [1] - 13573:21

**transpired** [2] - 13627:23, 13629:9

**traveling** [3] - 13697:2, 13705:4, 13705:6

**Trevor** [2] - 13671:10, 13671:20

**TRIAL** [1] - 13572:8

**trial** [3] - 13584:6, 13628:23, 13642:11

**tries** [2] - 13579:21, 13591:17

**trucks** [6] - 13671:19, 13698:5, 13701:8, 13701:9, 13701:13, 13701:15

**true** [9] - 13585:10, 13598:5, 13607:3, 13619:4, 13639:21, 13643:6, 13653:5, 13723:18, 13723:19

**Trump** [25] - 13578:21, 13579:5, 13579:13, 13579:14, 13579:18, 13579:19, 13580:6, 13580:21, 13581:5, 13581:6, 13581:7, 13581:11, 13581:23, 13585:9, 13591:7, 13591:18, 13591:21, 13592:2, 13592:5, 13593:6, 13595:13, 13611:23, 13612:10, 13612:19, 13613:14

**Trump's** [2] - 13585:3, 13612:18

**truth** [10] - 13580:23, 13581:9, 13584:8, 13639:15, 13639:19, 13639:23, 13640:9, 13640:13, 13641:1, 13641:3

**try** [6] - 13575:18, 13583:5, 13657:25, 13667:19, 13707:9, 13707:14

**trying** [15] - 13581:7, 13584:1, 13627:3, 13628:10, 13629:21, 13636:2, 13638:21, 13640:14, 13646:10, 13670:23, 13676:2, 13679:18, 13695:2, 13719:22, 13719:25

**turn** [2] - 13604:12, 13658:7

**turned** [2] - 13620:5, 13641:18

**turtles** [1] - 13594:24

**twisted** [1] - 13581:12

**two** [25] - 13576:10, 13581:14, 13581:22, 13586:24, 13587:1, 13587:14, 13587:16, 13589:20, 13595:18, 13596:24, 13612:7, 13618:16, 13618:19, 13619:4, 13619:6, 13622:13, 13624:6, 13628:9, 13664:8, 13666:18, 13669:23, 13678:23, 13694:19

**two-pound** [1] - 13669:23

**two-year-long** [1] - 13664:8

**type** [3] - 13582:12, 13582:23, 13613:12

**types** [2] - 13612:7, 13674:16

---

**U**

---

**U.S** [3] - 13572:14, 13573:18, 13595:12

**ultimately** [4] - 13658:14, 13677:1, 13678:4, 13703:9

**unclassified** [4] - 13674:12, 13674:20, 13675:21, 13676:4

**under** [19] - 13582:23, 13584:1, 13584:20, 13587:3, 13587:15,

13590:13, 13592:16, 13615:15, 13630:22, 13632:4, 13633:23, 13635:9, 13637:12, 13637:14, 13637:16, 13642:11, 13678:25, 13706:7

**underneath** [1] - 13603:22

**understood** [9] - 13588:17, 13645:12, 13647:3, 13653:15, 13657:23, 13659:22, 13664:13, 13682:2, 13689:14

**unfair** [1] - 13606:17

**unfairly** [2] - 13584:4, 13629:21

**unfortunately** [1] - 13660:16

**UNITED** [3] - 13572:1, 13572:2, 13572:10

**United** [4] - 13572:12, 13575:3, 13644:14, 13723:23

**universe** [1] - 13660:13

**University** [1] - 13579:19

**unless** [5] - 13582:8, 13605:9, 13648:18, 13688:9, 13723:2

**unnecessary** [1] - 13622:4

**unrecoverable** [1] - 13648:14

**unsure** [2] - 13662:6, 13662:25

**up** [67] - 13576:1, 13576:17, 13577:9, 13577:17, 13578:19, 13579:3, 13579:23, 13580:3, 13580:10, 13580:12, 13580:18, 13582:1, 13583:4, 13583:7, 13583:12, 13585:16, 13585:18, 13588:3, 13597:11, 13597:15, 13599:10, 13604:12, 13610:22, 13614:14, 13617:21, 13619:9, 13624:9, 13627:2, 13627:16, 13628:13, 13631:7, 13636:16, 13642:16, 13643:1, 13643:9, 13644:22, 13645:2, 13648:24, 13650:18, 13651:2, 13652:10, 13655:5, 13656:13,

