UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Case No. 21-cr-175 (TJK)

UNITED STATES OF AMERICA, Plaintiff,

v.

ZACHARY REHL, Defendant.

RECEIVED
Mailroom

JAN 15 2026

Angela D. Caesar, Clerk of Clerk
U.S. District Court, District of Columbia

**DEFENDANT ZACHARY REHL'S PRO SE MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, DISMISSAL WITH PREJUDICE BASED ON NEWLY DISCOVERED EVIDENCE, AND REQUEST FOR INDICATIVE RULING PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 37**

Defendant Zachary Rehl, proceeding pro se, respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 33(b)(1), for a new trial based on newly discovered evidence of prosecutorial misconduct, including the coercion of key government witness Jeremy Bertino (Bertino), which violated Rehl's constitutional rights under the Fifth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause. In the alternative, Rehl moves for dismissal of the case with prejudice due to outrageous government conduct. Rehl's appeal is currently pending before the United States Court of Appeals for the District of Columbia Circuit (No. 23-3162, consolidated with Nos. 23-3159, 23-3160, and 23-3161), Rehl also requests, pursuant to Federal Rule of Criminal Procedure 37(a),

that this Court issue an indicative ruling stating whether it would grant this motion if the case were remanded or if jurisdiction were otherwise restored. In support of this motion, Rehl states as follows:

## I. BACKGROUND

This case arises from Rehl's convictions following a trial that concluded on May 4, 2023. Rehl was convicted of various charges, including seditious conspiracy under 18 U.S.C. § 2384, related to events at the United States Capitol on January 6, 2021. Sentence was imposed on August 31st, 2023, and a timely notice of appeal was filed. On January 20, 2025, President Trump issued a proclamation commuting Rehl's sentence to time served as of that date. Rehl's appeal remains pending.

Newly discovered evidence at issue consists of a notarized, sworn affidavit from Jeremy Bertino, a key government witness at trial, (dated August 8, 2025,) in which Bertino recants key portions of his testimony and alleges coercion by FBI Special Agent Nicole Miller and prosecutors. This evidence includes two separate video recordings on August 4, 2025 and August 5th, 2025 respectively, in which Bertino first recanted his testimony and then further described the coercion in detail in the second video. The videos detailing the recantation and coercion have been provided to the Court on a SD card and are labeled in the drive as Exhibit_A and Exhibit_B respectively, with the sworn affidavit being labeled Exhibit_C.

Bertino's testimony was central to the government's case, as he provided evidence regarding alleged plans and communications among the defendants,

particularly, the seditious conspiracy charge as Bertino was the only "witness" for the alleged conspiracy. The government emphasized in its rebuttal closing argument,

> "Bertino told you that Tarrio thought that time was running out to save the country. The Proud Boys, who saw themselves as the foot soldiers of the right, had to be the leaders that they believed themselves to be. And so the Proud Boys, led by the MoSD leaders, traveled to D.C. And as Mr. Bertino told you, the reason that they were there was to stop the certification of the election."

(Trial Transcript, April 25, 2023, at 20180:9-17).

The government further stated,

> "Bertino knew that he and the other MoSD leaders and members had agreed to do whatever it took to stop the certification. Bertino told you they would do whatever was necessary to save the country, that it was the constant conversation that followed the MoSD chats. It was all they talked about."

(Trial transcript, April 25, 2023, 20180:22-20181:2).

Additionally, the government defended Bertino's credibility by asserting,

> "we didn't pick Mr. Bertino as our witness. The defendants did when they agreed with him to stop the certification of the presidential election." (Id. at 20176:23-25).

Bertino's recantation reveals that he was coerced into providing false and exaggerated testimony, including threats to his person, family and pressure to implicate Rehl and others in a conspiracy that did not exist. The egregious

misconduct also constitutes a Brady violation and undermines the integrity of the trial, warranting a new trial under Rule 33(b)(1) or dismissal.