13664:13, 13664:16, 13668:11, 13668:25, 13669:24, 13671:15, 13671:19, 13678:7, 13684:3, 13689:6, 13689:11, 13689:12, 13691:9, 13696:5, 13698:8, 13700:16, 13701:12, 13703:21, 13705:10, 13706:20, 13711:6, 13713:5, 13714:3

**update** [1] - 13641:9

**upset** [1] - 13613:4

**user** [1] - 13648:17

**uses** [2] - 13587:21, 13598:2

**UTC-8** [3] - 13591:11, 13591:13, 13591:15

---

**V**

---

**vague** [3] - 13614:7, 13661:1, 13665:9

**valid** [1] - 13583:22

**value** [4] - 13596:23, 13606:15, 13606:16, 13608:12

**variety** [1] - 13649:8

**various** [5] - 13597:15, 13607:22, 13611:3, 13673:13, 13673:14

**veer** [1] - 13687:15

**version** [7] - 13600:15, 13600:16, 13605:7, 13641:17, 13642:5

**versus** [3] - 13623:1, 13623:7, 13623:15

**veteran** [1] - 13629:13

**Vetting** [1] - 13662:19

**vicinity** [1] - 13709:5

**viciously** [1] - 13609:1

**video** [55] - 13596:15, 13604:7, 13617:16, 13618:17, 13619:23, 13620:6, 13620:18, 13621:13, 13622:7, 13622:10, 13622:11, 13622:18, 13622:25, 13623:24, 13624:3, 13624:10, 13624:11, 13624:12, 13628:25, 13630:11, 13641:22, 13660:1, 13666:8, 13687:22, 13689:12, 13695:11, 13695:24, 13698:9, 13699:15, 13699:18, 13699:24,

13748

13700:13, 13700:19, 13701:1, 13701:2, 13701:17, 13701:20, 13701:22, 13701:25, 13712:4, 13714:14, 13714:17, 13714:18, 13714:20, 13714:25, 13715:11, 13717:1, 13717:13, 13717:25, 13718:6, 13720:4, 13720:17, 13720:20, 13720:22
**Video** [20] - 13621:1, 13621:16, 13621:25, 13624:16, 13694:9, 13695:13, 13695:18, 13696:19, 13698:11, 13698:23, 13699:13, 13711:13, 13712:22, 13713:9, 13715:13, 13718:7, 13718:20, 13720:6, 13721:21, 13722:3
**videos** [27] - 13575:24, 13578:20, 13579:3, 13579:17, 13579:24, 13583:4, 13583:16, 13617:17, 13617:18, 13617:22, 13618:4, 13618:16, 13618:20, 13619:17, 13620:19, 13623:2, 13626:19, 13636:21, 13664:22, 13665:2, 13666:4, 13692:2, 13692:10, 13694:22, 13696:13, 13697:4, 13710:12
**view** [8] - 13622:12, 13623:22, 13650:4, 13707:2, 13707:3, 13707:4, 13707:5
**violence** [4] - 13630:6, 13630:8, 13631:10, 13631:19
**violent** [2] - 13601:5, 13623:6
**virtue** [1] - 13615:1
**visually** [1] - 13689:16
**voice** [1] - 13660:9
**voiced** [1] - 13600:7