## II. LEGAL STANDARD AND ARGUMENT

Federal Rule of Criminal Procedure 33(b)(1) permits a defendant to move for a new trial based on newly discovered evidence within three years of the verdict. To prevail on such a motion, the defendant must show that: (1) the evidence is newly discovered; (2) the defendant exercised due diligence in discovering it; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably produce an acquittal on retrial. See United States v. Emor, No. 07-3092 (D.C. Cir. 2009); see also United States v. Williams, 233 F.3d 592, 593 (D.C. Cir. 2000) (applying this standard and emphasizing that, for newly discovered evidence, a new trial is warranted if a trial without the false testimony would probably produce an acquittal).

Here, the evidence satisfies these criteria. The Bertino affidavit and videos were not available until August 4th 2025, well after the trial and sentencing. Rehl could not have discovered this evidence earlier through due diligence, as it stems from Bertino's post-trial decision to clarify the facts. The evidence, which is the core of governments case, reveals fabricated testimony from Bertino due to coercion by the government, which rises to the level of impeachment. The revelations are material, as Bertino was a pivotal witness, and disclosure of this compelled

testimony would probably lead to an acquittal by discrediting the conspiracy allegations completely. As the government reasserted during rebuttal closing,

> *"Bertino was closest with Tarrio. Bertino told you that Tarrio thought that time was running out to save the country."* (Trial Transcript, April 25, 2023, at 20180:9-11).

Further underscoring the government's reliance on Bertino to establish the defendants' intent and agreement of the implied conspiracy.

> *"the very next thing that Bertino said. Bertino said he understood that the Proud Boys' objective was to stop Joe Biden from being certified as the President of the United States."* (Trial transcript April 25, 2025, 20181:1-4,)

Recantations by prosecution witnesses are viewed with "utmost suspicion" in this Circuit, particularly when they come from cooperating witnesses who may have incentives to alter their recollection of events. See United States v. Kearney, 682 F.2d 214, 219 (D.C. Cir. 1982) (noting that "recantations by prosecution witnesses are looked upon with the utmost suspicion by the courts"). However, this suspicion does not preclude relief where, as here, the recantation is supported by detailed allegations of government coercion, a sworn affidavit, and corroborating video evidence. See United States v. Perkins, 138 F.3d 421.(D.C. Cir. March. 20, 1998) (affirming denial of new trial where recantation lacked credibility due to being undated, unsworn, and hearsay, but implying that authenticated and corroborated recantations merit different treatment). Bertino's recantation is authenticated in the

form of a notarized, sworn affidavit, along with two video depositions, and his claims of coercion by FBI agents and prosecutors explain why he provided false testimony at trial—under duress—and why he is now credible in recanting, free from such pressure as it is known by this Honorable court, that Bertino's entire case has been dismissed, leaving him to speak freely on the matter. This distinguishes the case from those where recantations are unsubstantiated or motivated by post-trial incentives.

Moreover, Bertino was the government's star witness, providing the primary narrative linking Rehl and Et al, to the alleged seditious conspiracy. The government argued in their rebuttal closing,

> *"Bertino knew that he and the other MoSD leaders and members had agreed to do whatever it took to stop the certification. Bertino told you they would do whatever was necessary to save the country"* (Trial Transcript, April 25, 2023, at 20180:22-24), and *"Bertino told you that no one sat him down and told him explicitly the Proud Boys' objective is to stop the certification by storming the Capitol building. That's only because they didn't need to."* (Trial transcript, April 25 2023, at 20181:8-11).

Without his testimony, or with it discredited as coerced and false, there is a reasonable probability of acquittal, as the remaining evidence would be insufficient to uphold the convictions. See Williams, 233 F.3d at 593-94 (focusing on whether exclusion of the recanted testimony would probably change the outcome). To resolve

any doubts about credibility, Rehl requests an evidentiary hearing if necessary, where Bertino can testify under oath, allowing the Court to assess his demeanor and the veracity of his coercion claims. See Kearney, 682 F.2d at 220 (a motion for new trial may be decided on the basis of affidavits without an evidentiary hearing). For this reason, it may or may not be necessary for a hearing, hence "if necessary."