## W

**wait** [2] - 13698:8, 13719:20
**waiver** [1] - 13582:17
**walk** [2] - 13687:23, 13694:17
**walking** [1] - 13704:11

**wandering** [1] - 13717:24
**wants** [5] - 13583:12, 13586:19, 13587:4, 13603:6, 13656:9
**war** [2] - 13614:14, 13632:3
**warning** [1] - 13681:5
**warrant** [7] - 13653:23, 13654:4, 13654:8, 13654:24, 13656:6, 13656:24, 13664:9
**Washington** [10] - 13572:5, 13572:15, 13572:25, 13573:19, 13596:1, 13596:2, 13596:8, 13673:3, 13673:12, 13723:24
**watched** [5] - 13666:8, 13692:10, 13694:2, 13694:22, 13699:15
**watching** [1] - 13666:3
**ways** [1] - 13611:5
**weak** [2] - 13602:6, 13626:7
**weapon** [1] - 13608:20
**wearing** [1] - 13700:9
**webpage** [1] - 13642:15
**website** [2] - 13641:25, 13643:1
**websites** [1] - 13652:15
**Wednesday** [1] - 13572:6
**week** [1] - 13656:6
**weeks** [3] - 13616:23, 13638:16, 13639:3
**weight** [1] - 13633:3
**weird** [1] - 13587:5
**West** [1] - 13573:9
**whatnot** [1] - 13632:3
**whatsoever** [4] - 13609:15, 13621:3, 13635:6, 13663:24
**Whitley** [1] - 13681:20
**whole** [8] - 13607:24, 13630:23, 13634:1, 13634:2, 13634:5, 13641:2, 13717:8
**wild** [1] - 13630:10
**William** [1] - 13716:21
**window** [3] - 13578:17, 13712:18, 13718:4
**wing** [1] - 13651:18
**winner** [1] - 13632:1
**Winter** [4] - 13651:14,

13651:16, 13652:9, 13652:15
**wish** [1] - 13632:22
**wishes** [1] - 13633:12
**withdrawn** [2] - 13673:5, 13693:17
**WITNESS** [10] - 13574:2, 13654:14, 13664:7, 13667:3, 13667:6, 13676:14, 13687:8, 13687:11, 13707:9, 13718:11
**Witness** [1] - 13723:10
**witness** [28] - 13576:17, 13577:13, 13587:11, 13587:14, 13606:23, 13635:15, 13639:11, 13640:17, 13642:15, 13642:19, 13643:25, 13644:3, 13644:8, 13650:11, 13671:24, 13672:13, 13679:11, 13680:13, 13685:11, 13688:8, 13688:9, 13690:21, 13694:4, 13694:8, 13699:10, 13703:25, 13719:20
**witnesses** [2] - 13589:20, 13640:23
**Wolkind** [1] - 13657:14
**woman** [3] - 13622:3, 13622:18, 13622:20
**word** [8] - 13584:22, 13592:21, 13601:25, 13602:3, 13611:23, 13622:3, 13672:16, 13672:17
**words** [10] - 13579:24, 13583:5, 13583:16, 13597:14, 13603:21, 13612:20, 13612:21, 13654:18, 13655:19, 13655:21
**works** [1] - 13651:1
**worth** [1] - 13636:16
**Wren** [1] - 13670:1
**write** [1] - 13655:7
**wrongly** [1] - 13601:19
**wrote** [2] - 13641:19, 13886:5

## Y

**year** [4] - 13656:15, 13664:8, 13670:25, 13672:3

**years** [1] - 13672:20
**yesterday** [8] - 13577:12, 13644:22, 13649:3, 13649:13, 13652:17, 13659:11, 13661:23, 13686:4
**York** [6] - 13572:18, 13573:13, 13668:22, 13669:4, 13669:5, 13673:6
**yourself** [1] - 13682:11
**YutYut** [1] - 13646:7

## Z

**Zach** [1] - 13586:3
**Zachary** [4] - 13575:4, 13584:15, 13596:25, 13597:7
**zoom** [1] - 13646:6