The coercion allegations also implicate due process violations under Napue v. Illinois, 360 U.S. 264, 269 (1959) (conviction obtained through use of testimony known to be false by the government violates due process), and Giglio v. United States, 405 U.S. 150, 153-54 (1972) (extending Napue to undisclosed impeachment evidence, including promises or threats affecting witness testimony). Furthermore, the defense was provided transcripts of only three separate occasions regarding government interviews with Bertino, although Bertino's admission in his recorded video recantation stated that he had "probably 15 meetings" with the government. This undisclosed information about additional meetings constitutes substantial Brady material, as it could have been used to impeach Bertino's credibility by showing extensive government preparation or coaching, potentially revealing inconsistencies or further evidence of coercion which leaves a "reasonable probability sufficient to undermine confidence in the outcome." See United States v. Bagley, 473 U.S. 667, 676 (1985) (Brady extends to impeachment evidence and reasonable probability standard.) Further, the government has a duty to disclose exculpatory evidence, including impeachment material that could substantiate

coercion or false testimony, without request, even if the defense could have discovered it through diligence, which would have been impossible in this scenario for the defense to do. See United States v. Agurs, 427 U.S. 97 (1976,) (sets standard for constitutional duty of prosecution to turn over evidence crucial to the case, along with standards regarding knowing use of testimony known to be a lie by prosecutors,) see also Kyles v. Whitley, 514 U.S. 419 (1995) (the test here is whether there's a reasonable probability that disclosure of material would have changed the results, and where the prosecution knowingly uses false testimony, requiring reversal.) In this case, a coerced false testimony where substantial missing Brady material is in question involving the star witness is a powerful argument for that reasonable probability to have changed the verdict.

If the government coerced Bertino and/or knowingly elicited false testimony while not turning over additional transcripts or recordings of meetings, this constitutes a Brady violation warranting relief, even if discovered post-trial. See Glossip v Oklahoma, No. 22-7466, 601 U.S. ___ (2025) (applying Napue in context of post-conviction claims of false testimony resulting in a Napue violation.)

Additionally, the undisclosed coercion of Bertino's testimony violated Rehl's rights under the Confrontation Clause of the Sixth Amendment, as it deprived him of the opportunity for effective cross-examination of Bertino regarding his motives, biases, and the reliability of his testimony. The coercion placed Bertino under unreasonable or illegal duress, rendering his testimony involuntary and undermining

the ability to confront him meaningfully, as the defense could not explore the extent of the pressure influencing his statements. See Delaware v. Van Arsdall, 475 U.S. 673 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness."); see also Davis v. Alaska, 415 U.S. 308, 318 (1974) (Confrontation Clause violated where defendant was denied opportunity to expose witness's bias or motive).

In essence, confronting a coerced witness under duress is not genuine confrontation, as the testimony may not reflect the witness's free will and will handicap impeachment, in turn affecting reliability. See Crane v. Kentucky, 476 U.S. 683 (1986) (emphasizing that the Confrontation Clause guarantees an opportunity for effective cross-examination, particularly regarding circumstances affecting reliability when there is no physical evidence to link petitioner to the crime). In this instance, there was no actual documented plan of a crime, conviction was based solely off of testimony now deemed to have been coerced and given under duress. To further demonstrate there was no physical evidence, we need to look no further than the governments own words, as stated by the government in closing arguments,

> "Let's be clear. The defendants aren't charged with having a plan, and we don't have to prove a plan. In Judge Kelly's instructions, there's no requirement of a detailed plan. It's our burden, and a burden that we've met

> *these past few months, to prove a conspiracy, which is just an agreement or mutual understanding, not a detailed plan. And a conspiracy can be spoken or unspoken."* (Trial Transcript, April 25, 2023, at 20161:17-25).

To further drive home the point that there was no physical evidence other than Bertinos testimony, the government also stated in closing arguments,

> *"And a conspiracy can be spoken or unspoken. If I pull up next to a Mustang at a red light and I lock eyes with its driver and I rev my engine and he revs his engine and looks right back at me while he does it and then the light turns green and we both peel out, even though we've never met each other, even though we've never exchanged a word, we've formed an agreement."* (Trial Transcript, April 25, 2023, at 20162:3-13).

Lets not forget that street races are common, so a complex plan to commit seditious conspiracy against the most powerful country in the world (which has never happened before) would surely need more than an "unspoken," "mutual understanding." Cited earlier in this motion, the governments evidence of this "unspoken," "mutual understanding" came from Bertino's coerced testimony and no where else.

Alternatively, if the Court finds the misconduct sufficiently egregious, dismissal with prejudice is warranted under the Court's supervisory powers to remedy outrageous government conduct that violates "fundamental fairness, shocking to the universal sense of justice" as mandated by the Due Process Clause

of the Fifth Amendment. See United States v. Russell, 411 U.S. 423, 431-32 (1973); see also United States v. Stevens, No. 08-cr-231 (D.D.C. Apr. 7, 2009) (dismissal appropriate for previously undisclosed Brady violations and false testimony from key government witness as admitted to by prosecution). Compelling Bertino to provide false testimony and also withholding substantial Brady material pivotal to the case in relation to his meetings constitutes such conduct.

### III. REQUEST FOR INDICATIVE RULING UNDER RULE 37

Rehl's appeal is pending, divesting this Court of jurisdiction over aspects of the case involved in the appeal. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56 (1982). However, Federal Rule of Criminal Procedure 37(a) allows this Court to entertain a motion for relief that would otherwise be barred by the pending appeal and to issue an indicative ruling. Specifically, under Rule 37(a)(3), if the motion raises a substantial issue, the Court may state that it would grant the motion if the case were remanded or that the motion raises a substantial issue warranting remand.

This procedure is supported by Federal Rule of Appellate Procedure 12.1, which provides that if a district court issues an indicative ruling under Rule 37 stating that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings while retaining jurisdiction. The United States Court of Appeals for the District of Columbia Circuit has endorsed this approach, as reflected in its Handbook of Practice and Internal

Procedures 35-36 (2025), which emphasizes the use of indicative rulings to resolve post-appeal motions efficiently without unnecessary de-consolidation or delay.

In denying a prior motion for remand without prejudice on December 23, 2025, the Court of Appeals explicitly advised pursuing this path: filing a motion for a new trial in this Court, requesting an indicative ruling, and renewing the remand motion if this Court indicates an inclination to grant relief. See Order, United States v. Nordean, et al., No. 23-3159 et al. Document #2151840 (D.C. Cir. Dec. 23, 2025) (citing Fed. R. Crim. P. 37; Fed. R. App. P. 12.1; D.C. Circuit Handbook at 35-36). This guidance also aligns with the government's position in opposing direct remand, (see response in opposition, United States V. Nordean, et al., No. 23-3159 et al. Document #2149315, Dec. 8 2025,) which emphasized judicial economy and the availability of indicative rulings to avoid duplicative appeals.

The Bertino recantation raises a substantial issue meriting relief. To enhance this argument, Rehl notes that the Court of Appeals' denial of remand was without prejudice and expressly contemplated this indicative ruling process, underscoring the viability of the claim. An indicative ruling would promote efficiency by allowing the Court of Appeals to remand if appropriate, without severing Rehl's appeal from his co-defendants'.

## IV. RELIEF SOUGHT

Rehl respectfully requests that this Court: (1) dismiss the case with prejudice; or in the alternative, grant a new trial under Rule 33(b)(1) or (2) issue an indicative

ruling under Rule 37(a) stating that it would grant the motion if remanded or that the motion raises a substantial issue. Rehl further requests if necessary, an evidentiary hearing to develop the record on Bertino's allegations, including his credibility and the details of the alleged coercion.

The sworn Bertino affidavit dated August 8, 2025 (Exhibit_C,) along with videos A and B (Exhibit_A & Exhibit_B,) dated August 4th and August 5th respectively, have been provided to this court on a SD card along with this motion.

Respectfully submitted,

/s/ Zachary Rehl

Zachary Rehl, Pro Se

[Redacted Address]

[Redacted Phone]

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2026, I have or will have electronically served co-defendant counsel and have mailed a true and correct copy of the foregoing Motion (and SD card) to the clerk of court along with a copy of the same Motion to the following opposing party by placing both in the United States mail, first-class overnight priority postage to the following:

Jocelyn Ballantine

Assistant United States Attorney

Case 1:21-cr-00175-TJK     Document 1081     Filed 02/19/26     Page 14 of 14

Page 14 of 14

601 D Street, N.W.

Washington, D.C. 20530

Dated: January 12, 2026

/s/ Zachary Rehl\

Zachary Rehl, Pro Se